## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DAVID ALAN CARMICHAEL, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>MICHAEL RICHARD POMPEO, in his official capacity as Secretary of State, *et al.*,<br><br>*Defendants.* | Civil Action No. 19-2316 (RC) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiffs David Alan Carmichael, Lawrence Donald Lewis, and William Mitchell Pakosz, each proceeding *pro se*, bring this action against Defendants Michael Richard Pompeo, in his official capacity as Secretary of State, and the U.S. Department of State, challenging Defendants' decision to deny their passport applications (and, in Mr. Carmichael's case, revoke his passport) after Plaintiffs failed to provide their social security numbers as part of their respective passport applications. Plaintiffs bring this action under the Religious Freedom Restoration Act ("RFRA"), among other laws, and seek a Court order to compel the Department to void the revocation and denial of Plaintiffs' passports and enjoin the Department from denying passports to applicants who refuse to provide social security numbers on the basis of religion. *See* Am. Compl. (ECF No. 15) ¶¶ 142-43. Plaintiffs also seek more than $500,000 in money damages. *See id.* ¶¶ 144-49.

As explained below, Plaintiffs' complaint warrants dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because Plaintiffs have failed to state a claim under RFRA or any other law. The Department's requirement for Plaintiffs to provide a social security number

on their passport applications did not impose a substantial burden on their religious beliefs or practices.  Further, the Department's policies and practices in this regard are consistent with the U.S. Constitution and all other relevant laws.

In the alternative, even if the Court concludes that the Department has imposed a substantial burden on the Plaintiffs, Defendants are entitled to summary judgment in their favor regarding Plaintiffs' RFRA claims (and any related claims) as the Department's passport application process serves a compelling governmental interest and is the least restrictive means of accomplishing that interest.  In support of this motion, Defendants provide the attached declarations of Jonathan M. Rolbin, Director of the Office of Legal Affairs and Law Enforcement Liaison within the Passport Services Directorate of the State Department's Bureau of Consular Affairs, and Florence Fultz, Managing Director of Passport Issuance Operations within the Passport Services Directorate of the Bureau of Consular Affairs.

## BACKGROUND

Plaintiffs allege that, even though they each have a social security number,[1] they "are prohibited from identifying with a social security number . . . on the basis of the Christian religion."  *See* Am. Compl. ¶ 14.  All three Plaintiffs allege that they were previously given a religious accommodation when they were issued a passport without being required to provide a social security number.  Plaintiff Carmichael alleges that he applied for a passport on or about December 17, 2007, requested a religious accommodation regarding the requirement to provide a social security number, and was subsequently issued a passport on January 23, 2008.  *Id.* ¶ 16.

---

[1] There is no dispute that Plaintiffs were each issued a social security number from the U.S. Social Security Administration ("SSA").  However, each Plaintiff alleges that he as corresponded with SSA to "void" his social security number based on "direct and extrinsic fraud" based on the alleged prohibition regarding Plaintiffs' identification with a Social Security Number.  Am. Compl. ¶ 36.

Plaintiff Pakosz alleges that he was issued a passport in December 2007, after requesting a similar religious accommodation. *Id.* ¶ 17. The same occurred for Plaintiff Lewis, who alleges he was issued a passport on May 2, 2008, under similar circumstances. *Id.* ¶ 18.

According to Plaintiffs, the instant dispute began when the previously-issued passports were required to be renewed. Mr. Carmichael alleges that he applied on January 20, 2018, to renew his passport along with a renewed request for a religious accommodation. *Id.* ¶ 19. Mr. Carmichael alleges he was granted a religious accommodation on January 30, 2018, when he received a passport despite not providing his social security number on his most recent application. *Id.* ¶ 19. By letter dated June 20, 2019, Mr. Carmichael received written notice from the Department that it had revoked his passport because it was issued in error. *Id.* ¶ 33. That letter informed Mr. Carmichael that he had not provided his social security number on his application and that his passport "should not have been issued and is hereby revoked pursuant to 22 C.F.R. § 51.62(a)(2)." *Id.* ¶ 33.

Mr. Pakosz alleges he applied to renew his passport in February 2019 and the Department improperly denied his request for a religious accommodation to the requirement that he provide his social security number on his passport application. *Id.* ¶¶ 55, 68. Similarly, Mr. Lewis alleges he applied to renew his passport on April 3, 2019 and the Department improperly denied his request for a religious accommodation to the requirement that he provide his social security number on his passport application. *Id.* ¶¶ 42, 49.

After myriad correspondence with Department officials, the White House, and Members of Congress, Plaintiffs filed the instant action after they were unable to secure passports.

## LEGAL STANDARDS

### I.     Dismissal Pursuant to Rule 12(b)(1) for Lack of Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), unless the plaintiff can establish by a preponderance of the evidence that the Court possesses jurisdiction. *See, e.g.*, *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011) (citing *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006)). Thus, the "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Id.* (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal citation and quotation marks omitted)).

