# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| David Alan Carmichael<br>*et al.* | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )     Civil Action No.  1:19-CV-2316-RC |
| | ) |
| Michael Richard Pompeo | ) |
| *In his Official Capacity as Secretary of State*<br>*et al.* | ) |
| | ) |
| *Defendants* | ) |

**Plaintiffs' Combined Memorandum In Support of:**

**Response to Defendants' Motions to Dismiss Rule 12(b)(1) and (6),
or In The Alternative For Summary Judgment under Rule 56;**

**and**

**Plaintiffs Cross-Motion for Declaratory Partial Summary Judgment
And Injunction on The First Cause of Action**



RECEIVED
Mail Room

FEB 2 4 2020

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| David Alan Carmichael | ) | |
| *et al.* | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:19-CV-2316-RC |
| | ) | |
| Michael Richard Pompeo | ) | |
| *In his Official Capacity as Secretary of State* | ) | |
| *et al.* | ) | |
| | ) | |
| *Defendants* | ) | |

**Plaintiffs' Combined Memorandum In Support of:**

**Response to Defendants' Motions to Dismiss Rule 12(b)(1) and (6),
or In The Alternative For Summary Judgment under Rule 56;**

**and**

**Plaintiffs Cross-Motion for Declaratory Partial Summary Judgment
And Injunction on The First Cause of Action**



## TABLE OF CONTENTS

Table of contents...................................................................................................i

Table of Authorities.........................................................................................ii-vi

I.  Defendants' Motions For Dismissal On Rule 12(a)(1) and (12(a)(6)...................1
    Fail As A Matter of Fact And Law On The First Cause of Action

II.  Defendants' Motion For Summary Judgment, Rule 56, Is Not Allowed ...........4
     Due To Genuine Dispute of Facts Material To Their Motion

     A.   Plaintiffs' Statement Of Disputed Facts Material To the Defendants' Motion ...........5

III.  Defendants' Motion For Summary Judgment, Rule 56, Fails ...........................7
      On The First Cause of Action As A Matter of Law

IV.  Plaintiffs Are Entitled To Declaratory Partial Summary Judgment .....................8
     On The First Cause of Action

     A.   Defendants Apply The Wrong Test And Are Mandated By Passport Law................8
          To Not Deny Nor Revoke Plaintiffs' Passports For Protection of Religion

     B.   Defendants Applied The Wrong Standard To Support Denial and Revocation ........13
          Of Passports According To The Purpose of The Law of Passports

     C.   Defendant Erroneously Applies A Mandate To The Permissive Statute..................20

     D.   Defendant Failed To Follow The Passport Statutes Regarding.................................22
          Protection For Religion and Good Cause Exception

     E.   Defendant Failed To Follow The Rules The President Designated and....................24
          Prescribed, in Violation of 22 U.S.C. §211a

     F.   An Analogous Passport Case, With Judgment For The Plaintiff, ...........................29
          Parallels The Defendants' Unlawful Conduct In This Case

V.  The Defendant Retains The Power And The Duty To Reopen The Plaintiffs' ................30
    Passport Application Files For Issuance and Cancelation of Revocation

VI.  Plaintiffs' Cross Motion For Declaratory Judgment Is Supported By..............................30
     Material Facts For Which There Is No Genuine Issue of Dispute

VII.  Plaintiffs Are Entitled To Declaration, Injunction or Other Relief ...................................39
      as Partial Summary Judgment For Their First Cause of Action

VIII.  Plaintiffs' Move For Declaration.......................................................................................40

## TABLE OF AUTHORITIES

**Revealed Law**

*Holy Bible*
Acts, Chapter 5......................................................................................16
Daniel, Chapter 1 ...............................................................................12
Exodus, Chapter 20.................................................................10, 16, 19
James, Chapter 4.................................................................................12
Matthew, Chapter 28...........................................................................13
Revelation, Chapter 13...................................................................10, 11
Revelation, Chapter 14.........................................................................11
Revelation, Chapter 15.........................................................................11
Romans, Chapter 13.............................................................................16

**Natural Law, Founding Law, Common Law, Reserved Rights and Duties**

*Commentaries on the Laws of England* ............................................13, 16
William Blackstone, Book 1, Chapter 1
Absolute Rights of Individuals (1753)
*Madison's Memorial and Remonstrance* ...........................................9, 10
James Madison, to the General Assembly of Virginia (1785)
*Declaration of Independence* ..............................................................16
United States, Continental Congress (1776)

**United States Constitution**

First Amendment ................................................................. 1, 2, 9, 10, *passim*

**United States Statutes At Large**

Public Law 102-138................................................................................9, 17
*Foreign Relations Authorization Act*, Fiscal Years 1992 and 1993
Public Law 104-134................................................................................35
*Debt Collection Improvement Act*

**United States Code**

5 U.S.C. § 552a ...................................................................................3, 39
The Privacy Act
5 U.S.C. § 701.....................................................................................3, 40
Judicial Review
5 U.S.C. § 702.....................................................................................3, 39
Applications; Definitions
5 U.S.C. § 703.....................................................................................3, 39

Right of Review
5 U.S.C. § 704.................................................................................3, 39
Form and Venue of Proceeding
5 U.S.C. § 705.................................................................................3, 39
Relief Pending Review
5 U.S.C. § 706.................................................................................3, 39
Scope of Review
22 U.S.C. § 211a................................................. 3, 24, 25, 28, *passim*
Authority to grant, issue and verify passports
22 U.S.C. § 212b.................................................................................24
Persons Entitled To Passport
22 U.S.C. § 2714a.......................................................3, 37, 39, 41
Revocation or denial of passport in case of certain unpaid taxes
22 U.S.C. § 2714a(e)................................................16, 21, 22
Authority To Deny of Revoke Passport
22 U.S.C. § 2714a(f) ............................... 7, 8, 20, 21, *passim*
Revocation or denial of passport in case of individual
without social security account number
22 U.S.C. § 2721 ............................................. 1, 3, 7, 8, *passim*
Impermissible Basis For Denial of Passports
28 U.S.C. § 1331.................................................................................3, 39
Federal Question
28 U.S.C. § 1346.................................................................................3, 39
United States as Defendant
28 U.S.C. § 1361.................................................................................3, 39
Action To Compel An Officer of The United States To Perform His Duty
28 U.S.C. § 2201.................................................................3, 39, 40
Creation of Remedy
28 U.S.C. § 2202.................................................................................3, 39
Further Relief
26 U.S.C. § 6039E ..............................................................................34
Information Concerning Resident Status
42 U.S.C. § 652(k).............................................................................24
Denial of Passports For Non-Payment of Child Support
42 U.S.C. § 2000bb-1 ..............................................2, 31, 32, 33
Free Exercise of Religion Protected
44 U.S.C. § 3512.................................................................................3
Public Protection

**Code of Federal Regulations**

22 C.F.R. § 51.60................................................23, 24, 37, 38
Denial and Restriction of Passports

22 C.F.R. § 51.62.................................................................................37
Revocation or limitation of passports and cancellation of

Consular Reports of Birth Abroad
22 C.F.R. § 51.65.............................................................................3, 30, 40
Notification of denial, revocation or cancellation of passports
and Consular Reports of Birth Abroad
22 C.F.R. § 51.66.............................................................................37
Surrender of passport and/or Consular Report of Birth Abroad
22 C.F.R. § 51.70.............................................................................30, 38, 39
Request for hearing to review certain denials and revocations
22 C.F.R. § 51.70-51.74....................................................................38
Procedures for Review of Certain Denials and Revocations
22 C.F.R. § 22.1...............................................................................35
Schedule of Fees
22 C.F.R. § 51.50-56.........................................................................35
Fees
22 C.F.R. § (part 34).........................................................................35
Debt Collection
31 C.F.R. § (parts 900-904)...............................................................35
Federal Claims Collection Standards

## Executive Orders

**9397:** *Numbering System For Federal Accounts Relation To Individual Persons*.......18
**United States, Franklin Delano Roosevelt** (1943)
13478: *Amendments To Executive Order 9397 Relating To Federal Agency Use*.........18
*Of Social Security Numbers*
United States, George W. Bush (November 18, 2008)

## United States Supreme Court Decisions

*Anderson v. Liberty Lobby, Inc.*.............................................................4, 5
477 U.S. 242, 247 (1986)
*Bell Atl. Corp. v. Twombly*...................................................................4
550 U.S. 544, 555 (2007)
***Bowen v. Roy***.................................................................................8, 14, 15, 41
476 U.S. 693 (1986)
*Celotex Corp. v. Catrett*......................................................................5
477 U.S. 317, 325 (1986)
*Creek Nation v. United States*..............................................................21
318 U.S. 629
*Farmers & M. Bank v. Federal Reserve Bank*.......................................21
262 U.S. 649
*Hobbie v. Unemployment Appeals Comm'n of Florida*............................15
480 U.S. 136 (1987)
*Kokkonen v. Guardian Life Ins. Co. of Am.*...........................................3
511 U.S. 375, 377 (1994)
*Linda R.S. v. Richard D.*......................................................................1
410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)

*Sherbert v. Verner* ........................................................................................7, 14, 15, 41
    474 U.S. 398 (1963)
***Thomas v. Review Bd. Of the Indiana Employment Sec. Div.*** ...............................7, 15, 41
    450 U.S. 707 (1981)
*United States ex rel. Siegel v. Thoman* .................................................................21
    156 U.S. 353
*United States v. Lee* ..................................................................................................7, 41
    455 U. S., 252, 264 (1982)
*Warth v. Seldin,* ...........................................................................................................1
    422 U.S. 490, 514, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)
*Williams v. Fears* .........................................................................................................13
    179 U.S. 270 (1900), 21 S. Ct. 128, 45 L.Ed. 186

**United States Courts of Appeals Decisions**

***David Alan Carmichael v. United States*** .................................................................20
    298 F.3d 1367, (Fed. Cir. 2002)
*H.F. Allen Orchards v. United States* .......................................................................5
    749 F.2d 1571, 1574 (Fed. Cir. 1984)
*Jay v. Sec'y of DHHS* .................................................................................................4
    988 F.2d 979, 982 (Fed. Cir. 1993)
***Leahy v. District of Columbia*** ..................................................................................14, 15
    833 F.2d 1046 (D.C. Cir. 1987)
*Litton Indus. Prods., Inc. v. Solid State Sys. Corp.* ...................................................5
    755 F.2d 158, 163 (Fed. Cir. 1985)
*Mingus Constructors, Inc. v. United States* ...............................................................8
    812 F.2d 1387, 1390 (Fed. Cir. 1987)
*Prineville Sawmill Co., Inc. v. United States* .............................................................8
    859 F.2d 905, 911 (Fed. Cir. 1988)
***Shachtman v. Dulles*** .................................................................................................13
    D.C. Cir., 1955, 225 F.2d 938
*Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.* ...................................................5
    833 F.2d 1560, 1563 (Fed. Cir. 1987)
*Trudeau v. FTC* ............................................................................................................4
    456 F.3d 178, 193 (D.C. Cir. 2006)
***Zivotofsky ex rel. Ari Z. v. Secretary of State*** .........................................................1
    444 F.3d 614, 617-619 (2006)

**United States District Court, District of Washington D.C.**

***Bauer v. Acheson*** .......................................................................................................13
    106 F. Supp. 445, Dist. Ct., D.C. (1952)
***Boudin v. Dulles*** ........................................................................................................13
    136 F. Supp. 218, 220 (1955)
*Curran v. Holder* .........................................................................................................3
    626 F. Supp. 2d 30, 32 (D.D.C. 2009)
*Grand Lodge of Fraternal Order of Police v. Ashcroft* ..............................................3

185 F. Sup. 2d 9, 13-14 (D.D.C. 2001)
*Hollingsworth v. Duff*.......................................................................................................3
444 F. Supp. 2d 61, 63 (D.D.C. 2006)
*John C. Winston Co. v. Vaughan* ...................................................................................21
11 F. Supp 954 (D.D.C.); affd (Ct. App., D.C.) 83 F2d 370
*United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer* ..............................3
778 F. Supp. 2d 37, 43 (D.D.C. 2009)

