**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| DAVID ALAN CARMICHAEL, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 19-2316 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 24, 28 |
| | : | | |
| MICHAEL RICHARD POMPEO, in his | : | | |
| Official capacity as Secretary of State, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING
PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT AND INJUNCTION; DENYING
PLAINTIFFS' ADDITIONAL PENDING MOTIONS**

**I. INTRODUCTION**

This case concerns Plaintiffs David Alan Carmichael, Lawrence Donald Lewis, and

Mitchell Pakosz ("Plaintiffs") and Defendants Michael Richard Pompeo, sued in his official

capacity as Secretary of State, and the U.S. Department of State ("the Government").

Carmichael, Lewis, and Pakosz attempted to renew their U.S. passports in 2018, 2019, and 2017

respectively, and each requested a religious accommodation from the requirement that they

provide their social security numbers on their passport renewal applications.  Carmichael, Lewis,

and Pakosz assert that identifying with a social security number is prohibited by their Christian

faith.  While Carmichael's renewed passport was initially granted, it was later revoked after the

Government determined that Carmichael had not provided his social security number in his

renewal application, and his passport had thus been issued erroneously.  Lewis and Pakosz's

passport renewal applications were denied for failure to provide social security numbers.

Carmichael, Lewis, and Pakosz brought nine causes of action against the Government under the U.S. Constitution and various federal statutes, including the First Amendment, the Fifth Amendment, the Ninth Amendment, the Foreign Relations Authorization Act, the Religious Freedom Restoration Act, the Privacy Act, Executive Order 13798, and federal criminal statutes. The Government has moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim, or, in the alternative, for summary judgment.  In response, Carmichael, Lewis, and Pakosz move for partial summary judgment and ask for an injunction on their first cause of action under the Foreign Relations Authorization Act.  For the reasons set forth below, the Court largely grants the Government's motion to dismiss and denies Plaintiffs' motion for partial summary judgment.  However, the Court finds that Plaintiffs state a proper claim under the Religious Freedom Restoration Act and that the Government is not entitled to summary judgment on that claim.  Additionally, the Court finds that Plaintiffs have properly stated a claim under the Privacy Act.

## II.  FACTUAL BACKGROUND

In 2007 Plaintiffs Carmichael and Pakosz applied for U.S. passports, and both men asked for a religious accommodation exempting them from the requirement that they provide their social security number on the application.  Am. Compl. ¶¶ 16–17, ECF No. 15.  Plaintiff Lewis did the same in 2008.  *Id.* ¶ 18.  All three plaintiffs received passports, despite not including their social security numbers on their passport applications.  *Id.* ¶¶ 16–18.  Carmichael, Lewis, and Pakosz assert that they are "prohibited from identifying with a Social Security Number . . . on the basis of the Christian religion" and "[a]ny demand for either of them to identify with a [social security number] places a substantial burden upon their religion."  *Id.* ¶ 14.  While Carmichael, Lewis, and Pakosz allege that they were granted a religious accommodation when they were

originally issued passports, *see id.* ¶¶ 16–18, the Government asserts that "[t]here was no consideration of [a] claim for a religious accommodation," and applicants were not required to provide social security numbers in their passport applications at that time, Rolbin Decl. ¶ 4, ECF No. 24–2.  However, The Government notes that the Fixing America's Surface Transportation ("FAST") Act, enacted in 2015, granted the Government the authority to "deny a passport application if the applicant fails to provide their [social security number]."  *Id.*

In 2018, Carmichael applied to renew his passport, and, again, he requested a religious accommodation to the requirement that he provide his social security number in his passport renewal application.  Am. Compl. ¶ 19.  Lewis and Pakosz applied to renew their passports, also including a request for a religious accommodation, in 2019 and 2017, respectively.  *Id.* ¶¶ 20–21.  With their passport renewal applications, Carmichael, Lewis, and Pakosz sent letters to the Government explaining why identifying with a social security number violated their religious beliefs.  *See id.* ¶¶ 19, 42–43, 55, 57.  Plaintiffs' passport renewal applications were also accompanied by a "Privacy Act Statement" from the Government that outlined the authority under which the Government requested Plaintiffs' social security numbers, the purpose of requesting the social security numbers, and a non-exhaustive list of routine uses for information collected from passport renewal applications.  *Id.* ¶ 104; *see also* Pls.' Mem. Supp. Resp. Mot. Dismiss and Cross Mot. Summ. J. ("Pls.' Mem."), ¶ 57(ii), ECF No. 27–1 (reproducing the statement as an undisputed fact).  The "Privacy Act Statement" also included a statement that, while providing the requested information was voluntary, failing to provide that information could result in a processing delay or application denial.  Am. Compl. ¶ 104; *see also* Pls.' Mem. ¶ 57(ii).

