**United States District Court,**
**District of Columbia**

| | | |
|---|---|---|
| David Alan Carmichael, *et al.*, | ) | |
| | ) | Plaintiffs, *in propria persona* |
| Plaintiffs | ) | Case No: **19-CV-2316-RC** |
| | ) | |
| v. | ) | RE:  ECF 45 |
| | ) | |
| Michael Richard Pompeo, *et al.* | ) | |
| | ) | |
| Defendants-Respondents | ) | |

**PLAINTIFFS' MOTION TO AMEND THE COMPLAINT**
**REGARDING DUE PROCESS**

**MEMORANDUM IN SUPPORT**



RECEIVED
Mail Room

SEP 3 0 2020

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

TABLE OF CONTENTS

Table of contents..........................................................................................................i

Table of Authorities ..................................................................................................iv

I.   Introduction:.......................................................................................................1

II.  *Haig v. Agee* Is Not The Rule Or Instructive But Is Merely An Exceptional Exigency. Revoking Carmichael's Passport Without Prior Due Process Remains An Abuse Of Discretion And Injures Carmichael's Rights Protected Under The Constitution ...............2

III. *Agee, Aptheker v. Secretary of State* Is The Rule; A Case Where Substantive Appeal Was Barred By Statute.  Likewise, Carmichael's Appeal Is Barred By Regulation, Injuring His Rights Protected Under The Constitition .....................................4

     A. The Post-Revocation Appeal Process Available In *Haig* Was Substantially Not Available In *Aptheker* And The Appeal Process Is Barred In Our Case ......................5

     B. The *Aptheker* Court Declared The Revocation Of A Passport, Without Prior Due Process And Judgment For Unlawful Conduct, Unconstitutionally Restricted The Right To Travel...........................................................................................6

     C. The Defendants Demand That We Abandon Our Speech, Activity, Belief, Associations, and Membership Was Declared Unconstitutional In *Aptheker*; Aptheker's Being Politically Motivated, Ours Being Religiously Motivated .............6

     D. Neither The Plaintiffs' Practice Of Religion Nor Their Travel Are The Evils Which The Statute Seeks To Curb; But The Defendants Are Unlawfully Penalizing The Plaintiffs, Restricting Their Trave Without The Due Process That Is Necessary For Plaintiffs To Be Found As Perpetrators of Evil ........................................................8

        (1) The Defendants Elevate Not Identifying With A SSN For Reasons Of Religion An Evil Greater Than Seriously Delinquent Tax Debt..........................................10

     E. Like in *Aptheker*, Where The Broadly Sweeping Statute Excluded Passports To Both Knowing And Unknowing Members, The Regulation Prohibiting Passports And Appeals Unconstitutionally Broadly Sweeps Lawful Religious Conduct With The Malevolent 'Intentional, Willful, Knowing, Or Negligent' Or One Who Has Seriously Delinquent Tax Debt................................................................................10

     F. Like in *Aptheker*, Where Substantive Due Process By Appeal Was Barred By Statute Under The Context Of *Aptheker's* Activity Protected By The First Amendment, Regulation 22 C.F.R. § 51.70(b)(2) Guarantees No Due Process By Barring Appeal To Us For Our Lawful Activity Motivated By Religion .............12

IV.  The Defendants' Claim Is False And Erroneous Where They Say Carmichael's .............13 Due Process Claim Is Barred Because 22 C.F.R. 51.62(a)(2) Was Cited In The

Passport Revocation Letter And Provides For A Post-Revocation Appeal

V.     The Defendants Deny The Plaintiffs Due Process, Providing No Access To
       The Secretary of State For Obtaining The Waiver Provided For By Statute .................... 14

VI.    The Defendants' Demand For The Filing A Department Policy Driven Affidavit
       Form To Justify Denial Or Revocation Of Plaintiffs' Passports Is Not Due Process
       and Violates Statutory And Constitutional Law ................................................................ 17

VII.   Statute And Regulation Make The Defendants' Unauthorized Form Unlawful.  It
       Violates The Due Process Authorized And Controlled By Statute And Regulation.
       The Statue Prohibits The Defendants From Penalizing The Plaintiffs ............................... 21

VIII.  The Defendants Conditioning A Passport On The Plaintiffs Filing An Affidavit To
       Testify Of Guilt Or Innocence; Unlawfully, Arbitrarily, And Capriciously, Legislate
       A Demand For The Plaintiffs To Testify Against Themselves That They Have, or
       Have Not Committed A Crime Of Fraud ............................................................................ 24

IX.    The Defendants Violate Due Process Where They Legislate Through Underling-
       Executive Fiat ................................................................................................................... 25

X.     The Court Is Wrongfully Ratifying Super-Legislature Unconstitutional Acts .................... 26

Summary ...................................................................................................................................... 27

Attachments

Attachment 1
      Passport Revocation Letter, United States Department of State To David
   Carmichael, June 20, 2019

Attachment 2
      Letter From United States Department of State to William Pakosz, FEB 26 2019
   Denying His Passport Renewal, Asking Him To Reapply With The Same Result

Attachment 3
      Transcript of Conversation Between David Alan Carmichael and Chris McLean
   of Consular Affairs, Passport Services, Legal Affairs, Law Enforcement Liaison
   March 12, 2019

Attachment 4
      Letter From United States Department of State to Carmichael Explaining No
   Appeal Available For Denied Or Revoked Passports For Accusations Of Failure To
   Provide A SSN

Attachment 5
    Letter From Carmichael To Secretary Rex Tillerson, January 20, 2018,
Requesting Religious Accommodation For Passport Renewal

Attachment 6
    Carmichael Passport Renewal Application, form DS-82, Filed January 20, 2018,
Citing RFRA And Attached Letter

Attachment 7
    Judgment Fund Voucher For Payment, 1JAN2006 Fax From U.S. Justice Dept.
To US. Treasury Dept. Submitted With Carmichael's Request For Religious
Accommodation, Showing Carmichael TIN As "n/a"

Attachment 8
    Proposed Order

Attachment 9
    Complaint – Second Amendment

# TABLE OF AUTHORITIES

**Revealed Law**

*Holy Bible*
  James, Chapter 4, Verse 17................................................................4
  Daniel, Chapter 2 ..........................................................................7

**Other Authority**

*Magna Carta* ..............................................................................2, 3, 4, 27, 28
  https://www.crf-usa.org/foundations-of-our-constitution/magna-carta-text.html

**United States Constitution**

First Amendment ................................................................... 4, 7, 12, 17, *passim*
Fourth Amendment ....................................................................17, 18, 21
Fifth Amendment ................................................................ 1, 3, 5, 6 *passim*
Sixth Amendment ........................................................................17,18
Ninth Amendment..........................................................................3, 11, 26, 27

**United States Supreme Court Decisions**

***Aptheker v. Secretary of State***................................................. **4, 5, 6, 7, *passim***
  378 U.S. 500 (1964)
*Cantwell* v. *Connecticut* ....................................................................8, 9
  310 U.S. 296
*De Jonge* v. *Oregon* ............................................................................20
  299 U.S. 353
*Edwards v. California* .........................................................................20
  314 U.S. 160
*Ex parte Endo* ............................................................................ 20-21
  323 U.S. 283
*Haig v. Agee* ...............................................................................2, 4, 5
  476 U.S. 693 (1986)
*Kennedy* v. *Mendoza-Martinez* ...............................................................9
  372 U.S. 144
*Kent v. Dulles*..............................................................................6, 20
  357 U.S. 116 (1958)
*Louisiana ex rel Gremillion v. NAACP*......................................................8-9
  366 U.S. 293
*Martin* v. *Struthers*.........................................................................8-9
  319 U.S. 141
*NAACP* v. *Alabama* ...........................................................................20
  357 U.S. 449
*NAACP* v. *Button* ...........................................................................8-9
  371 U.S. 415
*Schneider* v. *State*...........................................................................8-9
  308 U.S. 147

# TABLE OF AUTHORITIES

*Schware* v. *Board of Bar Examiners* ..............................................................8-9
    353 U.S. 232
*Shelton* v. *Tucker* .............................................................................................8-9
    364 U.S. 479
*Wieman v. Updegraff* .........................................................................................11
    344 U.S. 183

**United States District Courts**

*United to Protect Democracy v. Presidential Advisory Comm'n on Election Integrity* ....22
    288 F. Supp. 3d 99, 102 (D.D.C. 2017)
***National Women's Law Center, et al. v. Office of Management and Budget*** .......... **21-23**
    Civil Action No. 17-cv-2458 (TSC), Memorandum and Opinion by U.S.
    District Judge Tanya S. Chutkan, United States District Court, Washington,
    District of Columbia, March 4, 2019

**United States Statutes At Large**

Fixing America's Surface Transportation Act ..................................................8, 9, 16, 17
    Public Law 94-114, Dec. 4, 2015, 129 STAT 1312
Paperwork Reduction Act.......................................................................................2
    Public Law ####

