**United States District Court,**
**District of Columbia**

David Alan Carmichael, *et al.*,                    )
                                                    )        Plaintiffs, *in propria persona*
        Plaintiffs                                  )        Case No:  **19-CV-2316-RC**
                                                    )
              v.                                    )        RE:  61, 62
                                                    )
Michael Richard Pompeo, *et al.*                    )
                                                    )
        Defendants                                  )


# PLAINTIFFS'  RESPONSE  IN OPPOSITION TO  DEFENDANT MOTION
# FOR VOLUNTARY REMAND

# TABLE OF CONTENTS

Table of contents.................................................................................................................. i

Table of Authorities ............................................................................................................ iii

Declaration of Lawrence Donald Lewis In Affirmation of Response ............................................v

Declaration of William Mitchell Pakosz In Affirmation of Response ......................................... vi

Declaration of David Alan Carmichael In Affirmation of Response ........................................... vii

PLAINTIFFS' RESPONSE  IN OPPOSITION TO  DEFENDANT MOTION FOR  ...................1
VOLUNTARY REMAND

I.    Background ................................................................................................................1

II.   Defendants' Fallacious Reasoning Cannot Support Their Motion For Remand .................3

III.  Statutory Grants Of Power Indicate Remand Is Not In The Power Of This Court .............4
      To Grant Based Upon The Nature Of The Action

IV.   The Statute Providing "Record On Review And Enforcement Of Agency Orders" ...........5
      Does Not Give The District Court The Power To Pass Adjudication To The Agency

V.    The Defendants' Ploy Is In Bad Faith; There Is Not Even A Record On Review ..............5

VI.   The Statutes That Control District Court Jurisdiction Place Original Jurisdiction..............6
      Squarely In The District Court - Not In The Agency

VII.  The Model Case, Showing How This Court Must Adjudicate, Is The Federal ..................6
      Circuits' Grant Of Appeal, Vacate Of Judgment, and Remand To The Lower Court
      (GVR) In *Carmichael v. United States*, 298 F.3d 1367

VIII. The Defendants' Stay And Remand Motion Is Foreclosed By The D.C. Circuit................9
      Ruling They Cite In *Limnia, Inc. v. U.S. Dep't Of Energy*, 857 F.3d 379, 381

IX.   The Defendants' Asserting There Is A Question About The Plaintiffs' Identities............10
      Is Frivolous And In Bad Faith

X.    The Court Would Hijack Plaintiffs' Standing On The RFRA Claim If ...........................11
      It Remanded To The Accused Party Without Full Adjudication On The Law
      Applied To The Facts

XI.   A Remand Cannot Be Outcome Determinative................................................................12

XII.    Even With A Remand For The Agency To Review Its Conduct Under The Guise .........12
        Of Conforming To RFRA, The Defendants Privacy Act Violations And Relief Due
        The Plaintiffs Remains In The Sole Jurisdiction And Power Of The Court

XIII.   The Plaintiffs Demands For Relief On Defendants' Privacy Act Violations ....................14
        Need To Be Adjudicated In The Court Having Original Jurisdiction

XIV.    The Plaintiffs Demands For Relief On Defendants' Violation Of The Fifth ................17
        Amendment Need To Be Adjudicated In The Court That Has Original Jurisdiction

XV.     The Plaintiffs Demand For Relief On Defendants' Violations Of The RFRA..............17
        Need To Be Adjudicated In The Court That Has Original Jurisdiction

XVI.    The Defendants' Claim That The Defendants' Need To Remand, To See If They.......19
        Can Accommodate The Plaintiff Religious Practice, Is Frivolous And In Bad Faith
        Since They Already Accommodate It For Non-Religious Reasons

XVII.   Plaintiffs Will Be Unduly Prejudiced By A Remand To The Accused Agency ...........20

XVIII.  The Defendants' Mere Wilingness To Admit They Did Not Consider Religious ........21
        Accommodation Shows That They Do Not Comprehend Even The Base
        Elements Of Law And Justice Necessary To Rightly Apply The Law To The
        Purpose For Which Government Is Instituted

XIX.    Remand Is Barred By The Controlling Regulation 22 CRF §§ 51.60(f) And ................22
        51.70(b) Which Exclude An Agency Appeal Tribunal

Summary    .................................................................................................................................23

# TABLE OF AUTHORITIES

**The Constitution of The United States of America**

      Fifth Amendment ...................................................................................................2

**Supreme Court of The United States**

\*\*    ***Lawrence v. Chater*** .....................................................................4, 5, 6, 11, 12
          516 U.S. 163 (1996)

**Appeals Court of The United States**

\*\*    ***David Alan Carmichael v. United States***...............................................6, 7, 8
          298 F.3d 1367, (Fed. Cir. 2002)

      *Limnia, Inc. v. U.S. Dep't of Energy* ..........................................................9, 10
          857 F.3d 379 (D.C. Cir. 2017)

      *Tanzin v. Tanvir*, 592 U.S. ____ (2020) .........................................................18
          592 U.S. ____ (2020)

**District Court of The United States**

      *Clark v. Perdue* ..................................................................................................20
          Civil Action No. 19-394 (JEB)

**Court of Federal Claims**

\*\*    ***David Alan Carmichael v. United States***...........................................7, 8, 9, 20
          66 Fed. Cl 115, (Ct. Fed. Cl. Nov 2005)

**United States Code**

      5 U.S.C. § 552a............................................................... 2, 12, 13, 14, *passim*
          Privacy Act

      22 U.S.C. § 2714a(f) ..............................................................1, 16, 17, 19, 22
          Revocation or denial of passport in case of individual

      26 U.S.C. § 6039E ..............................................................................................19
          Information concerning resident status

28 U.S.C. § 1331 .................................................................................................6
    Federal question

28 U.S.C. § 2106 .................................................................................................4
    Determination

28 U.S.C. § 2112 ..............................................................................................5, 6
    Record on review and enforcement of agency orders

42 U.S.C. §2000bb ............................................................ 2, 11, 12, 17, *passim*
    Religious Freedom Restoration Act

44 U.S.C. § 3512 ...........................................................................................2, 3, 15
    Paperwork Reduction Act, Public Protection

## United States Code of Federal Regulations

22 C.F.R. § 51.60 .............................................................................................22
    Denial and Restriction of Passports

22 C.F.R. § 51.70 .............................................................................................22
    Request for hearing to review certain denials and revocations

## Federal Rules of Civil Procedure

Rule 16(b) ....................................................................................................2, 23
    Pretrial Conferences; Scheduling; Management

Rule 26(f) ..........................................................................................................2
    Conference Of The Parties; Planning For Discovery

## Federalist Papers

Federalist No. 10 ...............................................................................................4
    Madison, James, *The Same Subject:  The Union as a Safeguard Against Domestic Faction and Insurrection*

I, Lawrence Donald Lewis, declare that I join with my fellow Plaintiffs William Mitchell Pakosz

and David Alan Carmichael in this our "**PLAINTIFFS' RESPONSE IN OPPOSITION TO**

**DEFENDANT MOTION FOR VOLUNTARY REMAND.**" I likewise declare that the

statements of fact are true or are believed by me to be true as I have deduced it by information

available to me. By penalty of perjury under the laws of the United States of America.