## II.     Dismissal Pursuant to Rule 12(b)(6) for Failure to State a Claim

In order to survive a Rule 12(b)(6) motion, the plaintiff must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In satisfying this requirement that it "state a claim to relief that is plausible on its face," *id.* at 570, a complaint cannot survive a motion to dismiss through only "a formulaic recitation of the elements of a cause of action." *Id.* at 555. As with facial challenges to subject matter jurisdiction under Rule 12(b)(1), a district court is required to deem the factual allegations in the complaint as true and consider those allegations in the light most favorable to the non-moving party when evaluating a motion to dismiss under Rule 12(b)(6). *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). But where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line

4

between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

Accordingly, a "court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth.  While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### III.      Summary Judgment Pursuant to Rule 56

Summary judgment is appropriate when the pleadings and evidence show that "there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment must

demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 248.  In

determining whether a genuine issue of material fact exists, the trier of fact must view all facts,

and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.

*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).  The

moving party may discharge its burden by "'showing' – that is point out to the [Court] – that

there is an absence of evidence to support the non-moving party's case." *Sweats Fashion, Inc. v.

Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987); *see also Celotex*, 477 U.S. at 332.

Once the moving party has met its burden, the non-moving party may not rest upon the mere

allegations or denials of his pleadings, and must establish more than "the mere existence of a

scintilla of evidence" in support of its position.  *Anderson*, 477 U.S. at 252.

"By its very terms, [the summary judgment] standard provides that the mere existence of

some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of material

fact." *Anderson*, 477 U.S. 242, 247-48 (emphasis in original).  "A dispute about a material fact

is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'"  *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014) (quoting *Mogenhan v.

Napolitano*, 613 F.3d 1162, 1165 (D.C. Cir. 2010)).  Thus, summary judgment is due if the non-

moving party fails to offer "evidence on which the jury could reasonably find for the

[nonmovant]."  *Id.*

## ARGUMENT

### I.  Plaintiffs' Religious Freedom Restoration Act Claims Fail.

Skipping over Plaintiffs' first cause of action for a moment, Plaintiffs' second cause of

action alleges that Defendants have unlawfully placed a substantial burden on Plaintiffs' ability

to practice their religion by refusing to grant Plaintiffs a passport due to their refusal to provide

social security numbers, as required, in their respective passport applications.  This refusal, in

Plaintiffs' view, violates the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §

2000bb *et seq*.  However, Plaintiffs' RFRA claims must fail because they have failed to establish

that the Department's requirement for a passport applicant to indicate his or her social security

number, if he or she has one, constitutes a "substantial burden" under the RFRA.

At the outset, it must be noted that RFRA does not permit recovery of damages from

agencies or persons sued in their official capacities.  *See Webman v. BOP*, 441 F.3d 1022, 1026

(D.C. Cir. 2006) ("hold[ing] that RFRA does not waive the federal government's sovereign

immunity for damages").  Therefore, Plaintiffs' request for damages under RFRA must be set

aside.  Turning to Plaintiffs' request for equitable relief, under RFRA the "Government shall not

substantially burden a person's exercise of religion even if the burden results from a general rule

of applicability," unless the government can demonstrate that "the burden to the person (1) is in

furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a), (b).

Plaintiffs bear the initial burden of establishing the elements of a prima facie case of a RFRA violation; then, once a prima facie case has been established, the government bears the burden of showing a compelling interest and that it used the least restrictive means to carry out that interest.  *See Holt v. Hobbs*, 135 S.Ct. 853, 862 (2015).  "[A] plaintiff establishes a prima facie claim under RFRA by proving the following three elements: (1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion."  *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001).

"To successfully mount a RFRA challenge and subject government action to strict scrutiny, a plaintiff must meet the initial hurdle of establishing that the government has substantially burdened his religious exercise."  *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 281 F. Supp. 3d 88, 113 (D.D.C. 2017) ("WMATA"); *see Kaemmerling v. Lappin*, 553 F.3d 669, 677-78 (D.C. Cir. 2008) (finding that the plaintiff failed to "state a substantial burden on his religious exercise" because he did not identify any action or practice that would have been burdened by the government's collection of DNA); *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006) (plaintiff carries the initial burden of showing a prima facie RFRA case).  "Only if that predicate has been established will the onus then shift to the government to show that the law or regulation is the least restrictive means to further a compelling interest."  *WMATA*, 281 F. Supp. 3d at 113.  "A substantial burden exists when government action puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Id.*