### United States District Court, Other Districts

***Stevens v. Berger,*** 428 F.Supp. 896 (E.D. N.Y. 1977).......................................................14

### United States Court of Federal Claims & Claims Court

*A Olympic Forwarder, Inc. v. United States*.........................................................................8
33 Fed. Cl. 514, 518 (1995)
*Corman v. United States* .......................................................................................................8
26 Cl. Ct. 1011, 1014 (1992)
***David Alan Carmichael v. United States***...............................................................4, 5, 8
66 Fed. Cl 115, (Ct. Fed. Cl. Nov 2005)

### Federal Court Rules

12(b)(1) ...................................................................................................1, 3, 4, 6
12(b)(6) ...................................................................................................1, 3, 4, 6
56      ............................................................................................................1, 4, 7
Federal Civil Procedure, Rule 12, Defenses and Objections ..............................................2
§108, §109, pp. 652, 653, keys 1835, 1829§

### State Cases

*Crane v. Los Angeles County*.............................................................................................21
17 Cal App 2d 360; 62 P2d 189
*Dalzell v. Kane* ..................................................................................................................21
321 Pa. 120; 183 A 782; 104 ALR 619
*Miller v. Lakewood Housing Co.* .......................................................................................21
125 Ohio St. 152; 180 N.E. 700; 81 ALR 1239
*North Carolina State Art Soc. V. Bridges* .........................................................................21
235 N.C. 125, 69 S.E.2d 1

**Plaintiffs' Combined Memorandum In Support of:**
**Response to Defendants' Motions to Dismiss Rule 12(b)(1) and (6), or In The Alternative**
**For Summary Judgment under Rule 56;**
**and Plaintiffs Cross-Motion for Declaratory Partial Summary Judgment and Injunction**
**On The First Cause of Action**

I.   **Defendants' Motions For Dismissal On Rule 12(b)(1) and 12(b)(6) Fail As A Matter of Fact And Law On First Cause of Action**

1.   We forthrightly plead in our complaint in the First Cause of Action (Complaint para. 115):

> "Defendant unlawfully denied, revoked, restricted and otherwise limited (our) passport renewal applications or cancelled (our) passport or its application because of (our) speech, activity, belief, affiliation, or membership, within or outside the United States which is protected by the first amendment to the Constitution of the United States, in violation of 22 USC §2721."

2.   We each claimed sufficient facts, rather than mere conclusions, of a case of actual controversy within the court's jurisdiction, that our passport applications were unlawfully denied or retroactively canceled because of our belief and activities protected by the first amendment.  It is a distinct injury, a specific invasion of right suffered by us.

> The Supreme Court has recognized that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). Or stated differently, "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin,* 422 U.S. 490, 514, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see Lujan,* 504 U.S. at 578, 112 S.Ct. 2130." *Zivotofsky ex rel. Ari Z. v. Secretary of State*, 444 F.3d 614, 617-619 (2006)

3.   The statute 22 USC §2721 does not define speech, activity, belief, affiliation, or membership.  The plain meaning of the words needs to be applied.  The words do not particularly quote the language of the first amendment, but by its broadly-applicable terms, the statute invokes the elements of the entire amendment, ie, speech, press, redress of grievances,

peaceful assembly or the beliefs or activities that are elements alluding to the protections for religion. It is a statute that is obviously intended to provide practical application of the <u>self executing first amendment</u> to the constitution of the United States of America. Being a statute intended to protect fundamental rights, <u>it is to be liberally construed</u>.

4.    According to the first amendment, Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. The Secretary of State cannot therefore make such an establishment of prohibitive law; or make a regulation with the force of law; or use power under the color of law, regulation or policy subordinate to Congress; that imposes upon a man and his religion (us), or on people and their religion generally.

5.    We provided declaration by the complaint, petitions, and the amended complaint, as affidavit or under the penalty of perjury, that we are mandated by religion to not identify with a SSN. That of our not identifying with a SSN was a matter of religion is not contested by the Defendant and is supported by Defendants' witnesses' declarations. There is sufficient true factual matter stated in the claim that is plausible on its face that allows the court to draw reasonable inference that defendant is liable for misconduct alleged. All elements necessary for recovery are available under the legal theory claimed. *See* Federal Civil Procedure, Rule 12, Defenses and Objections, §108, §109, pp. 652, 653, keys 1835, 1829

6.    Religion, both belief and practice, is particularly cited in the first amendment. As an ancillary arguable point which is probably not necessary to be brought to bear here, our freedom to declare what we believe (belief) and act upon (activity) to be true, when put into writing, was arbitrarily restricted (speech) and there was reprisal against Plaintiff Carmichael's petition for

redress for the sake of Plaintiff Pakosz.

7.   Statutes, regulations and orders cited in the complaint, and those evoked by the motion of

the Defendant, are sufficient to give us access to the U.S. District Court (jurisdiction) for redress

and remedy on the First Cause of Action.  Among others, there are:

a.   28 U.S.C. § 1331, Federal Question
b.   28 U.S.C. § 1346, United States as Defendant
c.   28 U.S.C. § 1361, Action to compel an officer of the United States to perform his duty
d.   28 U.S.C. § 2201, Declaratory Judgments – Creation of Remedy
e.   28 U.S.C. § 2202, Declaratory Judgments – Further Relief
f.   5 U.S.C. § 552a, Records Maintained On Individuals
g.   5 U.S.C. § 701, Application - Definitions
h.   5 U.S.C. § 702, Right of Review
i.   5 U.S.C. § 703, Form and Venue of Proceeding
j.   5 U.S.C. § 704, Actions Reviewable
k.   5 U.S.C. § 705, Relief Pending Review
l.   5 U.S.C. § 706, Scope of Review
m.   22 U.S.C. § 211a, Authority to grant, issue, and verify passports
n.   22 U.S.C. § 2714a, Revocation or denial of passport in case of certain unpaid taxes
o.   22 U.S.C. § 2721, Impermissible bases for the denial of passports
p.   Executive Order 13798, Promoting Free Speech and Religious Liberty
q.   22 C.F.R §51.65, Notification of denial, revocation or cancel-ation of passports and
Consular Reports of Birth Abroad

8.   We have succeeded in stating a claim upon which the court has subject-matter

jurisdiction in the first instance, for which the Court can grant relief.  Curran v. Holder, 626 F.

Supp. 2d 30, 32 (D.D.C. 2009)  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994)  The Plaintiffs established by the preponderance of the evidence that the Court possesses

jurisdiction. See, e.g., *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778

F. Supp. 2d 37, 43 (D.D.C. 2011) (citing Hollingsworth v. Duff, 444 F. Supp. 2d 61, 63 (D.D.C.

2006)).  The plaintiff's factual allegations in the complaint bear up under close scrutiny in

resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'"

quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C.

2001)  The Plaintiff presented factual allegations that are sufficiently detailed to survive the

Defendants' Rule 12(b)(6) motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The

Plaintiffs stated claims that are plausible on their face.

9.     The District Court is required to deem the factual allegations in the complaint as true and

consider them in the light most favorable to the non-moving Plaintiff when evaluating a motion

to dismiss under Rule 12(b)(6). *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). The

complaint pleads facts that show the Defendants' are not only liable, they are violating laws

critically important to the public welfare and public policy, and to the most important values for

which government is instituted.  Those violations of law are injuring the Plaintiffs, and threaten

future injury to all of their religious community and class.  There are laws that provide for relief

and remedy only through the mechanism of the U.S. District Court, Washington, D.C.

10.     The Defendants' motions to dismiss on Rule 12(b)(1) and 12(b)(6) fail as a matter of

law and facts supporting the merits of law.  Therefore, the Defendants' motion for dismissal on

Rule 12(b)(1) and 12(b)(6) should be denied.

## II.  Defendants' Motion For Summary Judgment, Rule 56, Is Not Allowed Due To Genuine Dispute of Facts Material To Their Motion

11.     Summary Judgment pursuant to Rule 56 on the First Cause of Action on the Defendants'

motion is not allowable since there are material facts in the complaint that the Defendant

disputes; there are material facts proposed by the Defendant that the Plaintiffs dispute; and those

material facts are critical to the success of the Defendants' motion as it relates to the First Cause

of Action.  "Summary judgment is appropriate when there are no genuine issues of material

fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Carmichael*

*v. United States,* 66 Fed. Cl. 115, 120 (2005), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Sec'y of DHHS,* 998 F.2d 979, 982

(Fed.Cir. 1993)  The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Carmichael* citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)  "A fact is material if it might significantly affect the outcome of the suit under the governing law." *Carmichael* citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.  "If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists." *Carmichael* citing *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1563 (Fed.Cir.1987)  "Alternatively, if the moving party can show there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence." *Carmichael* citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. "The court must resolve any doubts about factual issues in favor of the party opposing summary judgment." *Carmichael* citing *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984).

## A.  Plaintiffs' Statement of Disputed Facts Material To The Defendants' Motion

12.    The Defendant's through their memorandum in support for their motion, and in their associated Declarations, dispute the following important facts material to support their motion for Summary Judgment.  Plaintiffs contended there exists a genuine issue necessary to be litigated, <u>Plaintiffs' Statement Of Disputed Facts</u> (hereinafter "PSDF"),:

    a.    PSDF, para 3.a., g., h. and 5.a., d., e. f., g., i., j., m., n., o., p., q. are facts of the complaint material to the Defendants' motion in that the Defendants' deny that the Secretary has previously granted the Plaintiffs' religious accommodation when they obtained passports.

If they have provided an accommodation on the basis of religion before, it argues against their compelling interest argument.

b.    PSDF, para 3.b., h., i., j. l., m., and 5.f., g., i., j., m., p., q. are facts of the complaint material to the Defendants' motion in that it reveals the permissive language in contrast to Defendants' claim of a mandate.

c.    PSDF, paras 3.c., 3.f., 3h., i., j., l., m. and 5.a., f., g., i., j., k., m., n., o., p., q. are facts of the complaint material to the Defendants' motion in it reveals a denial of due process.

d.    PSDF, para 3.d., g., h., i., j., m. and 5. f., g., i., j., m., p., q. are facts of the complaint material to the Defendants' motion in that it shows that the Defendants' limiting words on the secondary affidavit supplied by them does not conform to the purpose of the secondary query to find the true 'reason' for not providing a SSN.

e.    PSDF, para 3.e., h., i., j., l., m. and 5.f., j., p., q. are facts of the complaint material to the Defendants' motion in that there was a tax law statute already demanding the disclosure of a SSN, showing the current DS-11 and DS-82 forms are no more coercive than the previously approved passport forms.

f.    PSDF, para 3.k., g. are facts of the complaint material to the Defendants' motion in that it refutes the Defendants' motions for dismissal on Rule 12(b)(1) & (6).

g.    PSDF, paras. 3a. through .o., and 5.a. through q. are facts of the complaint material to the Defendants' motion in that it goes to the elements of the Defendants' violations of law, injury to the Plaintiffs, liability, damages due, penalties owed, costs due, and other relief or remedy.

h.    PSDF, paras 3.a-o 5.g., i., j., n., o., p., q. is a fact of the complaint material to the Defendants' motion in that there is not testament from the one who approved and issued the

passport, and because such an approval was lawful, it is not a "mistake" and might not have been a mistake in the mind of the authorizing officer.

      i.   PSDF, paras. 4.a. through 4.c. are material to the Plaintiffs' claims if substantiated through discovery.

      j.   PSDF, paras 6.a. through d. are matters reasonably expected to lead to discovery of material facts upon deposition of the Defendants' Declarants.

13.   Since the Defendants have disputed facts in the complaint that are material <u>to the success of the Defendants' motion</u> as it relates to the First Cause of Action, and the Plaintiff in good faith contended there exists genuine issues necessary to be litigated, Court must deny the Defendants' motion for Summary Judgment on the First Cause of Action pursuant to Rule 56.

## III.  Defendants' Motion For Summary Judgment On Rule 56 Fails On First Cause of Action As A Matter Of Law

14.   The Defendants' motion for Summary Judgment fails on the <u>undisputed</u> material facts and merits as a matter of law.  The Defendants' invoked 22 U.S.C. §2714a(f) as the authority that binds their hands, imposing a duty upon them to deny or revoke Plaintiff passports.  The uncontested facts that are material to the case show or prove that not only had the Defendant the duty to <u>not</u> deny or revoke the Plaintiffs' passports according to 22 U.S.C. §2721, the Defendant misapplied the language of their obligations and failed to apply the good cause exceptions under the subparagraphs of 22 U.S.C. §2714a(f).  Support is proffered in the following paragraphs.