Carmichael's passport renewal was approved, and his renewed passport was issued in January 2018 without Carmichael providing his social security number on his application. Am. Compl. ¶ 19. However, the Government contacted Lewis and Pakosz, asking each to either provide his social security number or sign a statement that he had never been issued one. *Id.* ¶¶ 46, 56. Both Lewis and Pakosz responded that they could not sign a statement that they had never been issued a social security number and reiterated their request for a religious accommodation. *See id.* ¶¶ 47, 56–67. Both Lewis and Pakosz's passport renewal applications were subsequently denied. *Id.* ¶¶ 49, 68. Neither Lewis nor Pakosz was given the opportunity to appeal the denial. *Id.* ¶¶ 26, 82; *see also id.* ¶ 124 (asserting that all three Plaintiffs were denied an appeal process).

After Pakosz's application was denied, Pakosz contacted Carmichael for assistance, and, on Pakosz's behalf, Carmichael spoke to an employee of the Government who stated that there was no appeal process for the denial of a religious accommodation. *Id.* ¶¶ 26–27. Carmichael and Pakosz then filed Freedom of Information Act ("FOIA") requests for the names and contact information of Department employees involved in processing passport applications, *see id.* ¶¶ 29, 73, and sent letters to various politicians, including President Donald Trump and Vice President Mike Pence, among others, further explaining their request for a religious accommodation, *id.* ¶¶ 31, 69–71, 76–79, 86. Enclosed with one letter to the Government, Pakosz states that he "sent information that explains the SSN offence against religion in a document called 'The Mark of The Beast . . . It Is Here, Now.'" *Id.* ¶ 69.

Approximately three months later, Carmichael received a letter from the Government stating that his renewed passport had been issued erroneously because he did not provide his social security number in his passport renewal application, that his passport had been revoked

pursuant to 22 C.F.R. § 51.62(a)(2), and that he could request an appeal hearing.  *Id.* ¶ 33.

Carmichael seemingly did not request a hearing.  Def. Mot. Dismiss ("Gov't Mot.") at 20, ECF

No. 24; *see also* Am. Compl. (nowhere mentioning that Carmichael availed himself of this

opportunity for a hearing).

Carmichael brought this action on July 31, 2019, *see* Compl., ECF No. 1, and Plaintiffs

Lewis and Pakosz were added to this action in November 2019, *see* Order, ECF, No. 11.

Carmichael, Lewis, and Pakosz filed their amended complaint in December 2019, in which they

raise nine causes of action under the United States Constitution and various federal laws.  *See*

Am. Compl.  The Government now moves to dismiss, or in the alternative for summary

judgment, on all nine causes.  *See* Gov't Mot.  Carmichael, Lewis, and Pakosz move for partial

summary judgment and request an injunction on their first cause of action under the Foreign

Relations Authorization Act.  *See* Pls. Mem.

## III.  LEGAL STANDARD

Federal courts have subject-matter jurisdiction where a claim "arises under" federal law.

*Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808 (1986).  "Rule 12(b)(1) presents a

threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine

whether it has subject-matter jurisdiction in the first instance."  *Curran v. Holder*, 626 F. Supp.

2d 30, 32 (D.D.C. 2009) (quoting *Agrocomplect, AD v. Republic of Iraq*, 524 F. Supp. 2d 16, 21

(D.D.C. 2007)).  Subject-matter jurisdiction cannot be waived, and "[w]hile pro se complaints

are held to a less stringent standard than other complaints, even a pro se plaintiff bears the

burden of establishing that the Court has subject-matter jurisdiction."  *Id.* at 33 (citations and

internal quotations omitted); *see also Jathoul v. Clinton*, 880 F. Supp. 2d 168, 170 (D.D.C. 2012)

("To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear her claims.").

To evaluate "a motion to dismiss under Rule 12(b)(1), [courts] must treat the complaint's factual allegations as true . . . [granting] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Clinton*, 880 F. Supp. 2d at 169 (internal quotations omitted) (quoting *Sparrow v. United Air Lines*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)).  Courts are not required to accept "legal conclusion[s] couched as factual allegations[s]" as true. *Id.* (quoting *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006)).  Dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction is justified where a claim is "'immaterial and made solely for the purpose of obtaining jurisdiction' or [it] is 'wholly insubstantial and frivolous.'" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n. 10 (2006) (quoting *Bell v. Hood*, 327 U.S. 678, 682–3 (1946)).