**United States Code**

22 U.S.C. § 2714a.............................................................................9, 13, 14,15
    Revocation or denial of passport in case of certain unpaid taxes
22 U.S.C. § 2714a(e)...........................................................................................16,
    Authority to deny or revoke passport
22 U.S.C. § 2714a(f) ...........................................................................4, 11, 17, 25, 26
    Revocation or denial of passport in case of individual without social security
    account number
U.S.C. § 2714a(f)(1)(A)......................................................................................26
    Denial – In general
U.S.C. § 2714a(f)(1)(B).......................................................................2, 11, 14, 26
    Emergency and humanitarian situations
22 U.S.C. § 2721.................................................................................2, 4, 14, 26
    Impermissible Basis For Denial of Passports
44 U.S.C. § 3501, *et seq.*...................................................................................21, 22
    Paperwork Reduction Act
**44 U.S.C. § 3512**................................................................................................**23**
    Public Protection

**Code of Federal Regulations**

5 C.F.R. § 1320.10(f)..........................................................................................22
    Clearance of collections of information, other than those contained in
    proposed rules or in current rules

## TABLE OF AUTHORITIES

22 C.F.R. § 51.60(a)..............................................................................................................19
    Denial and restriction of passports – The Department may not issue a passport…

**22 C.F.R. § 51.60(f) ............................................................................... 2, 4, 5, 6, *passim***
    The Department for may refuse to issue a passport to an applicant who fails to
    provide his or her Social Security account number…

22 C.F.R. § 51.62(a)(2).............................................................................................13, 14, 25
    Revocation or limitation of passports and cancellation of Consular Reports
    of Birth Abroad – The Department may revoke or limit a passport when…

22 C.F.R. § 51.70................................................................................................................14
    Request for hearing to review certain denials and revocations

22 C.F.R. § 51.70-74.............................................................................................12, 13, 14
    Procedures for Review of Certain Denials and Revocations

22 C.F.R. § 51.70(a)............................................................................................................12
    Request for hearing to review certain denials and revocations (where it applies)

22 C.F.R. § 51.70(b)(2)........................................................................... 2, 4, 5, 6, *passim*
    Request for hearing to review certain denials and revocations (where it does not
    Apply for failure to provide a social security number or purposefully providing
    an incorrect number)

**United States District Court,**
**District of Columbia**

David Alan Carmichael, et al.,                    )
                                                   )        Civil Action No:  19-2316-RC
    Plaintiffs - Petitioners                  )
                                                   )        Re: Document No: 44
    v.                                        )
                                                   )
Michael Richard Pompeo, et al.                     )

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND THE COMPLAINT REGARDING DUE PROCESS

### (Drafted By Plaintiff Carmichael, Joined By Plaintiffs Lewis and Pakosz)

1.      My first son began to read at the age of three.  He could follow written instructions but could not necessarily discern their import.  He read on a cereal box the instruction to open the box top to see if he was a winner of the prize shown on the box.  My wife observed him closing and opening the box repeatedly.  She asked him why he kept opening and closing the cereal box.  He said it was because inside the box top it read, "Sorry.  Not a winner.  **Try again**." The Defendants demanding that we repeatedly apply for a passport where we are guaranteed to be a loser if we are faithful to our duty of religion, or filing a post-revocation appeal process **that the regulation <u>prohibits</u>**, does not fulfill the due process guaranteed by the Fifth Amendment. It certainly is a process, like entering a turnstile that has no exit or trying the same losing box top over and over again.  It is not due process, it is not substantive, it is not fair, it is not rational, and it injures our travel and other fundamental rights as if we have done something wrong though in fact we are doing what is right.

2.      **The Defendants mislead the Court to have the Court act contrary to justice,** waiving a misstatement in one letter to distract from the correct statements made in all the other

communications by the Defendant.  They explicitly bar in-agency appeal, providing neither pre

or post denial or revocation hearings, by their unlawful 22 C.F.R. 51.60(f) & 51.70(b)(2).  They

ignore and bar process to the waiver provision of 22 US.C. § 2714a(f)(1)(B).  They ignore the

exception provisions of 22 U.S.C. 2721.  They manufacture an in-house underling-executive fiat

process that violates the Privacy Act, the Administrative Procedures Act, by violating the

Paperwork Reduction Act, with their non-OMB quasi-interest-of-government affidavit form.

The Defendants have imposed by their regulation and back-door procedures an illogical and

ridiculous end that Congress has not intended, nor has the power to impose.  Through their

unlawfully applied regulations or unlawfully instituted procedures, the Defendants would have

the Court ratify the Defendants' super-legislature, force of law, inexplicit imposition of a

mandate that we identify with the number of the beast or have our right of travel stripped without

first being judged of a wrong under the law of the land.  If our chains were an imposition by

Congress, it would be a bill of attainder, imposing a writ *ne exeat regno* (no exit kingdom) upon

us without due process of law.  The Executive's discretion is abused, reaching beyond the

lawmaking authority established or tolerated by the Constitution.

## II.   *Haig v. Agee* Is Not The Rule Or Instructive But Is Merely An Exceptional Exigency. Revoking Carmichael's Passport Without Prior Due Process Remains An Abuse Of Discretion And Injures Carmichael's Rights Protected Under The Constitution

3.   The Defendants claim *Haig v. Agee* is instructive regarding my passport revocation,

but the Court has wrongly applied it as the rule in my case.  To equate the Defendants' no-

process revocation of my passport with Mr. Agee's wrongly elevates Executive discretion to a

place of monarchic power that has been opposed in our law since the *Magna Carta*.  The

Executive discretion exercised in *Haig v. Agee* was a show of rightful monarchal prerogative in a

very particular situation of a clear and convincing need to protect national security against

particular threats by a particular person. Though the government is instituted to protect life, liberty and property rights that include happiness, even the taking of life, liberty and property in time of war is an exigency consistent with the purpose of Executive Branch monarchal power. In the particular case of Mr. Agee, his conduct was a willful attack upon the security of the nation at large, as well as the security of the lives of overseas personnel who were agents (spies) or personnel of the United States. That exigency of national security against Mr. Agee cannot be an excuse to act in martial law in all situations, unleashing the fetters of the Constitution as a general rule. It shatters the foundational law and our reserved rights protected by the Fifth and Ninth Amendments, even going back to the *magna* carta:

> "No free man shall be seized or imprisoned, or stripped of his rights or possessions, or outlawed or exiled, or deprived of his standing in any other way, nor will we proceed with force against him, or send others to do so, except by the lawful judgment of his equals or by the law of the land." *Magna Carta*, https://www.crf-usa.org/foundations-of-our-constitution/magna-carta-text.html (King John, 17th yr. of his reign,Runnymede England, June 15, 1215)

4.      Though the nation might not have been at war, Mr. Agee's actions might have started one. The exception-to-the-rule revocation of Mr. Agee's passport, prior to a hearing, was an action like that of a police officer who stops an assault and battery by grabbing hold of a man's arm while it is in full swing with the fist headed for someone's nose. The intervening seizure without an arrest warrant is tolerated in that situation. That is analogous to Mr. Agee's situation, consistent with the history of law of national security going back to Magna Carta:

> "All merchants may enter or leave England unharmed and without fear, and may stay or travel within it, by land or water, for purposes of trade, free from all illegal exactions, in accordance with ancient and lawful customs. **This**, however, **does not apply in time of war** to merchants from a country that is at war with us. Any such merchants found in our country at the outbreak of war shall be detained without injury to their persons or property, until we or our chief justice have discovered how our own merchants are being treated in the country at war with us. If our own merchants are safe they shall be safe too." *Ibid* (Emphasis added)

And;

"In future it shall be lawful for any man to leave and return to our kingdom unharmed and without fear, by land or water, preserving his allegiance to us, **except in time of war**, for some short period, for the common benefit of the realm. People that have been imprisoned or **outlawed** in accordance with the law of the land, people from a country that is at war with us, and merchants - who shall be dealt with as stated above - **are excepted from this provision**." *Ibid* (Emphasis added)

5.     Mr. Agee had in effect outlawed himself by swinging at the nose of the United States foreign intelligence service and its personnel.  The Executive action to stop him, notwithstanding the demands of the civil law, keeps with the higher revealed law, "If a man knows the good he ought to do, and does not do it, to him it is a sin."[1]  The pre-hearing intervention is tolerated by the United States Supreme Court in *Haig v. Agee* like a without-arrest-warrant seizure of a man mid-assault.  That parallel is nowhere near the particulars of our case.  The Rule applied in *Aptheker v. Secretary of State* is the rule in our case, rather than is the **exception** of *Haig*.