Lawrence Donald Lewis
966 Bourbon Lane
Nordman, Idaho 83848

29 December 2020
Date

v

**Declaration of William Mitchell Pakosz In Affirmation of Response**

I, William Mitchell Pakosz, declare that I join with my fellow Plaintiffs Lawrence Donald Lewis

and David Alan Carmichael in this our "**PLAINTIFFS' RESPONSE IN OPPOSITION TO**

**DEFENDANT MOTION FOR VOLUNTARY REMAND.**" I likewise declare that the

statements of fact are true or are believed by me to be true as I have deduced it by information

available to me. By penalty of perjury under the laws of the United States of America.

_____          _____
William Mitchell Pakosz                                          Date
P.O. Box 25
Matteson, Illinois 60443

**Declaration of David Alan Carmichael In Affirmation of Response**

I, David Alan Carmichael, declare that I join with my fellow Plaintiffs Lawrence Donald Lewis

and William Mitchell Pakosz in this our **"PLAINTIFFS' RESPONSE IN OPPOSITION TO**

**DEFENDANT MOTION FOR VOLUNTARY REMAND."** I likewise declare that the

statements of fact are true or are believed by me to be true as I have deduced it by information

available to me. By penalty of perjury under the laws of the United States of America.

David Alan Carmichael                    December 29 2020
David Alan Carmichael                              Date
1748 Old Buckroe Road
Hampton, Virginia 23664

United States District Court,
District of Columbia

David Alan Carmichael, *Et al.*    )
              )
  *Plaintiffs*        )   Case No:  1:19-CV-2316-RC
              )
   v.         )   Re:  ECF 61, 62
              )
Michael Richard Pompeo, *Et. Al.*   )
              )
  *Defendants*      )

## PLAINTIFF'S  RESPONSE  IN OPPOSITION TO  DEFENDANT
## MOTION FOR VOLUNTARY REMAND

### I. Background

  1. The Plaintiffs claim that Defendants, Michael Richard Pompeo, the United States, and

the United States Department of State, violated fundamental and statutory law when they

revoked the Passport of Plaintiff Carmichael and denied the passport renewal of Plaintiffs Lewis

and Pakosz; because Plaintiffs did not identify with a Social Security Number (SSN).  The

Plaintiffs refuse to identity with a SSN for reasons of religion.  The Defendants say that they are

mandated by 22 USC § 2714a(f) to deny passports to the Plaintiffs notwithstanding the non-

mandatory language of the statute that merely "authorizes" the Secretary to deny passports under

certain conditions relating to an applicant not identifying with a SSN.  The Defendants make

exceptions to the SSN requirement for some people, participation in Social Security being

voluntary as a matter of law, with some people successfully avoiding association with a Social

Security Account record.  The Defendants came up with a form for passport applicants to swear

under penalty of perjury that they've never been issued a SSN.  The form is not in compliance

with the Paperwork Reduction Act (PRA), not having gone through the process to obtain an

approved Office of Management and Budget (OMB) validation number.  The PRA requires the

Defendant to notify the Plaintiffs about the OMB number requirement and that they cannot be

penalized for not filling out the form (44 USC § 3512(a)(2)).  The PRA also prohibits the

Defendant from penalizing the Plaintiffs for not filing the non-OMB form (44 USC § 3512(a)(1))

2.     The Plaintiffs wrote to the Secretary of State by name to ask for a religious

accommodation for any demand for a SSN.  Under Secretary Rex Tillerson's office, Paakosz's

passport renewal was denied but Carmichael's passport renewal was approved.  Under Secretary

Pompeo's office, the passport renewal applications of Pakosz and Lewis were denied and

Carmichael's was revoked.  Chillingly, Carmichael's revocation came on the heals of his

whistle-blowing to the White House regarding the problems his religious fellows were having

trying to get their passports renewed.

3.     The Court determined that the Plaintiffs have standing on their claims that the

Defendants violated the Religious Freedom Restoration Act (RFRA) (2nd Cause of Action), the

Fifth Amendment to Consitution (4th Cause of Action), and the Privacy Act (7th Cause of

Action).  The Court gave opportunity for Plaintiffs to amend their complaint as it related to

Fourth Cause of Action.  The Plaintiffs filed their amended complaint (ECF 51).

4.     The Plaintiffs moved for a Rule 16(b) scheduling conference after attempting to

confer with the Defendants pursuant to Rule 26(f) (ECF 55).

5.     On December 4, 2020, the Defendants filed a Status Report where they promised to

file a motion for stay and remand.  Embedded with their status report was a motion and proposed

order to stay the proceedings indefinitely (ECF 52).

6.     On December 16, 2020, the Plaintiffs by express overnight mail filed their

"PLAINTIFF RESPONSE IN OPPOSITION TO DEFENDANT MOTION AND PROPOSED

ORDER IN DECEMBER 4, 2020 DEFENDANT STATUS REPORT." (ECF 64)

7.    On December 18, 2020, Defendants moved for a "voluntary stay and remand, fulfilling their promise initiated November 11, 2020 and reiterated December 4, 2020 (ECFs 61 and 62).

8.    Due to circumstances beyond Plaintiffs' control, their response to the Defendants' December 4th proposed order (ECF 52) was delivered in six days instead of the Priority Express overnight mail for which we paid.  Plaintiffs filed a copy by email (ECF 63) with an explanation about the U.S. Mail delay.  It was clearly labeled as Plaintiffs' response to ECF 52 but the Clerk **wrongly labeled** it as a response to Defendants' motion for remand (ECF 61).  The mail eventually arrived to the Courthouse by December 22, 2020, and the Clerk entered the document a second time, citing that as Plaintiffs' response to ECF 52 (ECF 64).  Plaintiffs continue to be injured by their exclusion from access to the courthouse, and exclusion from electronic filing.