Whether a law substantially burdens religious exercise under RFRA is a question of law for courts to decide, not a question of fact. *See Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011) (stating that judicial inquiry into the substantiality of the burden "prevent[s] RFRA claims from being reduced into questions of fact, proven by the credibility of the claimant"); *Kaemmerling*, 553 F.3d at 679 ("[a]ccepting as true the factual allegations that Kaemmerling's beliefs are sincere and of a religious nature—but not the legal conclusion, cast as a factual allegation, that his religious exercise is substantially burdened"). A desire to have the government conduct its affairs in conformance with a plaintiff's religious beliefs does not suffice to establish a prima facie violation. *Kaemmerling*, 553 F.3d at 680. The burden placed on the religious exercise "must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief which is central to religious doctrine." *Graham v. Comm'r of Internal Revenue Serv.*, 822 F.2d 844, 851 (9th Cir. 1987). Thus, such a burden is "a significantly great restriction or onus upon religious exercise." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). It is "a burden that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise effectively impracticable." *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

Here, the factual allegations in the complaint are insufficient to show that the Department has substantially burdened Plaintiffs' religious exercise. Specifically, the Department's requirement for Plaintiffs to disclose their social security numbers, if they have one, is not a substantial burden on Plaintiffs' religious exercise.

First, a bit of background. Prior to December 4, 2015, the Department was not permitted by law to require that applicants provide their social security numbers. *See* Rolbin Decl. ¶ 4.

This changed on December 4, 2015, when the Fixing America's Surface Transportation ("FAST") Act, Pub. L. No. 114-94, was signed into law.  Among other things, the FAST Act prohibited the Secretary of State from issuing a passport to anyone who had seriously delinquent tax debt.  *See* 22 U.S.C. § 2714a(e).  The FAST Act also provided that the Secretary of State may deny a passport application if the applicant does not provide his or her social security number.  *Id.* at § 2714a(f); *see* Rolbin Decl. ¶ 5.

In order to comply with the FAST Act, the Department promulgated regulations to allow the agency to deny a passport application if the applicant fails to provide his or her social security number.  *See* Rolbin Decl. ¶¶ 4-5.  The Department also implemented new policies for adjudicating passport applications in the wake of the FAST Act.  *Id.*  Importantly, if an applicant fails to provide his or her a social security number on the application, the Department will issue an information request letter ("IRL") asking the applicant to provide his or her social security number or, alternatively, a sworn declaration stating that he or she has never been issued a social security number.  *Id.*; *see also* Fultz Decl. ¶ 7.  This has been the process since October 1, 2016.  *Id.* at ¶ 5.  Indeed, if an applicant does not respond as requested to the letter, the Department will deny the application absent circumstances not relevant here.  *See* 22 U.S.C. § 2714a(f)(1)(B); Rolbin Decl. ¶¶ 5-6; Fultz Decl. ¶ 7.

Turning back to Plaintiffs' case, Plaintiffs have failed to allege that they have been substantially burdened.  Although decided prior to the enactment of RFRA, the Supreme Court's decision in *Bowen v. Roy*, 476 U.S. 693 (1986) (which Plaintiffs' complaint cites) is instructive.  There, the Court rejected a free exercise challenge to the Government's use of a Native American child's social security number for purposes of administering benefit programs.  The child's father believed that the government's use of the social security number of his daughter

would serve to "'rob the spirit' of his daughter and prevent her from attaining greater spiritual power." *Id.* at 696.  Ultimately, the Court concluded that the Government's internal uses of that number "place[d] [no] restriction on what [the father of the child] may believe or what he may do." *Id.* at 699.  The Court rejected the father's claim on the basis that, rather than complaining about a restriction on his own conduct, he sought to "dictate the conduct of the Government's internal procedures." *Id.* at 700.  Further, the Court found that even though the Government's procedures seriously offended the father's religious sensibilities, the "Government's use of a Social Security number for [the daughter] d[id] not itself in any degree impair [the father's] freedom to believe, express, and exercise his religion." *Id.* at 700-01 (internal quotation marks omitted).

Building on *Bowen*, the D.C. Circuit concluded that a federal prisoner failed to state a RFRA claim when he sought to enjoin application of the DNA Analysis Backlog Elimination Act on the basis that DNA sampling, storage, and collection without limitations violated his religious beliefs about the proper use of the "building blocks of life."  *Kaemmerling*, 553 F.3d at 674.  Kaemmerling could not state a claim that his religious exercise was substantially burdened because he did not identify any religious exercise that was subjected to the burden to which he objected:

> The government's extraction, analysis, and storage of Kaemmerling's DNA information does not call for Kaemmerling to modify his religious behavior in any way—it involves no action or forbearance on his part, nor does it otherwise interfere with any religious act in which he engages.  Although the government's activities with his fluid or tissue sample after the BOP takes it may offend Kaemmerling's religious beliefs, they cannot be said to hamper his religious exercise because they do not "pressure [him] to modify his behavior and to violate his beliefs."

*Id*. at 679 (alteration in original) (quoting *Thomas v. Review Bd. Of Indiana Employment Sec. Division*, 450 U.S. 707, 718 (1981).