> The "good cause" standard created a mechanism for individualized exemptions. If a state creates such a mechanism, its refusal to extend an exemption to an instance of religious hardship suggests a discriminatory intent. Thus, as was urged in Thomas, to consider a religiously motivated resignation to be "without good cause" tends to exhibit hostility, not neutrality, towards religion. See Brief for Petitioner 15, and Brief for American Jewish Congress as Amicus Curiae 11, in *Thomas v. Review Board of Indiana Employment Security Div.*, O. T. 1979, No. 79-952. See also *Sherbert*, supra, at 401-402, n. 4; *United States v. Lee*, 455 U. S., at 264, n. 3 (STEVENS, J., concurring in judgment) (Thomas and Sherbert may be viewed "as a protection against unequal treatment rather than a grant of

favored treatment for the members of the religious sect"). In those cases, therefore, it was appropriate to require the State to demonstrate a compelling reason for denying the requested exemption. *Bowen v. Roy*, 476 U.S. 796, 707-708 (1986)

## IV.   The Plaintiffs Are Entitled To Declaratory Judgment and Partial Summary Judgment on The First Cause of Action

15.   The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Carmichael v. United States*, 66 Fed. Cl. 115 (2005) citing *Prineville Sawmill Co., Inc. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987)). A cross-motion is a party's claim that it alone is entitled to summary judgment. *Carmichael* citing *A Olympic Forwarder, Inc. v. United States,* 33 Fed. Cl. 514, 518 (1995). It, therefore, does not follow that if one motion is rejected, the other is necessarily supported. *Ibid.* Rather, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *Id.* consideration. *Ibid.* (citing *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992)).

16.   Like in the case *Carmichael v. United States*, 66 Fed. Cl. 115 (2005), the Court should rule that Plaintiffs Lewis's and Pakosz's passports would have been approved, and Plaintiff Carmichael's passport would not have been revoked, had the Defendants applied 22 U.S.C. §2721.  Likewise, the Court should declare that the passports may not have been disapproved or revoked, if the Defendants applied the 'permissive' language of 22 U.S.C. §2714a(f) permissively rather than as a mandate.  As, well, the Court should declare that passports should not have been disapproved or revoked if the Defendants had applied the "humanitarian reasons" 'good cause' exception powers of §2714a(f)(1)(B).

### A. Defendants Apply The Wrong Test And Are Mandated By Passport Law To Not Deny Nor Revoke Plaintiffs' Passports As A Matter of Protection For Religion.

17.    The Defendants' apply the wrong test to evaluate the application of the statute prohibiting

denial of passports based upon applicants' beliefs and activities protected by the first

amendment.  This case is not like one where a purpose of government arguably conflicts with

fundamental law protections.  The case is about the government Defendants arbitrarily,

capriciously, in bad faith, *inter alia*, **refusing to apply the 'passport law'** statute that prohibits

them from denying a passport for the applicants' beliefs and activities (exercise) motivated and

obligated by religion protected by the first amendment.  The statute law at 22 USC §2721 is in

mandatory terms, "A passport may not be denied issuance, revoked, restricted, or otherwise

limited because of any ….. would be protected by the first amendment to the Constitution of the

United States (U.S. Stats. Pub. L. 102-138, title I, §113) (Emphasis added).  There is no

requirement for us to use an artifice of subjective words such as "substantial burden."  The

burden is not merely substantial, it is objective and absolute.  It is a duty of religion.  Religion is

defined as "the duty which we owe to the Creator":

> "1. Because we hold it for a fundamental and undeniable truth, "that Religion or the duty
> which we owe to our Creator and the manner of discharging it, can be directed only by
> reason and conviction, not by force or violence." [Virginia Declaration of Rights, art. 16]
> The Religion then of every man must be left to the conviction and conscience of every
> man; and it is the right of every man to exercise it as these may dictate.  This right is in its
> nature an unalienable right.  It is unalienable, because the opinions of men, depending
> only on the evidence contemplated by their own minds cannot follow the dictates of other
> men: It is unalienable also, because what is here a right towards men, is a duty towards
> the Creator.  It is the duty of every man to render to the Creator such homage and such
> only as he believes to be acceptable to him.  This duty is precedent, both in order of time
> and in degree of obligation, to the claims of Civil Society.  Before any man can be
> considered as a member of Civil Society, he must be considered as a subject of the
> Governour of the Universe: And if a member of Civil Society, who enters into any
> subordinate Association, **must always do it with a reservation of his duty to the
> General Authority**; much more must every man who becomes a member of any
> particular Civil Society, do it with a saving of his allegiance to the Universal Sovereign.
> We maintain therefore that in matters of Religion, no mans right is abridged by the
> institution of Civil Society and that Religion is wholly exempt from its cognizance.  True
> it is, that no other rule exists, by which any question which may divide a Society, can be
> ultimately determined, but the will of the majority; but it is also true that the majority

may trespass on the rights of the minority." *Madison's Memorial and Remonstrance*, James Madison, to the General Assembly of Virginia (1785), citing the Virginia Constitution, Bill of Rights, Article I, Free Exercise of Religion, No Establishment of Religion.

18.    Religion is protected by the first amendment. Religion is an absolute right. It is protected absolutely. According to American law, we Plaintiffs and our duty of religion are not subject to being penalized, coerced, lowered in our social status, or equal protection, among other things, for the conscious object of government actors to make us change or violate religion. Neither are we to be penalized or coerced, lowered in our social status, or equal protection, among other things, for the sublimely influenced sub-conscious object of government actors to make us change or violate religion.

19.    Our duty of religion to not identify with the number of the beast SSN according to revealed law is absolute. Eternal judgment for the Plaintiffs reward or damnation is at stake.

Exodus 20: [1]And God spake all these words, saying, [2]I am the Lord thy God, which have brought thee out of the land of Egypt, out of the house of bondage. [3]Thou shalt have no other gods before me. [4]Thou shalt not make unto thee any graven image, or any likeness of any thing that is in heaven above, or that is in the earth beneath, or that is in the water under the earth. [5]Thou shalt not bow down thyself to them, nor serve them: for I the Lord thy God am a jealous God, visiting the iniquity of the fathers upon the children unto the third and fourth generation of them that hate me; [6]And shewing mercy unto thousands of them that love me, and keep my commandments. The Revealed Law, Holy Bible (Herinafter "*Bible*"), the Book of Exodus, Chapter 20, Verses 1 through 6 (Exodus 20:1-6)

Revelation 13: [1]And I stood upon the sand of the sea, and saw a beast rise up out of the sea, having seven heads and ten horns, and upon his horns ten crowns, and upon his heads the name of blasphemy. [2]And the beast which I saw was like unto a leopard, and his feet were as the feet of a bear, and his mouth as the mouth of a lion: and the dragon gave him his power, and his seat, and great authority. [3]And I saw one of his heads as it were wounded to death; and his deadly wound was healed: and all the world wondered after the beast. [4]And they worshipped the dragon which gave power unto the beast: and they worshipped the beast, saying, Who is like unto the beast? who is able to make war with him? [5]And there was given unto him a mouth speaking great things and blasphemies; and power was given unto him to continue forty and two months. [6]And he opened his mouth in blasphemy against God, to blaspheme his name, and his tabernacle, and them that dwell in heaven. [7]And it was

given unto him to make war with the saints, and to overcome them: and power was given him over all kindreds, and tongues, and nations. [8]And all that dwell upon the earth shall worship him, whose names are not written in the book of life of the Lamb slain from the foundation of the world. [9]If any man have an ear, let him hear. [10]He that leadeth into captivity shall go into captivity: he that killeth with the sword must be killed with the sword. Here is the patience and the faith of the saints. [11]And I beheld another beast coming up out of the earth; and he had two horns like a lamb, and he spake as a dragon. [12]And he exerciseth all the power of the first beast before him, and causeth the earth and them which dwell therein to worship the first beast, whose deadly wound was healed. [13]And he doeth great wonders, so that he maketh fire come down from heaven on the earth in the sight of men, [14]And deceiveth them that dwell on the earth by the means of those miracles which he had power to do in the sight of the beast; saying to them that dwell on the earth, that they should make an image to the beast, which had the wound by a sword, and did live. [15]And he had power to give life unto the image of the beast, that the image of the beast should both speak, and cause that as many as would not worship the image of the beast should be killed. [16]And he causeth all, both small and great, rich and poor, free and bond, to receive a mark in their right hand, or in their foreheads: [17]And that no man might buy or sell, save he that had the mark, or the name of the beast, or the number of his name. [18]Here is wisdom. Let him that hath understanding count the number of the beast: for it is the number of a man; and his number is Six hundred threescore and six. *Bible*, Revelation 13

Revelation 14: [9]And the third angel followed them, saying with a loud voice, If any man worship the beast and his image, and receive his mark in his forehead, or in his hand, [10] The same shall drink of the wine of the wrath of God, which is poured out without mixture into the cup of his indignation; and he shall be tormented with fire and brimstone in the presence of the holy angels, and in the presence of the Lamb: [11]And the smoke of their torment ascendeth up for ever and ever: and they have no rest day nor night, who worship the beast and his image, and whosoever receiveth the mark of his name. [12]Here is the patience of the saints: here are they that keep the commandments of God, and the faith of Jesus. *Bible*, Revelation 14:9-12

Revelation 15: [1]And I saw another sign in heaven, great and marvellous, seven angels having the seven last plagues; for in them is filled up the wrath of God. [2]And I saw as it were a sea of glass mingled with fire: and them that had gotten the victory over the beast, and over his image, and over his mark, and over the number of his name, stand on the sea of glass, having the harps of God. [3]And they sing the song of Moses the servant of God, and the song of the Lamb, saying, Great and marvellous are thy works, Lord God Almighty; just and true are thy ways, thou King of saints. [4]Who shall not fear thee, O Lord, and glorify thy name? For thou only art holy: for all nations shall come and worship before thee; for thy judgments are made manifest. *Bible*, Revelation, Chapter 15:1-4

20.   In our case, for the decades since we have been enlightened to this duty of religion, we

have been faithful to abstain from identification with the damnable SSN notwithstanding the egregious persecutions we suffer. Two of us are age eligible (technically but not lawfully according to scripture) for SS benefits but we do not defile ourselves with the king's portion. *Bible*, Book of Daniel, Ch. 1   One of us was unlawfully discharged from the Navy for not identifying with a SSN. We are not like the man, cited by the Defendants', who readily identified with a SSN to receive subsistence benefits but pragmatically had selective religious scruples depending on an apparent cost:benefit equation with regard to the passport application. The particular persecution imposed by the government Defendant on us is intolerable. It has pushed us to this action as a duty of religion itself. "If a man knows the good he ought to do and does not do it, to him it is sin." *Ibid*, James, 4:17

21.    The standard that we demand is the protection that the government has a duty provide. If our absolute duty of religion to not identify with a SSN injures no other man; and if the government Defendants' demand to identify with a SSN is merely what they institute as a 'relative' duty that is not absolute; then the government has a duty to allow us to enjoy those elements of society in which we can participate so long as it does not go so far as to demand that we forsake absolute duties or absolute rights. That standard is supported by their obligation, 22 USC §2721 and well articulated in the historical law of the land.