The Federal Rules of Civil Procedure also require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  It is not necessary for the plaintiff to plead all elements of her prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

Finally, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324.  In considering a motion for summary judgment, a court must

"eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.  Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## IV.  ANALYSIS

### A.  Plaintiffs' First Cause of Action

First, Plaintiffs claim that the Government violated 22 U.S.C. § 2721 by denying Pakosz and Lewis's passport renewal applications and revoking Carmichael's passport after they failed to provide their social security numbers on their passport renewal applications.  Am. Compl. ¶¶ 114–16.  22 U.S.C. § 2721 provides that "[a] passport may not be denied issuance, revoked, restricted, or otherwise limited because of any speech, activity, belief, affiliation, or membership within or outside the United States, which, if held or conducted within the United States, would be protected by the first amendment . . . ."  22 U.S.C. § 2721.

The Government's correspondence with Plaintiffs indicate that Lewis and Pakosz's passport renewal applications were denied because they did not include their social security numbers on the renewal application.  Am. Compl. ¶¶ 49, 68.  Furthermore, the Government's correspondence with Carmichael indicates that Carmichael's passport was revoked because he also did not provide his social security number on his renewal application and, thus, his passport had been erroneously issued.  *Id.* ¶ 33.

The Government acted within its authority to deny passports to applicants who fail to provide their social security numbers, *see* 22 C.F.R. § 51.60(f); *see also* 22 U.S.C. § 2714a(f)(1), and to revoke passports that have been issued erroneously, *see* 22 C.F.R. § 51.62; *see also* 22

U.S.C. § 2714a(f)(2).  Plaintiffs do not cite any facts suggesting that the Government instead

denied and revoked their passports because of their religious belief.  To the extent that Plaintiffs

claim that requiring them to provide their social security numbers on their passport renewal

applications burdens their religious beliefs, that claim is addressed below in the Court's

discussion of the Religious Freedom Restoration Act.  Because Plaintiffs have not alleged

sufficient facts to plausibly establish that the Government denied their passport application

because of any religious beliefs, the Court grants the Government's motion to dismiss on

Plaintiffs' first cause of action.  The Court denies Plaintiffs' cross motion for partial summary

judgment and injunction on their first cause of action.

## B.  Plaintiffs' Second Cause of Action

Plaintiffs also allege that the Government violated the Religious Freedom Restoration

Act ("RFRA") by "demanding that [they] identify [themselves] with a Social Security Number,"

which their religious beliefs prohibit.  Am. Compl. ¶ 118.

RFRA states that the "[g]overnment shall not substantially burden a person's exercise of

religion even if the burden results from a rule of general applicability," unless the government

can demonstrate that it "is in furtherance of a compelling governmental interest [and] is the least

restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a)-

(b)(1).  Under RFRA a plaintiff must first establish that a government action substantially

burdens his exercise of religion.  *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 281

F. Supp. 3d 88, 114 (D.D.C. 2017) (citing *Henderson v. Stanton*, 76 F. Supp. 2d 10, 14 (D.D.C.

1999)).  After this initial hurdle is met, the burden then shifts to the government to show that the

challenged action uses the least restrictive means to further a compelling government interest.

*Id.*  Importantly, rather than a categorical strict scrutiny analysis, "RFRA requires the

Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–31 (2006) (quoting 42 U.S.C. § 2000bb–1(b)).  Courts must look "beyond broadly formulated interests justifying the general applicability of government mandates and scrutinize[] the asserted harm of granting specific exemption to particular religious claimants." *Id.* at 431.

"A substantial burden exists when government action puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981)).  Similarly, a substantial burden exists where government action "require[s] [a] plaintiff 'to choose between following the tenets of [his] religion and receiving a governmental benefit.'" *Singh v. McHugh*, 185 F. Supp. 3d 201, 217 (D.D.C. 2016) (quoting *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1070 (9th Cir. 2008)).  "Religious exercise necessarily involves an action or practice" and, therefore, a plaintiff must allege "that he is put to a choice" between complying with a government requirement and violating his religious beliefs.  *Kaemmerling*, 553 F.3d at 679; *see also Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (finding that correctional department grooming policy required choice between violating religious beliefs or facing disciplinary action).

If a substantial burden is established, RFRA requires the Government to show that its action "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb–1(b).  The government must demonstrate the least restrictive means of furthering a compelling governmental interest with respect to the particular plaintiff objecting.  *See Burwell v. Hobby*

*Lobby Stores, Inc.*, 573 U.S. 682, 728, (2014) ("HHS has not shown that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by *the objecting parties in these cases*") (emphasis added).  The standard is "exceptionally demanding."  *Id.*

Plaintiffs assert that requiring them to identify with a social security number on their passport renewal applications substantially burdens an exercise of their religious beliefs.  Am. Compl.  ¶ 14.  Specifically, Plaintiffs allege that identifying with a social security number "is prohibited in the Revealed law" to which they adhere.  *Id.* ¶ 118.  The Government argues that Plaintiffs have failed to establish a substantial burden on their religious exercise under RFRA because the social security number requirement "does not pressure Plaintiffs to change their behavior and violate their religion," and, instead, Plaintiffs' "claim seeks only to require the government itself to conduct its affairs in conformance with [their] religion."  Gov't Mot. at 11.