**III.   *Aptheker v. Secretary of State Is The Rule*; A Case Where Substantive Appeal Was Barred By Statute.  Likewise, Carmichael's Appeal Is Barred By Regulation, Injuring His Rights Protected Under The Constitition**

6.     Rather than being controlled by *Haig v. Agee*, our case is much more related to *Aptheker v. Secretary of State*, 378 U.S. 500 (1964) which should be the controlling case. *Aptheker* appears to be a case just as closely related to the spawning of 22 U.S.C. § 2721 and its prohibition of the denial or revocation of passports for things protected by the First Amendment. *Aptheker* applies in relation to the dead-end non-substantive circular non-due-process in our case, as well as the Court's misapplication of 22 U.S.C. § 2721, as well as the Defendants' unconstitutional misapplication of 22 U.S.C. § 2714a(f), the unconstitutionality of the overbreadth of 22 C.F.R. 51.60(f) and 22 C.F.R. 51.70(b)(2), and the unconstitutionally vague 22 U.S.C §2714a(f).

---

[1] Holy Bible, The Epistle of James, Chapter 4, Verse 17

**A. The Post-Revocation Appeal Process Available In *Haig* Was Substantially Not Available In *Aptheker* And The Appeal Process Is Barred In Our Case**

7.    In *Haig*, there was a very clear avenue to an in-agency post-revocation (or post-denial) appeal process.  My revocation, and Lewis's and Pakosz's denial, has an **automatic bar** to the agency's appeal process like in *Aptheker* where the conclusion of the appeal was fixed by statute so that applying for an appeal through the agency was futile.  In our case, the dead-end is immediate, stopping at the door of appeals board as a function of regulations 22 C.F.R. 51.60(f) and 22 C.F.R. 51.70(b)(2).  In *Aptheker*, the Supreme Court held the statute "**§ 6 of the Control Act too broadly and indiscriminately restricts the right to travel and thereby abridges the liberty guaranteed by the Fifth Amendment**." *Aptheker v. Secretary of State*, 378 U.S. 500, 505 (1964). (Emphasis added)

8.    In *Aptheker*, the appeals hearing examiners determined that their hands were tied by statute.  The Court determined that Aptheker's appeal could not be considered because they concluded, "the Department of State had reason to believe that [appellants are] within the purview of Section 6 (a) (2) of the Subversive Activities Control Act … and as a result thereof … use of a passport would be in violation of the law." *Ibid* at 503  The Secretary of State subsequently approved the recommendation of the Board, saying that he, "relied solely on the evidence in the record" and that he "specifically adopted as his own the [Board's] finding of fact that 'at all material times [appellants] were members' of the Communist Party of the United States with knowledge or notice that such organization had been required to register as a Communist organization under the Subversive Activities Control Act." *Ibid* at 503  ""Each appellant-plaintiff alleged that § 6 was unconstitutional as, *inter alia,* "a deprivation without due process of law of plaintiff's constitutional liberty to travel abroad, in violation of the Fifth Amendment to the Constitution of the United States."" "The parties agreed that all

administrative remedies had been exhausted and that **it would be futile**, and indeed a criminal offense, for either appellant to apply for a passport while remaining a member of the Communist Party." *Ibid* at 503-504  In our case, **it is futile** to file an application for appeal because **the regulation** controlling appeals **excludes appeals** to those whose passport denials or revocations are done because of the applicant not giving a SSN.

**B. The *Aptheker* Court Declared The Revocation Of A Passport, Without Prior Due Process And Judgment For Unlawful Conduct, Unconstitutionally Restricted The Right To Travel**

9.     The *Aptheker* Court cited *Kent v. Dulles,* 357 U.S. 116, 127 (1958) where the Supreme Court ""… declared that the right to travel abroad is "an important aspect of the citizen's 'liberty' guaranteed in the Due Process Clause of the Fifth Amendment."" The passport-denying and revoking statute was held unconstitutional for reasons on par with the reason the Defendants regulations, 22 C.F.R. 51.60(f) and 22 C.F.R. 51.70(b)(2),  and their application to us are unconstitutional in the way they arbitrarily restrict our right to travel.  The *Aptheker* Court, continuing to quote *Kent*, declared:

> "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment. . . . Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. Travel abroad, like travel within the country, . . . may be as close to the heart of the  individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values." *Aptheker v. Secretary of State* at 505-506 citing *Kent v. Dulle*s, 357 U.S. 116 at 125-126.
>
> **"The substantiality of the restrictions cannot be doubted.**  The Denial of a passport, given existing domestic and foreign laws, **is a severe restriction upon, and in effect a prohibition against,** world-wide foreign travel." *Id.*, at 507 (Emphasis added)

**C. The Defendants' Demand That We Abandon Our Speech, Activity, Belief, Associations, and Membership Was Declared Unconstitutional In *Aptheker*; Aptheker's Being Politically Motivated, Ours Being Religiously Motivated**

10.    Our case is like *Aptheker* where the Government capriciously says they will relent in

the restrictions upon our travel <u>if we</u> would have <u>our speech, belief, activities, membership and</u> <u>associations conform to their arbitrary and anti-Christ norm</u>.  The restrictions upon our travel will be lifted if we abandon our allegiance to our belief and practice of religion.  The Supreme Court rejected that parallel in *Aptheker*:

> "The restrictive effect of the legislation cannot be gain-said by emphasizing, as the Government seems to do, that a member of a registering organization could recapture his freedom to travel by simply in good faith abandoning his membership in the organization.  Since freedom of association is itself guaranteed in the First Amendment, restrictions imposed upon the right to travel cannot be dismissed by asserting that the right to travel could be fully exercised if the individual would first yield up his membership in a given association."  *Id.,* at 507

11.     Our case is unlike Aptheker in that the Communist belief system is one where anarchy is prescribed as a means for the proletariat to overthrow our current government system that is accused of being a bourgeoisie-society evil.  None-the-less, the Supreme Court considered that their mere belief, speech, membership, associations, and actual activities of each individual **that were not *mala in se***, could not disqualify them from passports and their right to free travel without their actually doing something wrong, and having full due process to prove it to be so.  In our case, our Christian belief mandates our support of the constitutional frame of government which the book of Daniel in the Holy Bible prophesied would be the form of government before the last days.[2]  We are admonished by the scriptures to "… abstain from fleshly lusts which war against the soul, having your conduct honorable among the nations, that when they speak against you as evildoers, they may, by your good works which they observe, glorify God in the day of visitation.  Therefore submit yourselves to every institution[3] of man for the Lord's sake, whether to the king as supreme, or to governors, as to those who are sent by him for the punishment of

---

[2] Holy Bible, Daniel, Chapter 2, *inter alia*
[3] The word institution comes from the Greek κτίσει 'ktisei' which means a construction or creation of men, a form of government administration.  The word "constitution" or "constitutional government" is an appropriate application of the word.

evildoers and for the praise of those who do good." We are that middle class Christian morality that the Marxist would eradicate in conformance with the totality of the communist agenda. The Defendants act and argue as if the communist revolution has already occurred; and that the compelling interest of the now-communist totalitarian state is to compel uniformity and quash, if not destroy, religion and individual liberty.

**D. Neither The Plaintiffs' Practice of Religion Nor Their Travel Are The Evils Which The Statute Seeks To Curb; But The Defendants Are Unlawfully Penalizing The Plaintiffs, Restricting Their Travel Without The Due Process That Is Necessary For Plaintiffs To Be Found As Perpetrators of Evil**

12.    In *Aptheker*, it is at least granted that the 'evil' of threats to national security to which the statute was to combat was related to the legislature's method. In our case, the 'evil' which the government is supposed to combat regarding the restricting of a passport is the evil of certified tax debt over $50,000, after full due process in the tax courts according to the purpose of the FAST Act. In other places not related to the FAST Act, they might restrict passports to those convicted of sex crimes, <u>after</u> due process in the criminal courts; or failure to fulfill child support obligations, <u>after</u> full due process in the family law courts and administrations. Our religiously motivated refusal to participate in the lawfully-voluntary welfare benefit scheme, and refusing to identify with its number, has nothing to do with the ***mala in se*** 'evils' which might warrant the restricting of travel to a particular person under particular circumstances. We find in *Aptheker* the principle that shows lumping religious conscientious objectors with those miscreants who "willfully, intentionally, negligently or recklessly" do not provide a SSN is also repugnant to the Constitution, where the Supreme Court said:

> ""It is a familiar and basic principle, recently reaffirmed in *NAACP v. Alabama*, 377 U.S. 288, 307, that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." See, *e. g., NAACP* v. *Button*, 371 U.S. 415, 438; *Louisiana ex rel Gremillion v.*