9.    **The Plaintiffs <u>oppose</u> the Defendants' MOTION FOR A VOLUNTARY REMAND.**

## II.    Defendants' Fallacious Reasoning Cannot Support Their Motion For Remand

10.    The Defendants come to the court with seemingly plausible but fallacious sophistic reasoning to support their motion.  The Plaintiffs have <u>standing</u>, according to the statutes that provide remedy and relief through the United States District Court.  The Plaintiffs seek relief that is not in the power or prerogative of the Defendant to adjudicate.  The Defendants, without statutory support for their motion, ask the court to ignore the unlawful conduct of the Defendants; to ignore the past, current and future damage to the Plaintiffs; ignore the facts alleged and admitted which show the basis of the denial and revocation of passports is <u>not</u> about doubt of the Plaintiffs identity; and to have the actionable case transferred out of the Judicial Branch, into the Executive Branch, that is showing itself to be its own lawmaker, executor and

judge contrary to the limits placed upon it by the Congress and without legitimate adversarial due process.

11.     They are asking the man of judicial wisdom to pass the baton of discernment to the Executive man of power, forgetting that the institution requires the judiciary to resist every encroachment on its office.  "Ambition must be made to counteract ambition." [1]

### III.  Statutory Grants Of Power Indicate Remand Is Not In The Power Of This Court To Grant Based Upon The Nature Of The Action

12.     Many of the cases where a remand is found lawful, are cases where the Supreme Court or the United States Court of Appeals rests its power to remand on the particular statute we find at 28 U.S.C. § 2106.  There, the higher <u>courts</u> are empowered to "require such further proceedings" to lower <u>courts</u>, all within the <u>judiciary</u>:

> "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order <u>of a court</u> lawfully brought before it for review, and may remand the cause <u>and</u> <u>direct</u> the <u>entry</u> <u>of such</u> appropriate judgment, decree, or order, or require such further proceedings to be had <u>as may be just</u> under the circumstances."  28 U.S.C. § 2106 (June 25, 1948, ch. 646, 62 Stat. 963.)

13.     The "further proceedings" power is not for the subjective and speculative finding for efficiency or economy, but is instead for objective justice.  Even where the power to order "further proceedings" to a subordinate <u>court</u>, the Supreme Court in *Lawrence v. Chater* said, "that the GVR power should be used sparingly."  *Lawrence v. Chater*, 516 U.S. 163, 164 (1996)

---

[1]  Madison, James. **Federalist** No. 10: "*The Same Subject Continued: The Union as a Safeguard Against Domestic Faction and Insurrection.*" New York Daily Advertiser, November 22, 1787.  "But the great security against a gradual concentration of the several powers in the same department, consists in giving to those who administer <u>each department</u> the necessary constitutional means and personal motives to <u>resist encroachments</u> of the others. The provision for defense must in this, as in all other cases, be made commensurate to the danger of attack. Ambition must be made to counteract ambition. The interest of the man must be connected with the constitutional rights of the place. It may be a reflection on human nature, that such devices should be necessary to control the abuses of government. But what is government itself, but the greatest of all reflections on human nature? If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place <u>oblige it to control itself</u>. (Emphasis added)

#### IV. The Statute Providing "Record On Review And Enforcement Of Agency Orders" Does Not Give The District Court The Power To Pass Adjudication To The Agency

14.     Unlike *Lawrence v. Chater* where the Congress has given the courts the power to "require such further proceedings" to lower courts, we can find no statute giving power of the District Court to remand one party's Article III case to the other party.  The authority for the District Court to consider agency action as an appeal is 28 U.S.C. § 2112, Record on review and enforcement of agency orders.  Even 28 U.S.C. § 2112 does not lend to the District Court the power to merely remand an 'Administrative Appeal' from an Article I quasi-judicial administrative tribunal into the discretion of the Article I quasi-judicial administrative tribunal. Even if this case was a mere issue of an "appeal" to an administrative tribunal's order, the Court is not expressly empowered to remand.  The Court is instead expressly charged by the Congress to take jurisdiction to "enjoin, set aside, suspend, modify, or otherwise review or enforce orders" of the agency in accordance with 28 U.S.C. § 2112(a).  There is no statutory power there to remand notwithstanding the frequency cited by the Defendants.  It is an offense to the Constitution and the Congress to take our Article III standing case, eject it out of the Court, and inject it into an arbitrary irregular administrative quasi-tribunal to be conducted by the accused.

#### V. The Defendants Ploy Is In Bad Faith; There Is Not Even A Record On Review

15.     For the District Court to remand the case as moved by the Defendants, it would not even be proceeding according to the requirements of 28 U.S.C. § 2112, subparagraphs (a) and (b).  There is no record-on-appeal before the Court for which it can make a determination under the guise of the remand proposed by the Defendants.  The stay and remand motion of the Defendants is a meritless use of 'anything reachable' in their procedural tool bag and the remand is inappropriate even if it were available under the statute.  Their tactic is part of an unfair and manipulative litigation strategy.

"If it appears that the intervening development, such as a confession of error in some, but not all, aspects of the decision below, is part of an unfair or manipulative litigation strategy, or if the delay and further cost entailed in a remand are not justified by the potential benefits of further consideration by the lower court, a GVR order is inappropriate." *Lawrence v. Chater*, 516 U.S. 163, 168 (1996) (reminder: the "V" stands for vacate rather than voluntary).

16.     In Plaintiff Carmichael's case, someone below Mr. Rolbin took the role of lawmaker, judge, and executioner upon themselves and laid a revocation order on the signature desk of Jonathan Rolbin. Is that the Agency quasi-tribunal upon review? Without discovery, we don't know what happened, who did what, or what their quasi-judicial process is. There is no record before the Court upon which it can review as an appeal pursuant to 28 U.S.C. § 2112.

## VI.     The Statutes That Control District Court Jurisdiction Place Original Jurisdiction Squarely In The District Court - Not In The Agency

17.     Our case is not one that is merely an appeal of an agency tribunal, "an agency decision of review" but it is an Article III action against the person of the agency and its actors who violated the law, and the laws of the United States, with injury to our life, liberty, and property resulting from their wrong. It is the District Court that is empowered by Congress:

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331

18.     The Court cannot force the Plaintiffs to be subjected to the proceedings by a magistrate or arbitration that even operates within the branch of the judiciary. So then, how could the District Court force the Plaintiffs into the jaws of the Executive Branch who is acting as their own lawmaker, judge and executioner against the rights of the Plaintiffs?