In this case, just as the plaintiffs in *Bowen* and *Kaemmerling* could not successfully challenge what the government chose to do with their social security numbers or DNA specimens, respectively, Plaintiffs have no RFRA claim against the Department's requirement that passport applicants include their social security numbers, if they have one. The Department's policy in this regard does not pressure Plaintiffs to change their behavior and violate their religion. Although Plaintiffs may have a religious objection to what the Department does with their social security numbers, RFRA does not necessarily permit Plaintiffs to impose a restraint on the Department's actions based on the claim that the action is religiously abhorrent. Such a claim seeks only to require the government itself to conduct its affairs in conformance with his religion. *See Kaemmerling*, 553 F.3d at 680. Accordingly, Plaintiffs failed to allege a "substantial burden" under the RFRA.

> i. *Alternatively, Defendants Are Entitled To Summary Judgment.*

Even if Plaintiffs had adequately pled a substantial burden, which they have not, the Department would nonetheless be entitled to summary judgment with respect to Plaintiffs' RFRA claims. Indeed, as established in the declaration of Florence Fultz, the requirement for passport applicants to provide their social security numbers is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.

Passports, of course, are travel documents attesting to the bearer's identity. *See* 22 C.F.R. § 51.1 (definition of 'passport'). Accordingly, the Department has developed policies and procedures for adjudicating the identity of each applicant, identifying and preventing fraud, and ensuring an applicant is otherwise entitled to a U.S. passport. *See* Fultz Decl. ¶¶ 3-4. The Department considers many pieces of information when adjudicating a passport application, including but not limited to the applicant's name, gender, date of birth, place of birth,

appearance, and social security number. *Id.* at ¶ 4.  Although each data point is helpful in

determining an applicant's identity, an applicant's name, gender, and appearance are changeable,

thereby making it difficult to adjudicate an applicant's identity absent a consistent data point, *i.e.*,

a social security number. *Id.* at ¶¶ 4-5.  Indeed, as explained by Ms. Fultz, social security

numbers are the most significant and reliable piece of information that the Department considers

when adjudicating an applicant's identity, as these numbers can help differentiate individuals

with common names, incomplete biographical information, or typographical errors on their

applications.  Fultz Decl. ¶¶ 5, 8-10.  As Ms. Fultz notes, an applicant's name may be anglicized

or transliterated slightly differently on various documents, or an applicant may transpose his or

her date and month of birth. *Id.* at ¶ 8.  In those instances, the applicant's social security number

ensures that the Department can efficiently and accurately adjudicate the applicant's identity. *Id.*

The Department also uses social security numbers for anti-fraud purposes. *Id.* at 5-6.  As

Ms. Fultz notes, U.S. passports are one of the premier global travel documents.  Bearers have

visa-free access to over 180 countries and can use them for many other purposes. *Id.* at 3.

Because the document itself is nearly impossible to counterfeit, most common type of fraud

practiced on the Department is identity fraud. *Id.*  To combat identity fraud in the passport

application process, the Department uses social security numbers to run background checks on

each applicant against information provided by other agencies. *Id.* at 6.  These checks help

confirm the applicant's identity but also ensure passports are not issued in fraudulent identities,

as each social security numbers provide additional information about when and where it was

issued which helps with adjudicating one's identity and preventing fraud.  Fultz Decl. ¶¶ 5-6.

Additionally, social security numbers are never reused and are retired after each bearer dies. *Id.*

at 6.  The Department will compare the social security number provided by an applicant against

the Social Security Administration's Social Security Death Index to confirm the applicant is not using the identity of a deceased person—a relatively common method of attempted fraud against the State Department, which is primarily detected via the social security number provided.  *Id.* As Ms. Fultz notes, the Department cannot efficiently, effectively, and/or completely and accurately adjudicate an applicant's identity, detect and prevent fraud, and protect the integrity of the passport issuance system without applicants providing their social security numbers.  *Id.*

Moreover, the Department also uses social security numbers to determine if an applicant whose identity (and citizenship) has been confirmed is otherwise entitled to a U.S. passport.  *See* 22 C.F.R. § 51.60 (providing a list of reasons why an individual would be ineligible for a U.S. passport).  As noted above, in light of the FAST Act, delinquent tax debt is a primary concern. Department regulations provide that an applicant is ineligible for a passport if the applicant has "been certified by the Secretary of the Treasury as having a seriously delinquent tax debt as described in 26 U.S.C. [§] 7345."  22 C.F.R. § 51.60(a)(3); 22 U.S.C. § 2714a(e).