> "(p. 123) By the absolute *rights* of individuals, we mean those which are so in their primary and strictest sense; such as would belong to their persons merely in a state of nature, and which every man is entitled to enjoy, **whether out of society or in it**. But with regard to the absolute *duties,* which man is bound (p. 124) to perform considered as a mere individual, it is not to be expected that any human municipal law should at all explain or enforce them. For the end and intent of such laws being only to regulate the behaviour of mankind, as they are members of society, and stand in various relations to each other, they have consequently no concern with any other but social or relative duties. Let a man therefore be ever so abandoned in his principles, or vicious in his practice, provided he keeps his wickedness to himself, and does not offend against the rules of public decency, he is out of the reach of human laws..... **For the principal aim of society is to protect individuals in the enjoyment of those absolute rights**, which

were vested in them by the immutable laws of nature, but which could not be preserved in peace without that mutual assistance and intercourse which is gained by the institution of friendly and social communities. Hence it follows, that the first and primary end of human laws is to maintain and regulate these *absolute* rights of individuals. Such rights as are social and *relative* result from, and are posterior to, the formation of states and societies: so that to maintain and regulate these is clearly a subsequent consideration. And, therefore, the principal view of human laws is, or ought always to be, to explain, protect, and enforce such rights as are absolute, which in [p.125] themselves are few and simple: and then such rights as are relative, which, arising from a variety of connections, will be far more numerous and more complicated. These will take up a greater space in any code of laws, and hence may appear to be more attended to—though in reality they are not—than the rights of the former kind." *Commentaries on the Laws of England,* Sir William Blackstone, Book 1, Chapter 1, Absolute Rights of Individuals, pp. 123-125 (c. 1753) (Hereinafter *Blackstone's Commentaries*)

**B. Defendants Applied The Wrong Standard To Support The Denial and Revocation of Passports According to Purpose of The Law of Passports (safe passage)**

22.    The Duty of Government is to protect our life, liberty and property rights, the pursuit of happiness, as it relates to our natural liberty of travel, and our revealed duty to go into all the world and preach the good news of salvation in Jesus Messiah (Yeshua Meshiach – Anointed Savior) in accordance with the Great Commission, *Bible*, Matthew 28:18-20.  The United States District Court, District of Columbia agrees:

> "It must now be accepted that travel abroad is more than a mere privilege accorded American citizens.  It is a right, and attribute of personal liberty, which may not be infringed upon or limited in any way unless there be full compliance with requirements of due process. *Shachtman v. Dulles,* D.C. Cir., 1955, 225 F.2d 938; *Bauer v.* Acheson, D.C. 1952, 106 F. Supp. 445; *Williams v.* Fears, 1900, 179 U.S. 270, 274, 21 S. Ct. 128, 45 L.Ed. 186  Travel beyond the confines of our sovereign borders requires the possession of a passport.  It is not only unlawful for a citizen to travel to Europe without a passport but it is virtually impossible to enter a European country without one.  See 8 U.S. C. 1185, and *Shachtman v. Dulles,* SUPRA  The denial of a passport must comply with due process requirements." *Boudin v. Dulles*, 136 F. Supp. 218, 220 (1955)

23.    We consider the law relating to the purpose of a passport to be a legitimate societal law and duty of the United States government.  The use of a passport is a mechanism of the broad 'reasonable means' employed to accomplish that purpose.  Our consideration of the application

of the terms "legitimate" and "reasonable means" is from reading case law that has particularly

distinguished the courts' use of terms such as legitimate, compelling, beneficial, important,

highest order, etc., relating to interests of purposes of government.  In a SSN-religious-objection

case, *Stevens v. Berger*, the trial court did a thorough examination and treatise on the matter of a

man's religious objection to the government's demand that he identify with a SSN.  It examined

all of the history and purposes of the government's demand for the number and the impact it had

on the objector's religion.  The trial court there determined that the purpose of government to use

the SSN did not rise to the levels of the highest order, or was compelling.

> There is no suggestion of a threat sufficient in size to compromise the orderly
> administration of the state or national welfare program, or to render the statutory
> and regulatory scheme unworkable. This case does not "present an administrative
> problem of such magnitude, or . . . afford the exempted class so great a
> competitive advantage, that such a requirement would have rendered the entire
> statutory [and regulatory] scheme unworkable." *Stevens v. Berger*, 428 F. Supp.
> 896, 906-907 (1977) citing *Sherbert v. Verner*, 374 U.S. 398, 408-09, 83 S.Ct.
> 1790, 1796, 10 L.Ed.2d 965 (1963). (Cite Stevens)

24.    The U.S. Supreme Court in *Bowen v. Roy*, though using an inappropriate lesser standard

of scrutiny, also declared that the governments use of a SSN did not rise to the level of the

highest order or was compelling.  The Court stated that it was merely a "reasonable means" to

accomplish a "legitimate" public interest.

> "Absent proof of an intent to discriminate against particular religious beliefs or
> against religion in general, the Government meets its burden when it demonstrates
> that a challenged requirement for governmental benefits, neutral and uniform in
> its application, is a **reasonable means** of promoting a **legitimate** public interest."
> *Bowen v. Roy*, 476 U.S. 796, 707-708 (1986) (Emphasis added)

25.    The Federal Circuit Court of Appeals Circuit Judge Ruth Bader Ginsburg, post-Bowen v.

*Roy*, balanced the District's stated safety and efficiency interests in requiring social security

numbers in applications for driver's license against Mr. Leahy's interest in freely exercising his

rights under the first amendment against regarding his religious objection to identifying with a

SSN. Judge Ginsburg stated that *Bowen v. Roy* was misapplied and could not support denying a

license for not supplying a SSN for religious reasons.

> Assuming for purposes of its opinion that Leahy's belief was sincere, the district court
> proceeded to balance Leahy's interest in freely exercising his rights under the first
> amendment against the District's stated safety and efficiency interests in requiring social
> security numbers in applications for driver's licenses. Were it not for a misreading of
> *Bowen v. Roy*, 476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986), the most relevant
> recent Supreme Court opinion, the district court would have adhered to the compelling
> state interest test enunciated in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10
> L.Ed.2d 965 (1963), and reaffirmed in *Thomas v. Review Bd. of the Indiana Employment
> Sec. Div.*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), as it did in its
> Memorandum Opinion of July 3, 1984 denying the District of Columbia's motion to
> dismiss. There the district court correctly observed: "[A] burden on religious liberty may
> be justified ... by showing that it is the least restrictive means of achieving some
> compelling state interest; only those interests of the highest order can overcome
> legitimate claims to the free exercise of religion." Leahy v. District of Columbia, No. 83-
> 2907, slip op. at 6 (D.D.C. July 3, 1984) (denying motion to dismiss). In that
> Memorandum Opinion the district court further indicated, once again correctly we
> believe, that the compelling state interest test--so far as lower courts can tell from High
> Court doctrinal statements--applies to driver's license requirements just as it applies to the
> requirements of government benefit programs. Id. at 6-7.

> Apparently because of the fragmented character of the Supreme Court's disposition in
> Roy, the district court took that case to have limited the application of Sherbert and
> Thomas and to have announced a less rigorous standard of scrutiny ("reasonable means
> of promoting a legitimate public interest") under which Leahy's claim would fail. This
> standard, proposed by Chief Justice Burger in a portion of his Roy opinion joined by only
> two other Justices (Justices Powell and Rehnquist), 106 S.Ct. at 2149, 2153-58, was
> expressly rejected by five Justices. See 106 S.Ct. 2158-60 (Blackmun, J.), 2164-69
> (O'Connor, J., joined by Brennan, J., and Marshall, J.), 2169 (White, J.).5 As the Court
> restated with unmistakable clarity in Hobbie v. Unemployment Appeals Comm'n of
> Florida, --- U.S. ----, 107 S.Ct. 1046, 1049-50, 94 L.Ed.2d 190 (1987), the compelling
> state interest test of Sherbert and Thomas continues to define the Supreme Court's free
> exercise clause jurisprudence. <u>Under that test, on the current record, the District of
> Columbia has failed to show that it is entitled to prevail; the District has not demonstrated
> that requiring a religious objector to provide his social security number in order to obtain
> a driver's license is the least restrictive means of achieving the concededly vital public
> safety objective at stake.</u>" *Leahy v. District of Columbia*, 833 F.2d 1046, U.S. Ct. App.,
> D.C. Circuit, D.C., (Dec. 1987)[6] (Emphasis added)

> Fn 6 "Leahy observed that accommodating his objection would not require the District to
> establish new procedures, for the city already had in place an alternate system of
> numbers, used for issuing diplomatic driver's licenses. Brief for Appellant at 10-11, 29-
> 30"

26.     We Plaintiffs have a duty of religion to submit to the authorities of the law of the land, saving our obedience to the Creator and His higher Revealed law. *Bible*, Exodus 20:1-7; Romans, Ch. 13:1-14; Acts 5:29.  It is a duty of the highest order.  Duties of the highest order are life, liberty and property interests for which government was instituted to protect.  Declaration of Independence, United States, (1776).  It is the duty of the government, of the highest order, to protect a man and his right of, not wrong of, religion.

27.     We know in the history of law, by reading *Blackstone's Commentaries* for example, that it benefits the society of our land, and the societies of the nations who are our neighbors, when we restrain the flight of those who would evade duties of debt or accountability for crimes here on our land; and to restrain from flight those who have proven themselves to be so "abandoned in his principles, or vicious in his practice" that has not kept his wickedness to himself but has injured his neighbor.  There was a practice in the laws of England, known by this government's founders, called "writ *ne exeat regno*," that prohibited subjects from going into foreign parts without license. *Blackstone's Commentaries*, Book 1, Ch. 1, p. 137.  It was akin to the Defendant making it unlawful to exit the country without a passport and denying passports to those who have tax debt of more the fifty thousand dollars, among other miscreants.  It appears to be a 'writ' which connotes due process leading to a judgment and order (writ).  That is parallel to the "certification" for tax debt cited in the passport statute 22 U.S.C. 2714a(e) to which we refer in paragraphs below.  The Defendants go too far when they use that 'reasonable means to accomplish a legitimate purpose' as a guise to make the 'number of the beast' out of the supposed account number of a 'voluntary-participation benevolence system' and make us adhere to it.  Though others may tolerate the Defendants' usurpation, we are prohibited by religion from participating in the sublime plot or the practice.

28.    We observe that using a passport, at ports of entry and departure, is a reasonable means of achieving that legitimate government purpose that keeps the wicked man from flight and from imposing his wickedness on our neighbor nations.  The laws relating to the passport are social and relative, and thus legitimate purposes of government.  They are not absolute.

29.    Contrary to the Defendants' claim as a matter of law, the principal object, purpose, interest of the reasonable means (passport) is to accomplish a legitimate purpose of government is the restricting passage of miscreants.  The principal object, purpose, interest of government (actually) is not to use the passport application process to impose applicants' absolute adhesion to a SSN as a unique personal identifier.  That is merely the Satanically inspired purpose sublimely imposed upon the minds and hearts of those who are denying us passports for our not identifying with a SSN, and who are not applying protection for religion.  The passport law provides non-sectarian relief to that conflict.[1]

> **Impermissible** Basis For Denial of Passports
> A passport may not be denied issuance, revoked, restricted, or otherwise limited because of any speech, activity, belief, affiliation, or membership, within or outside the United States, which, if held or conducted within the United States, would be protected by the first amendment to the Constitution of the United States. 22 U.S.C. § 2721 (Aug. 1, 1956, ch. 841, title I, § 49, as added Pub. L. 102-138, title I, § 113, Oct. 28, 1991, 105 Stat.655.) (Emphasis added)

30.    The principal object of the use of the SSN is for the purpose of assisting in efficiency. The Congress has empowered the Defendants to collect information to provide to interested law enforcement agencies and to match names on lists of people made ineligible for a passport by lawful due process.  A SSN is claimed by the Defendant to be useful for the efficiency to those ends.  The Defendant admits on their forms (ie, 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 option) that identifying with a SSN is not absolutely a requirement to accomplish the "efficient" end of collecting and passing

---

[1] "He guards the paths of justice, And preserves the way of His saints." *Bible*, Proverbs 2:8

information to law enforcement agencies or checking list of those made ineligible for a passport

by due process of law.

31.    The use of the SSN as a sole federal agency record identifier was proposed by President

Franklin Delano Roosevelt in his Executive Order 9397 (1943) where he said:

> "WHEREAS it is desirable in the interest of economy and orderly administration that the
> Federal Government move towards the use of a single, unduplicated numerical
> identification system of accounts and avoid the unnecessary establishment of additional
> systems."
>
> 1. Hereafter any Federal department, establishment, or agency shall, whenever the head
> thereof finds it advisable to establish a new system of permanent account numbers
> pertaining to individual persons, utilize exclusively the Social Security Act account
> numbers assigned pursuant to Title 26, section 402.502 of the 1940 Supplement to the
> Code of Federal Regulations* and pursuant to paragraph 2 of this order." Executive
> Order 9379:  Numbering System For Federal Accounts Relating To Individual Persons,
> United States, Franklin Delano Roosevelt (1943)

32.    In 2008, President George W. Bush amended that Executive Order 9379, changing the

E.O. to read ""or agency may" where it had previously said "or agency shall" ... utilize

~~exclusively~~ (striking exclusively) the Social Security Act account number assigned pursuant to

Title 26, section 402.402..."" Executive Order 13478, Amendments To Executive Order 9397

Relating To Federal Agency Use Of Social Security Numbers, United States, George W. Bush

(November 18, 2008) The use a Social Security Number is not absolutely mandated upon the

Secretary, nor is it, or can it, be an absolute mandate upon a man for the purpose of their identity.