The Government argument primarily relies on two cases.  *See id.* at 9–10.  First, the Government points to *Bowen v. Roy*, a Supreme Court case that predates the passage of RFRA. In *Bowen*, the plaintiff asserted that the government's *use* of a social security number for his two-year-old daughter violated his religious beliefs and would harm her spirit.  476 U.S. 693, 699 (1986).  The Court determined that "[t]he Free Exercise Clause affords an individual protection from certain forms of governmental compulsion; it does not afford an individual a right to dictate the conduct of the Government's internal procedures."  *Id.* at 700.  In other words, the government's use of the social security number did not affect the plaintiff's behavior or ability to exercise his religious beliefs.  *Id.* at 699–700 ("Just as the Government may not insist that appellees engage in any set of religious observance, so appellees may not demand that

the Government join in their chosen religious practices by refraining from using a number to identify their daughter.").

The plaintiff in *Bowen* also challenged the requirement that he *provide* a social security number for his daughter to receive welfare benefits. *Id.* at 701. On this question three justices— Chief Justice Burger and Justices Powell and Rehnquist——applied a lower standard than strict scrutiny and concluded that requiring the plaintiff to provide a social security number "promote[d] a legitimate and important public interest" in preventing fraud. *Id.* at 709. This approach was "expressly rejected by five Justices." *Leahy v. District of Columbia*, 833 F.2d 1046, 1049 (D.C. Cir. 1987). In *Leahy*, where the plaintiff challenged the requirement that he *provide* a social security number to obtain a driver's license, this Circuit clarified that "the compelling state interest test . . . continues to define the Supreme Court's free exercise clause jurisprudence." 833 F.2d at 1049. RFRA later statutorily adopted the strict scrutiny standard. *See* 42 U.S.C. § 2000bb-1 (requiring government actions that "substantially burden a person's exercise of religion" to be "in furtherance of a *compelling governmental interest*" and use "the *least restrictive means*") (emphasis added).

The Government then points to *Kaemmerling v. Lappin*, a D.C. Circuit case where the court rejected the plaintiff's RFRA claim that the extraction and storage of his DNA information by the Federal Bureau of Prisons substantially burdened his religious exercise. 553 F.3d at 679. The D.C. Circuit noted that "[t]he extraction and storage of DNA information are entirely activities of the FBI, in which Kaemmerling plays no role and which occur after the BOP has taken his fluid or tissue sample (to which he does not object)." *Id.* Thus, the government's actions could not "be said to hamper his religious exercise because they [did] not 'pressure [him] to modify his behavior and to violate his beliefs.'" *Id.* (quoting *Thomas*, 450 U.S. at 718). Like

the government's use of social security numbers in *Bowen*, 476 U.S. at 700, the extraction of DNA information, while objectionable to the plaintiff, involved solely internal government actions that did not affect the plaintiff's ability to exercise his religious beliefs or require action contrary to those beliefs, 553 F.3d 679.

These cases support Plaintiffs' position more than the Government's.  In *Bowen*, the Court did not rule on the plaintiff's claim that providing his daughter's social security number violated his religious beliefs.  Plaintiffs here do not challenge the Government's internal use of social security numbers; they challenge the requirement that they provide a social security number on their passport applications.  *See* Am. Compl. ¶ 118.  As such, *Bowen's* majority opinion does not control.  The other case the Government points to, *Kaemmerling*, similarly does not support the Government's position.  There the plaintiff did not object to the collection of "his fluid or tissue samples."  553 F.3d at 679.  Instead, he objected to the government's use of those samples subsequent to the collection.  *Id.*  Because everything after collection involved only government action, the plaintiff's behavior required no modification and thus was not substantially burdened.  *Id.*  Here, in contrast, Plaintiffs do object to identifying themselves with and providing social security numbers.  They must choose between adhering to their religious beliefs—the sincerity of which is not challenged by the Government nor questioned by the Court—and receiving a government benefit.  Accepting as true the factual allegation made in the amended complaint and construing them in Plaintiffs' favor, the Court finds that Plaintiffs have alleged sufficient facts to state a claim under RFRA.  *See Singh*, 185 F. Supp. 3d at 217.  Accordingly, the Court will deny the Government's motion to dismiss on this claim.