*NAACP*, 366 U.S. 293; *Shelton* v. *Tucker*, 364 U.S. 479, 488; *Schware* v. *Board of Bar Examiners*, 353 U.S. 232, 239; *Martin* v. *Struthers*, 319 U.S. 141, 146-149; *Cantwell* v. *Connecticut*, 310 U.S. 296, 304-307; *Schneider* v. *State*, 308 U.S. 147, 161, 165. In applying this principle the Court in *NAACP* v. *Alabama*, supra, referred to the criteria enunciated in Shelton v. Tucker, supra, at 488:

> "[E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose.'" *Id.*, at 508

13. The *Aptheker* court went on to an important consideration of the Congressional purpose underlying the restriction of passports to the targeted group:

> "This principle requires that we consider the congressional purpose underlying § 6 of the Control Act. The Government emphasizes that the legislation in question flows, as the statute itself declares, from the congressional desire **to protect our national security. That Congress under the Constitution has power to safeguard our Nation's security is obvious and unarguable.** Cf. *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 159-160. As we said in *Mendoza-Martinez*, "while the Constitution protects against invasions of individual rights, it is not a suicide pact." *Id.*, at 160. At the same time the Constitution requires that the powers of government "must be so exercised as not, in attaining a permissible end, unduly to infringe" a constitutionally protected freedom. *Cantwell v. Connecticut, supra*, at 304." *Id.*, at 509 (Emphasis added)

14. Therefore, we must likewise consider the congressional purpose underlying 22 U.S.C. § 2714a which is titled, "Revocation or denial of passport in case of certain unpaid taxes." The origin of that U.S. Code section is the Fixing America's Surface Transportation Act (FAST Act), Public Law 94-114, December 4, 2015, 129 STAT 1312. The FAST Act's stated purpose is "To authorize funds for Federal-aid highways, highway safety programs, and transit programs, and for other purposes." *Id.,* at 1312. The particular section of the FAST Act that institutes the innovation of 'permission to revoke or deny passports is, FAST Act, TITLE XXXII—OFFSETS, Subtitle A—Tax Provisions Sec. 32101 which is titled "Revocation or denial of passport in case of certain unpaid taxes." If the stated purpose of the FAST Act actually matches the details of the law, the apparent purpose of the FAST Act is transportation

funding.  That description does not match what I found when I did an internet search to find out

how America's surface transportation is actually funded.  Yet, the apparent evil that the

innovation of the denial of passports, to those who will not communicate a SSN, must be related

to situations where a person has first been certified by the Secretary of the treasury to have

"seriously delinquent tax debt" cited in 26 U.S.C. §7345.  Each of us can verify that we have not

experienced being certified as having "seriously delinquent tax debt" by means of an affidavit

under oath or by penalty of perjury.  That evil for which the government is concerned, not even

amounting to national security, is an evil that does not apply to any of us.  We can sign an

affidavit saying we have not been certified as having "seriously delinquent tax debt" because

such a certification would require a significant amount of due process of which we would have to

be made a part and therefore would have first-hand-knowledge.

    **(1)   The Defendants Elevate Not Identifying With A SSN For Reasons Of Religion
            To An Evil Greater Than Seriously Delinquent Tax Debt**

      15.    If we were certified as having seriously delinquent tax debt, but later had such a

situation or certification reversed, subparagraph (g) would remove the blight and stigma of the

certification - "(g)  REMOVAL OF CERTIFICATION FROM RECORD WHEN DEBT

CEASES TO BE SERIOUSLY DELINQUENT.—If pursuant to subsection (c) or (e) of section

7345 of the Internal Revenue Code of 1986 the Secretary of State receives from the Secretary of

the Treasury a notice that an individual ceases to have a seriously delinquent tax debt, the

Secretary of State shall remove from the individual's record the certification with respect to such

debt."  Nonetheless, for the not-by-the-law-of-the-land crime of not identifying with a SSN **for**

**reasons of religion**, <u>we would still be prohibited</u> from having passports <u>though the targeted evil</u>

<u>had of seriously delinquent tax debt had been cured</u>.

    **E.  Like in Aptheker, Where The Broadly Sweeping Statute Excluded Passports To**

**Both Knowing And Unknowing Members, The Regulation Prohibiting Passports And Appeals Unconstitutionally Broadly Sweeps Lawful Religious Conduct With The Malevolent 'Intentional, Willful, Knowing, Or Negligent' Or With One Who Has Seriously Delinquent Tax Debt**

16.     In *Aptheker*, the broadly sweeping statute excluded passports to one who

""actually knows or believes that he is associate with what is deemed to be a "Communist-

action" or a Comunist-front" organization.""*Id.*, at 509.  The Supreme Court held that "The

provision therefore sweeps within its prohibition both knowing and unknowing members." *Id.*,

at 510.  Likewise regulation 22 C.F.R. § 51.60(f) unconstitutionally sweeps the religious objector

in with the malevolent 'intentional, willful, knowing or negligent' evader.  It also, without due

process, sweeps the religious objector in with the "seriously delinquent tax" debtor who has been

found to be so after full due process.  The *Aptheker* court adopted the principle that

**"Indiscriminate classification of innocent with knowing activity must fall as an assertion of

arbitrary power."** *Id.*, at 510, citing *Wieman v. Updegraff*, 344 U.S. 183, at 191.  (Emphasis

added)

17.     If the statute 22 U.S.C. 2714a(f) would compel or constrain the Defendant to impose

22 C.F.R. § 51.60(f) to exclude passports to all those who do not identify with a SSN as a matter

of religion, that statute "sweeps too widely and too indiscriminately across the liberty guaranteed

in the Firth Amendment." *Ibid* at 514  If its humanitarian waiver provision of 22 U.S.C.

§2714a(f)(1)(B) is not applicable to religion, that section of the F.A.S.T. Act indeed sweeps too

broadly and injures us in our fifth, first and ninth amendment rights and is unconstitutional.

> ""In related contexts this Court has had occasion to consider the substantiality of
> the relationship between an individual and a group where, as here, the fact of
> membership in that group has been made the sole criterion for limiting the
> individual's freedom.  In *Wieman v. Updegraff*, 344 U.s. 183, the Court held that
> the due process guarantee of the Constitution was violated when a State, in an
> attempt to bar disloyal individuals from its employ, excluded person solely of the
> basis of organizational memberships without regard to their knowledge

concerning the organizations to which they had belonged.  The Court concluded that: "**Indiscriminate classification of innocent with <u>knowing</u> activity must fall as an assertion of arbitrary power**." *Id*., at 191."" *Id.* at 510 (Emphasis added)

**F.   Like in *Aptheker*, Where Substantive Due Process By Appeal Was Barred By Statute Under The Context Of Aptheker's Activity Protected By The First Amendment, Regulation 22 C.F.R. § 51.70(b)(2) Guarantees No Due Process By Barring Appeal To Us For Our Lawful Activity Motivated By Religion.**

18.    The Defendants have successfully obfuscated the facts and the law to influence the court to wrongly believe that the exclusion of an appeal process 22 C.F.R. 51.70(b)(2) is not applicable to Plaintiff Carmichael as it is to Lewis and Pakosz.  Contrary to the misleading of the Defendants, 22 C.F.R. 51.70(b)(2) expressly excludes appeal process for people like us, who even for reasons of religion do not identify with a SSN.  Even if I ignored the many communications by the Defendant that told me there was no appeal process, and I ignored the regulation that prohibits the appeal process, the first step of any appeal process would be to determine the jurisdiction of the hearing board.  The passport agency appeal board's hands are tied and obligated to deny my appeal as having no standing for appeal because the Secretary has denied such an appeal to his agency 22 C.F.R. § 51.70 (b)(2).

"(b) The provisions of §§ 51.70 through 51.74 <u>do not apply</u> (appeal process) **to any action** of the Department **denying**, restricting, **revoking, cancelling** or invalidating a passport or Consular Report of Birth Abroad, or in any other way adversely affecting the ability of a person to receive or use a passport or Consular Report of Birth Abroad, for reasons not set forth in § 51.70(a), including, as applicable, those listed at:

…(2) Section 51.60(f) (failure to provide a social security number, or purposefully providing an incorrect number);" (Emphasis and "(appeal process)" added)

19.    The Court said in its memorandum and opinion, on page 5, "… and that (Carmichael) could request an appeal hearing."  The Court cited the fact that I had not mentioned a request for an appeal hearing in the complaint in its original or amended version.  It also cited the Defendants' Motion to Dismiss, referring to their statement, "Mr. Carmichael was also informed

of his opportunity to request a hearing, which Mr. Carmichael failed to avail himself of See

Rolbin Decl. ¶ 9." Mr. Rolbin said, "The letter also informed Mr. Carmichael that he was

entitled to a hearing on the revocation action." (Rolbin Dec. ¶9.) **Mr. Rolbins statement is a**

**falsehood**, it does not match the revocation letter.   The revocation letter incorrectly stated

incorrectly, "You <u>may</u> request a hearing under 22 C.F.R. §§ 51.70-51.74."   Their next sentence

limited the appeal to "… and would <u>only</u> address the basis upon which the Department revoked

your passport." That "basis" excludes appeal under the regulation that the same letter cites.