## VII.     The Model Case Showing How This Court Must Adjudicate Is The Federal Circuits' <u>G</u>rant Of Appeal, <u>V</u>acate Of Judgment, and <u>R</u>emand To The Lower <u>Court</u> (GVR) In *Carmichael v. United States*, 298 F.3d 1367

19.     Plaintiff Carmichael filed suit against the United States claiming that the U.S. Navy violated law and regulation when it refused to consider Carmichael's religious accommodation

request to not be identified with a SSN has the Navy's Military Personnel Identification Number

(MPIN) (Court of Federal Claims, Case No. 99-958C) *Carmichael v. United States*, 298 F.3d

1367, U.S. Ct. App. (Fed. Cir. Aug. 2002); 66 Fed. Cl. 115 (2005); 70 Ct. Fed. Cl. 81 (2006).

The Court of Federal Claims dismissed the claim saying that the discharge was voluntary since

Carmichael failed to identify himself with a SSN on reenlistment papers after being denied his

request for religious accommodation.  Carmichael claimed that the discharge was not voluntary

because the Navy had failed to follow the directives of the Navy, and the Defense Department,

regarding the process and standards for religious accommodations, SECNAVINST 1730.8 and

DoD Directive 1730.8.  Plaintiff Carmichael appealed the Court's dismissal.

20.     The Federal Circuit found:  "…there is no evidence in the record that Carmichael's

request procedurally was treated as a request for religious accommodation, or that it would have

been denied had it been so treated." *Carmichael v. United States*, 298 F.3d 1367, 1376

(Fed.Cir.2002)  The District court in our passport case likewise found, "the record suggests that

Plaintiffs' requests for religious accommodations were not seriously considered on their merits

when submitted."  (ECF 45, p. 14, 1st para.)

21.     **We do not cite this case to support a Remand** because we believe this is not a case

of mere appeal from a Congressionally formed administrative tribunal, but is a case of first

impression in the Court having original jurisdiction.  We cite the Federal Circuit's ruling because

the guidance given to the Court of Federal Claims **is guidance that ought to be applied by the**

**District Court in our case**.  The Federal Circuit Granted the appeal, gave particular declaration

of law as it applied to the facts, Vacated the lower court's decision, and Remanded the case with

particular guidance to the lower court to determine what would have happened if the agency, the

U.S. Navy, had followed their religious accommodation procedures:

""We therefore remand for a hearing to determine Carmichael's claim. The <u>trial court</u> must determine whether at the time Carmichael sought religious accommodation, the Navy "wrongfully" failed to follow its own rules and procedures in considering his request (e.g., whether the agency had "no lawful authority" for its action), and whether any such failure "directly caused" Carmichael's separation. If these conditions are met, the <u>trial court</u> then must evaluate whether "a reasonable employee confronted with the same circumstance would feel coerced into resigning," and <u>whether the Navy can show that it would have taken the same action after following proper procedures</u>."" *Carmichael v. United States*, 298 F.3d 1367, 1376 (Fed.Cir.2002) (Emphasis added)

22.     The Court of Federal Claims did not remand the case back to the accused agency so that the agency, as a post-facto super-religious-accommodation process, might prove to itself what it might have done.  The Court initiated discovery so that the <u>Court</u> would have access to the evidence necessary for the Court to do justice:

""After conducting a telephonic conference with the parties, this court resolved the first three questions in plaintiffs favor and ordered the parties to undertake discovery pertaining to the lone remaining issue: "<u>whether the Navy can show that it would have taken the same action after following proper procedures</u>." *Id.*[1] The parties' discovery proceedings consisted of conducting depositions of Captain Joseph Benkert, plaintiffs Commanding Officer, and Rear Admiral L.R. Marsh, Acting Deputy Chief of Naval Personnel (Acting DCNP),[2] as well as producing any documents relevant to the issue."" *Carmichael v. United States*, 66 Fed. Cl. 115, 117 (2005) (Emphasis added)

23.     After reading a five-hundred-page (500) actual record, the Court initiated admissions, interrogatories, production of procedure documents, and deposition of the principal officers.  The Court of Federal Claims thoroughly explained how Carmichael had been injured in denial of his right to in-agency review of his religious accommodation request, even to the Secretary of The Navy. *Ibid* at 126-128   The Court rejected the idea of a remand to the agency.

"… the mere fact that the CNP made the final decision without regard to regulations applicable to religious accommodation requests did not vitiate the error. *Carmichael*, 298 F.3d at 1375. Rather, <u>the burden is on the Navy to demonstrate how it would have processed plaintiffs request for a religious accommodation under the mandates of applicable instructions and regulations</u>. The focus here is on the means and the end, for the means dictate the end. The **Navy has already once disregarded the applicable regulations and to allow it**

**to do so again in the context of a harmless error analysis would permit the Navy to commit the same mistake twice and avoid any accountability for its actions**." *Carmichael v. United States*, 66 Fed. Cl. 115, 122 (2005) (Emphasis added)

24.    The <u>Court</u> determined that the Navy could not prove that Carmichael's request for

accommodation would not have been approved since the in-agency appeal was thwarted where it

might have been appealed even to the <u>Secretary</u> of the Navy.

> ""Therefore, because plaintiff has not been afforded said review, the court
> concludes that the Navy has not "[shown] that it would have taken the same
> action after following proper procedures." *Carmichael*, 298 F.3d at 1376. Plainly
> stated, **the Navy failed to proffer substantial evidence that its error was
> harmless**. See *Christensen*, 60 Fed.Cl. at 29 (quoting *Sanders*, 219 Ct.Cl. at
> 310, 594 F.2d 804). Accordingly, the court resolves the Federal Circuit's final
> question against defendant and plaintiff prevails on his motion for summary
> judgment."" *Ibid* at 127-128.

## VIII.    The Defendants' Stay And Remand Motion Is Foreclosed By The  D.C. Circuit Ruling They Cite In *Limnia, Inc. v. U.S. Dep't Of Energy*, 857 F.3d 379, 381

25.    In the Defendants motion for remand, Legal Standards section, they partially quote

Circuit Judge Kavanaugh where they say, ""Courts "generally grant an agency's motion to

remand so long as 'the agency intends to take further action with respect to the original agency

decision on review.'"" Citing *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 381 (D.C. Cir.

2017).   The Defendants failed to quote Judge Kavanaugh's following statement connected by a

conjunction, "**But a voluntary remand is typically appropriate only when the agency intends

to revisit the challenged agency decision on review** (Caveat left out by Defendants – Emphasis

added)." *Ibid* 381   Like our objection voiced in our status report (ECF 54, paras 28. and 29.),

Limnia, Inc. objected to the District Court's granting the government agency's voluntary remand

request, and closing Limnia's judicial action.  On Appeal, the D.C. Circuit said that it had to

"…determine whether it was proper for the District Court to do so." *Ibid* at 381.  Limnia

contended that, "to grant the voluntary remand request functioned as a dismissal of Limnia's

APA claims. *Ibid* at 381. Kavanaugh agreed, saying, "We agree with Limnia."