As Ms. Fultz explains further, social security numbers are particularly important in confirming whether an applicant has a seriously delinquent tax debt.  *See* Fultz Decl. ¶ 12.  When determining whether an applicant has a seriously delinquent tax debt, the Department relies on the Treasury Department's certification that the individual does not have seriously delinquent tax debt. *Id*.  The Treasury Department's certification transmits several data points, including the individual's social security number, which is the data point most directly linked to an individual's tax returns.  Once again in this instance, social security numbers permit the Department to efficiently and accurately ensure that eligible applicants are not wrongly denied a passport and that ineligible applicants are not issued passports in error.  *Id.*

Yet another potential for ineligibility for a passport is whether the applicant is the subject of a warrant of arrest for a felony offense, *see* 22 C.F.R. §§ 51.60(b)(1), (b)(9), or has been certified by the Secretary of Health and Human Services to have child support arrears over a threshold amount.  *Id.* at § 51.60(a)(2).  Ms. Fultz explains that social security numbers again prove invaluable in determining whether the applicant is the subject of the warrant or child support certification because they are unique numerical identifiers which help ensure that eligible applicants are not wrongly denied a passport and that ineligible applicants are not issued passports in error.  Fultz Decl. ¶¶ 11, 13.

In light of the above, the Department's use of Plaintiffs' social security numbers in the context of this case clearly serves a compelling governmental interest.  Indeed, other courts have found that social security numbers are rationally related to several compelling government interests, including fraud prevention and counterterrorism.  *See Walker v. Tillerson*, Civ. A. No. 17-0732, 2018 WL 1187599 (M.D.N.C. Mar. 7, 2018) (holding that "[t]he requirement in § 2714a(f) that an applicant for a passport provide a social security number is rationally related to several legitimate purposes, including: verification of identity, debt collection, fraud prevention, border security, and counterterrorism.").  Courts have also noted that social security numbers are "unique identifiers" that can be used to detect fraud through computer matching techniques.  *See Davis v. Comm'r of Internal Revenue*, No. 12859-98, 2000 WL 924630, at *3 (U.S. Tax Court Jul. 10, 2000) (stating that "[t]hrough cross-matching of SSN's, respondent can detect erroneous or fraudulent claims by identifying whether an SSN has been claimed on another return for the year.").  Therefore, because social security numbers are unique identifiers, the Department's requirement that an applicant provide his or her social security number is critical to detecting fraud and preserving national security when issuing passports.  And, because social security

numbers are unique to each applicant, they are the least restrictive means by which the

Department can verify an applicant's identify and ensure against potential fraud.  *See* Fultz Decl.

¶¶ 10, 14.

> **II.**     **The State Department's Passport Revocation And Denial of Passport Applications Are Authorized By Federal Law.**

In their first cause of action, Plaintiffs allege that Defendants "unlawfully denied,

revoked, restricted and otherwise limited [their] passport renewal applications or cancelled my

passport or its application because of my speech, activity, belief, affiliation, or membership" in

violation of 22 U.S.C. § 2721.  *See* Compl. ¶¶ 11.  Section 2721 prohibits the Department from

revoking a passport "because of any speech, activity, belief, affiliation, or membership, within or

outside the United States, which, if held or conducted within the United States, would be

protected by the first amendment to the Constitution of the United States."

Here, for the same reasons expressed above, Plaintiffs' first cause of action must fail as

the Department has demonstrated that requiring a social security number on passport applications

is not an impermissible burden on a person's exercise of his or her religious beliefs.  Further, in

light of the declarations of Florence Fultz and Jonathan Rolbin, there is no dispute that the only

reason that Plaintiffs' passport applications were denied and/or passports were revoked was due

to their failure to provide a social security number and not "because of" any religious affiliation

or belief of the Plaintiffs.  Moreover, to the extent that Plaintiff seeks review of the revocation of

a previously-issued passport under the Administrative Procedure Act ("APA"), the revocation of

Plaintiff Carmichael's passport was fully consistent with the law.  The Department possesses the

authority to revoke a passport that it has issued under the Passport Act of 1926, 22 U.S.C. §

211a.  The Passport Act permits the Secretary of State or a designee to "grant and issue

passports, and cause passports to be granted, issued and verified in foreign countries  . . . under

such rules as the President shall designate and prescribe for and on behalf of the United States,

and no other person shall grant, issue, or verify such passports." *Id.* Further, pursuant to

Executive Order No. 11295, 31 Fed. Reg. 10603 (Aug. 9, 1966), the President has empowered

the Secretary of State with the authority "to designate and prescribe for and on behalf of the

United States rules governing the granting, issuing, and verifying of passports." The use of the

term "verifying" in addition to the terms "granting" and "issuing" in Executive Order No. 11295

(and the latter half of § 211a) arguably recognizes the Secretary's inherent authority to deny and

revoke erroneous passport issuances.

      The Supreme Court has also acknowledged this same authority. The Court has stated:

> The Passport Act does not in so many words confer upon the Secretary a power to revoke
> a passport. Nor, for that matter, does it expressly authorize denials of passport
> applications. Neither, however, does any statute expressly limit those powers. It is
> beyond dispute that the Secretary has the power to deny a passport for reasons not
> specified in the statutes . . . [I]f the Secretary may deny a passport application for a
> certain reason, he may revoke a passport on the same ground.