33.    There is no evidence that we have come to the passport process under false identities, or

to evade scrutiny for any tax debt or miscreant conduct.  We declared in the complaint, and it is

uncontested by the Defendant, that we do not fall under the category of someone who is

ineligible for a passport as a matter of fact and law, with or without a SSN (Complaint, paras. 90,

94, 106).

34.    The Defendants accusation, which we as a matter of religion refute, that "they each have

a social security number" is completely underlined irrelevant and immaterial. A SSN is something from which we must always abstain and must continue to declare is not ours because the day that we declare a SSN is ours, the damnable SSN might be ours as a matter of confession. We would love to solemnize our disassociation by finding some process that would obligate the Social Security Administration (SSA) to suppress their records as they do for the Amish, or expunge any reference to our names or situation. Until that war-with-the-Beast is accomplished, we are bound to not associate with the damnable SSN no matter what somebody's paperwork somewhere might or might not say.

35.     Contrary to the contention of the Defendants', ""There is no dispute that Plaintiffs were each issued a social security number from the U.S. Social Security Administration ("SSA")"", the Plaintiffs do dispute such a damnable notion and the stand against the sublime Satanic-spirit that inspires the Defendant to continue to make the accusation. Our identity is in Christ Jesus rather than in a man-made God who would try to entice us to trust in the man-made benefactor rather than the One to whom we must all give an account and in whom is worthy to place our trust. *Bible*, Exodus 20: 2-5; Hebrews 4:1-16   We do not ask the Court to make a determination on that matter. The Defendants have not filed a cross claim to ask the Court to make such a determination of law. It is immaterial.

36.     In this matter before the Court, it does not matter whether any SSN was or was not ever associated with us or whether the like of our names have ever been associated with a SSA record. We want to, and ought to be able to, fulfill our passport application and record obligations by not being associated with a damnable SSN just like those who have successfully escaped the association of their names with the damnable SSN records, or such as the Amish who can have the SSA suppress the SSA's records.

37.   The Defendants point out that we have each at different times "corresponded with SSA to "void" the SSA account records based on "direct and extrinsic fraud." Am. Compl. ¶ 36. The SSA has received the notices and has not refuted our claims of direct and extrinsic fraud, not within ten days, not thirty days, not in the decades since. Again, we do not ask the Court to rule on that matter since it is irrelevant and immaterial. We reserve that for a day if laws protecting religion are somehow trumped by the existence of a SSA record, and we need to file a suit against the SSA if they refuse to suppress their records as they do for the Amish sect. The law instituted to protect religion ought to mitigate injury to us from the Satanic bureaucratic quagmire of the SS program, notwithstanding record suppression or non-suppression. **The U.S. Court of Appeals dismissed such an accusation of the SSA not fixing their record as being an excuse for the government to deny a religious accommodation,** <u>or to not apply regulations that provide for discretion regarding accommodation to use of a SSN on government forms</u>.

> "Waiting indefinitely for the Social Security Administration to change his Social Security number may not have been a viable alternative for Carmichael if it would require a continued breach of his religious conviction." *David Alan Carmichael v. United States*, 298 F.3d 1367, 1376 (Fed. Cir. 2002)

### C.   The Defendant Erroneously Applies A Mandate To The Permissive Statute

38.   The Defendants' memorandum in support of its motion for Summary Judgment erroneously claims that, the FAST Act, 22 U.S.C. § 2714a(f) obligates the Defendant to deny or revoke the Plaintiffs' passports. The language of the relevant sub-paragraphs is permissive, rather than mandatory, where passport statute 22 U.S.C. § 2714a(f)(1)(A) says, "the Secretary of State **is authorized** to deny such application and is authorized to not issue a passport to the individual." (Emphasis added)  The statute merely authorizes the Secretary's discretionary authority to deny a passport in some, but not every instance, where someone does not identify with a SSN.

39.     The word "authorize" is directory, permissive, or discretionary. *Farmers & M. Bank v. Federal Reserve Bank*, 262 US 649.  Where strict compliance with the terms of the statue is impossible, compliance as near as can be has been permitted on the principle that the law does not require impossibilities. *North Carolina State Art Soc. V. Bridges*, 235 NC 125, 69 SE2d 1; *Dalzell v. Kane,* 321 Pa 120, 183 A 782, 104 ALR 619

40.     The terms in the statute are merely directory as a matter of law since the use of the SSN is not necessary to the object of the actual interest of government.  Their Declarants' statement is that the use of a SSN as an arguably efficient data point; making the FAST Act, 22 USC §2714a(f)(1)(A), as well as the previous section §2714a(e) that contains the term "shall" as it relates to the denial of tax debtors passports, directory even if it used a mandatory term such as "shall" rather than merely "is authorized."

> Generally speaking, those provisions which are a mere matter or form, or which are not material, do not affect any substantial right, and do not relate to the essence of the thing to be done so that compliance is a matter of convenience rather than substance, are considered to be directory.  This is true of statutory provisions for the expenditious, proper, or orderly conduct of business merely. *Crane v. Los Angeles* County, 17 Cal App 2d 360, 62 P2d 189; *Miller v. Lakewood Housing Co.* 125 Ohio St. 152, 180 NE 700, 81 ALR 1239; *John C. Winston Co. V. Vaughan*, (DC) 11 F Supp 954, affd (CA10) 83 F2d 370, among others.

> Words or phrases which are generally regarded as making a provision mandatory include "shall," and "must."  On the other hand, a provision couched in permissive terms is generally regarded as directory or discretionary.  This is true of the word … "authorizes," *United States ex rel. Siegel v. Thoman*, 156 US 353, 39 L Ed 450, 15 S Ct 378; *Creek Nation v. United* States, 318 US 629, 87 L Ed 1046, 63 S Ct. 1054; among others

41.     The terms of the statutes subparagraph 'permitting' the Secretary to "Revoke" a passport for someone who did not supply a SSN is clearly permissive, using the term "may revoke a passport" in 22 U.S.C. § 2714a(f) subparagraph (2)(A).

> 22 U.S.C. §2714a
> (f) **Revocation** or denial of passport in case of individual without social security account number

(1) Denial

(A) In general

Except as provided under subparagraph (B), upon receiving an application for a passport from an individual that either-

(i) does not include the social security account number issued to that individual, or

(ii) includes an incorrect or invalid social security number willfully, intentionally, negligently, or recklessly provided by such individual,the Secretary of State is authorized to deny such application and is authorized to not issue a passport to the individual.

(2) **Revocation**

(A) In general

The Secretary of State <u>may</u> **revoke** a passport previously issued to any individual described in paragraph (1)(A).  (Emphasis added)

42.    In comparison to the clearly permissive terms "is authorized to deny" and "may revoke" of 22 U.S.C. §2714a(f)(1) & (2), the previous subparagraph of the statute 22 U.S.C. 2714a(e) uses terms that appear to be mandatory, though in context are merely directory.  The difference with §2714a subparagraph (e) using the term "shall not issue a passport" is that it touches upon the very purpose for the passport, to regulate those who have significant and objectively defined tax debt <u>and **due process** relating to it</u>.  Yet, as a matter of the Secretary's permission to revoke a passport in that subparagragh (e) related to '**certified**' tax debt, **revocation** is clearly permissive as it uses the terms "may revoke a passport."

(e) Authority to **deny** or revoke passport

(1) **Denial**

(A) In general

Except as provided under subparagraph (B), upon receiving a certification described in **section 7345 of title 26** from the Secretary of the Treasury, the Secretary of State **shall** not issue a passport to any individual who has a seriously delinquent tax debt described in such section.

(2) **Revocation**

(A) In general

The Secretary of State **may revoke** a passport previously issued to any individual described in paragraph (1)(A).  22 U.S.C. §2714a(e) (Emphasis added)

**D.  The Defendant Failed To Follow The Passport Statutes Regarding Protection For Religion and Good Cause Exception**

43.     The Defendant not only ignored the permissive terms of 22 U.S.C. § 2714a(f)

subparagraphs (1) & (2), the Defendant glaringly ignored the 'good cause' provision for

"humanitarian reasons" of 22 U.S.C. § 2714a(f)(1)(B) that permits the Secretary of State to issue

a passport for "humanitarian reasons" notwithstanding that a valid SSN or all zeros were not

placed in block five DS-11 and DS-82 passport and renewal application forms; whether or not a

number was issued to that individual, or included an incorrect or invalid social security number,

willfully, intentionally, negligently, or recklessly provided by such individual.

> 22 U.S.C. §2714a
> (f) Revocation or **denial** of passport in case of individual without social security account number
>> (1) **Denial**
>>> (A) In general
>>> **Except as provided under subparagraph (B)**, upon receiving an application for a passport from an individual that either-
>>>> (i) does not include the social security account number issued to that individual, or
>>>> (ii) includes an incorrect or invalid social security number willfully, intentionally, negligently, or recklessly provided by such individual, the Secretary of State is authorized to deny such application and is authorized to not issue a passport to the individual.
>>> (B) Emergency and humanitarian situations
>>> **Notwithstanding subparagraph (A),** the Secretary of State may issue a passport, in emergency circumstances or for **humanitarian reasons**, to an individual described in subparagraph (A). (Emphasis added)

44.     The language of 22 U.S.C. § 2714a(f)(1)(B) term "humanitarian reasons" logically

contemplates and does not exclude religion.

45.     Correspondingly, the 'Regulation' promulgated by the Secretary of State, 22 CFR 51.60,

Denial and Restriction of Passports, subparagraph (f) says, "The Department may refuse to issue

a passport to an applicant who fails to provide his or her Social Security account number on his

or her passport application or who willfully, intentionally, negligently, or recklessly includes an

incorrect or invalid Social Security account number (Emphasis added).

46.     Strikingly significant is where the regulation promulgated by the Secretary of State has used the prohibited term "may not issue a passport" at 22 CFR 51.60, subparagraphs (a)(1)-(4). The things for which the Secretary has prohibited his "Department" from issuing a passport are limited to:

> (1) The applicant is in default on a loan received from the United States under 22 U.S.C. 2671(b)(2)(B) for the repatriation of the applicant and, where applicable, the applicant's spouse, minor child(ren), and/or other immediate family members, from a foreign country (see 22 U.S.C. 2671(d)); or
> (2) The applicant has been certified by the Secretary of Health and Human Services as notified by a state agency under 42 U.S.C. 652(k) to be in arrears of child support in an amount determined by statute.
> (3) [Reserved]
> (4) The applicant is a covered sex offender as defined in 22 U.S.C. 212b(c)(1), unless the passport, no matter the type, contains the conspicuous identifier placed by the Department as required by 22 U.S.C. 212b.

47.     Each of those things that the Secretary has issued the Regulation with the directive to not issue a passport is in those situations where the applicant has on the basis of some legal or lawful due process been found to be a miscreant debtor to the Secretary of State, a debtor to his paternal obligations, or a sex offender. *Ibid*

48.     The 'permissible' basis of the Secretary's power to not issue a passport; and the permissible basis of the Secretary's power to apply even, in the "shall not issue" situations, the 'good cause' exception of 22 U.S.C. § 2714a(f)(1)(B), the mandate of 22 U.S.C. 2721 and the self-executing first amendment is preemptory. Not only does the Secretary not have a mandate to deny or revoke the Plaintiffs passports, the Secretary is not left with the discretionary power to deny or revoke them.