The Government argues in the alternative that it is entitled to summary judgment on Plaintiffs' RFRA claim based on the submitted declarations of government officials.  Gov't Mot.

at 11–15.  The Court finds that these declarations do not meet the "exceptionally demanding"

standard required by RFRA.  While the Court understands that the declarations assert a

compelling government interest in requiring social security numbers on passport applications,

*see id.* (describing the anti-fraud purposes of the social security number requirement), the

submitted evidence does not engage in the "more focused" inquiry required by RFRA.  *Burwell*,

573 U.S. at 726.  RFRA requires a strict scrutiny analysis as applied to the person whose exercise

of religion is being burdened.  *Id.*  The submitted declarations fail to explain why the interest is

so compelling given that social security numbers were not required until relatively recently.  Nor

do they show that the government lacks other means of achieving its desired goals without

imposing a substantial burden on the exercise of religion by these Plaintiffs.  *Id.* at 728.  In fact,

the declaration describing the government interests in requiring social security numbers does not

mention Plaintiffs at all.  *See* Fultz Decl., ECF No. 24-3.  Perhaps this is because the record

suggests that Plaintiffs' requests for religious accommodations were not seriously considered on

their merits when submitted.  Accordingly, the Government is not entitled to summary judgment

on Plaintiffs' RFRA claim.

### C.  Plaintiffs' Third Cause of Action

Third, Plaintiffs assert that the Government violated Executive Order 13,798, which, in

part, directs executive agencies, "to the greatest extent practicable and to the extent permitted by

law, [to] respect and protect the freedom of persons and organizations to engage in religious and

political speech."  Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017).  Executive Order

13,798 does not create a private right of action.  *Id.*  ("This order is not intended to, and does not,

create any right or benefit, substantive or procedural, enforceable at law or in equity by any party

against the United States, its departments, agencies, or entities, its officers, employees, or agents,

or any other person.").  Accordingly, the Court grants the Government's motion to dismiss with respect to Plaintiffs' third cause of action.

### D.  Plaintiffs' Fourth Cause of Action

Plaintiffs also allege that they were denied due process guaranteed by the Fifth Amendment when the Government "deni[ed] access to the appeal process pursuant to 22 [C.F.R.] § 51.70(b)(2)" after Carmichael's renewed passport was revoked and Lewis and Pakosz's passport renewal applications were denied.  Am. Compl. ¶ 124.

"For a procedural due process claim to survive a 12(b)(6) motion, a plaintiff must, at minimum, 'identify the process that is due.'"  *Gonzalez Boisson v. Pompeo*, Civil No. 19- 2105, 2020 WL 2043889, at *7 (D.D.C. April 28, 2020) (quoting *Doe v. District of Columbia*, 93 F.3d 861, 870 (D.C. Cir. 1996)).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  However, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  To determine whether due process was granted, courts must consider three factors:  (1) "the private interest that will be affected by the official action";  (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards";  and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that [an] additional or substitute procedural requirement would entail."  *Id.* at 335.

In *Haig v. Agee*, the Supreme Court concluded that a passport holder received adequate due process when he received notice as to why his passport was being revoked and was given the opportunity to request a post-revocation hearing.  *See* 453 U.S. 280, 310 (1981) ("[t]he

Constitution's due process guarantees call for no more than . . . a statement of reasons and an opportunity for a prompt post[-]revocation hearing."); *see also Gonzalez*, 2020 WL 2043889 at *7–8 (finding that Gonzalez received adequate due process when she was informed that her passport had been issued erroneously, that it had been revoked under 22 C.F.R. § 51.62(a)(2), and that she could request a hearing). *Haig* also distinguished the freedom of interstate travel from "the 'right' of international travel [which] has been considered to be no more than an aspect of the 'liberty' . . . . [that] can be regulated within the bounds of due process." *Haig*, 453 U.S. at 306–07 (quoting *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978)); *see also Gonzalez*, 2020 WL 2043889 at *8 (explaining that, under the *Mathews* factors, while Gonzalez had a significant interest in international travel, the government had a strong interest in preventing fraud in passport applications).

Plaintiffs assert that they were improperly denied an appeal process under 22 C.F.R. § 51.70(b)(2).[1]  Am. Compl. ¶ 124.  Plaintiffs argue that denying them an appeal process violates their right to due process under the Fifth Amendment.  *Id.*  The Government asserts that the process outlined by its regulations meet the requirements of due process because they are

---

[1] The Government's regulations do not grant appeal hearings to individuals whose passports are revoked or denied for "failure to provide a social security number." 22 C.F.R. § 51.70(b)(2).  While Plaintiffs dispute the characterization that they failed to provide their social security numbers and assert that they, instead, provided "the social security number information that applies to" them, Am. Compl. ¶ 124, neither Carmichael, Lewis, nor Pakosz provided his social security number in his passport renewal application.  *See id.* ¶¶ 19–21 (stating that all three plaintiffs requested a religious accommodation rather than provided their social security numbers).  Accordingly, the Government properly applied 22 C.F.R. § 51.70(b)(2) to Lewis and Pakosz.  The Government, however, did not apply 22 C.F.R. § 51.70(b)(2) to Carmichael.  *See id.* ¶ 33; *see also* Pls.' Mem. ¶ 57(oo).  Carmichael's passport was revoked pursuant to 22 C.F.R. § 51.62(a)(2) *because it was issued erroneously*, and he was thus given the opportunity to request a hearing under 22 C.F.R. § 51.70(a).  Am. Comp. ¶ 33; *see also* Pls.' Mem. ¶ 57(oo).

consistent with *Haig*, that all three Plaintiffs received notice of the revocation and denials, and

that Carmichael received the opportunity for a post-revocation hearing.  Gov't Mot. at 18–20.