(Mot. Attach. 1)

### IV. The Defendants' Claim Is False And Erroneous Where They Say Carmichael's Due Process Claim Is Barred Because 22 C.F.R. 51.62(a)(2) Was Cited In The Passport Revocation Letter And Provides For A Post-Revocation Appeal

20.   It seems unfathomable that an agency titled "The Department of Justice" would either

leave out information, or cite factual statements out of context, in such a way as to persuade the

Court to exact or enforce an injustice.   Presuming it is not the intention of the Defendant to do

so, that was the effect that the Defendant's emphasizing 22 C.F.R. §51.62(a)(2) as the basis of

their saying a post-revocation appeal was available to Plaintiff Carmichael.   The regulation 22

C.F.R. §51.62(a)(2) by itself would require an accusation against Carmichael that he conducted

activity that was intentionally illegal, fraudulent, or erroneous for any number of moral 'wrongs'

that did not relate to not identifying with a SSN.   That regulation by itself might allow for a post

denial or post revocation hearing, but not in this case for reasons that were cited in the same

letter that cited regulation 22 C.F.R. §51.62(a)(2).   The revocation letter said that the hearing

would, "only address the basis upon which the Department revoked your passport."   That

supposed basis of illegality, fraud, or error required to make § 51.62(a)(2) was not applicable.

Instead,  "22 U.S.C. 2714a and 22 C.F.R 51.60(f)" cited earlier in the revocation letter was the

actual basis. Their statement, "You may request a hearing under 22 C.F.R. §§ 51.70-51.74" is grossly deceptive in that 22 C.F.R. § 51.70(b)(2) bars an appeal for those matters whose denial or revocation basis is 22 U.S.C. 2714a and 22 C.F.R 51.60(f). It is frivolous for the Defendants to say in their motion and in Mr. Rolbin's Declaration that Carmichael had an opportunity for an appeal hearing. In truth, Carmichael "may" request a hearing all day long but the Department is not authorized to grant a hearing under the circumstances. The Defendants' officer Christine McClean explained that fact to Mr. Carmichael on the phone (Mot. Attach. 3). Three days after the revocation letter, the Defendants confirmed the non-availability of a pre revocation or post revocation hearing by saying, "Pursuant to 22 C.F.R. 51.70, a hearing is not provided for applications denied or passports revoked for failure to provide a social security number." (Mot. Attach. 4)

21.     The regulation 22 C.F.R. §51.62(a)(2) would have the basis of a passport revocation be due to conduct of Carmichael that would be illegal, fraud or erroneous. Everything that Carmichael did was legal, honest, and without error. On its face, the passport was issued legally, honestly, and without error by the Department's authorizing officer according to the rights protected by the Constitution, the Religious Freedom Restoration Act, 22 U.S.C. §2721, and the waiver provisions of 22 U.S.C. § 2714a(f)(1)(B). Any claim that it was not lawful or outside of the Secretary of State's prerogative to grant Carmichael's passport renewal in January 2018 is either false or erroneous.

### V.   The Defendants Deny The Plaintiffs Due Process, Providing No Access To The Secretary of State For Obtaining The Waiver Provided For By Statute

22.     The F.A.S.T. Act, at 22 U.S.C. § 2714a(f)(1)(B) demands redress to the Secretary of State in this situation where we need relief for humanitarian reasons. Yet the Defendants make no provision for communicating up the chain of command for that humanitarian relief. In

fact, they told us on numerous occasions that there is no appeal for those who do not identify

with a SSN, there is no procedure for religious accommodation, and there is no avenue for appeal

on the basis of their regulation 22 C.F.R. 51.70(b)(2) when the passport denial or revocation is

pursuant to 22 C.F.R. 51.60(f).  The Defendants <u>guarantee no due process</u> to those who do not

identify with a SSN, even for humanitarian reasons such as devout religion.

      23.  The Defendants are implementing paragraph (f) of 22 U.S.C. § 2714a, where that

paragraph is titled "revocation or denial of passport in case of individual without social security

account number."  The title of that subsection itself, 22 U.S.C. 2714a, is titled, "Revocation or

denial of passport in case of certain unpaid taxes."  The paragraph of the statute that is expressly

dealing with the matter of certain unpaid taxes is paragraph (e) of 22 U.S.C. § 2714a.  The statute

has strong language directing the **Secretary** that he "shall not issue a passport…" to those with

seriously delinquent tax debt.  Even for those that fulfill the **evil** that the statute targets **<u>to be</u>**

**<u>curbed</u>**, "seriously delinquent tax debt", Paragraph (e) of 22 U.S.C. § 2714a says, "**Except as**

**provided in subparagraph (B)**, <u>upon receiving a certification</u> described in section 7345 of title

26 from the Secretary of the Treasury, the Secretary of State shall not issue a passport to any

individual who has a <u>seriously delinquent tax debt</u> described in such section."  (Emphasis added)

**What is subparagraph (B)?**  It is the availability of a **waiver** from the Secretary of State for

emergency or **humanitarian** reasons, even to those who the Secretary has been directed to not

issue a passport who have been **certified** to have **seriously delinquent tax debt** after **full due**

**process** in the tribunal having jurisdiction to make the determination.  Even if paragraph (e)

applied to us, whether or not we identified with a SSN, the avenue of due process to obtain a

waiver from the Secretary of State should be made available as seems to be plain by the statute.

      "(e) AUTHORITY TO DENY OR REVOKE PASSPORT.—
        (1) DENIAL.—

(A) IN GENERAL.—**Except** as provided under **subparagraph (B),** upon receiving a certification described in section 7345 of the Internal Revenue Code of 1986 from the Secretary of the Treasury, the <u>**Secretary of State**</u> shall not issue a passport to any individual who has a seriously delinquent tax debt described in such section.
**(B)** EMERGENCY AND **HUMANITARIAN SITUATIONS.—Notwithstanding subparagraph (A),** the <u>**Secretary of State**</u> may issue a passport, in emergency circumstances **or for humanitarian reasons,** to an individual described in such subparagraph.  FAST Act, U.S. Public Law 114-94, Dec. 4, 2015, 129 STAT 1732 cited at 22 U.S.C. § 2714a(e) (Emphasis Added)

24.     Where paragraph (e) is specifically targeted to the evil intended to be curbed,

paragraph (f) has placed us innocent Plaintiffs in its crosshairs.  Yet, the language of paragraph

(f) is not as strong as paragraph (e).  Instead of saying in paragraph (f) that the <u>**Secretary of**</u>

<u>**State**</u> "shall not" issue a passport, paragraph (f) says that the <u>**Secretary of State**</u> is "**authorized**

do deny such application and is **authorized** to not issue a passport to the individual."  And even

in that instance, we have the same caveat that will preserve liberty on an individual basis even

should the person who does not identify with a SSN is doing it as a wonton wrong.  The

'authorization' to deny the passport if someone does not identify with a SSN opens with the

caveat, ""Except as provide under subparagraph (B),..."  What is subparagraph (B)?

"<u>Notwithstanding</u> subparagraph (A), the Secretary of State may issue a passport, in emergency

circumstances or for humanitarian reasons, to an individual described in subparagraph (A)."

(f) REVOCATION OR DENIAL OF PASSPORT IN CASE OF INDIVIDUAL WITHOUT SOCIAL SECURITY ACCOUNT NUMBER.—
(1) DENIAL.—
(A) IN GENERAL.—**Except as provided under subparagraph (B),** upon receiving an application for a passport from an individual that either—
(i) does not include the social security account number issued to that individual, or
(ii) includes an incorrect or invalid social security number willfully, intentionally, negligently, or recklessly provided by such individual, the Secretary of State is authorized to deny such application and is authorized to not issue a passport to the individual.

**(B) EMERGENCY AND HUMANITARIAN SITUATIONS.—
Notwithstanding subparagraph (A)**, the <u>**Secretary of State**</u> **may** issue a
passport, in emergency circumstances **or for humanitarian reasons**, to an
individual described in subparagraph (A). (Emphasis added)

(2) REVOCATION.—

(A) IN GENERAL.—The <u>**Secretary of State**</u> may revoke a passport
previously issued to any individual described in **paragraph (1)(A)**.
(B) LIMITATION FOR RETURN TO UNITED STATES.—If the
Secretary of State decides to revoke a passport under
subparagraph (A), the <u>**Secretary of State**</u>, before revocation,
may—

(i) limit a previously issued passport only for return travel to the
United States; or
(ii) issue a limited passport that only permits return travel to the United
States.