> "Limnia argues that the District Court was wrong to grant the Department's voluntary remand request. That is so, according to Limnia, because the Department did not intend to revisit the challenged agency decisions on review. Rather, the Department sought the remand on the basis that Limnia could submit brand new applications for agency review. Limnia contends that, with the case in that posture, the District Court's <u>decision to grant the voluntary remand request functioned as a dismissal</u> of Limnia's APA claims. <u>We agree with Limnia</u>. A district court has broad discretion to decide whether and when to grant an agency's request for a voluntary remand. But <u>a voluntary remand is typically appropriate only</u> when the agency intends to revisit the challenged agency decision on review. <u>That prerequisite was not met in this case</u>. We therefore reverse the order of the District Court and remand the case to the District Court for further proceedings consistent with this opinion." *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 381 (D.C. Cir. 2017) (Emphasis added)

26.     In the Case of *Limnia*, the Defendants wanted to run the Plaintiffs through a new application process rather than actually review the Agency's decision upon Limnia's application. Circuit Judge Kavanaugh indicated that was <u>not</u> appropriate. The Defendants similarly in our case have communicated, in so many words, their intentions to back the Plaintiffs up to a time prior to their original passport issuances in 2007 and 2008. They communicated to the Plaintiffs that they would have to run a gauntlet of unspecified, hence unbounded, interrogation as if the Plaintiffs had not adequately identified themselves for the purpose of the original passport issuance (ECF 54, Attachment 3). The Circuit in *Limnia* rejected the legitimacy of that idea.

## IX.    The Defendants Asserting There Is A Question About The Plaintiffs' Identities Is Frivolous And In Bad Faith

27.     The Defendants asserting that there is now or has ever been any question about the verity of either of the Plaintiffs' identities is frivolous and in bad faith. There is no accusation that there is another Lawrence Donald Lewis, or a William Mitchell Pakosz, or a David Alan Carmichael, that has been lawfully barred from travel, and with whom the Defendants cannot distinguish. As we each protested in our respective notices and demands submitted at the same

time with our Status Report (ECFs 53, 56, 57) there has never been a question of our identities at or since the issuing of our passports in 2007 and 2008. Our identities were verified in 2007 and 2008 and have not changed. The Defendants form asking for additional identification information was never raised because it was never a question. There is now no legitimate question regarding the Plaintiffs' identity. Making the Plaintiffs run the gauntlet described by the Defendants would be allowing the Defendants to instigate another lawless act, where they would be in effect retroactively voiding the grant of the Plaintiffs passports in 2007 and 2008.

### X.   The Court Would Hijack Plaintiffs' Standing On The RFRA Claim If It Remanded To The Accused Party Without Full Adjudication On The Law Applied To The Facts

28.   If the RFRA is applied to the Defendants' motion for remand, the Court is in effect granting an arbitrary summary judgment in favor of the Plaintiffs second cause of action without the Plaintiffs having the benefit of discovery and an opportunity to frame the discussion. It gives the Defendants a no-fault pass notwithstanding the lawlessness of their conduct, the injury to the Plaintiffs, and the injury to society.

29.   Justice Scalia, with Justice Thomas joining, revealed something of the requisites of legitimate remand in the opening remarks of their dissent in *Lawrence*. Their statement quoted here is not substantively in opposition to the finding by the majority. Rather, it appears to be something upon which their colleagues could agree.

> "It sometimes occurs that, after having considered the lower court decision and found error, an appellate <u>court</u> merely reversed or vacates and then remands – that is, it sets the judgment aside and sends the case back to the lower <u>court</u> for further proceedings, rather than entering or directing entry of judgment for the appellant or petitioner. That is the appropriate course whenever the finding of error does not automatically entitle the appellant or petitioner to judgment, and the appellate court cannot conduct (or chooses not to conduct) the further inquiry necessary to resolve the questions remaining in the litigation." *Lawrence v. Chater*, 516 U.S. 163 (1996), Scalia and Thomas dissent, at 177-178   (Emphasis added)

30.     Justices Scalia and Thomas went on to complain, ""What is at issue here, however, is a different sort of creature, which might be called "no-fault VR": vacation of a judgment and remand without any determination of error in the judgment below."" *Ibid*, dissent at 178  In our case, the situation is much worse.  The Defendants want a "no-fault R" without a "V" in an action that does not amount to a "G" according to its nature and its jurisdictional basis.

31.     The dissent of Justice Scalia and Thomas is empathetic to the Plaintiffs' frustration at the notion of the Court granting the Defendants' remand motion where the Justices said:

> "It is disrespectful enough of a lower court to set its considered judgment aside because the Government has altered the playing field on appeal; it is downright insulting to do so when the Government's bait-and-switch performance has not for a certainty altered any factor relevant to the decision." *Ibid*, dissent at 188

32.     The government's bait and switch in our case promises no certainty.  They promise only that they might enjoy a willy-nilly "look" at whether they can grant the Plaintiffs religious accommodation after the accommodation was proven grantable ten years before the Plaintiffs applied for their renewal.  In our case, the Plaintiffs are entitled to judgment against the Defendants in the matter for which they partially admit that they failed.  Coming to the point of that ultimate final judgment still needs discovery, to expose the extent of the Defendants' failure to fully apply the rule of law, to relieve the Plaintiffs and to protect society.

## XI.   A Remand Cannot Be Outcome Determinative

33.     Even if the Court grants remand to revisit RFRA, the Defendants activities on remand cannot be outcome-determinative of this case.  There are still findings of facts and law that are necessary for the justice owed to the Plaintiffs and to society on all counts.

## XII.  Even With A Remand For The Agency To Review Its Conduct Under The Guise Of Conforming To RFRA, The Defendants Privacy Act Violations And Relief Due The Plaintiffs Remains In The Sole Jurisdiction And Power Of The Court

34.     The Privacy Act, U.S. Stat. 93-579, encoded at 5 U.S.C. §552a, places our claims

against the Defendants' Privacy Act offenses in the original jurisdiction of the District Court:

> "—Whenever any agency
> (D)  fails to comply with any other provision of this section, or
> any rule promulgated thereunder, in such a way as to have an adverse effect on
> an individual, the individual may bring a civil action against the agency, and the
> district courts of the United States shall have jurisdiction in the matters under the
> provisions of this subsection." 5 USC 552a(g)(1)Civil Remedies.