*Haig v. Agee*, 453 U.S. 280, 290-91 (1981). The Court has also noted that this "has been the

Secretary's consistent construction" of his authority. *Id.* at 291 n.20. The Court went on to

explain that "[p]articularly in light of the 'broad rule-making authority granted in the [Passport

Act of 1926],' a consistent administrative construction of that statute must be followed by the

courts 'unless there are compelling indications that it is wrong.'" *Id.* at 291 (quoting *E.I. du Pont*

*de Nemours & Co. v. Collins*, 432 U.S. 46, 55 (1977)). Among other grounds, the Supreme

Court has acknowledged the Secretary of State's authority to refuse a passport where "the

applicant was participating in illegal conduct, trying to escape the toils of the law, promoting

passport frauds, or otherwise engaging in conduct which would violate the laws of the United

States." *Kent v. Dulles*, 357 U.S. 116, 127 (1958).

16

Notwithstanding the Department's well-established authority to revoke passports, Congress adopted a provision in the Immigration and Nationality Technical Corrections Act of 1994 that expressly grants the Department authority to revoke passports on certain grounds. Section 1504(a) provides, in relevant part:

> The Secretary of State is authorized to cancel any United States passport or Consular Report of Birth, or certified copy thereof, if it appears that such document was illegally, fraudulently, or erroneously obtained from, or was created through illegality or fraud practiced upon, the Secretary.

This grant of authority is somewhat unusual, given that, as the Supreme Court has recognized, the Secretary's authority to deny or revoke passports is well-established in certain circumstances that overlap with the statute.

It appears that Congress enacted § 1504(a), at least in part, in response to the 1990 Ninth Circuit case, *Magnuson v. Baker*, 911 F.2d 330 (9th Cir. 1990), which sought to limit the Department's historic revocation authority. The *Magnuson* court held that "assuming the Secretary can revoke a passport, he can do so only if he . . . seeks revocation on the basis of fraud, misrepresentation, or some other exceptional ground." *Id.* at 334. The Ninth Circuit stated that the Secretary is prohibited "from revoking a passport solely on the basis of 'second thoughts,'" *id.* at 335.

Section 1504(a) superseded this holding in *Magnuson* by providing the Secretary authority to revoke a passport that is "erroneously obtained" from the Department to overrule the court's holding that the Secretary could not revoke on the basis of "second thoughts" about the initial issuance. In addition, Congress likely borrowed the terms "illegally" and "fraudulently" from 8 U.S.C. §§ 1451 and 1453. In doing so, Congress sanctioned the revocation of a passport under similar circumstances as those that would warrant revocation of a certificate of naturalization or citizenship under these statutes.

17

In light of the above, the Department's decision to revoke Plaintiff Carmichael's passport pursuant to 22 C.F.R. § 51.62(a)(2) was in keeping with statutory authority and precedent. Moreover, because Mr. Carmichael did not provide his social security number on his passport application, nor did he provide a declaration stating that he did not have one, his passport was issued in error. *See* Am. Compl. ¶ 33 (describing a Department letter informing Mr. Carmichael that, pursuant to 22 U.S.C. § 2714(a) and 22 C.F.R. § 51.60(f), a passport should not be issued unless the applicant provides his or her social security number, or an appropriate declaration indicating that the applicant was not issued a social security number).  In short, the Department's revocation action was thus in keeping with its regulatory and statutory authority.

### III.     The State Department's Regulations Regarding Passport Applications Are Consistent with Constitutional Requirements.

In their fourth and fifth causes of action, Plaintiffs allege that Department regulations (*i.e.*, 22 C.F.R. §§ 51.60, 51.70) violate their rights under the First and Fifth Amendments of the U.S. Constitution.  *See* Am. Compl. ¶¶ 123-28.  First, to the extent that Plaintiffs are arguing 22 C.F.R. § 51.60 violates their freedom to practice their religion in violation of the Free Exercise Clause of the First Amendment, those claims are addressed above with respect to Plaintiffs' first two causes of action.

Moreover, in enforcing §§ 51.60 & 51.70, the Department has also provided the due process required by the Fifth Amendment.  Due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To determine what due process requires in a given situation, the Supreme Court requires balancing the Government interest, the private interest at stake, and the risk of an erroneous deprivation of those private interests.  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Supreme Court's case in *Haig v. Agee*, 453 U.S. 280 (1981), is instructive here.  In *Haig*, an ex-CIA agent, Philip Agee, alleged that his Fifth Amendment procedural due process rights had been violated when the Department revoked his passport without providing him a pre-revocation hearing.  The Department provided Agee with a revocation notice setting forth the basis for the revocation action and informing him of his right to a prompt post-revocation hearing.  *Id.* at 286.  On that record, the Court held that "[t]he Constitution's due process guarantees call for no more than what has been accorded here: a statement of reasons and an opportunity for a prompt post revocation hearing."  *Id.* at 310.  Accordingly, *Haig* squarely addresses Plaintiffs' argument that their due process rights were violated when Defendants revoked Mr. Carmichael's passport without affording him a pre-deprivation hearing.  *Haig* holds that the Department is not required to provide a hearing prior to revocation of a passport.