## E.  Defendant Failed To Follow The Rules The President Designated and Prescribed, in Violation of 22 U.S.C. §211a

49.     The Defendant has a non-discretionary duty to obey the rules prescribed by the President

for and on behalf of the United States according to the passport law at 22 U.S.C. §211a,

"Authority to grant, issue and verify passports."  There, the statute states:

> The Secretary of State may grant and issue passports, and cause passports to be
> granted, issued, and verified in foreign countries by diplomatic and consular
> officers of the United States, and by such other employees of the Department of
> State who are citizens of the United States as the Secretary of State may
> designate, and by the chief or other executive officer of the insular possessions of
> the United States, under such rules as the President shall designate and prescribe
> for and on behalf of the United States, and no other person shall grant, issue, or
> verify such passports. Unless authorized by law, a passport may not be designated
> as restricted for travel to or for use in any country other than a country with which
> the United States is at war, where armed hostilities are in progress, or where there
> is imminent danger to the public health or the physical safety of United States
> travellers.  22 U.S.C. § 211a, Authority to grant, issue and verify passports.

50.     There is a rule designated by the President and prescribed for and on behalf of the United

States as it applies to the Defendants applying accommodation for religion in the execution of

the passport laws.  Executive Order 13798 states:

> By the authority vested in me as President by the Constitution and the laws of the
> United States of America, in order to guide the executive branch in formulating
> and implementing policies with implications for the religious liberty of persons
> and organizations in America, and to further compliance with the Constitution and
> with applicable statutes and Presidential Directives, it is hereby ordered as
> follows:
>
> Section 1.  Policy.  It shall be the policy of the executive branch to vigorously
> enforce Federal law's robust protections for religious freedom.  The Founders
> envisioned a Nation in which religious voices and views were integral to a vibrant
> public square, and in which religious people and institutions were free to practice
> their faith without fear of discrimination or retaliation by the Federal Government.
>  For that reason, the United States Constitution enshrines and protects the
> fundamental right to religious liberty as Americans' first freedom.  Federal law
> protects the freedom of Americans and their organizations to exercise religion and
> participate fully in civic life without undue interference by the Federal
> Government.  The executive branch will honor and enforce those protections.
>
> Sec. 2.  Respecting Religious and Political Speech.  All executive departments
> and agencies (agencies) shall, to the greatest extent practicable and to the extent
> permitted by law, respect and protect the freedom of persons and organizations to

engage in religious and political speech.  In particular, the Secretary of the
Treasury shall ensure, to the extent permitted by law, that the Department of the
Treasury does not take any adverse action against any individual, house of
worship, or other religious organization on the basis that such individual or
organization speaks or has spoken about moral or political issues from a religious
perspective, where speech of similar character has, consistent with law, not
ordinarily been treated as participation or intervention in a political campaign on
behalf of (or in opposition to) a candidate for public office by the Department of
the Treasury.  As used in this section, the term "adverse action" means the
imposition of any tax or tax penalty; the delay or denial of tax-exempt status; the
disallowance of tax deductions for contributions made to entities exempted from
taxation under section 501(c)(3) of title 26, United States Code; or any other
action that makes unavailable or denies any tax deduction, exemption, credit, or
benefit.

Sec. 3.  Conscience Protections with Respect to Preventive-Care Mandate.  The
Secretary of the Treasury, the Secretary of Labor, and the Secretary of Health and
Human Services shall consider issuing amended regulations, consistent with
applicable law, to address conscience-based objections to the preventive-care
mandate promulgated under section 300gg-13(a)(4) of title 42, United States
Code.

Sec. 4.  Religious Liberty Guidance.  In order to guide all agencies in complying
with relevant Federal law, the Attorney General shall, as appropriate, issue
guidance interpreting religious liberty protections in Federal law.

Sec. 5.  Severability.  If any provision of this order, or the application of any
provision to any individual or circumstance, is held to be invalid, the remainder of
this order and the application of its other provisions to any other individuals or
circumstances shall not be affected thereby.

Sec. 6.  General Provisions.  (a)  Nothing in this order shall be construed to impair
or otherwise affect:
        (i)  the authority granted by law to an executive department or agency, or
the head thereof; or
        (ii)  the functions of the Director of the Office of Management and Budget
relating to budgetary, administrative, or legislative proposals.
(b)  This order shall be implemented consistent with applicable law and
subject to the availability of appropriations.
(c)  This order is not intended to, and does not, create any right or benefit,
substantive or procedural, enforceable at law or in equity by any party against
the United States, its departments, agencies, or entities, its officers,
employees, or agents, or any other person.
Presidential Executive Order 13798, Promoting Free Speech And Religious
Liberty, Donald J. Trump (May 4, 2017)

51.   In compliance with that directive E.O. 13798, Sec. 4., the Attorney General issued

guidance interpreting religious protection in Federal law and issued the memorandum to all

Departments.  Plaintiff Pakosz communicated that E.O., and the twenty-five (25) page

memorandum issued by the Attorney General, to the Defendants (Complaint, pp. 23-26).  The

Memorandum said, among other things:

> MEMORANDUM FOR ALL DEPARTMENTS AND AGENCIES, *Federal Law Protections For Religious Liberty*, United States, The Attorney General (Oct. 6, 2017) (Emphasis added below)
>
> **"It shall be the policy of the executive branch to vigorously enforce Federal law's robust protections for religious freedom.** …Federal law protects the freedom of Americans and their organizations to exercise religion and participate fully in civic life without undue interference by the Federal Government. The executive branch will honor and enforce those protections.**"** (Emphasis added)
>
> **" Religious liberty is not merely a right to personal religious beliefs or even to worship in a sacred place**. It also encompasses religious observance and practice. Except in the narrowest circumstances, no one should be forced to choose between living out his or her faith and complying with the law. Therefore, to the greatest extent practicable and permitted by law, religious observance and practice should be reasonably accommodated in all government activity, including employment, contracting, and programming." (Emphasis added)
>
> "Constitutional protections for religious liberty are not conditioned upon the willingness of a religious person or organization to remain separate from civil society."
>
> "RFRA applies to all actions by federal administrative agencies, including rulemaking, adjudication or other enforcement actions, and grant or contract distribution and administration."
>
> "In general, a government action that bans an aspect of an adherent's religious observance or practice, compels an act inconsistent with that observance or practice, or substantially pressures the adherent to modify such observance or practice, will qualify as a substantial burden on the exercise of religion." (emphasis added)
>
> "That analysis requires the government to show that it cannot accommodate the religious adherent while achieving its interest through a viable alternative, which may include, in certain circumstances, expenditure of additional funds, modification of existing exemptions, or creation of a new program." (emphasis added)
>
> "In formulating rules, regulations, and policies, administrative agencies should also

proactively consider potential burdens on the exercise of religion and possible accommodations of those burdens.  Agencies should consider designating an officer to review proposed rules with religious accommodation in mind or developing some other process to do so…."

""""The depth and breadth of constitutional and statutory protections for religious observance and practice in America confirm the enduring importance of religious freedom to the United States.  They also provide clear guidance for all those charged with enforcing federal law:  The free exercise of religion is not limited to a right to hold personal religious beliefs or even to worship in a sacred place.  It encompasses all aspects of religious observance and practice. **To the greatest extent practicable and permitted by law, such religious observance and practice should be reasonably accommodated in all government activity, including employment, contracting, and programming**.  See Zorach v. Clauson, 343 U.S. 306, 314 (1952) ("[Government] follows the best of our traditions ... [when it] respects the religious nature of our people and accommodates the public service to their spiritual needs.")."""

52.    The E.O. 13798, Sec. 6.(c), provision does not immunize the Defendants' from implementing the directives of Sections 1 through 4.  The Constitution of the United States of America, and the laws of the United States enacted by Congress pursuant to its powers under Article 1, redress available via Article III, and those rights particularly protected in the Bill of Rights, institute those benefits or rights, substantive and procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.  The Congress, through 22 U.S.C. § 211a, giving power to the Defendant Secretary to grant, issue, and validate passport constrained by the obligation abide by the "rules as the President shall designate and prescribe for and on behalf of the United States."  The Congress has obliged the Defendant to obey the rules of E.O. 13798.  Those rules of E.O. 13798 and its implemented memorandum by the Attorney General, are by their nature and obvious context applicable to any apparently permissive or discretionary power left to the Defendant in whether they issue a passport to someone who for reasons of religion cannot identify with a SSN.  The rule of the President has the force of law empowered by the Act of Congress, 22 U.S.C. § 211a, imposes a duty on the Defendant to <u>not</u> revoke and <u>not</u> deny the

Plaintiffs' passport and renewal applications.

**F. An Analogous Passport Case, With Judgment For The Plaintiff, Parallels The Defendant's Unlawful Conduct In This Case.**

53.     There is a 2018 case where a person claimed to be an "intersex person" and was denied a passport because they refused to place a "M" or "F" in block "3. Sex" of the DS-11 passport application form.  Notwithstanding that the Defendants' had the ability to use an "X" for "unspecified" in their computer files (though there was no option for it on the form), the Defendants repeatedly refused to issue the passport unless the applicant chose either the "M" or "F" option on the form.  The Court there determined the Defendants policy and practice to be arbitrary and capricious, exceeding the authority delegated to the Department by Congress, and the court issued injunctive relief. *Dana Alix Zzyym, v. Michael R. Pompeo*, 341 F. Supp. 3d 1248 (2018)

54.     Like *Zzyym*, we explained that the two options given to us did not fit our ability to declare an identity that is repugnant to us, notwithstanding the Defendants' two option preference.  One of their options placing 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 in block five is not repugnant to us but there is a better indicator of our identity, that is – religious prohibition as it relates to the SSN.  Being men who have a high regard for the law, we understand that we cannot provide an affidavit about somebody else's record files.  As well as it being an absurdity, we are prohibited from claiming "their" damnable number of the beast as being ours.

55.     Like in *Zzyym*, we are qualified to receive a passport.  We are not a danger to national security nor are we a danger to other nations.  The Defendant has a mechanism to deal with people who are not associated with a SSN in their passport records for the 'technicality' that they are 'absolutely sure' that they have never been associated with a SSN.

54.     Like in *Zzyym*, the Defendants used the same general conveniences or efficiencies of

using a "M" or an "F" to adjudicate the passport application. The Defendants, there and here, abused their discretion. Here, they completely opposed the mandate of the Congress and the Order of the President with regard to applying religious accommodation to an otherwise general directive (directory, not mandatory).

## V.   The Defendant Retains The Power And The Duty To Reopen The Plaintiffs' Passport Application Files For Issuance and Cancelation of Revocation

56.   According to 22 C.F.R. § 51.65, the Defendant retains the power to reopen the Plaintiffs' passport applications in order to issue a passport. The "Notification of denial, revocation or cancellation of passports and..." provisions of the Defendants' regulation show that the status of "Final" decision does not preclude the Defendant from backing up a step and fixing the problem with the original application or passport which they denied or revoked. 22 C.F.R. § 51.65 says:

> (a) The Department will send notice in writing to any person whose application for issuance of a passport or Consular Report of Birth Abroad has been denied, whose passport has been revoked, or whose Consular Report of Birth Abroad has been cancelled. The notification will set forth the specific reasons for the denial, revocation or cancellation and, if applicable, the procedures for review available under 22 CFR 51.70 through 51.74.
> (b) An application for a passport or Consular Report of Birth Abroad will be denied if an applicant fails to meet his or her burden of proof under the applicable regulations or otherwise does not provide documentation sufficient to establish entitlement to a passport or a Consular Report of Birth Abroad, or does not provide additional information as requested by the Department within the time provided in the notification by the Department that additional information is required. Thereafter, if an applicant wishes the Department to adjudicate his or her claim of entitlement to a passport or Consular Report of Birth Abroad, he or she must submit a new application, supporting documents, and photograph, along with all applicable fees.
> (c) The Department may, in its sole discretion, administratively re-open a previously filed passport or Consular Report of Birth Abroad application in order to issue a passport. 22 C.F.R. § 51.65 *Notification of denial, revocation or cancel-ation of passports and Consular Reports of Birth Abroad.* (Emphasis added)

## VI.   Plaintiffs' Cross Motion For Declaratory Judgment Is Supported By Material Facts For Which There Is No Genuine Issue of Dispute

57.   The following facts are confirmed by the Defendant by way of the Defendants'

Declaration documents and motion for dismissal or summary judgment of January 21, 2020 or

proffered by the Complaint, paragraphs 1. through 113., and not contested by the Defendant:

    a.  On December 19, 2007, Plaintiff Carmichael applied for a passport, writing "42 USC

§ 2000bb Religious Prohibition" in box five of the application form where it directed the

identification with a SSN.  (Rolbin, para. 3.)

    b.  On January 20, 2018, Mr. Carmichael wrote "see letter" in box five of the passport

application form, in which applicants are instructed to write their SSNs or provide zeros.