The Government also notes that while Lewis and Pakosz may have been denied the opportunity

for a hearing, "the Government unquestionably provided [them] the opportunity to submit [their

social security number] or submit a declaration that they had never been issued one."  *Id.* at 19–

20.

Carmichael received a letter from the Government notifying him that his passport had

been issued erroneously, that it had been revoked pursuant to 22 C.F.R. § 51.62(a)(2), and that he

had the ability to request a post-revocation hearing.  Am. Compl. ¶ 33; *see also* Gov't Mot. at 20.

This notice is identical to the procedures found to have met the demands of due process in *Haig*.

Accordingly, Carmichael has failed to state a claim that he was denied due process, and the

Court grants the Government's motion to dismiss on Carmichael's due process claim.

While the post-revocation procedures afforded to Carmichael are identical to those found

to be sufficient in *Haig*, the same cannot be said for Lewis and Pakosz.  Unlike in *Haig*, Lewis

and Pakosz assert that they were not given the opportunity for a hearing.  Am. Compl. ¶¶ 124–

25.  The Government suggests this presents no due process problem because Lewis and Pakosz

were "unquestionably provided . . . the opportunity to submit the requested information or

submit a declaration that they had never been issued [a social security number]."  Gov't Mot. at

19–20.  But the Court understands Lewis and Pakosz to claim that due process requires a hearing

regarding their request for a religious accommodation.  The Government does not engage with

this allegation.  While Government regulations provide the authority to deny passport

applications that do not have a social security number, 22 U.S.C. § 2714a(f); *see also* 22 C.F.R.

§ 51.60(f), Lewis and Pakosz have pointed to a separate and specific procedural defect that they

say violates their right to due process.  The Government relies on its regulations to argue that a hearing is not required in these circumstances, but the lack of a social security number on their applications is inextricably intertwined with their request for a religious accommodation.  Unlike Carmichael, Lewis and Pakosz had no opportunity for a hearing to explain their request.  *See Bauer v. Acheson*, 106 F. Supp. 445, 452 (D.D.C. 1952) (finding that "refusal to renew [a] passport without an opportunity to be heard, was without authority of law").  Because the amended complaint has identified the process due and alleged the denial of an opportunity to be heard, the Court finds that Plaintiffs have properly stated a due process claim with respect to Lewis and Pakosz.  *Mathews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard."); *Gonzalez*, 2020 WL 2043889, at *7.

The Court will grant Plaintiffs leave to amend their complaint with respect to their fourth cause of action related to Carmichael's passport revocation, noting that, to survive a subsequent motion to dismiss, they must allege sufficient facts that demonstrate that the procedure Carmichael received was constitutionally defective.

### E.  Plaintiffs' Fifth Cause of Action

Next, Plaintiffs challenge 22 C.F.R. §§ 51.60, 51.70 as overbroad in violation of the First and Fifth Amendments to the U.S. Constitution.  Am. Compl. ¶¶ 126–28.  A challenge that a law is overbroad is a "type of facial challenge in the First Amendment context under which a law may be overturned as impermissibly overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (citing *New York v. Ferber*, 458 U.S. 747, 769–71 (1982)) (internal quotations omitted).  A similar, though distinct, doctrine exists in the due process context where a law may be void for vagueness if it does not

define "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Beckles v. United States*, 137 S. Ct. 886, 892 (2017) (citations omitted); *see also FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("[The Due Process Clause of the Fifth Amendment] requires the invalidation of laws that are impermissibly vague.").  It is not clear whether Plaintiffs sought to invoke either of these doctrines that allow for facial challenges.  *See* Am. Compl. ¶¶ 126–28 (asserting that regulations are overbroad but resulted "in the unlawful denial of *my* passport renewal application[]") (emphasis added).  The first challenged regulation gives the Government the authority to deny passports to those who fail to provide their social security number in their passport applications.  22 C.F.R. § 51.60(f).  The second states that where passport applications were denied or were revoked for a non-exhaustive list of reasons, including failing to provide a social security number, the applicant does not receive an opportunity for a hearing.  22 C.F.R. § 51.70(b)(2).