FAST Act, U.S. Public Law 114-94, Dec. 4, 2015, 129 STAT 1732-1733
cited at 22 U.S.C. § 2714a(f) (Emphasis Added)

25.     It is the <u>**Secretary of State**</u> that retains the absolute prerogative to say yes or no

regarding the request for accommodation that the Plaintiffs each requested.  Yet, has made not

expressly provision for a process of access to the Secretary's audience.

**VI.     The Defendants' Demand For The Filing A Department Policy Driven
Affidavit Form To Justify Denial Or Revocation Of Plaintiffs' Passports Is
Not Due Process and Violates Statutory And Constitutional Law**

26.     According to Justice Black in *Aptheker*, prior to denying us our "liberty to travel or

(our) liberty to do anything else" the law requires the Government to give us "the benefit of a

trial according to due process, which requires a trial by jury before an independent judge, after an

indictment, and in accordance with all the other procedural protections of the Fourth, Fifth, and

Sixth Amendments."  In *Aptheker*, Justice Black said that (Mr. Aptheker ) was denied "the

freedom of speech, press, and association which the First Amendment guarantees."  In our case,

it is our activity of religion that is denied, one of the other things the First Amendment

guarantees.  The type of process that the *Aptheker* Court describes is a far cry from the excuse

given by the Defendant for stripping us of our right to travel.  The Defendants' penalizing us for

not filling out a form that itself is prohibited by law and regulation, does not rise to the level of

substantive due process demanded by the law of the land.

> ""MR. JUSTICE BLACK, concurring.
>
> Section 6 of the Subversive Activities Control Act makes it a felony for a member of a "Communist," "Communist-action," or "Communist-front" organization to apply for, use, or attempt to use a passport for travel abroad. I concur in the Court's holding that this section of the Act is unconstitutional, but not on the ground that the Due Process Clause of the Fifth Amendment, standing alone, confers on all our people a constitutional liberty to travel abroad at will. Without reference to other constitutional provisions, Congress has, in my judgment, broad powers to regulate the issuance of passports under its specific power to regulate commerce with foreign nations. The Due Process Clauses of the Fifth and Fourteenth Amendments do mean to me, however, that neither the Secretary of State nor any other government agent can deny people in this country their liberty to travel or their liberty to do anything else except in accordance with the "law of the land" as declared by the Constitution or by valid laws made pursuant to it. For reasons stated in my dissenting opinion in *Communist Party* v. *Subversive Activities Control Board*, 367 U.S. 1, 137, I think the whole Act, including § 6, is not a valid law, that it sets up a comprehensive statutory plan which violates the Federal Constitution because (1) it constitutes a "Bill of Attainder," which Art. I, § 9, of the Constitution forbids Congress to pass; (2) it penalizes and punishes appellants and restricts their liberty on legislative and administrative fact-findings that they are subversives, and in effect traitors to their country, **without giving them the benefit of a trial according to due process, which requires a trial by jury before an independent judge, after an indictment, and in accordance with all the other procedural protections of the Fourth, Fifth, and Sixth Amendments**; and (3) it denies appellants the freedom of speech, press, and association which the First Amendment guarantees. (Emphasis added)
>
> The Subversive Activities Control Act is supposed to be designed to protect this Nation's "internal security." This case offers another appropriate occasion to point out that the Framers thought (and I agree) that the best way to promote the internal security of our people is to protect their First Amendment freedoms of speech, press, religion and assembly, and that we cannot take away the liberty of groups whose views most people detest without jeopardizing the liberty of all others whose views, though popular today, may themselves be detested tomorrow."" *Aptheker v. Secretary of State*, 378 U.S. 500, 518-519 (1964)

27.     The justifiable power to deny or revoke a passport comes only after a separate

government branch or agency has made the determination of guilt in conformance with the

essentials of due process, which are; investigation after probable cause; indictment; burden upon

the government to prove a wrongful act is done with malice and aforethought; and an adversarial process by an independent arbiter.  According to 22 C.F.R. § 51.60(a), those whose passports are denied or revoked must be in default on a loan to the United States; Certified by the Secretary of Health and Human Services to be in arrears of child support; or a registered sex offender.  Each of those things is a wrong.  Each of them require a due, adversarial process before an independent arbiter under standards of law and lawfully promulgated regulations and <u>not merely a process of **woodshed** Department policy</u>.

28.    Those things listed in the instances where the Department "may" but not "must" refuse a passport, the determinations of subparagraphs 22 C.F.R. § 51.60(b)-(h) are wrongs, incapacities or formal accusations of wrong by law enforcement agencies against people who are or have: outstanding Federal arrest warrants, under court ordered restrictions, court ordered to a mental institution, declared incompetent by a court, is subject to an extradition order, involved in a prosecution or has an arrest warrant for a felony, under a military order of restraint, in debt to the United States, a convicted drug trafficker, a convicted sex trafficker or is currently accused of intending to be a sex trafficker or other criminal trafficker, who is a child being trafficked, one who poses whose activities post a threat to national security, and of course one who has serious delinquent tax debt.  Lumped in with all of those are those who will not identify with a SSN for reasons of sincere and bona fide religion as if it were a crime, 22 C.F.R. § 51.60(f).

29.    Where is the accusation by an injured party or the formal indictment of a crime against us?  There is none.  Have we committed a felony within a State, the United States, or any foreign country in our declaring that form reasons of religion we cannot identify with a SSN?  We have committed no crime, have not had any indictment against us, have injured no party, have not defaulted on a loan, are not declared by a court to be incompetent, etc., yet we are being

punished even though, as Justice Douglas said in *Aptheker*, "If, as I think, the right to move freely from State to State is a privilege and immunity of national citizenship (see *Edwards v. California*, 314 U.S. 160, 178), none can be barred from exercising it, though anyone who uses it as an occasion to commit a crime can of course be punished. But the right remains sacrosanct, only illegal conduct being punishable."

"MR. JUSTICE DOUGLAS, concurring.

We noted in *Kent* v. *Dulles*, 357 U.S. 116, 126, that "freedom of movement," both internally and abroad, is "deeply engrained" in our history. I would not suppose that a Communist, any more than an indigent, could be barred from traveling interstate. I think that a Communist, the same as anyone else, has this right. Being a Communist certainly is not a crime; and while traveling may increase the likelihood of illegal events happening, so does being alive. If, as I think, the right to move freely from State to State is a privilege and immunity of national citizenship (see *Edwards v. California*, 314 U.S. 160, 178), none can be barred from exercising it, though anyone who uses it as an occasion to commit a crime can of course be punished. But the right remains sacrosanct, **only illegal conduct being punishable**.

Free movement by the citizen is of course as dangerous to a tyrant as free expression of ideas or the right of assembly and it is therefore controlled in most countries in the interests of security. That is why riding boxcars carries extreme penalties in Communist lands. That is why the ticketing of people <u>and the use of identification papers are routine matters under totalitarian regimes</u>, **yet abhorrent in the United States**.

Freedom of movement, at home and abroad, is important for job and business opportunities — for cultural, political, and social activities — for all the commingling which gregarious man enjoys. Those with the right of free movement use it at times for mischievous purposes. But that is true of many liberties we enjoy. **We nevertheless place our faith in them, and against restraint, knowing that the risk of abusing liberty so as to give rise to punishable conduct is part of the price we pay for this free society**.

**Freedom of movement is kin to the right of assembly and to the right of association.** These rights may not be abridged, *De Jonge* v. *Oregon*, 299 U.S. 353; *NAACP* v. *Alabama*, 357 U.S. 449, 460-462, only illegal conduct being within the purview of crime in the constitutional sense.

War may be the occasion for serious curtailment of liberty. Absent war, I see no way to keep a citizen from traveling within or without the country, unless there is

power to detain him. *Ex parte Endo*, 323 U.S. 283. <u>And no authority to detain exists except under extreme conditions, *e. g.*, unless he has been convicted of a crime or unless there is probable cause for issuing a warrant of arrest by standards of the Fourth Amendment</u>. This freedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it often makes all other rights meaningful — knowing, studying, arguing, exploring, conversing, observing and even thinking. **Once the right to travel is curtailed, all other rights suffer, just as when curfew or home** detention is placed on a person.