35.   The Privacy Act does not give to the District Court power to remand the action back

to the agency for adjudication.  The District Court adjudicates the matter *de novo*, and then

orders that agency to act according to the orders of the court in accordance with the law as it

applies to the facts:

> "In any suit brought under the provisions of subsection (g)(1)(A) of this section,
> the court may order the agency to amend the individual's record in accordance
> with his request or in such other way as the court may direct. In such a case the
> court shall determine the matter de novo." 5 USC 552a(g)(2)(A)

36.   The Privacy Act provides for the District Court to grant to the Plaintiffs relief for

costs when they substantially prevail in the District Court:

> "The court may assess against the United States reasonable attorney fees and
> other litigation costs reasonably incurred in any case under this paragraph in
> which the complainant has substantially prevailed." 5 USC 552a(g)(2)(B)

37.   The Privacy Act provides for the District Court to order the agency records that we

have demanded in our correspondence with the Defendants where we cited their obligations

under the "Initial disclosures" rules of court:

> In any suit brought under the provisions of subsection (g)(1)(B) of this section,
> the court may enjoin the agency from withholding the records and order the
> production to the complainant of any agency records improperly withheld from
> him. In such a case the court shall determine the matter de novo, and may
> examine the contents of any agency records in camera to determine whether
> the records or any portion thereof may be withheld under any of the exemptions
> set forth in subsection (k) of this section, and the burden is on the agency to
> sustain its action.  ." 5 USC 552a(g)(3)(A)

38.   The Privacy Act provides for the District Court to make determinations of whether

the Defendants' violations were intentional or willful; and to determine the amount of money

damages that the United States shall be liable to the Plaintiffs.

> "In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this
> section in which the court determines that the agency acted in a manner which
> was intentional or willful, the United States shall be liable to the individual in an
> amount equal to the sum of—
>> (A) actual damages sustained by the individual as a result of the refusal or
>> failure, but in no case shall a person entitled to recovery receive less than the
>> sum of $1,000; and
>> (B) the costs of the action together with reasonable attorney fees as
>> determined by the court." 5 USC 552a(g)(4)

39.    The Privacy Act provides for the District Court to enforce liability, and gives the

Plaintiffs an additional two years to make a particular claim after its discovery.  Barring the

discovery for which we've moved on December 3, 2020, **obstructs our investigation**.

> "An action to enforce any liability created under this section may be brought in
> the district court of the United States in the district in which the complainant
> resides, or has his principal place of business, or in which the agency records are
> situated, or in the District of Columbia, without regard to the amount in
> controversy, within two years from the date on which the cause of action arises,
> except that where an agency has materially and willfully misrepresented any
> information required under this section to be disclosed to an individual and the
> information so misrepresented is material to establishment of the liability of
> the agency to the individual under this section, the action may be brought at any
> time within two years after discovery by the individual of the misrepresentation.
> Nothing in this section shall be construed to authorize any civil action by reason
> of any injury sustained as the result of a disclosure of a record prior to September
> 27, 1975." 5 USC 552a(g)(5)

## XIII. The Plaintiffs Demands For Relief On Defendants' Privacy Act Violations Needs To Be Adjudicated In The Court Having Original Jurisdiction

40.    The Defendants have unlawfully imposed upon the Plaintiffs, as well as Society, a

mandate to identify with a SSN on the passport form notwithstanding the law allows for

exceptions.  The passport application and renewal forms comply with both the fundamental law

and the laws of the United States where those forms say, disclosure of a SSN is voluntary,

though not identifying with a SSN "may" (not must) result in delay or denial of the application.

Those forms have a valid OMB number showing they conform to the boundaries set by the legislature, allowing the Executive to act in quasi-legislative functions for expediency but not doing so without the scrutiny set up by the legislature.

41.    In Contrast, the Defendants have hinged the Plaintiffs, and society's, approval of a passport upon a non-authorized affidavit form which makes identifying with a SSN mandatory notwithstanding the law prohibiting the practice 44 U.S.C. § 3512; and notwithstanding that the "authorization" to deny a passport is reserved to the Secretary who is not mandated to deny passports even to those who willfully, intentionally, negligently, or recklessly do not identify with a SSN on the passport forms.

42.    There is no law that has made the SSN as mandatory element of a man's identity. It has certainly allowed government agencies to augment their forms with identifying information, that might include a SSN, but it is still reserved as a matter of a retained natural right to not make the SSN an element of a man's identity whether or not the man has applied for the Social Security Benefits.

43.    The language of "May be delayed or denied" in the Privacy Act statement of the OMB Approved DS-11 and DS-82 forms does not reserve non-denial to religious objectors and those who have not applied for Social Security benefits. The conscientiously opposed to identifying with a SSN should not be subjected to a mandatory delay or denial of a passport especially with the form rightfully uses the term "May." If the use of a SSN merely makes it easier to verify that someone is not prohibited from travel, it makes sense that not disclosing a SSN could cause some delay or even a denial under particular circumstances. For instance, Mr. Ebenezer Scrooge is a receiver of Social Security benefits but for reason of conscience, retaining his liberty, or whatever, does not identify with a SSN except for purposes of social security

benefits. His name happens to match fifty others in the country; and two of those other Ebenezer Scrooge's are barred from overseas travel by some lawful prohibition. There will be a delay, because the passport applicant Mr. Scrooge who is not lawfully barred from travel needs to provide other information that distinguishes him from the two Ebenezer Scrooge's that are barred from international travel. If the applicant cannot provide information that will distinguish him from the two other people who are barred from travel, then his passport could be denied.

44.     That way of dealing with not identifying with a SSN for reasons of religion, or for any other reason, is consistent with 22 U.S.C. § 2714a(f) where the Secretary is "authorized" to deny a passport rather than mandated to deny a passport to those who do not identify with a SSN for any reason - even if it is willfully, intentionally, negligently, or recklessly.

45.     The Privacy Act is fulfilled where that which is by natural right voluntary is not under the color of law made mandatory. The value of 22 U.S.C. § 2714a(f) is to provide a statutory provision giving 'authorization' for the Secretary to 'deny' a passport depending on the circumstance. That provision viewed and applied that way is consistent with the purpose of the Privacy Act and gives an "authorized by law" mechanism that keeps the Secretary from running afoul from the Privacy Act and its purpose. If the Secretary and his Department cannot succeed in separating one not identifying with an SSN from some other person which whom the Department cannot distinguish and who is barred from travel, then it is reasonable to deny the passport until those two people can be distinguished. The query of Mr. traveling Scrooge should be limited to information that will fulfill the minimum threshold to distinguish the two people.