Further, as discussed above, Department regulations authorize the revocation of a passport when the agency determines the passport was issued in error.  *See* 22 C.F.R. § 51.62(a).  Therefore, Defendants acted properly in revoking Mr. Carmichael's passport upon determining that Plaintiff had never provided his social security number.  The Department provided written notice to Mr. Carmichael that his passport was revoked on June 20, 2019.  *See* Rolbin Decl. ¶ 9.  The notification "set forth the specific reasons for the . . . revocation," 22 C.F.R. § 51.65(b), by stating that Mr. Carmichael failed to provide his social security number or an adequate statement explaining why he could not provide a social security number.  Further, while Defendants note that an applicant who refuses to provide his or her social security number on a passport application may have that application denied without the opportunity for a hearing, the Department unquestionably provided Plaintiff Lewis and Pakosz the opportunity to submit the

requested information or submit a declaration that they had never been issued one.  *See* Rolbin

Decl. ¶¶ 6, 12-13, 18-19, and 23; *see* Am. Compl. ¶¶ 46, 65.

Like in *Haig*, Defendants provided Plaintiffs with a statement of reasons specifically

listing why their passport applications had been denied and, in the case of Mr. Carmichael, had

been revoked.  Mr. Carmichael was also informed of his opportunity to request a hearing, which

Mr. Carmichael failed to avail himself of.  *See* Rolbin Decl. ¶ 9.  Therefore, consistent with the

Court's holding in *Haig*, "[t]he Constitution's due process guarantees call for no more than what

has been accorded here[.]"  *Haig*, 453 U.S. at 310.

Finally, to the extent Plaintiffs allege in their eighth cause of action that Defendants

failed to assign an appeal officer and disclose the names of the individuals involved in the

passport application denials, Plaintiffs' constitutional claims fare no better.  First, as noted

above, Mr. Carmichael failed to avail himself of the right to a hearing regarding the revocation of

his passport; thus, the Department could not assign an officer to oversee the hearing.  Moreover,

Plaintiffs' naming of specific Department employees in their complaint belies the argument that

they was unable to reach anyone with whom they could speak about their case.  *See, e.g.*, Am.

Compl. ¶¶ 25-26.  Finally, Plaintiffs cite no law or reason that would require the Department to

disclose the names of individual federal employees involved in reviewing passport revocations or

applications.

## IV.     Plaintiffs Have Failed to State a Claim Under The Privacy Act.

Plaintiffs' seventh cause of action alleges a violation of the Privacy Act, 5 U.S.C. § 552a.

However, Plaintiffs' do not allege that Defendants "disclosed" a record without their prior

consent in violation of § 552a(b), or denied them access to any records in violation of § 552a(d).

Nor do Plaintiffs' allege a violation of § 552a(e)(2), which "requires federal agencies that

maintain systems of records to 'collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs.'" *Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 8 (D.D.C. 2005) (quoting § 552a(e)(2)).  Accordingly, Plaintiffs' have failed to state a claim under the Privacy Act.

To the extent that Plaintiffs are attempting to allege that the Department is in violation of the Paperwork Reduction Act ("PRA") with respect to the DS-82's collection of social security number information, this claim should be dismissed.  First, the PRA does not provide for a private cause of action.  *See United to Protect Democracy v. Presidential Advisory Comm'n on Election Integrity*, 288 F. Supp. 3d 99, 110 (D.D.C. 2017).  Further, on February 14, 2017, the Office of Management and Budget ("OMB") approved the version of the DS-82 that Plaintiff executed.  Pursuant to 44 U.S.C. § 3507(d)(6), "[t]he decision by the Director [of OMB] to approve or not act upon a collection of information contained in an agency rule shall not be subject to judicial review."

OMB's Office of Information and Regulatory Affairs ("OIRA") submitted a final supporting statement, complete with the OMB Control number (1405-0020).  This statement makes clear that "passport applicants are required to submit their Social Security numbers with the passport application and failure to provide a Social Security number may result in the denial of an application (consistent with 22 U.S.C. 2714a(f)) and may subject the applicant to a penalty enforced by the Internal Revenue Service.  (26 U.S.C. 6039E)."  This statement clearly indicates that requiring a Social Security number was contemplated and approved by the Director of OMB.