(Rolbin para. 6.)

    c.  In the letter (of January 20, 2018), Mr. Carmichael requested a religious

accommodation to the requirement that he provide his SSN. (Rolbin para. 6.)

    d.  Plaintiff Carmichael's motive for not identifying with a SSN is due to religion.

    e.  Plaintiff Lewis applied for a passport on March 24, 2008 and that he wrote "religious

prohibition see attachment."   (Rolbin para. 10.)

    f.  In this attachment (Lewis 2008 application), Mr. Lewis stated that his religious

beliefs prevented him from identifying himself using an SSN.  (Rolbin para. 10.)

    g.  Mr. Lewis applied to renew his passport on April 3, 2019, using Form DS-82. (Rolbin

para. 12.)

    h.  Mr. Lewis wrote "religious prohibition see letter" in box five of the 2019 passport

application form that requests identification with a SSN. (Rolbin para. 12.)

    i.  In that letter (attached to the Lewis 2019 passport application), he requested a

religious accommodation to the requirement that he provide his SSN. (Rolbin para. 12.)

    j.  Plaintiff Lewis's motive for not identifying with a SSN is due to religion.

(Complaint, Paras. 13., 14., 18., 31., 36., 37., 38., 39., 41., 43., 44., 45., 47., 48., 51.)

k. On May 1, 2019, the Defendant sent Mr. Lewis a letter requesting that he either provide his SSN or declare under penalty of perjury that he had never been issued one. (Rolbin para. 13.)

l. On July 29, 2019, Mr. Lewis sent a letter to the Department repeating his request for a religious accommodation and stating that he would not provide his SSN. (Rolbin para. 14.)

m. On August 29, 2019, the Defendant denied Mr. Lewis's passport application because he failed to provide his SSN. (Rolbin para. 15.)

n. On December 3, 2007, Plaintiff Pakosz applied for a passport and wrote "religious prohibition" in box five of the passport application form where it demands an SSN. (Rolbin para. 16.)

o. On August 16, 2017, Mr. Pakosz applied to renew his passport using Form DS-82. (Rolbin para. 18.)

p. Mr. Pakosz wrote "religious prohibition 42 USC 2000bb1" in box five of the passport renewal application form in which applicants are directed to place a SSN. (Rolbin para. 18.)

q. On September 1, 2017, the Defendant sent Mr. Pakosz a letter requesting that he either provide 'his' SSN or declare under penalty of perjury that he had never been issued one. (Rolbin para. 19.)

r. On September 8, 2017, Mr. Pakosz responded with a letter requesting a religious accommodation to the requirement that he provide his SSN. (Rolbin para. 20.)

s. On September 22, 2017, the Department denied Mr. Pakosz's passport application because he failed to provide his SSN. (Rolbin para. 21.)

t. On January 13, 2018, Mr. Pakosz submitted another passport renewal application, using Form DS-82. Mr. Pakosz wrote "42 USC 2000bb religious prohibition" in box five of

the passport renewal application form that directs the application to provide a SSN.  (Rolbin para. 22.)

u.  Paragraphs 22. through 24. provide confirmation of the facts regarding Plaintiff Pakosz when he tried multiple times to obtain a renewal of his passport, having increased difficulty when the Defendant did not return his original passport to him after denying a renewal for not providing a SSN or a specified statement under penalty of perjury.  (Rolbin paras. 22-24.)

v.  Mr. Pakosz wrote "religious prohibition 42 USC 2000bb-1" on his passport application of February 3, 2018. (Rolbin paras. 22-24.)

w.  Plaintiff Pakosz's motive for not identifying with a SSN is due to religion. (Complaint, Paras. 13., 14., 17, 20., 26., 31., 36., 37.-39., 52.-55., 57., 59., 66., 69., 78.,-80., 81.)

x.  Passports are travel documents attesting to the bearer's identity and nationality. (Fultz para. 2.)

y.  The Plaintiffs are not those who are subject to the denial of their passport renewal on the basis of those things listed or referenced on the application form. (Compl. Para. 106.)

z.  The Defendant did not follow the directives of Executive Order 13798 and its implementing memorandum for all departments entitled Federal Law Protections For Religious Liberties.  (Compl. Para. 108.)

aa. The Defendant did not apply any law, regulation or policy regarding the protection of religion the matter of the Plaintiffs applications for passport renewal, form DS-82.

bb. The Social Security Administration, in an April 11, 2003 letter from Charles A.

Mullen, Social Security Administration, Associate Commissioner, Office of Public Inquiries,

made the official statement that:

> "The Social Security Act does not require a person to have a Social Security number to live and work in the United States, nor does it require a Social Security number simply for the purpose of having one." (Complaint para. 92.)

cc. Forms DS-82 06 2016, and DS-11 01 2017, on page 1 of 4, state:

> **"FAILURE TO PROVIDE INFORMATION REQUESTED ON THIS FORM, INCLUDING YOUR SOCIAL SECURITY NUMBER, MAY RESULT IN SIGNIFICANT PROCESSING DELAYS AND/OR THE DENIAL OF YOUR APPLICATION"** (Comp. para. 13.)

dd. Form DS-11 06 2005, on page 3 of 4, states:

> "Section 6039E of the Internal Revenue Code (26 U.S.C. 6039E) requires you to provide your Social Security Number (SSN), if you have one, when you apply for a U.S. passport or renewal of a U.S. passport. If you have not been issued a SSN, enter zeros in box #5 of this form. If you are residing abroad, you must also provide the name of the foreign country in which you are residing. The Department of State must provide your SSN and foreign residence information to the Department of Treasury. If you fail to provide the information, you are subject to a $500 penalty enforced by the IRS. All questions on this matter should be directed to the nearest IRS office." (Complaint para. 100. is current form, the older form was alluded to in Defendants' Motion and Declarations)

ee. Forms DS-82 06 2016, and DS-11 01 2017, on page 1 of 4, state:

> "Section 6039E of the Internal Revenue Code (26 U.S.C. 6039E) and 22 U.S.C 2714a(f) require you to provide your Social Security number (SSN), if you have one, when you apply for or renew a U.S. passport. If you have never been issued a SSN, you must enter zeros in box #5 of this form. If you are residing abroad, you must also provide the name of the foreign country in which you are residing. The U.S. Department of State must provide your SSN and foreign residence information to the U.S. Department of the Treasury. If you fail to provide the information, your application may be denied and you are subject to a $500 penalty enforced by the IRS. All questions on this matter should be referred to the nearest IRS office." (Complaint para. 100.)

ff.  Forms DS-11 08 2005; DS-82 06 2016; and DS-11 01 2017, on page 3 of 4,

identically state:

"Passport service fees are established by law and regulation (see 22 U.S.C. 214, 22 C.F.R. 22.1, and 22 C.F.R. 51.50-56), and are collected at the time you apply for the passport service. If the Department fails to receive full payment of the applicable fees because, for example, your check is returned for any reason or you dispute a passport fee charge to your credit card, the U.S. Department of State will take action to collect the delinquent fees from you under 22 C.F.R. Part 34, and the Federal Claims Collection Standards (see 31 C.F.R. Parts 900-904). In accordance with the Debt Collection Improvement Act (Pub.L. 104-134), if the fees remain unpaid after 180 days and no repayment arrangements have been made, the Department will refer the debt to the U.S. Department of Treasury for collection. Debt collection procedures used by U.S. Department of Treasury may include referral of the debt to private collection agencies, reporting of the debt to credit bureaus, garnishment of private wages and administrative offset of the debt by reducing, or withholding eligible federal payments (e.g., tax refunds, social security payments, federal retirement, etc.) by the amount of your debt, including any interest penalties or other costs incurred. In addition, non-payment of passport fees may result in the invalidation of your passport. An invalidated passport cannot be used for travel." (Judicial Notice)

gg.  Forms DS-11 08 2005; DS-82 06 2016; and DS-11 01 2017, on page 3 of 4, in the

USE OF SOCIAL SECURITY NUMBER notice area state:

"Your Social Security number will be provided to U.S. Department of Treasury, used in connection with debt collection and checked against lists of persons ineligible or potentially ineligible to receive a U.S. passport, among other authorized uses." (Complaint para. 103.)

hh.  Form DS-11 08 2005, on page 3 of 4, in the OTHER USEs OF SOCIAL SECURITY

NUMBERS notice area states:

In addition to reporting your Social Security number to Treasury, and using it in connection with debt collection, the Department checks Social Security Numbers against lists of persons ineligible or potentially ineligible to receive a U.S. passport. (Judicial Notice)

ii.  **The Privacy Act Statement** section on the U.S. passport/renewal application forms

state:

**PURPOSE**: We are requesting this information in order to determine your eligibility to be issued a U.S. passport. Your Social Security number is used to <u>verify your identity</u>.

**ROUTINE USES**: This information may be disclosed to another domestic government agency, a private contractor, a foreign government agency, or to a private person or private employer in accordance with certain approved routine uses. These routine uses include, but are not limited to, law enforcement activities, employment verification, fraud prevention, border security, counterterrorism, litigation activities, and activities that meet the Secretary of State's responsibility to protect U.S. citizens and non-citizen nationals abroad. More information on the Routine Uses for the system can be found in System of Records Notices State-05, Overseas Citizen Services Records and State-26, Passport Records.

**DISCLOSURE**: Providing information on this form is voluntary. Be advised, however, that failure to provide the information requested on this form <u>may</u> cause delays in processing your U.S. passport application and/or <u>could</u> result in the refusal or denial of your application. Failure to provide your Social Security number <u>may</u> result in the denial of your application (consistent with 22 U.S.C. 2714a(f)) and <u>may</u> subject you to a penalty enforced by the Internal Revenue Service, as described in the Federal Tax Law section of the instructions to this form. Your Social Security number will be provided to the Department of the Treasury and may be used in connection with debt collection, among other purposes authorized and generally described in this section." (Emphasis of 'underline' added) (Complaint para. 104)

jj.  Plaintiff Carmichael has prevailed in a case against the United States where he made a request for religious accommodation regarding being identified by a SSN on the Navy's records and identification documents.  The Court of Federal Claims Ruled that the Navy violated the law and regulations where they did not regard his request for religious accommodation notwithstanding the clear context of the request.  (Complaint para. 1)

kk. Plaintiffs are each born and live in the United States of America, and are subject to and protected by the laws of the land.  (Complaint para. 6)

ll.  The Defendants offices are in Washington, District of Columbia.

mm. The Defendants' Officer Christine McClean said on March 12, 2019, "The process for religious accommodation?  There is not a separate process for that.  The law does not give

the Department any discretion. So (--)" Plaintiff Carmichael interrupted saying, "Except the

word is may. May is pretty discretionary." (Complaint para. 26.)

nn. On June 22, 2019, Plaintiff Carmichael received a letter from the White House stating

that they sent his correspondence to the appropriate Federal agency, without saying what

agency to which they referred his correspondence. (Complaint para. 32.)

oo. On or about June 24, 2019, Carmichael received express delivery by United Parcel

Service, from JN59, DOS-CA/PPT/HQ, 600 19TH STREET, N.W., WASHINGTON  DC

20006, tracking number 1ZX3370W3694466644.  In the envelope was a letter from the

United States Department of State, Washington, D.C.  20520, dated JUN 2 0 2019 to Plaintiff

Carmichael at Carmichael's home.  The letter stated: (Complaint para. 33.)