Plaintiffs allege that, by applying 22 C.F.R. §§ 51.60, 51.70, the Government is "violating the law of due process protected by the Fifth Amendment," Am. Compl. ¶ 127, and that the Government's actions under 22 C.F.R. §§ 51.60, 51.70 fall outside "the boundaries of the United States Constitution," *id.* ¶ 128.  Thus, Plaintiffs claim that the Government's actions under 22 C.F.R. §§ 51.60, 51.70 resulted in the unlawful denial and revocation of their passports and injured their "property and liberty rights in travel."  *Id.*  These allegations do not support a facial challenge to the regulations as overly broad or impermissibly vague.  Plaintiffs do not explain how the challenged regulations are unconstitutional in a "substantial number of [their] applications" in violation of the First Amendment.  *Wash. State Grange*, 552 U.S. at 449 n.6.  Nor do they explain how the regulations sweep too broadly or too vaguely in the context of due

process.  Because Plaintiffs do not expand beyond their conclusory legal allegations, the Court

grants the Government's motion to dismiss with respect to Plaintiffs' fifth cause of action.  To

the extent that Plaintiffs allege that 22 C.F.R. §§ 51.60 and 51.70 resulted in a violation of their

rights to due process as applied, that claim is addressed in the Court's analysis of Plaintiffs'

fourth cause of action.

### F.  Plaintiffs' Seventh Cause of Action

Plaintiffs also allege that the Government violated the Privacy Act by failing to state the

circumstances under which providing a social security number on a passport application is

mandatory and the circumstances under which providing that information is voluntary.  *Id.* ¶ 133.

Plaintiffs' Privacy Act claim pertains to the requirements under 5 U.S.C. § 552a(e)(3), which

states in relevant part that agencies must "inform each individual whom it asks to supply

information . . . whether disclosure of such information is mandatory or voluntary."  5 U.S.C.

§ 552a(e)(3)(A).  Plaintiffs allege that the Privacy Act Statement that they received failed "to

correctly state in what conditions make [disclosure of a social security number] voluntary and

what make[s] [disclosure] mandatory."  *See* Am. Compl. ¶ 133.  The Court understands

Plaintiffs' claim to be that while the Privacy Act Statement indicates that providing a social

security number is voluntary, it is in fact mandatory and, therefore, the Government has not

complied with the statutory requirements.

The Government does not squarely address Plaintiffs' argument that because disclosure

of a social security number is apparently required, the Privacy Act Statement is deficient.

Instead, the Government argues that because the Privacy Act Statement contains all the elements

required by statute, Plaintiffs have not properly stated a claim.  Gov't Mot. at 21.  But the

Privacy Act allows an individual to "bring a civil action against the agency" when it "fails to

comply with any [] provision of" the Act.  5 U.S.C. § 552a(g)(1).  Plaintiffs have alleged that the Privacy Act Statement does not comply with the law because disclosure of a social security number is mandatory to obtain a passport and yet the Privacy Act Statement says disclosure is voluntary.  Am. Compl. ¶ 133.  The Government's briefing also suggests that providing a social security number is required to obtain a passport.  *See* Gov't Mot. at 21.  Given the facts alleged and the Government's failure to address Plaintiffs' contention, the Court finds that Plaintiffs have sufficiently stated a claim under the Privacy Act and denies the Government's motion to dismiss Plaintiffs' seventh cause of action.[2]

### G.  Plaintiffs' Eighth Cause of Action

Plaintiffs also claim that the Government violated the First, Fifth, and Ninth Amendments by failing to fulfill their requests that the Government name the individual federal employees involved in reviewing passport applications.  Am. Compl. ¶¶ 135–37.  However, Plaintiffs do not cite any law that requires the Government to name individual federal employees and do not explain why the Government's alleged failure to do so constitutes a violation of Plaintiffs' constitutional rights.  *See id.*  Accordingly, the Court grants the Government's motion to dismiss with respect to Plaintiffs' eighth cause of action.

### H.  Plaintiffs' Sixth & Ninth Causes of Action

---

[2] To the extent Plaintiffs claim that the Government failed to "apply the provision for[] 'good cause'" in the Privacy Act, Am. Compl. ¶ 133, such a claim is dismissed.  The "good cause" provision of the Privacy Act "permit[s] [an] individual who disagrees with the refusal of [an] agency to amend his record to request a review of such refusal" and have that review completed and a final determination made within 30 days "unless, *for good cause shown*, the head of the agency extends" that time period.  5 U.S.C. § 552a(d)(3) (emphasis added).  Here, Plaintiffs are neither attempting to access nor amend their records, so this provision is inapplicable.

Finally, Plaintiffs claim that the Government violated two federal criminal statutes.  First, in their sixth cause of action, they allege that the Government violated 42 U.S.C. § 408(a)(8).  *Id.* ¶ 130.  Section 408(a)(8) makes it a felony to "compel[] the disclosure of the social security number of any person in violation of the laws of the United States."  42 U.S.C. § 408(a)(8). Second, in their ninth cause of action, Plaintiffs allege that Secretary Pompeo "and his agents" violated 18 U.S.C. § 241 by "conspir[ing] to injure, oppress, threaten or intimidate [them] . . . in the free exercise" of religion.  Am. Compl. ¶ 139.  Section 241 provides that "two or more persons [who] conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution . . . shall be fined . . . or imprisoned."  18 U.S.C. § 241.