America is of course sovereign; but her sovereignty is woven in an international web that makes her one of the family of nations. The ties with all the continents are close — commercially as well as culturally. Our concerns are planetary, beyond sunrises and sunsets. Citizenship implicates us in those problems and perplexities, as  well as in domestic ones. We cannot exercise and enjoy citizenship in world perspective without the right to travel abroad; and I see no constitutional way to curb it unless, as I said, there is the power to detain. *Aptheker v. Secretary of State*, 378 U.S. 500, 519-521 (1964) (Emphasis added)

## VII.     Statute And Regulation Make The Defendants' Unauthorized Form Unlawful. It Violates The Due Process Authorized And Controlled By Statute And Regulation.  The Statute Prohibits The Defendants From Penalizing The Plaintiffs

30.     There is due process that is required, mandated by Congress, before the Defendant is allowed to present their form which they say is the 'due process' that warranted their denial of Lewis's and Pakosz's passport renewals, and which nullified as 'error' and motivated the revocation of my passport.  The Defendants' form is generated in a process that is particularly prohibited by Congress.  Therefore, their denying or revoking our passports on the basis of our not responding to their "Departmental policy" affidavit form is not valid and is indeed a violation of due process, with the result of denying our right to travel without due process.  The United States District Court, District of Columbia, Judge Tanya S. Chutkan, explained that process that is required before any government form is authorized for use.:

"A. The Paperwork Reduction Act The Paperwork Reduction Act of 1995, 44 U.S.C. § 3501 et seq. ("PRA"), was established to "minimize the paperwork burden" that the federal government may require "for 2 individuals, small businesses, educational and nonprofit institutions, Federal contractors, State, local

and tribal governments, and other persons resulting from the collection of information by or for the Federal Government." 44 U.S.C. § 3501(1). The statute also strives to "improve the quality and use of Federal information to strengthen decisionmaking, accountability, and openness in Government and society." Id. § 3501(4). In striking the balance between minimizing the burden on the public and obtaining useful information for the government, **Congress** established a procedure in which federal agencies must obtain approval from the Office of Management and Budget ("OMB") to collect certain types of information from the public. Under the PRA, an agency that proposes to collect information **first** conducts its own "evaluation of the need for the collection of information" and the burden collecting such information would create. Id. § 3506(c)(1)(A)(i). Frequently, the agency is **also required to publish a "sixty-day notice"** in the Federal Register to solicit comments on the agency's proposal. Id. § 3506(c)(2)(A). **After** considering comments and making any revisions, the agency submits the proposed collection of information to OMB **and publishes a second Federal Register notice**. This notice announces the start of OMB's review and **begins a 30-day comment period**. Id. § 3507(a)-(b). "In [this] notice, the agency must set forth (1) a title for the collection of information, (2) a summary of the collection of information, (3) a brief description of the need for the information and the proposed use of the information, (4) a description of the likely respondents and proposed frequency of response to the collection of information, and (5) an estimate of the burden that shall result from the collection of information." United to Protect Democracy v. Presidential Advisory Comm'n on Election Integrity, 288 F. Supp. 3d 99, 102 (D.D.C. 2017) (citing 44 U.S.C. § 3507(a)(1)(D)(ii)(I)-(V)). 3 **OMB may not act on the agency's request until after the comment period has closed**. 44 U.S.C. § 3507(b). Upon completion of its review, OMB, through the Office of Information and Regulatory Affairs ("OIRA"), makes one of three determinations: it **(1) approves the collection of information**; **(2) disapproves the collection of information**; or **(3) instructs the agency to make changes to the collection of information**. Id. § 3507(c)(1), (e)(1). **Before** approving a proposed collection, **OMB must** "determine whether the collection of information by the agency is necessary for the proper performance of the functions of the agency, including whether the information shall have practical utility." Id. § 3508. **Once OMB grants approval**, the agency may proceed with its collection, and **OMB issues a control number that must be displayed on the collection-of-information form**. Id. § 3507(a)(2), (3). An OMB approval is for three years, after which the agency must seek an extension from OMB. Id. §§ 3507(g), (h)(1). At any point before the approval period expires, OMB "may decide on its own initiative, after consultation with the agency, to review the collection of information." 5 C.F.R. § 1320.10(f). This review can be started only "when relevant circumstances have changed or the burden estimates provided by the agency at the time of initial submission were materially in error." Id. OMB may also stay the prior approval of a collection of information not contained in a current rule, but only for "good cause." Id. § 1320.10(g). *National Women's Law Center, et al. v. Office of Management and Budget*, Civil Action No. 17-cv-2458 (TSC), Memorandum and Opinion by U.S.

District Judge Tanya S. Chutkan, United States District Court, Washington, District of Columbia, March 4, 2019

31.    There is no OMB control number of the form demanded by the Defendants to be filed.   The fact there is no OMB control number on the form is evidence that the Defendants have not conducted the procedure demanded by Congress that provides the ordinary public review of things that will be imposed upon the people by the force of law.  It does not provide for the two-house scrutiny whereby the virtuous passion of the passport processors is modulated by the wisdom laden aristocracy of the OMB, with opportunity for input or feedback of the people by means of Federal Register publication, and the ultimate exercise of monarchal prerogative of the Secretary of State.

32.    The Defendant's with the use of their unauthorized form have violated the law 44 U.S.C. § 3512.  The have not refuted that their affidavit form does not have a valid OMB number, that it does not inform us that we are not required to fill in the form if it does not have a valid OMB number, and neither has the Defendant informed us that we are not required to fill in the form according to the demands of Congress.  The Act of Congress provides that none of us can be denied our passports because of our not filing the "Departmental policy" dangerously innovative and injurious form.  The statute and code reads:

> (a)**Notwithstanding** any other provision of law, **no person shall be subject to any penalty** for failing to comply with a collection of information that is subject to this subchapter if—
>> (1) the collection of information **does not display a valid control number** assigned by the Director in accordance with this subchapter; or
>> (2) the agency **fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number**.
> (b)  The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.
> (Added Pub. L. 104–13, § 2, May 22, 1995, 109 Stat. 181; amended Pub. L. 106–398, § 1 [[div. A], title X, § 1064(b)], Oct. 30, 2000, 114 Stat. 1654, 1654A–275.)

VIII.   **The Defendants Conditioning A Passport On The Plaintiffs Filing An Affidavit To Testify Of Guilt Or Innocence; Unlawfully, Arbitrarily, And Capriciously, Legislate A Demand For The Plaintiffs To Testify Against Themselves That They Have Or Have Not Committed A Crime Of Fraud**

33.   The passport application form DS-11 and passport renewal application DS-82, which are legally authorized forms which have valid OMB numbers, asked us to put a social security number on block five of the form or put the number 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 if we could swear under penalty of perjury that we have never been issued a number.  We each understand or believe that the Social Security Administration (SSA) has power to issue account record numbers to their own records but that their doing so could never be issuing numbers to us as people.  We each are of the understanding that we could say honestly on an affidavit that we were never issued a SSN as people, whether or not the SSA ever created a record for themselves labeled with any information that might appear to be like our names, etc.  It is to some merely a matter of semantics.  To those who wield prosecutorial power, we suspect that they will use 'semantics' to their advantage and to our hurt, accusing and jailing us as frauds should some SSA underling take our name information and establish a record against our knowledge and will, now, in the past, or in the future.  To avoid any confusion, we put words in block five that are true according to the facts and circumstances that address that matter that relates to block five.  We also included a letter that explained the information that we put in the form rather than merely putting all zeros which would have been semantically correct.  The unauthorized, underling-policy driven secondary affidavit form is designed for those who put all zeros on the form according to their understanding of semantics.  The Defendants, contrary to the Fifth Amendment, through their unauthorized affidavit form, put the passport applicant under inquisition to prove that they have not committed a crime of fraud on the DS-11 or DS-82 forms, according to the preferred determination of semantics by the Defendant.  That flips due process on its head.

### IX. The Defendants Violate Due Process Where They Legislate Through Underling-Executive Fiat

34.     The Defendants unconstitutionally legislate by executive-underling fiat.  In their revocation letter, the Defendants open their second paragraph by citing 22 U.S.C. § 2714a(f) and 22 C.F.R. § 51.60(f) which particularly authorize, not mandate, revocations for not providing a SSN (Mot. Attach. 1).  The revocation letter misquotes the statute and regulation, in effect as a super-legislature and super-secretary, saying, "…the Department requires that passport applicants provide their SSN on their application, if they have been issued one."  They then go on to say, ""Failure to provide the SSN, or "willfully, intelligently, negligently, or recklessly" providing an incorrect or invalid SSN, or failing to provide an appropriate declaration, will result in the denial of the application.  As you did not provide your SSN or an appropriate declaration, U.S. Passport number 573308010 should not have been issued and is revoded pursuant to 22 C.F.R. § 51.62 (a)(2).""   (Emphasis added)   Notice that they quoted the terms "willfully, intelligently, negligently, or recklessly" from the statute and regulation, but then said, "will" result in the denial of the application which is not a quote of the statute and regulation.  The regulation, 22 C.F.R. § 51.60(f) says that the Department "may" deny the application.  The Defendants then add a statement that is not in the statute or the regulation, "or failing to provide an appropriate declaration."  There is no "appropriate" declaration anywhere established by law or by regulation.  Maybe if the lawful authority of Congress and the lawful regulatory process got involved, the appropriate declaration form might say, "I swear under oath or penalty of perjury that I have not willfully, intelligently, negligently, or recklessly not identified with a SSN."  Maybe it would include an option that says, "I swear under oath or penalty of perjury that I have obediently not identified with a SSN as a matter of religion, rather than willfully, intelligently, negligently, or recklessly not identified with a SSN."  Those options at least would

be a first-hand, first person, testimony of what we could swear to in good conscience related to

the reality of what makes a valid first-person oath and what we understand to be true.  We

provided a letter that explained how we obediently left out an SSN, whether or not we or the

SSA believe that there ever was, is, or will be a SSA record that has any explicit or oblique

reference to anything like our names or other associated information.  Since there is no law or

regulation that defines the "appropriate" declaration, it stands to reason that our declaration that

is true and explains our obedience as a matter of religion is indeed an "appropriate" declaration

and should not be excluded by the color-of-law abuse of power of underling-executive fiat.