46.     The Defendants have never made a claim that any of the Plaintiffs happened to be someone with whom they are confusing with another, let alone that there is someone who is barred from travel with whom they cannot distinguish the Plaintiffs. Since there was no

confusion regarding their initial passport issuance notwithstanding their not identifying with a SSN, there is no excuse even for a delay, let alone a denial.  Plaintiff Carmichael's passport was renewed in ten days without his even having to pay an expedite fee.

47.     Mandatory initial disclosures and robust discovery need to be accomplished. Substantive material facts must be scrutinized effectively so that the Privacy Act can be rightly applied.  The Plaintiffs are owed full due process and day in court to have the Court's Declaratory Judgment declare the Privacy Act law as applied to the facts, and so that the Court's judgment can be recorded for posterity.

**XIV.   The Plaintiffs Demands For Relief On Defendants' Violations Of The Fifth Amendment Need To Be Adjudicated In The Court That Has Original Jurisdiction**

48.     The Plaintiffs claim, among other things, that 22 USC §2714a(f) violates the constitution as being overbroad and vague where it has caused injury to the Plaintiffs in their fundamental rights without due process of law.  The regulations upon which the Defendants rely, to justify the injury to the Plaintiffs, are likewise unconstitutional.  The Plaintiffs also claim that the Defendants' violation of 44 U.S.C. §3512 is part of their injuring the Plaintiffs.  Even if the Defendants promise a change of conduct so that the RFRA statute is applied in a constitutional way, having the Plaintiffs and others receive their passports without having to identify with a SSN, the Fourth Cause of action still has matters of relief that is only provided by the remedy of adjudication by the District Court.  The Court has to determine the Constitutionality of the statute, the regulations, and the conduct of the Defendants.  The Court has to determine the lawfulness of the Defendants' non-OMB form for which they excuse their denial of the Plaintiffs' passports.  The Court has to determine money damages for appropriate relief.

**XV.   The Plaintiffs Demands For Relief On Defendants' Violations Of The RFRA Need To Be Adjudicated In The Court That Has Original Jurisdiction**

49. Within the last two weeks, the Plaintiffs discovered that the Supreme Court has

explained that money damages are available to the Plaintiffs as a matter of "appropriate relief"

for the Government's violation of the Religious Freedom Restoration Act.

> "More than a year after respondents sued, the Department of Homeland Security
> informed them that they could now fly, thus mooting the claims for injunctive
> relief. The District Court then dismissed the individual-capacity claims for money
> damages, ruling that RFRA does not permit monetary relief.
> The Second Circuit reversed. 894 F.3d 449 (2018). It determined that RFRA's
> express remedies provision, combined with the statutory definition of
> "Government," authorizes claims against federal officials in their individual
> capacities. Relying on our precedent and RFRA's broad protections for religious
> liberty, the court concluded that the open-ended phrase "appropriate relief"
> encompasses money damages against officials. We granted certiorari, 589 U. S.
> ___ (2019), and now affirm." *Tanzin v. Tanvir*, 592 U.S. ____ (2020)

50. The money damages available by the Plaintiffs' Second Cause of Action cannot

obtain complete relief for their RFRA claim with the machination of the Defendants' remand.

There needs to be discovery to find the people who acted unlawfully, negligently, willfully,

intelligently, negligently, malevolently, in bad faith, etc., in order to determine the extent of

damages that are due the Plaintiffs for complete relief.

> ""A "government," under RFRA, extends beyond the term's plain meaning to
> include officials. And the term "official" does not refer solely to an office, but
> rather to the actual person "who is invested with an office." 10 Oxford English
> Dictionary 733 (2d ed. 1989). Under RFRA's definition, relief that can be
> executed against an "official . . . of the United States" *is* "relief against a
> government." 42 U. S. C. §§2000bb–1(c), 2000bb–2(1).
>
> Not only does the term "government" encompass officials, it also authorizes suits
> against "other person[s] acting under color of law." §2000bb–2(1). The right to
> obtain relief against "a person" cannot be squared with the Government's reading
> that relief must always run against the United States. Moreover, the use of the
> phrase "official (*or other* person . . . )" underscores that "official[s]" are treated
> like "person[s]."" *Ibid.*

51. The Plaintiffs reserved the right to amend the complaint to include persons who are

found to have been the principals responsible for the unlawful conduct of the Defendants and the

injury to the Plaintiffs (ECF 51, p. 3, para. 7.).  The initial disclosures that are due the Plaintiffs, and the discovery moved-for by the Plaintiffs, are necessary for justice.  A finding of fact and law that preserves law, provides complete relief for the Plaintiffs, and protects society.

**XVI.   The Defendants' Claim That The Defendants' Need To Remand To See If They Can Accommodate The Plaintiff Religious Practice Is Frivolous And In Bad Faith Since They Already Accommodate It For Non-Religious Reasons**

52.     According to the Defendants, without producing the record to substantiate their declaration, they state that there was no religious accommodation required to approve the Plaintiffs' passports in 2007 and 2008 (ECFs 24, Attachment 2, para. 4.).  The Privacy Act statement warning on the DS-11 passport application forms and DS-82 renewal application forms has not changed where it says the disclosure of a SSN is voluntary but that application "may" be delayed or denied.  The only thing that has changed on the form was the reference of authority for the Secretary to delay or deny a passport related to someone not providing a SSN.  Where it used to cite 26 USC § 6039E, it now has added 22 USC § 2714a(f).

53.     The Defendants have come to the conclusion that those who believe that they have successfully evaded any attempt to have their identification information inserted into a Social Security Administration Account record are not contemplated by 22 USC § 2714a(f)(1)(A) as those who "willfully, intentionally, negligently, or recklessly" do not identify with a SSN.  The Defendants accommodate those persons for a non-religious reason.

54.     Should the Agency treat the Plaintiffs and others who do not identify with a SSN for reasons of religion just as they were treated in the Plaintiffs original passport applications prior to dangerous innovation of 22 U.S.C. §2714a(f)(1)(A), then the Plaintiffs Lewis and Pakosz should not have their passport renewals denied and Plaintiff Carmichael's passport should not have been revoked as a matter of fact and law.  The "accommodation" is already granted for non-

religious reasons.  The Defendants justification for the remand is frivolous and in bad faith.