**V.      Plaintiffs Have Failed To State a Claim Under Other Federal Laws.**

    *a.  Executive Order 13789*

Plaintiffs' third cause of action alleges that the Department violated the provisions of

Executive Order 13798 titled "Federal Law Protections for Religious Liberties."  However, the

Executive Order specifically states that it "is not intended to, and does not, create any right or

benefit, substantive or procedural, enforceable at law or in equity by any party against the United

States, its departments, agencies, or entities, its officers, employees, or agents, or any other

person."  Exec. Order No. 13798, 82 Fed. Reg. 21675 (May 9, 2017).  The order also states that

it is to be implemented consistently with existing applicable laws, and should not impair the

authority granted by law to an executive agency.  *See id.*

    Courts in this Circuit have indicated that plaintiffs generally may seek judicial review of

an executive order pursuant to the APA.  *See Daingerfield Island Protective Soc. v. Babbitt*, 823

F. Supp. 950, 960 (D.C. Cir. 1993); *Hadnott v. Laird*, 463 F.2d 304, 309, n. 13 (D.C. Cir. 1972)

(citing *Service v. Dulles*, 354 U.S. 363 (1957)).  For substantially the same reasons expressed

above with respect to Plaintiffs' RFRA claims, Defendants' decisions regarding Plaintiffs'

passport applications, including the revocation of Mr. Carmichael's passport, were fully

consistent with the law.

    *b.  42 U.S.C. § 408(a)(8)*

    In Plaintiffs' sixth cause of action, Plaintiffs allege that the Department violated 42

U.S.C. § 408(a)(8), which provides that anyone who "discloses, uses, or compels the disclosure

of the social security number of any person in violation of the laws of the United States" is guilty

of a felony.  42 U.S.C. § 408(a).  As established above, the Department acted pursuant to its

well-established legal authority.  *See* 8 U.S.C. § 1504(a) (providing that the Secretary of State is

"authorized to cancel any United States passport . . . if it appears that such a document was illegally, fraudulently, or erroneously obtained from, or was created through illegality or fraud practiced upon the Secretary").  Moreover, Plaintiffs do not have any property interest in their passports, as a passport "at all times remains the property of the United States and must be returned to the U.S. Government upon demand."  22 C.F.R. § 51.7(a).  Because their passports are the property of the government, Plaintiffs cannot claim damages for any "destruction" of these documents.  *See* Am. Compl. ¶ 130.

Plaintiffs' liberty interest in travel is also limited.  Unlike interstate travel, the right to international travel is not "virtually unqualified."  *See Haig*, 453 U.S. at 307.  There is a constitutional right to international travel, but only "as an aspect of the liberty protected by the Due Process Clause of the Fifth Amendment and, as such, it can be regulated within the bounds of due process."  *Eunique v. Powell*, 302 F.3d 971, 973 (9th Cir. 2002).  Here, as discussed above, the State Department has provided Plaintiff with all due process required under the U.S. Constitution.

    c.   *18 U.S.C. § 241*

In their ninth (and final) cause of action, Plaintiffs allege that Defendants have violated 18 U.S.C. § 241 by conspiring to deny their passports and infringe on their ability to exercise their right to freely practice their religion.  However, "[t]he Supreme Court has 'rarely implied a private right of action under a criminal statute,'" and "a 'bare criminal statute,' with no other statutory basis for inferring that a civil cause of action exists, is insufficient to imply Congress intended to create a concomitant civil remedy."  *Lee v. United States Agency for Int'l Dev.*, 859 F.3d 74, 77 (D.C. Cir. 2017) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979); *Cort v. Ash*, 422 U.S. 66, 79-80 (1975)).  Indeed, Title 18 of the U.S. Code provides "no private right

of action[.]" *Crosby v. Catret*, 308 Fed. App'x. 453 (D.C. Cir. 2009) (per curiam); *see Leonard v. George Wash. Univ. Hosp.*, 273 F. Supp. 3d 247, 256-57 (D.D.C. 2017).  Accordingly, Plaintiffs' civil claims regarding alleged violations of the criminal code must fail.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Alternatively, Defendants respectfully request the Court to issue summary judgment in their favor.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar No. 472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

/s/   *Christopher C. Hair*
CHRISTOPHER C. HAIR, PA Bar No. 306656
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2541
Christopher.Hair@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of January, 2020, I caused the foregoing motion and supporting materials to be served on *pro se* Plaintiffs David Carmichael, William Mitchell Pakosz, and Lawrence Donald Lewis, via U.S. Mail with pre-paid postage, addressed as follows:

David Alan Carmichael
1748 Old Buckroe Road
Hampton, VA 23664

William Mitchell Pakosz
P.O. Box 25
Matteson, IL 60443

Lawrence Donald Lewis
966 Bourbon Lane
Nordman, ID 83848

*Christopher C. Hair*
CHRISTOPHER C. HAIR
Assistant U.S. Attorney