> "The Department of State has revoked U.S. Passport number 573308010, issued
> to you in error on January 30, 2018.  This action is taken in accordance with 22
> C.F.R. § 51.62 (a)(2), which provides that a U.S. passport may be revoked when it
> has been determined that the passport was obtained illegally, fraudulently or
> erroneously.  The regulations cited in this letter may be found at
> http://www.ecfr.gov.
>
> Department records show that you submitted an application for a U.S. passport by
> mail in May 2018, without listing a social security number (SSN) on the
> application.  You also submitted a statement about why you would not provide
> your SSN.
>
> Consistent with 22 U.S.C. 2714a and 22 C.F.R. 51.60(f) the Department requires
> that passport applicants provide their SSN on their application, if they have been
> issued one.  For applicants who were never issued an SSN, then the Department
> requires a declaration under penalty of perjury to that effect.  Failure to provide
> the SSN, or "willfully, intentionally, negligently, or recklessly" providing an
> incorrect or invalid SSN, or failing to provide an appropriate declaration, will
> result in the denial of the application.  As you did not provide your SSN or an
> appropriate declaration, U.S. Passport number 5773308010 should not have been
> issued and is revoked pursuant to 22 C.F.R. § 51.62 (a)(2).
>
> Under 22 C.F.R. §§51.7 and 51.66, the U.S. passport remains the property of the
> U.S. Government and must be surrendered upon demand.  Please immediately
> return U.S. Passport number 573308010 to the following address:  U.S.
> Department of State, CA/PPT/S/L/LA, 44132 Mercure Circle, P.O. Box 1227,

Stering, VA 20166-1227.

You may request a hearing under 22 C.F.R. §§ 51.70-51.74.  The hearing would take place in Washington, DC and would only address the basis upon which the Department revoked your passport.  If you choose to request a hearing you must submit your request in writing by mail to the address above within sixty (60) days from receipt of this letter.  The revocation is final and is not stayed by a request for a hearing.

Because the passport was issued based on our error, you may reapply for a passport without paying additional fees by submitting a new complete Form DS-82, U.S. Passport Renewal Application that includes your SSN **within 90 days** to:

> National Passport Center
> Attn: Jason Galvin
> 44231 Mercure Circle
> P.O. Box 1108
> Sterling, VA  20166-1108

If you do not submit this application within 90 days, should you wish to obtain a passport, you will need to re-apply by properly submitting a new passport application along with all required documents and paying all application fees, following the instructions found at http:travel.state.gov.

> Sincerely,
>
> Bureau of Consular Affairs
> Passport Service
> Office of Legal Affairs and
> Law Enforcement Liaison"

pp. On or about July 2, 2019, Plaintiff Carmichael received a letter dated June 25, 2019,

post marked June 26, 2019, from the Defendant, CA/PPT/S/L ST12, stating (Complaint para.

34.):

"Thank you for contacting The White House regarding your concerns surrounding the U.S. passport application process.  This response assumes that your concerns surround the social security number requirement on U.S. passport applications. Your inquiry was forwarded to this office for response.

Pursuant to 22 U.S.C. 2714a, passport applicants must provide their social security number (SSN) on their application, if they have been issued one.  Failure to provide the SSN, or "willfully, intentionally, negligently, or recklessly" providing an incorrect or invalid SSN will result in the denial of the application.

See 22 C.F.R. 51.60 (f).  Pursuant to 22 C.F.R. 51.70, a hearing is not provided for applications denied or passports revoked for failure to provide a social security number.  However, if the applicant does not have a social security number and has never been issued one, they cannot provide one on their application.  However, in such an instance they are required to provide a declaration signed under penalty of perjury explaining the reasons.  You may also see the FAQs found at https://travel.state.gov/content/travel/en/passports /apply-renew-passport/faqs.html#ssn for additional information.

## VII.    Plaintiffs Are Entitled To Declaration, Injunction or Other Relief as Partial Summary Judgment For Their First Cause of Action

58.    The plaintiffs are entitled to declaratory judgment and partial summary judgment on the

first cause of action.  This is a case of genuine controversy within the court's jurisdiction.  There

is statutory authority to support the Court's subject matter jurisdiction according to the

complaint's facts and merits.  The Court has delegated and inherent power to provide relief and

further remedy.  (28  § 1331, Federal Question; 28 U.S.C. § 1346, United States as Defendant;

28 U.S.C. § 1361, Action to compel an officer of the United States to perform his duty; 28

U.S.C. § 2201, Declaratory Judgments – Creation of Remedy;  28 U.S.C. § 2202, Declaratory

Judgments – Further Relief,  or Alternatively 5 U.S.C. § 552a, Records Maintained On

Individuals, 5 U.S.C. § 552a,  5 U.S.C. § 702, Right of Review, 5 U.S.C. § 703, Form and Venue

of Proceeding, 5 U.S.C. § 704, Actions Reviewable, 5 U.S.C. § 705, Relief Pending Review, 5

U.S.C. § 706, Scope of Review, 22 U.S.C. § 211a, Authority to grant, issue, and verify

passports)

59.    The material facts for which there is no genuine issue support the Plaintiffs' motion.  The

Plaintiffs' belief and practice of not identifying with a SSN is clearly based upon sincere and

bona fide beliefs and practices of religion.  The first amendment to the constitution of the United

States of America protects the free exercise of religion.  The passport statute 22 U.S.C. § 2721

imposes a duty on the Defendant to not deny the Plaintiffs' passports and the 22 U.S.C. § 2714a

allows for an accommodation and does not prohibit accommodation.  The Defendant is compelled to apply the E.O. 13798,  by 22 U.S.C. § 211a which requires the secretary to grant, issue, and verify passports "under such rules as the President shall designate and prescribe for and on behalf of the United States."

60.    There is no need for the Plaintiffs to reapply for a passport since the Secretary has the power to administratively re-open a previously filed passport in order to issue a passport, according to 22 C.F.R. 22 C.F.R. § 51.65(c).

61.    The Court has the jurisdiction to declare the rights of the Plaintiffs as a matter of the First Cause of Action in their Complaint (paras. ) whether or not further relief is sought 28 U.S.C. § 2201 (Declaratory Judgments – Creation of Remedy).

62.    The Court has the original jurisdiction in this action in the nature of injunction or mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff 28 U.S.C. § 1361, or by injunction under the Administrative Procedures Act, 5 U.S.C. §701-706, *inter alia.*

## VIII.  Plaintiffs' Move For Declaration

63.    We, the Plaintiffs, move that the court Declare:

a.    The material facts for which there is no genuine issue show the Plaintiffs have a sincerely held, bona fide belief and practice of religion that prohibits them from identifying with a SSN.

b.    The first amendment to the constitution of the United States of America protects the free exercise of religion.

c.    The passport statute 22 U.S.C. § 2721 imposes a duty on the Defendant to not deny the Plaintiffs' passports, since the reason for their not identifying with a SSN in block five of

the passport or passport renewal forms, or any other form, was due to religion.

    d.   The passport statute 22 U.S.C. § 2714a allows for an accommodation of Plaintiffs

practice of religion, and does not compel the Defendant to prohibit accommodation.

    e.   The Defendant is compelled by 22 U.S.C. § 211a to apply the directives of E.O.

13798, a rule as the President shall designate and prescribe for and on behalf of the United

States, to provide accommodation for religion in the context and application of the

"MEMORANDUM FOR ALL DEPARTMENTS AND AGENCIES, *Federal Law*

*Protections For Religious Liberty* promulgated by the United States Attorney General (Oct.

6, 2017) .

    f.   The Defendants issuing passports to those who have never been associated with a

SSN yet denying it to the Plaintiffs who cannot identify with a SSN on the basis of religion,

shows hostility to the Plaintiffs on account of their religion or hostility to that exercise of

religion.

> The "good cause" standard created a mechanism for individualized exemptions. If
> a state creates such a mechanism, its refusal to extend an exemption to an instance
> of religious hardship suggests a discriminatory intent. Thus, as was urged
> in Thomas, to consider a religiously motivated resignation to be "without good
> cause" tends to exhibit hostility, not neutrality, towards religion. See Brief for
> Petitioner 15, and Brief for American Jewish Congress as Amicus Curiae 11,
> in *Thomas v. Review Board of Indiana Employment Security Div.*, O. T. 1979, No.
> 79-952. See also *Sherbert*, supra, at 401-402, n. 4; *United States v. Lee*, 455 U. S.,
> at 264, n. 3 (STEVENS, J., concurring in judgment) (Thomas and Sherbert may
> be viewed "as a protection against unequal treatment rather than a grant of
> favored treatment for the members of the religious sect"). In those cases,
> therefore, it was appropriate to require the State to demonstrate a compelling
> reason for denying the requested exemption. *Bowen v. Roy*, 476 U.S. 796, 707-
> 708 (1986)

    g.   The Defendant's interest in efficiency, or difficulty, preferred methods, are not sound

and are groundless since the Plaintiffs not identifying with a SSN has no effect on their being

reasonably identified for the purposes of the passport, it does not make them a danger to

national security, and it is admitted by the Defendants' forms that others who do not identify

with a SSN for technically legal reasons are not denied passports on that basis.

h.   The Defendants violated 22 U.S.C. § 2721 when they denied the Plaintiffs' passports

solely for their not identifying with a SSN in block five of the SSN or on an affidavit

preferred by the Defendant.  The Defendants' actions were at least arbitrary, capricious,

without any rational basis and contrary to law, regulation and mandatory published

procedure.  The Plaintiffs were seriously prejudiced, resulting in the unlawful revocation or

denial of their passport renewal applications.  It causes injury to their property and liberty

rights in travel.

i.   The Revocation of Carmichael's passport is voidable as a matter of law since it was

contrary to the express law of 22 U.S.C. §2721 and the application of other law, regulations,

policies or orders protecting religion.  Plaintiff Carmichael is entitled to the voiding of the

revocation of his passport, notwithstanding his refusal to identify with a SSN as a matter of

religion, to provide a portion of the relief that he seeks.

j.   The denial of the passports of Plaintiffs Lewis and Pakosz was a violation of the

express law of 22 U.S.C. §2721 and the application of other law, regulations, policies or

orders protecting religion.  Plaintiffs Lewis and Pakosz are entitled to the approval of their

passport renewal applications, notwithstanding their refusal to identify with a SSN as a

matter of religion, to provide a portion of the relief that they seek.

64.   The Plaintiffs hereby reserve the right to further remedy and relief, and to address

the facts and law regarding second through ninth causes of action after an opportunity to

confer with the Defendant upon the application of the effects of partial summary

judgment, declaration and injunction on the first cause of action.

I, David Alan Carmichael, declare that I have conferred with the two other plaintiffs on this

*Plaintiffs' Combined Memorandum In Support of:  Response to Defendants' Motions to Dismiss*

*Rule 12(b)(1) and (6), or In The Alternative For Summary Judgment under Rule 56; and*

*Plaintiffs Cross-Motion for Declaratory Partial Summary Judgment and Injunction On The First*

*Cause of Action.*  I agree with them that this is our response to the Defendants' motions and our

desire for partial relief, with reservation for further relief.


Signed *David Alan Carmichael*          Date: *February 19, 2020*

David Alan Carmichael
1748 Old Buckroe Road
Hampton, Virginia   23664
(757) 850-2672
david@freedomministries.life

I, William Mitchell Pakosz, declare that I have conferred with the two other plaintiffs on this

*Plaintiffs' Combined Memorandum In Support of: Response to Defendants' Motions to Dismiss*

*Rule 12(b)(1) and (6), or In The Alternative For Summary Judgment under Rule 56; and*

*Plaintiffs Cross-Motion for Declaratory Partial Summary Judgment and Injunction On The First*

*Cause of Action.* I agree with them that this is our response to the Defendants' motions and our

desire for partial relief, with reservation for further relief.


Signed _William M. Pakosz_          Date: _18 Feb 2020_
        William Mitchell Pakosz
        P.O. Box 25
        Matteson, Illinois  60443

I, Lawrence Donald Lewis, declare that I have conferred with the two other plaintiffs on this

*Plaintiffs' Combined Memorandum In Support of:  Response to Defendants' Motions to Dismiss*

*Rule 12(b)(1) and (6), or In The Alternative For Summary Judgment under Rule 56; and*

*Plaintiffs Cross-Motion for Declaratory Partial Summary Judgment and Injunction.*  I agree with

them that this is our response to the Defendants' motions and our desire for partial relief, with

reservation for further relief.  .

Signed _Lawrence Donald Lewis_      Date: _17 FEB 2020_

Lawrence Donald Lewis
966 Bourbon Lane
Nordman, Idaho  83848
(208) 443-3852
larrynordlewis@povn.com