Criminal statutes "rarely" provide a private right of action.  *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979).  "A 'bare criminal statute' with no other statutory basis for inferring that a civil cause of action exists, is insufficient to imply Congress intended to create a concomitant civil remedy."  *Leonard v. George Washington Univ. Hosp.*, 273 F. Supp. 3d 247, 256 (D.D.C. 2017) (quoting *Lee v. U.S. Agency for Int'l Dev.*, 859 F.3d 74, 77–78 (D.C. Cir. 2017)).  In *Alexander v. Wash. Gas Light Co.*, this Court held that 42 U.S.C. § 408(a)(8) "does not provide a basis for a private civil cause of action."  481 F. Supp. 2d 16, 33 (D.D.C. 2006), *aff'd*, No. 06-7040, 2006 WL 3798858 (D.C. Cir. Aug. 24, 2006) (per curiam).  Similarly, in *Crosby v. Catret*, the D.C. Circuit affirmed this Court's holding that § 241 does not create a private right of action. *See* 308 F. App'x 453, *1 (D.C. Cir. 2009); *see also Leonard*, 273 F. Supp. 3d at 256 ("It is established that Sections 241 and 242 of Title 18 of the U.S. Code provide 'no private right of action[.]'").  Accordingly, the Court grants the Government's motion to dismiss on Plaintiffs' sixth and ninth causes of action.

## V.  OTHER PENDING MOTIONS

Several other motions remain pending before the Court; they are resolved as follows.

Plaintiffs opposed the Government's motion requesting an extension of time to file an answer.  *See* Mot. Extension Time, ECF No. 9; Pls.' Opp'n Mot. Extension Time, ECF No. 13. Alongside their opposition, Plaintiffs submitted a motion for order.  Mot. for Order, ECF No. 14. Because the Court granted the Government's motion for an extension of time, *see* Order, ECF No. 11, the Court denies Plaintiffs' motion for order as moot.

Plaintiffs moved to request that the docket reflect the Court's November 20, 2019 order granting Plaintiff Carmichael's motion to amend his complaint to add the U.S. Department of State as a defendant.  Mot. to Amend, ECF No. 21.  Because the docket already reflects this information, this motion is denied.

Plaintiffs moved for an electronic filing user name and password.  Mot. CM/ECF Password, ECF No. 23.  The Court denies this motion without prejudice.  Under Local Rule 5.4(b)(2), Plaintiffs must describe their access to the internet, confirm their capacity to file documents and receive filing electronically on a regular basis, and certify that they have completed the Clerk's Office on-line tutorial.  LCvR 5.4(b)(2).  Plaintiffs' motion only certifies that Carmichael has completed the on-line tutorial.  *See* Mot. CM/ECF Password.  Plaintiffs can refile this motion with the required information.

Plaintiffs moved to add Carmichael's original complaint to the record and to add Lewis and Pakosz's motions for joinder to the record.  Mot. Misc. Relief, ECF No. 33; Mot. Misc. Relief, ECF No. 36.  Because these documents already appear on the docket, the Court denies these motions.

Plaintiffs moved for a hearing on the pending motion.  Mot. for Hearing, ECF No. 37.

Whether to grant a motion for an oral hearing is within the discretion of the Court.  *See* LCvR

7(f).  Because the Court has decided the pending motions based on the parties' written

submissions, the Court denies this motion.

Finally, Plaintiffs have moved to compel answers to their discovery requests propounded

on the Government.  Mot. Compel, ECF No. 40.  This motion is denied as premature because the

Court has not yet entered a scheduling order to govern discovery.

## VI.  CONCLUSION

For the foregoing reasons, the Government's motion to dismiss (ECF No. 24) is

**GRANTED** with respect to Plaintiffs' first, third, fourth (with respect to Carmichael), fifth,

sixth, eighth, and ninth causes of action; it is **DENIED** with respect to Plaintiffs' second, fourth

(with respect to Lewis and Pakosz), and seventh causes of action.  The Government's motion in

the alternative for summary judgment is **DENIED**.  Plaintiffs' motion for partial summary

judgment and injunction (ECF No. 28) is **DENIED**.  Plaintiffs' other pending motions (ECF

Nos. 14, 21, 23, 33, 36, 37, 40) are **DENIED**.  Plaintiffs will be given leave to file an amended

complaint with respect to their fourth cause of action within thirty days.  An order consistent

with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 28, 2020                                    RUDOLPH CONTRERAS
                                                           United States District Judge