## X.   The Court Is Wrongfully Ratifying Super-Legislature Unconstitutional Acts

35.    The Congress has not made 'not identifying with a SSN' as wrong, nor have they

made 22 U.S.C. § 2714a(f)(1)(A) a mandate so long as the safety-check-valve of 22 U.S.C. 2721

or 22 US.C. § 2714a(f)(1)(B) is properly applied to provide constitutional protections.  If 22

U.S.C. 2721 does not provide protection on behalf of the First, Fifth and Ninth Amendments, and

the waiver for humanitarian reasons in 22 US.C. § 2714a(f)(1)(B) does not provide relief, than

22 US.C. § 2714a(f) violates that United States Constitution First, Fifth and Ninth amendments

as it applies to us at the very least.

36.    According to the Social Security Administration, the Congress has not mandated the

program or its record account number system upon the people.  Neither the Defendants or the

Court refuted the quote that we cited from the Social Security Administration saying, ""The

Social Security Act does not require a person to have a Social Security number to live and work

in the United States, nor does it require a Social Security number simply for the purpose of

having one." [4]  We don't believe that Congress has the constitutional power to impose a national benevolence upon everyone nor its national identification number.  Congress certainly must be prohibited by the First, Fifth and Ninth Amendments from imposing it on us since we are obligated by religion to reject the literally damnable number in our free exercise of religion. To be compelled to abandon religion or be refused a passport, and its associated travel, cannot be the law of the land.

### Summary

37.    Our complaint against the Defendants' whimsical application of their "policy" and 'no SSN' statement form is not merely a nit-picky technicality.   In the Paperwork Reduction Act (PRA), the Congress has given a mechanism for the Executive Branch to generate forms that have the force of law upon people whom the government is instituted to protect.  The Defendants' violate PRA where they legislate outside the umbrella of the laws controlling Executive Department rules, regulations, policies, documents, forms, etc., when they imposed an arbitrary form and faux-judicial process that has the force of law injuring our rights, privileges, and immunities.  They act in a judicial function, determining that we are guilty of their accusation that we "failed" or "Willfully, intentionally, knowingly or negligently" incorrectly communicated a SSN, etc.  They did so through a process and with forms that have not been subjected to the light of day and parental supervision which are demanded by the Federal Register Act, Pub. L. 74-220, 49 Stat. 500-503, July 26, 1935; Administrative Procedures Act, Pub.L. 79–404, 60 Stat. 237, June 11, 1946; Negotiated Rule Making Act, Pub. L. 101-648, 104 Stat. 4969, November 29, 1990).

38.    We ask the Court to consider what makes "substantive" due process.  Magna Carta

---

[4] April 11, 2003 letter from Charles A. Mullen, Social Security Administration, Associate Commissioner, Office of Public Inquiries

has the standard.

> "No free man shall be seized or imprisoned, or stripped of his rights or
> possessions, or outlawed or exiled, or deprived of his standing in any other way,
> nor will we proceed with force against him, or send others to do so, except by the
> lawful judgment of his equals or by the law of the land." *Magna Carta*,
> https://www.crf-usa.org/foundations-of-our-constitution/magna-carta-text.html
> (King John, 17th yr. of his reign,Runnymede England, June 15, 1215)

39.   The law of our land is not merely the bill of rights but it necessarily includes the

whole structure of the government.  The structure of government that we have is a mixed

government of three parties; with mixed government elements in the three branches, mixed

government elements in the legislature, and mixed government elements in the promulgation of

rules, regulations and processes that have the force of law.  Those mixed government elements

have been negated in the Defendant's use of their 'no-SSN affidavit' form as the principal

justification for their denial and revocation of our passports.

40.   The Executive branch exerts monarchal power.  The Judicial Branch exerts

judicial power.  The Legislative Branch exerts legislative power.  The laws promulgated by the

legislature are to be executed by the Executive Branch.  The judicial branch is to judge between

the interests of the parties to the constitution, the interests of the branches of the institution, and

the interests of natural and artificial persons who have a dispute, claim, or right in controversy

regarding rights and wrongs.

41.   When considering bills that are proposed intended to become law, the Senate

provides the aristocratic element, and the House of Representatives provides the democratic

element.  The executive retains the right of veto (Latin: forbid) in order that the Monarch ought

not to be whimsically compelled to act without his own consent unless there is strong pressure by

at least two-thirds of the members of both houses of Congress.

42.     The Congress has pragmatically given certain powers to the Executive for the administration of the execution of the laws.  Determining the text of every document produced by the Executive would obviously be too cumbersome for the Congress.  However, the Congress has not given absolute Carte Blanche to the Executive to come up with any sort of form that the Executive would prefer.  Laws of Congress provide certain demands and limitations on the Executive.  No doubt, Congress's demands and limitations on the Executive work to ensure the actions of the Executive are not taken so far as to violate the law in order to enforce the law.

43.     **There are processes that the Congress has imposed upon the Executive before any regulation has the force of law** (Federal Register Act, Pub. L. 74-220, 49 Stat. 500-503, July 26, 1935; Administrative Procedures Act, Pub.L. 79–404, 60 Stat. 237, June 11, 1946; Negotiated Rule Making Act, Pub. L. 101-648, 104 Stat. 4969, November 29, 1990).   This process has been instituted by the Congress so that regulations that have the force of law have sufficient scrutiny from the various elements of the mixed government.  The democratic element is brought to bear by the publication of the proposed regulation.  The aristocratic element is brought to bear in the various processes of review by different agencies under standards promulgated by Congress.  The Monarchic power is brought to bear by the President's access to review of the proposed regulation and the Secretary of that Executive Department retains the right to sign into action the proposed regulation.  A summary of the process is found at the website:  https://www.federalregister.gov/uploads/2011/01/the_rulemaking_process.pdf

44.     The type of behavior of theirs that is injuring our precious rights and international travel is the sort of behavior that Congress appears to want to curb with the acts cited in the previous paragraph.  The Paperwork Reduction Act has a procedure imposed upon the Executive which must be executed before the Executive's forms have any force of law §44 U.S.C. 3512.

The imposed procedures are akin to those processes imposed by Congress upon the Executive for the institution of regulations that have the force of law.  In acting contrary to the PRA with regard to the Defendants "No SSN" statement form, the Defendant has acted as lawmaker, executor and judge and has evaded the due process scrutiny demanded by the structure of our government in violation of the Fifth Amendment, *inter alia*.

I, David Alan Carmichael, declare that this foregoing "PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND THE COMPLAINT REGARDING DUE PROCESS" is produced by myself in agreement with my fellow plaintiffs, Lawrence Lewis and William Pakosz.  With my signature here below, I declare the statements know to me by first hand knowledge true, or understood by me to be true by evidence of which I am aware.  I so swear it to be true in subjection to the witness and judgment by our Heavenly Father, the Son Jesus Messiah, and the Holy Spirit.

Sign: _David Alan Carmichael_   Date: _September 28, 2020_
David Alan Carmichael

I, Lawrence Donald Lewis, declare that this foregoing "PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND THE COMPLAINT REGARDING DUE PROCESS" is produced by Plaintiff Carmichael, with my agreement along with my fellow plaintiff William Pakosz.  With my signature here below, I declare the statements know to me by first hand knowledge true, or understood by me to be true by evidence of which I am aware.  I so swear it to be true in subjection to the witness and judgment by our Heavenly Father, the Son Jesus Messiah, and the Holy Spirit.

Sign: _Lawrence Donald Lewis_    Date: _27 SEP 2020_

Lawrence Donald Lewis

I, William Mitchell Pakosz, declare that this foregoing "PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND THE COMPLAINT REGARDING DUE PROCESS" is produced by Plaintiff Carmichael, with my agreement along with my fellow plaintiff Lawrence Lewis.  With my signature here below, I declare the statements know to me by first hand knowledge true, or understood by me to be true by evidence of which I am aware.  I so swear it to be true in subjection to the witness and judgment by our Heavenly Father, the Son Jesus Messiah, and the Holy Spirit.

Sign: _____       Date: _____
        William Mitchell Pakosz