**XVII.    Plaintiffs Will Be Unduly Prejudice By A Remand To The Accused Agency**

55.    In *Clark v. Perdue*, Civil Action No. 19-394 (JEB), the Plaintiff opposed the agency's request for a remand on the grounds that the agency had not been clear enough about the process it will use to address her complaint, among other things.  But in that case, the Plaintiff was not so concerned, "about the substantive disposition of her complaint but rather about the agency's arbitrary and capricious failure to treat her complaint with the legally proper process."  The Plaintiffs concern "that it would chill her exercise of her civil rights" appears to be limited to the process by which the agency made a determination.  If the Court remanded to the agency, with some clear guidance to the Defendant that would avoid the trap errors of Limnia, that 'corrected' process on remand would be the relief that the Plaintiff was seeking.  Justifying remand, District Judge Boasberg's basis of remand was that he thought it would not unduly prejudice her.  That is not the case here, contrary to the heartless claim of the Defendants (ECF 61, pp. 2,6,7).

56.    **We will be unduly prejudiced** if the case is remanded.  The remand would be especially egregious with the Defendant's mere promise to "consider" whether it can obey the law and institute a new identification processing on-the-fly.  A Remand is unwarranted according to the facts, the complaint, the causes of action that require complete relief, and the District Court's remedy expressly granted by Congress.  The elements of judicial scrutiny and oversight must be brought to bear.  There should not be merely a clearing of the docket calendar, and carte blanche given to the criminal to take his aggravated assault and subject the victim to a second round of assault that seems less aggravated.  See *Carmichael v. United States*, 66 Ct. Fed. Cl. 115, at 122.  It is not merely harmless error.  We are imprisoned and barred from travel against the revealed, fundamental and statutory law, and we would be denied our day in <u>court</u>.

**XVIII.** **The Defendants' Mere Willingness To Admit They Did Not Consider Religious Accommodation Shows That They Do Not Comprehend Base Elements Of Law And Justice Necessary To Rightly Apply The Law To The Purpose For Which Government Is Instituted.**

57.     The Defendant's actions against the Plaintiffs, and their protests to the Complaint, show that they elevate the government's propensity to coerce men into identification with a SSN above revealed, fundamental, and statutory law.  Though the use of a SSN is admittedly only one among many means to the end of verifying someone's identity, they elevate identification with a SSN above the purposes for which they are motivated to verify someone's identity.

58.     The purpose of verifying one's identity is to ensure that the applicant is not someone who is barred from traveling outside the United States.  Instead of instituting an affidavit that has people swear under penalty of perjury that they are not someone that is barred from travel outside the United States, the Defendants have people swear that they believe they've never been associated with a SSN.  They have applicants swear under penalty of perjury that they have never been issued a SSN though such swearing about information of someone else's cognizance is about as ridiculous as Florence Fultz executing a Declaration of Paul Peek (ECF 24, Attachment 3, pp. 1 & 5).

59.     If a man can get a passport merely because he is willing to sign a form that may or may not be true, why can't a man get a passport for swearing an oath about information for which he has first hand knowledge like the Bible's prohibition against identifying with the number of the beast?  Why can't they have a form that says, "I swear under penalty of perjury that I have never been issued a 'SSN' or that I am prohibited by religion from identifying with a SSN."  If the Defendants understood law and justice, they would know that not even that proposition is sound though it would remove the particular harm suffered by the Plaintiffs.

60.     The Defendants' more rightly ought to focus on their arguable legitimate interests

such as "I swear under penalty of perjury that I am not one who has been certified as being in serious tax debt" or, "… I am not one who has pending charges or conviction of child abuse or sex crimes", or I am not one who has pending charges or conviction of failure to pay child support.", or etc.

61.     Even should the Defendants innovate such affidavit forms, they would still be unlawfully legislating, not conforming to the Acts of Congress, Administrative Procedures Act 5 USC §552/552a, and the Paperwork Reduction Act, 44 USC §3501, et seq., inter alia.  By those Acts, the Defendants are prohibited from instituting quasi-legislative innovations that they might use as an excuse or reason to deny the rights, benefits, and privileges due a passport applicant. The Defendants are constrained to running their innovative ideas through the mill of the Congressional Office of Management and Budget, or through the Federal Register in the process required to institute regulations.

**XIX.   Remand Is Barred by The Controlling Regulation 22 CFR §§ 51.60(f) and 51.70(b) Which Excludes An Agency Appeal Tribunal**

62.     The Court has power to provide remedy and relief to the Plaintiffs Fourth Cause of Action claim that includes 22 U.S.C. 2714a(f), 22 CFR 51.60(f) and 51.70(b) that violate the fundamental law.  Until that is accomplished, the Defendants "Review" is barred by that rule in the Code of Federal Regulations 22 CFR §51.70(b) which excludes agency appeal to us under the Defendants' accusation that the Plaintiffs can be characterized as "willfully, intentionally, negligently, or recklessly" or "failing" to identify with a SSN.  If the Defendants continue to claim that the law bars Plaintiffs from having a passport according to 22 USC §2714a(f), their claim is in bad faith where they say they will consider "religious accommodation" on remand.

**Summary**

63.     In a criminal case, the penalty does not disappear if the Defendant confesses that the

indictment is true and their conduct was unlawful.  The guilty do not have a choice to use their next sober driving event to nullify their previous DUI, especially when their willful, intentional, negligent, and reckless violation injured someone.  Stay and remand to the Defendant is unconscionable in this case as a matter of law, fact, equity, and morality.

64.     The Federal Rules Of Civil Procedure (FRCP) place the responsibility upon the judge to initiate the scheduling conference early in the litigation (FRCP 16(b)(2)).  The Plaintiffs have suffered inordinate delays that are prejudicial to their remedy and relief.  The Plaintiffs' timely motion for a Rule 16(b) scheduling conference (ECF 55) has no timely response from the Defendants and is a reasonable plan.  Such a conference is well overdue and discovery needs to commence immediately to mitigate the natural entropy of the memory of the actors and witnesses.  A remand to the guilty party will increase injury, as well as insult, <u>prejudicing</u> the Plaintiffs who are clearly due relief only available through the Court.

65.     The District Court needs render a ruling consistent with the points made herein, showing the propriety of the denial due the Defendants' motion to remand.  Should the Defendants' want to appeal the denial, the Counts dismissed so far would be ripe for appeal.

66.     The Plaintiffs hereby object to the entirety of the Defendants motion for remand (ECF 61, 62).  The Cases cited are not on point with this case, a remand will prejudice the Plaintiffs, every premise upon which the Defendants rely are unsound as a matter of law and their facts alleged are misconstrued or erroneous.

I, David Alan Carmichael, verify under penalty of perjury under the laws of the United States, I conferred with all Plaintiffs and we agree this is our response as titled, pursuant to pages v-vii.

Signed: _David Alan Carmichael_                    Date: _December 30, 2020_
        David Alan Carmichael, Plaintiff