United States District Court
District of Columbia

| | | |
|---|---|---|
| David Alan Carmichael, *et al.* | ) | |
| | ) | |
| *Plaintiffs* | ) | Case No:  1:19-CV-2316-RC |
| | ) | |
| v. | ) | Re:  ECF (Pltf) 68, 65, 54, |
| 57, 56, 53 | | |
| | ) | & (Def) 67, 66, 61, 52 |
| Antony John Blinken, *in his* | ) | |
| *Official capacity as Secretary of State, et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR DECLARATORY JUDGEMENT OR PARTIAL FINDINGS OF FACTS
AND CONCLUSIONS OF LAW REGARDING THE COURT'S REMAND
ORDER OF JANUARY 19, 2021**

TABLE OF CONTENTS

PLAINTIFFS' MOTION FOR DELCARATORY JUDGEMENT OR PARTIAL
FINDING OF FACTS AND CONCLUSIONS OF LAW REGARDING
REMAND ORDER OF JANUARY 19, 2021 MEMORANDUM IN SUPPORT

Table of Contents ........................................................................................................ i

Table of Authorities ................................................................................................... iv

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR DECLARATORY ........... 1
JUDGEMENT OR PARTIAL FINDING OF FACTS AND CONCLUSIONS OF LAW
REGARDING REMAND ORDER OF JANUARY 19, 2021

I.      INTRODUCTION ........................................................................................ 1

II.     FOUNDATION ........................................................................................... 2

        A.   All Must Be Subject To Authority, Not Merely Subject To Power .............................. 2

        B.   Relinquishing Adjudication Power Goes Against Sound Principles ............................ 3

        C.   The Supreme Court and The Circuit Court Endeavor To Remain Fettered, ................ 6
             Only Exercising Power According To The Authority Of Express Grants

        D.   The Legislature Empowered The Supreme Court To Promulgate The Rules ............. 7
             Of Judicial Procedure.  The Exercise Of Power Contrary To The Rules Is
             An Exercise Of Power Without Authority

        E.   The Court's Order Rests Upon The Sophistry Of The Defendants Rather Than ......... 9
             According To Law And The Rules Authorized By Law

        F.   The Remand Is Objectionable According To Rules Of Evidence, Where Those ........ 10
             Objections Would Ordinarily Be Sustained

        G.   Rule 56 Reveals The Injustice Of The Order And The Path Of Justice ..................... 10
             Upon Which The Court And The Parties Should Proceed

        H.   Remand Is Not An Option Of Rule 16;  r   r          r          d   ................. 12
             d  M

III.    THE ADMINISTRATIVE PROCEDURES ACT EMPOWERS THE COURT ............. 16
        TO ADJUDICATE THIS CASE, NOT TO ABDICATE THOSE POWERS
        THROUGH REMAND

A.   As Defined By The "Judicial Review" Statute 5 U.S.C. § 704, The Process ............18
Called "Judicial Review" Cannot Be The Basis Of A Remand Order In This Case

B.   Remand Is Not Contemplated Under 5 U.S.C. § 705, Relief Pending Review, ..........19
Especially Where There Is No Pending Review

C.   The Scope Of Review Provision Of 5 U.S.C § 706 Shows Remand Is Neither .........20
Necessary Or Appropriate

D.   The Administrative Procedures Act Imposes The Burden Of Proof Upon The ..........22
Agency To Justify Their Action

IV.   THE COURT ORDER UNJUSTLY ALLOWS THE DEFENDANTS TO ....................23
UNILATERALLY ENFORCE A VIRTUAL   R                R
A POWER RESERVED TO THE DISTRICT COURT BY STATUTE.
IT DOES SO FLIPPING THE BURDEN OF PROOF ON ITS HEAD
CONTRARY TO FUNDAMENTAL RIGHT

V.   THE NATURE OF THE RESTRICTED LIBERTY RIGHT DEMANDS.......................26
STRICT SCRUTINY IN A COURT OF LAW

A.   Preventing All Men From Acting In Order To Disable Any Man From Acting ............28
Wrongly Is Not The Purpose For Which This Government Is Instituted

B.   The Oath On The Ds-11 And Ds-82 Forms Fulfills The Threshold Necessary .............28
To Affirm Identity And Liberty To Travel

VI.   REMAND IS A PRODUCT OF DICTUM RATHER THAN CONSTITUTIONAL ......29
STATUTORY CONSTRUCTION.  IT IS AN ABUSE-OF-DISCRETION REACH
TO SUBJECTIVE E   UITY WHEN THE PROCESS IS DIRECTED BY LAW

A.   Relying Upon District And Circuit Court's Dictum Regarding Remand Usurps...........29
The Constitution, Eviscerating The Power Of The Congress And The Supreme
Court

B.   Remand Is An Abuse-Of-Discretion Reach To Subjective Equity When The...............30
Process Is Directed By Law

VII.   THE PRIVACY ACT SAYS THAT THE DISTRICT COURT HAS ............................31
JURISDICTION TO ADJUDICATE THE COMPLAINT D            AND
TO COERCE THE AGENCY TO CORRECT ITS RECORD

VIII.   REMAND IS UNNECESSARY AND INAPPROPRIATE WHERE THE.....................31
DEFENDANT USES THE EXCUSE OF TRYING TO DISCOVER IF THEY
CAN REACH A LEAST RESTRICTIVE MEANS (4th PRONG OF RFRA)

WITHOUT FIRST PROVING COMPELLING INTEREST (3rd PRONG OF RFRA)

IX.   THE MODEL CASE SHOWING HOW THIS COURT MUST ADJUDICATE ...........32
      IS THE FEDERAL CIRCUITS' GRANT OF APPEAL, VACATE OF
      JUDGMENT, AND REMAND TO THE LOWER COURT (GVR) IN
         RM              D       , 298 F.3D 1367 & 66 FED. CL. 115

X.    FIND FACT AND CONCLUSIONS OF LAW FOR ALL RESPONSES,  ...................34
      NOTICES, REPORTS, DOCUMENTS AND DECLARATIONS SUBMITTED

      A. The Weight Of Evidence In The Matter of Verification Of Identity Shows That.......34
         The Defendants Have Not Demonstrated Or Shown Substantial Evidence
         That There Is A   uestion Of The Plaintiffs Identity Apart From A SSN; and
         Whether It Is Not Material Given That The Regulations Say The Previous
         Passport Is Sufficient

      B. The Statutory Passport Eligibility Requirements, 22 U.S.C. § 212, are  ...................36
         Shown To Be Fulfilled By The Weight Of Evidence, With No Evidence
         Of Ineligibility

      C. The Correct Application The Regulations As They Apply To The Weight Of...........37
         Evidence And The Arguments Of Our Reply (ECF 68, P. 14-15, ¶ 13.) Is That
         The Identification Requirements Of 22 C.F.R. §§ 51.23, 51.25 Are Presumed
         Fulfilled In The Initial Passport

XI.   FIND FACT AND CONCLUDE LAW AS TO WHETHER REMAND  ........................37
      UNDERMINES OR CAUSES UNNECESSARY INTERFERENCE OR DELAY
      WITH THE PLAINTIFFS DISCOVERY FOR THE PURPOSE OF COMPLETE
      RELIEF ON ALL CAUSES OF ACTION

      A. Remand Undermines Or Causes Delay With Plaintiffs Discovery And.....................37
         Complete Relief Regarding RFRA

      B. Remand Undermines Or Causes Delay With Plaintiffs Discovery And.....................39
         Complete Relief Regarding Privacy Act

      C. Remand Undermines Or Causes Delay With Plaintiffs Discovery And Complete.....41
         Relief Regarding The Claims On The Fifth Amendment And Due Process

      D. The Premise Upon Which The Remand Motion Is Based Has Any Support .............42
         In Fact.  Otherwise Find That The Motion On Its Face Is Frivolous And
         For The Purpose To Delay Or Deny Plaintiffs Discovery And Complete Relief

SUMMARY...................................................................................................................43

TABLE OF AUTHORITIES

The Holy Bible

Genesis 1:28 .................................................................................................26
Leviticus 19:18 ..............................................................................................3
Deuteronomy 19:15 ........................................................................................4
Ecclesiastes 1:15 ...........................................................................................2
Matthew 28:19-20 .........................................................................................26
Acts 5:29 .......................................................................................................3
Romans 13:1-5 ...............................................................................................3
I Corinthians 13 .............................................................................................3
I Peter 2:13-17 ...............................................................................................3
Hebrews 9:27 ...............................................................................................28
Revelation 21:8 ............................................................................................28

United States Code

5 U.S.C. § 552a .............................................................................31, 39, 40, 41
    Records Maintained On Individuals
5 U.S.C. § 556 ........................................................................................22, 42
    Hearings; Presiding Employees; Powers And Duties; Burden Of Proof
    Evidence; Record As Basis Of Decision
5 U.S.C. Chapter 7 .....................................................................16, 17, 19, 42
    Judicial Review
5 U.S.C. § 702 .......................................................................................16, 17
    Right of Review
5 U.S.C. § 703 ...............................................................................................17
    Form and   enue of Proceeding
5 U.S.C. § 704 .........................................................................................18, 19
    Actions Reviewable
5 U.S.C. § 705 ...............................................................................................19
    Relief Pending Review
5 U.S.C. § 706 ....................................................................................20, 21, 22
    Scope of Review
8 U.S.C. § 1185 .............................................................................................27
    Travel Control of Citizens And Aliens
22 U.S.C. § 212 .............................................................................................36
    Persons Entitled To Passport
22 U.S.C. § 2714a .....................................................................................24, 41
    Revocation or Denial of Passport In Case of Certain Unpaid Taxes
26 U.S.C. § 7402 ....................................................................................23, 24, 29
    Jurisdiction of District Courts
28 U.S.C. § 2201 .............................................................................................1
    Creation of Remedy

28 U.S.C. § 2072 ...................................................................................1, 8, 9
   *Rules of Procedure And Evidence; Power To Prescribe*
28 U.S.C. § 2106 .......................................................................................29, 30
   *Determination*
28 U.S.C. § 2112 .......................................................................................19, 30
   *Record on review and enforcement of agency orders*
28 U.S.C. § 2201 ............................................................................................1
   *Creation of Remedy*
42 U.S.C. § 2000bb ..................................................................16, 31, 32, 37, 38
   *Religious Freedom Restoration Act*
44 U.S.C. § 3512 ..........................................................................................41
   *Public Protection*

Federal Rules of Civil Procedure

Rule 12(b) ..................................................................................................22
   *How To Present Defenses*
Rule 16 ...................................................................................12, 13, 14, 15, 16
   *Pretrial Conferences; Scheduling; Management*
Rule 26(b) ....................................................................................................9
   *Discovery Scope And Limits*
Rule 52 ........................................................................................................1
   *Findings and Conclusions by the Court; Judgment on Partial Finding*
Rule 56 ............................................................................................11, 12, 22
   *Summary Judgment*
Rule 57 ........................................................................................................1
   *Declaratory Judgment*

United States Code of Federal Regulations

22 C.F.R. § 51.23(b) ......................................................................11, 12, 32, 36, 37
   *Identity of Applicant*
22 C.F.R. § 51.25 ..........................................................................................37
   *Name of Applicant To Be Used In Passport*
22 C.F.R. § 51.60 .....................................................................................16, 41
   *Denial and Restriction of Passports*
22 C.F.R. § 51.70(b)(2) ............................................................................16, 30, 41
   *Re uest for hearing to review certain denials and revocations*

United States Supreme Court

\*   *Addington v. Texas* ................................................................25, 36, 37
     441 U.S. 418
\*   *Aptheker v. Secretary of State* ..................................................................27
     378 U.S. 500 (1964)

*Bender v. Williamsport Area School District* ...................................................7
    475 U.S. 534 (1986)
*Burlington Truck Lines, Inc. v. United States* ..............................................30
    371 U.S. 156 (1962)
*Caha v. United States*...............................................................................8
    152 U.S. 211
*Chaunt v. United States*......................................................................25, 37
    364 U.S. 350 (1960)
*Colorado v. New Mexico*...........................................................................25
    467 U.S. 310 (1984)
*Cosmos Co. v. Gray Eagle Co.* ...................................................................8
    190 U.S. 309
*Crandal v. Nevada* ...................................................................................27
    73 U.S. 35 (1867)
*Cruzan by Cruzan v. Dir., Missouri Dep t of Health*
    497 U.S. 261 (1990)
\* *Darby v. Cisneros* ...............................................................17, 18, 19, 20
    509 U.S. 137 (1993)
*Edwards v. California* ..............................................................................27
    314 U.S. 160
*Ex Parte v. Reed*........................................................................................8
    100 U.S. 22
*Field v. Clark* ............................................................................................8
    143 U.S. 649
*Gratiot v. United States*...............................................................................8
    45 U.S. (4 How.) 80 (1846)
\* *Kent v. Dulles* .....................................................................................25, 27
    357 U.S. 116 (1958)
*King Bridge Co. v. Otoe County* ..................................................................7
    120 U.S. 225 (1887)
\* *Lawrence v. Chater* ...................................................................................38
    526 U.S. 163 (1996)
\* *Marbury v. Madison*...............................................................................6, 7
    5 U.S. 137 (1803)
*Oceanic Navigation Co. v. Stranahan* ...........................................................8
    214 U.S.
*Renne v. Geary* ..........................................................................................7
    501 U.S. 312 (1991)
*Roughton v. Knight* ...................................................................................8
    219 U.S. 537
\* *Ruhrgas AG v. Marathon Oil Co.* ..................................................................6
    526 U.S. 574 (1999)
*Santosky v. Kramer* ...................................................................................25
    455 U.S. 745 (1982)
*Smith v. Whitney*.........................................................................................8
    116 U.S. 167

*Schneiderman v. United States* .................................................................37
    320 U.S. 118 (1943)
*Tanzir v. Tanvir* ...........................................................................................39
    592 U.S. ____ (2020), Case No. 19-71
*United States v. Bailey* .................................................................................8
    9 Pet. 238
\*   *United States v. Brown* ................................................................................3
    381 U.S. 437 (1965)
\*   *United States v. Grimand* .............................................................................8
    220 U.S. 506
\*   *Warth v. Seldin* .............................................................................................7
    422 U.S. 490 (1975)
\*   *Wayman v. Southard* ....................................................................................5
    23 U.S. 1 (1825)
*Williams v. Fears* .........................................................................................27
    179 U.S. 270
*Woodby v. Immigration & Naturalization Serv.* ...........................25, 36, 37
    385 U.S. 276 (1966)

United States Circuit Court of Appeals

*Bosma v. Dep t of Agriculture* ....................................................................23
    754 F.2d 804 (9th Cir. 1984)
\*   *Carmichael v. United States* ..........................................................32, 33, 34
    298 F.3d 1367 (Fed. Cir. Aug. 2002)
*El Rio Santa Cruz Neighborhood Health Center, Inc. v. U.S. Department of* ................18
    *Health & Human Services*
    396 F.3d 1265 (D.C. Cir. 2005)
\*   *Jacobsen v. Jacobsen* ...........................................................................24, 25
    126 F.2d 13
\*   *SKF USA Inc. v. United States* ....................................................................30
    254 F.3d 1002 (Fed. Cir. 2001)
*Tanzir v. Tanvir* ...........................................................................................39
    894 F.3d 449 (Affirmed)
\*   *United States v. Mezas de Jesus* .................................................................25
    217 F.3d 638 (9th Cir. 2000)
*United States v. Yi* .......................................................................................25
    704 F.3d 800 (9th Cir. 2013)
*Wright v. Dominguez* ...................................................................................18
    2004 WL 1636961 (D.C. Cir. 2004) (per curiam)

United States District Court

\*   *Carmichael v. United States* ..........................................................32, 33, 34
    66 Fed. Cl. 115 (2005)

\*       *Omar v. Kerry* ...........................................................................................................23, 25, 26
        No. 15-cv-017600JSC (N.D. Cal., Magistrate)
\*       *United States v. Robbins* .............................................................................................24, 25
        235 F. Supp. 253 (E.D. Ark., 1964)

Federalist Papers

The Federalist 47..........................................................................................................3, 4
        *The Particular Structure of the New Government and the*
        *Distribution of Power Among Its Different Parts*
The Federalist 10 ...........................................................................................................4, 6
        *The Utility of the Union as a Safeguard Against Domestic Faction*
        *and Insurrection*

Scholarship

Sir William Blackstone, *Commentaries on the Laws of England*....................................4, 5
        Book I, *Of The Rights Of Persons*, Chapter VII, *Of The King s Prerogative*
C. McCormick,....................................................................................................................36
        *Evidence* § 320 (1954)
9 J. Wigmore.......................................................................................................................36
        *Evidence* § 2498 (3d ed. 1940)

United States Forms

\*       DS-11 .........................................................................................................................29
        *U.S. Passport Application*
\*       DS-82 .........................................................................................................................29
        *U.S. Passport Renewal Application*

United States District Court
District of Columbia

David Alan Carmichael, *et al.*           )
                                          )
    *Plaintiffs*                           )           Case No:  1:19-CV-2316-RC
                                          )
    v.                                    )           Re:  ECF (Pltf) 68, 65, 54, 57, 56, 53
                                          )           & (Def) 67, 66, 61, 52
Antony John Blinken, *in his*             )
*Official capacity as Secretary of State, et al.,*   )
                                          )
    *Defendants*                          )


**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR DECLARATORY JUDGEMENT OR PARTIAL FINDINGS OF FACTS AND CONCLUSIONS OF LAW REGARDING THE COURT'S REMAND ORDER OF JANUARY 19, 2021**

## I.    INTRODUCTION

1.    We Plaintiffs move the Court to DECLARE its finding of fact and conclusions of law as a declaratory judgment or partial finding of fact and conclusion of law to justify its remand order of January 19, 2021, in this case.

2.    Having established causes of action where the Court provides remedy, the authority for the Court to provide this interlocutory relief is the Declaratory Judgments Act 28 U.S.C. § 2201, and Rules 57 and 52 of the Federal Rules of Civil Procedure pursuant to 28 U.S.C. § 2072.

3.    The injury to the rights of the Plaintiff are complained, and the Court has jurisdiction to provide complete relief as a matter of law, or by equity where the remedy is not otherwise available (ECF 51).  As well as statutory relief, the complaint called for Declaratory Judgment. The remand is a due process violation in itself.  The statutes and rules give adjudication remedy and relief powers to the Court as a matter of law, and remand is not provided for as a matter of the law of this case.  Thus the equitable subjective-judgment remedy of remand cannot enter

where there is a remedy at law.[1]  This new controversy is judiciable in nature, the existence or nonexistence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared. As a matter of contesting the remand as a matter of law, no special statutory proceeding has been provided.

4.      The demand for relief states the declaratory judgment desired, and coercive relief is sought; or in the alternative, a declaration of rights which motivates the Court's action for the sake of further relief not to exclude appeal.

5.      Hereinafter, we express the principles of law upon which we base our understanding that the Court's remand order is erroneous or and outside its discretion as a matter of fact and law.  These statements are consistent with, or reiterate, that which has been put to the court in our Reply (ECF 68), Response (ECF 65), Status Report (ECF 54), Notices (ECFs 53, 56, 57) Amended Complaint (ECF 51), and are supported by evidence proffered by the Plaintiffs in the District Court record.  **The length of the document is regrettable but necessary.**  Laying a foundation of the first principles is necessary when the process dislodges from the law and the rules, and one party persuades that Court to act notwithstanding the law and rules.  "That which is crooked cannot be made straight: and that which is wanting cannot be numbered."[2]

## II.   FOUNDATION

### A.   All Must Be Subject To Authority, Not Merely Subject To Power

6.      It is the common understanding that tyranny is wrong.

"Tyrannos (τύραννος)  An absolute ruler, unlimited by law or constitution."
        Henry George Liddell, Robert Scott, A Greek-English Lexicon[3]

"Etymology. The English noun tyrant appears in Middle English use, via Old

---

[1]  "Equity may not enter where there is a remedy at law."  *Maxim*, Reference not found
[2]  Shelemo Ben David, King of Israel, *Ecclesiastes* 1:15
[3]  perseus.tufts.edu/hopper/text?doc=Perseus:text:1999.04.0057:entry=tu/rannos

French, from the 1290s. The word derives from Latin tyrannus, meaning "illegitimate ruler", and this in turn from the Greek τύραννος tyrannos "monarch, ruler of a polis"; tyrannos in its turn has a Pre-Greek origin, perhaps from Lydian."
en.wikipedia.org/tyrant

7.     Tyranny is not measured in the subjective mind of the one who feels oppressed.   The objective measure of tyranny is the exercise of power without authority.  It is *mala in se*.[4]

8.     The bulwark against tyranny instituted by the people (society) of America is a government where power is not absolutely held in any one office.  No government branch has tyrannical powers in the American institution of government.  *Rex* is not *Lex*; *Lex, Rex*.[5]

> ""The Constitution divides the National Government into three branches — Legislative, Executive and Judicial.  <u>This "separation of powers" was obviously not instituted with the idea that it would promote **governmental efficiency**</u>. It was, on the contrary, looked to as a bulwark against tyranny.  For if governmental power is fractionalized, if a given policy can be implemented only by a combination of legislative enactment, judicial application, and executive implementation, no man or group of men will be able to impose its unchecked will.
>    James Madison wrote:   "The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny."   The Federalist, No. 47, pp. 373-374 (Hamilton ed. 1880)."" *United States v. Brown*, 381 U.S. 437 (1965) (Emphasis added)

9.     We Plaintiffs seek remedy and complete relief not merely to dismantle the immediate opposition to our liberty.  For the love of ourselves, the love of our posterity, and the love of our neighbors (society), we desire to maintain the integrity of the governmental institution that God has ordained for our good.[6]  The remand order enables tyranny.

### B.     Relinquishing Adjudication Power Goes Against Sound Principles

10.     Our being familiarized with the concepts of the separation of powers from at least the

---

[4] legaldictionary.net/mala-in-se, 2017 - *Mala in Se*: wrong in itself
[5] The king is not law, law is king
[6] Romans, 13:1-5; I Peter 2:13-17; I Corinthians 13; Acts 5:29; Leviticus 19:18

fifth grade onward, and because of our religious training on Biblical precepts of accountability,[7] we agree with the famous words of Mr. Madison, "**No man is allowed to be a judge in his own cause, because his interest would certainly bias his judgment, and not improbably, corrupt his integrity**.  With equal, nay **with greater reason**, a body of men are unfit to be both judges and parties at the same time; …"[8]

11.    We have also investigated the source of those reserved rights which are preserved in the Constitution, Bill of Rights, Amendment IX.  We've read the *Institutions* by Coke, the *Treatises* by Locke, *Lex Rex* by Rutherford, *Spirit of The Laws* by Montesquieu, and the *Commentaries* by Blackstone.  It is evident by their work that the founders and ratifiers of this country's Constitution were convinced by those writings.  We've read the writings of Publius (Madison, Hamilton, and Jay).  We've been influenced by the Holy Bible and by the law of God that the Holy Spirit has impressed upon our hearts.  Wherefore, we are gravely concerned about the Court's taking our case which is Biblically and Constitutionally the duty of the Court and putting it in the hands of the accused party to judge its own pernicious acts.  We see an undermining of the principles of law and government which our Constitution's framers upheld, expressed here by sir William Blackstone in his Commentaries on The Laws of England:

> "In this distinct and separate existence of the judicial power, in a peculiar body of men, nominated indeed, but not removeable at pleasure, by the crown, consists one main preservative of the public liberty; which cannot subsist long in any state, unless the administration of common justice be in some degree separated both from the legislative and also from the executive power.  Were it joined with the legislative, the life, liberty, and property, of the subject would be in the hands of arbitrary judges, whose decisions would be then regulated only by their own opinions, and not by any fundamental principles of law; which, though legislators

---

[7] "A single witness shall not suffice against a person for any crime or for any wrong in connection with any offense that he has committed. Only on the evidence of two witnesses or of three witnesses shall a charge be established.  Deuteronomy 19:15
[8] Madison, James,  "The Utility of the Union as a Safeguard Against Domestic Faction and Insurrection"  New York Daily Advertiser (Federalist 10).  22 Nov 1787 (Emphasis added)

may depart from, yet judges are bound to observe. Were it joined with the executive, this union might soon be an over ballance for the legislative. For which reason, by the statute of 16 Car. I. c. 10. which abolished the court of star chamber. effectual care is taken to remove all judicial power out of the hands of the king's privy council; who, as then was evident from recent instances, might soon be inclined to pronounce that for law, which was most agreeable to the prince or his officers. **Nothing therefore is more to be avoided, in a free constitution, than uniting the provinces of a judge and a minister of state**.  Blackstone, William, *Commentaries on The Laws of England*, Book the First, Of The Rights of Persons, Chapter VII, Of The King's Prerogative, p. 268 (1765-1769)  (Emphasis added)

12.    When we try to understand the role or power of the Court, like the framers, we are

influenced by the instruction of Blackstone where he explains, "THE more effectually to

accomplish the redress of private injuries, courts of justice are instituted in every civilized

society, in order to protect the weak from the insults of the stronger, by expounding and

enforcing those laws, by which rights are defined, and wrongs prohibited (*Ibid*, Ch. 1, p. 2).

"All the legislative power is vested exclusively in Congress. Supposing Congress to have power, under the clause, for making all laws necessary and proper, c. to make laws for executing the judicial power of the Union, it cannot delegate such power to the judiciary. **The rules** by which the citizen shall be deprived of his liberty or property, to enforce a judicial sentence, **ought to be prescribed and known**; and the power to prescribe such rules <u>belongs exclusively to the legislative department</u>. Congress could not delegate this power to the judiciary, or to any other department of the government. The right to liberty and property is a sacred vested right under the constitution and laws of the Union and States. The regulations by which it is to be devested, for the purpose of enforcing the performance of contracts, are of vital importance to the citizen. <u>The power of making such regulations is exclusively vested in the legislative department, by all our constitutions</u>, and by the general spirit and principles of all free government. It is the office of the legislator to prescribe the rule, and **of the Judge to apply it**; and it is immaterial whether it respects the right in controversy, <u>or the remedy</u> by which it is to be enforced. The mere forms and style of writs, and other process, may, indeed, be regulated by the Courts, but <u>the regulation of the substantive part of the remedy</u> **belongs to the legislature**. The power to establish Courts, with the jurisdiction defined by the constitution, does not involve, by necessary implication, the authority of delegating any portion or incident of that power to the Courts themselves. **That authority is not expressly given; consequently it does not exist**."  *Wayman v. Southard*, 23 U.S. 1 (1825) (Emphasis added)

13.    It is not merely that the Defendants' past actions cause us to doubt their intention or

ability to do rightly in the future.  It is our duty to ensure that the Court is fulfilling its duty to
resist rather than enable the encroachment upon its office.[9]  Therefore, **it is necessary for the
upholding of the institution that the Court adjudicate rather than abdicate the case**,
applying its expertise to expound and enforce the law.

### C.    The Supreme Court and The Circuit Court Endeavor To Remain Fettered, Only Exercising Power According To The Authority Of Express Grants

14.    The Supreme Court and the Courts of Appeal constrain their power to act according
to the confines of the express law of the Constitution and the legislature (*Lex Rex)*.  We
understand that the Circuit Court is extremely careful to not grant an interlocutory appeal unless
it can clearly identify the express power given them by the "legislature" Congress.

> """Subject-matter limitations on federal jurisdiction serve institutional interests. They
> keep the federal courts within the bounds the Constitution and Congress have
> prescribed. Accordingly, subject-matter delineations must be policed by the courts on
> their own initiative even at the highest level. See *Steel Co*., 523 U.S., at 94-95; Fed.
> Rule Civ. Proc. 12(h)(3) ("Whenever it appears . . . that the court lacks jurisdiction of
> the subject matter, the court shall dismiss the action."); 28 U.S.C. § 1447(c) (1994
> ed., Supp. III) ("If at any time before final judgment [in a removed case] it appears
> that the district court lacks subject matter jurisdiction, the case shall be
> remanded.")."" *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574 (1999) (The context
> of "remanded" is to the District Court because its judgment was vacated)

15.    The Supreme Court famously refused to exercise its power, notwithstanding one
party's sense of moral imperative, when the Court determined that neither the Constitution, nor
the Congress by constitutional means, had given that Court the express power to adjudicate in the
case of *Marbury v.* Madison, 5 U.S. 137 (1803).  The Court in *Marbury v. Madison* went so far
as to remind us of the moral imperative against tyranny, "Thus, the particular phraseology of the

---

[9] But the great security against a gradual concentration of the several powers in the same
department, consists in giving to those who administer each department the necessary
constitutional means and personal motives to resist encroachments of the others. The provision
for defense must in this, as in all other cases, be made commensurate to the danger of attack.
Madison, James, Madison, James,  "The Utility of the Union as a Safeguard Against Domestic
Faction and Insurrection" (Continued) New York Daily Advertiser (Federalist 10).  08 Feb 1788

constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void, and that courts, as well as other departments, are bound by that instrument." *Ibid*, at ¶163.  The courts do not exercise their power without an express grant.

**D.  The Legislature Empowered The Supreme Court To Promulgate The Rules Of Judicial Procedure.  The Exercise Of Power Contrary To The Rules Is An Exercise Of Power Without Authority**

16.  In order to show standing for the Court to act on our complaint, we have to not only show that we have suffered injury, we have to show that the Congress has granted the Court power to adjudicate our case and controversy.  The Court is not at pleasure to adjudicate ours, or any cause, merely on sophistic generalities of what we might subjectively consider a moral imperative.  We have to cite statute, and cite material facts, and abide by the Rules of the Supreme Court in order for the Court to <u>not</u> refuse considering our complaint and pleadings.  The Court can only exercise its power within the express and limited empowerment of the Congress.

> Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so. We presume that federal courts lack jurisdiction "unless `the contrary appears affirmatively from the record.'" *Bender v. Williamsport Area School Dist*., 475 U.S. 534, 546 (1986), quoting *King Bridge Co. v. Otoe County*, 120 U.S. 225, 226 (1887). "`It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.'" *Bender*, supra, at 546, n. 8, quoting *Warth v. Seldin*, 422 U.S. 490, 517-518 (1975). *Renne v. Geary*, 501 U.S. 312 (1991)

17.  If a <u>statute</u> of Congress expresses a power upon the Court that is repugnant to the Constitution, the Court has the duty to interpose and to <u>not act</u> since the repugnant statute would be a tyrannical act of the legislature, exercising its legislative power without authority.  *See Marbury v. Madison*

18.  The Rules of the Supreme Court that direct the conduct of the District Court are

promulgated keeping within the boundaries of the express power granted by Congress. The
Rules are not given effect until first scrutinized by the Congress:

> "(a) The **Supreme Court** <u>shall have the power</u> to prescribe general rules of practice
> and procedure and rules of evidence for cases in the United States district courts
> (including proceedings before magistrate judges thereof) and courts of appeals.
> 28 U.S. Code § 2072 - Rules of procedure and evidence; power to prescribe
> (Emphasis added)

> ""The legislature cannot delegate its power to make a law, but it can make a law to
> delegate a power to determine some fact or state of things upon which the law makes,
> or intends to make its own action depend. To deny this would be to stop the wheels of
> government. There are many things upon which wise and useful legislation must
> depend which cannot be known to the lawmaking power, and must, therefore, be a
> subject of inquiry and determination outside of the halls of legislation." See
> also *Caha v. United States*, 152 U.S. 211; *United States v. Bailey*, 9 Pet. 238; *Cosmos
> Co. v. Gray Eagle Co*., 190 U.S. 309; *Oceanic Navigation Co. v. Stranahan*, 214 U.S.
> 333; *Roughton v. Knight*, 219 U.S. 537 (Decided this Term); *Smith v. Whitney*, 116
> U.S. 167; *Ex parte Reed*, 100 U.S. 22; *Gratiot v. United States*, 4 How. 81."" ***United
> States v. Grimaud***, 220 U.S. 506 (1911) citing *Field v. Clark*, 143 U.S. 649 (1892)

19.    If a <u>Rule</u> of the Supreme Court is repugnant to the Constitution, the District Court has

a duty to interpose and not act according to the rule where it intrudes upon a substantive right (28

U.S.C. § 2072(b)) (cited below).  If someone asks the District Court to act according to law that

is in conflict with the Rules of Court, no matter how compelling the party's rhetoric of a moral

imperative, the District Court is bound to act according to the rules in effect and not according

the conflicting outmoded law (*Ibid)*.  Applying a law contrary to the rules, whether it is the law

of custom, ancient common law, civil law, etc., would be a tyrannical act by the District Court

except for where such rule intrudes upon a substantive right (*Ibid)*.  Again, if the Rule imposes

upon a substantive right, enforcing the rule is an exercise of power without authority.

> "(b)  Such rules <u>shall not</u> abridge, enlarge or modify any **substantive right**. All
> laws in conflict with such rules shall be of no further force or effect after such rules
> have taken effect."  28 U.S. Code § 2072 - Rules of procedure and evidence; power
> to prescribe (Emphasis added)

20.    If the Court's remand is an action that does not rest upon the authority of <u>statute</u> or

the <u>Rules</u> which the statues have given the force of law, it <u>elevates the conduct of the Defendants</u> <u>above the law</u>.  It is an exercise of power without authority.

### E.   The Court's Order Rests Upon The Sophistry Of The Defendants Rather Than According To Law And The Rules Authorized By Law

21.   The Rules of Court have the force of law, under due authority of law, to institute and regulate that due process.  It is called Discovery:

> "(b) DISCOVERY SCOPE AND LIMITS. (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. *Federal Rules of Civil Procedure*, Rule 26(b)

22.   The parties need to communicate to each other their mandatory initial disclosures of evidence that they intend to proffer in support of their case (Rule 26(a)(1)).  They then have an opportunity to query one another with admissions requests, interrogatories, and depositions (Rule 26(b).  Either party can object to particular demands for disclosure or answers.  Neither party has the power, according to the Rules, to be its own judge regarding the other party's obligation to disclose or to answer.  That power is given to the Court pursuant to 28 U.S.C. § 2072.

23.   <u>Commencing discovery according to the Rules</u> ought to be the basis of the Court's order for the parties <u>to subject themselves to discovery demands</u>.  The Defendant has the ability to obtain whatever information is suitable for its defense "and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information" Rule 26(b)(1).

### F.   The Remand Is Objectionable According To Rules Of Evidence, Where Those Objections Would Ordinarily Be Sustained

24.   There are boundaries that constrain the queries that are allowed to be asked in discovery.  The questions by the Defendant should be relevant and material to their claim or defense.  The Court ought to deny a demand for discovery where there is an absence of a foundation based upon a statement of fact, accusation, or cause, in the Defendants' action or affirmative defense.  A sustainable objection is that the question has been asked and answered, or that the questions are cumulative.  Other sustainable objections are that a question assumes facts that are not in the record, that a question is beyond the scope of what is relevant to the testimony at hand, that the question is based upon a hypothetical scenario, or that it causes the witness or the court to have to speculate, and that the questions amount to badgering.  Ordinarily, the objection is sustained and the questioned party has no obligation to answer.  Those objections were raised in the Court-record, which does not include any administrative tribunal record.  The Court order remanded the case notwithstanding the valid objections and without justification.  The Court order hinged the dismissal of the entire case on the willingness of the Plaintiffs to participate in an extra-judicial process to examine a hypothetical question which has no basis in fact, or fact upon the record, or statement of fact, or verified claim, or affirmative defense, among other listed objections.

### G.   Rule 56 Reveals The Injustice Of The Order And The Path Of Justice Upon Which The Court And The Parties Should Proceed

25.   Effectively, the Defendants have moved for Partial Summary Judgment on what is effectively an affirmative defense.  The Defendants say that they have never been able to really identify the Plaintiffs because they have never identified with a SSN in any passport processing.

26.   The requirements to support the quasi-partial summary judgment that they seek must

support their assertions of fact by:

> "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Federal Rules of Civil Procedure, Rule 56(c)(1)(A) *Procedures*

27.    The word "record" referred to here in the Rules means the record before this court of original jurisdiction.  The only evidence submitted by the Defendants so far is new evidence that is not part of a record of any administrative tribunal.  It is non-evidence in the fact that it is objectionable since it was not adversarial (Rolbin) and not a legitimate document (FULTZ). Rule 56(c)(2)-(4)

28.    If the Court confines itself to the rules, there is opportunity for the Plaintiffs to declare that we cannot present facts that are essential to justify our opposition to this Defendant partial summary judgment motion colored as a motion for remand (Rule 56(d)(1)-(3). Accordingly, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order that will enable us to substantiate the significance of our opposition.

29.    The Rule, 56(e)(1)-(4), gives the Court the opportunity for the government to properly support their facts, or address our facts that we've proffered that persuade the Court do deny the partial summary judgment.  The Court might even give time for the government to actually proffer evidence, by submitting their administrative records to the court (discovery wanted by the Plaintiffs) to show that there actually is or ever was any question about the Plaintiffs' identity information fulfilling the threshold required by 22 C.F.R. § 51.23(b).  But the unhinged opportunity for the Defendants to create a new action for themselves under the

umbrella of remand evaded the process of the Rules and the law.  It is an abuse of discretion.

30.    Rule 56(f) provides for the Court to give "judgment" even independent of the motion.
What the Defendant has demanded is a grant of the motion **independent of** a "judgment."

31.    Rule 56(g) provides partial relief to either the movant or the opposition.

32.    According to Rule 56(h), the motion by the Defendant is on its face a "Declaration
Submitted In Bad Faith."  One important element of material fact completely missing in the
Defendants remand motion is an affidavit or declaration on the element of whether there is
actually now or ever been a dispute about the Plaintiffs' identities not meeting the threshold
required by 22 C.F.R. 51.23(b).

33.    The grant of summary judgment comes with it a "judgment."  With a "judgment"
comes finding of fact and conclusions of law.  The "remand" maneuver evades judgment and
dispute of fact.  According to Rule 56(b), such interlocutory judgment is normally only available
after the close of all discovery.  The current quasi-summary-judgment sequence in the process is
prejudicial to the Plaintiffs.  Hence, the judgment that we seek is continually postponed by the
Defendants' maneuvers.  The combined work that the Plaintiffs have put in to this document is
an irreplaceable loss but ought to be remediable in monetary punitive damages. The Court needs
to find fact and declare law in consideration of the process revealed by Rule 56.

### H.    Remand Is Not An Option Of Rule 16; *Pretrial Conferences, Scheduling and Management*

34.    The lawful authority upon which the Court is given power to act, the Federal Rules of
Civil Procedure, has empowered the Court to fulfill all the moral imperatives claimed by the
sophistry of the Defendants.  Those rules provide for the factual investigation that the Court has
ordered, but does not provide for a Remand:

Rule 16. Pretrial Conferences; Scheduling; Management (a) PURPOSES OF A

PRETRIAL CONFERENCE. In any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences for such purposes as: (1) expediting disposition of the action; (2) establishing early and continuing control so that the case will not be protracted because of lack of management; (3) discouraging wasteful pretrial activities; (4) improving the quality of the trial through more thorough preparation; and (5) facilitating settlement.

35.    About Rule 16(a)(1):  Expediting the disposition of the action is to the benefit of the Plaintiffs and the public at large, unless it is through an unjust means.  Delay to the Plaintiffs' relief is an injustice, but greater is the damage if justice is forsaken for the sake of immediacy.

36.    About Rule 16(a)(2):  As a matter of candor and regretful observation, it appears to the Plaintiffs that the Defendants established early and continuing control.

37.    About Rule 16(a)(3):  The "remand" is a wasteful pretrial activity, as is addressed herein as well as in the record filings (ECFs, 54, 53, 56, 57, 65, 68).

38.    About Rule 16(a)(4):  The Plaintiffs hope that they will be given fluid access to robust discovery in order to improve the quality of the trial through more preparation, after all the concessions fluidly given to the Defendants by the Court.

39.    About Rule 16(a)(5):  Facilitating settlement ought to be an act taken by the Court that is neutral.  The remand ordered by the Court is coercive, having its part in the continual wearing down of the injured party at the benefit of the accused party.

(b) SCHEDULING. (1) Scheduling Order. Except in categories of actions exempted by local rule, the district judge—or a magistrate judge when authorized by local rule—must issue a scheduling order: (A) after receiving the parties' report under Rule 26(f); or (B) after consulting with the parties' attorneys and any unrepresented parties at a scheduling conference. (2) Time to Issue. The judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared.

40.    About Rule 16(b)(1)(A) & (B):  The current process appears to be facilitating the evasion of a "Scheduling Order" that this rule says the Court "must issue."  The Rule says that

the Court must issue the scheduling order as soon as practicable, and guides the Court to a issue it 90 days after service, or 60 days after defendant has appeared.  The Court depended on the Rules when it denied the Plaintiffs' demand for discovery 11 months after the Defendants were served (ECFs 44 & 45).  The Court said that discovery could not commence until after the scheduling conference in accordance with Rule 16)(b)(1)(B).  That discovery process empowered and guided by the rules would accomplish the stated goal of the Defendants whereby they say that they need to determine if the Plaintiffs can be adequately identified.  In contrast to remand, that process would allow the Plaintiff an equal opportunity to determine if they have already been adequately identified.  The remand is the unwarranted excuse to evade the discovery process that is instituted to establish of justice.

> (c) ATTENDANCE AND MATTERS FOR CONSIDERATION AT A PRETRIAL CONFERENCE. (1) Attendance. A represented party must authorize at least one of its attorneys to make stipulations and admissions about all matters that can reasonably be anticipated for discussion at a pretrial conference. If appropriate, the court may require that a party or its representative be present or reasonably available by other means to consider possible settlement.

41.    About Rule 16(c)(1):  The Court may order the Plaintiffs to be present or readily available by other means (i.e. conference call) to consider possible settlement.  That is a far cry from the remand ordered by the Court.  An order to attend a two-sided settlement discussion is a power granted to the court under the authority of law.  The one-sided remand is not.

> (2) Matters for Consideration. At any pretrial conference, the court may consider and take appropriate action on the following matters: (A) formulating and simplifying the issues, and eliminating frivolous claims or defenses; (B) amending the pleadings if necessary or desirable; (C) obtaining admissions and stipulations about facts and documents to avoid unnecessary proof, and ruling in advance on the admissibility of evidence; (D) avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702; (E) determining the appropriateness and timing of summary adjudication under Rule 56; (F) controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37; (G) identifying witnesses and documents, scheduling the filing and exchange of any pretrial briefs, and setting dates for further

conferences and for trial; (H) referring matters to a magistrate judge or a master; (I) settling the case and using special procedures to assist in resolving the dispute when authorized by statute or local rule; (J) determining the form and content of the pretrial order; (K) disposing of pending motions; (L) adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems; (M) ordering a separate trial under Rule 42(b) of a claim, counterclaim, crossclaim, third-party claim, or particular issue; (N) ordering the presentation of evidence early in the trial on a manageable issue that might, on the evidence, be the basis for a judgment as a matter of law under Rule 50(a) or a judgment on partial findings under Rule 52(c); (O) establishing a reasonable limit on the time allowed to present evidence; and (P) facilitating in other ways the just, speedy, and inexpensive disposition of the action.

42.    About Rule 16(c)(2):  This lawfully authorized Rule lists particular powers of the

Court for managing the case prior to the final trial on the merits.  Not listed here is the remand

contemplated by the Defendants and ordered by the Court.  Even if the remand motion can be

squeaked-in under the ambiguous item (K) disposing of pending motions, it would be an abuse

of discretion to order it.  The pending motions ought to be made or granted within the confines of

the Rules.  Unlike the Defendants' remand, all of our pleas to the court in opposition to the

Defendants motion are consistent the with lawful authority and powers granted to the Court.  The

power of the Court to act on this motion for Declaratory judgment is available in Rule

16(c)(2)(M) which is effectively a separate trial on a particular issue.  Remand is not.  Rather

than remand, the Court ought to dismiss the remand motion for want of a claim or evidence in

the record to support it; or pursuant to Rule 16(c)(2)(N).  Otherwise, the Court should order the

presentation of evidence on the manageable issue of whether there is a legitimate question about

the Plaintiffs' identities and where discovery might show the adequacy of their information about

their identities; and where on the evidence, the finding of the Court (not the accused party) might

be the basis for a judgment as a matter of law or a judgment on partial findings under Rule 52(c).

Take note that the "facilitating in other ways" of paragraph (P) lists the word "just" in priority to

"speed" and "inexpensive" disposition of the case.  The moral imperative in the Defendants'

remand motion is speed.  We Plaintiffs see it as a 90 day unwarranted delay, that evades the authority of law which empowers the Court.  Yielding to the Defendants' remand motion throws out both the baby and the bath water of the elements of Rule 16(c)(2) paras. (M) and (N) which are processes ordinarily applied to reach justice.

## III.   THE ADMINISTRATIVE PROCEDURES ACT EMPOWERS THE COURT TO ADJUDICATE THIS CASE, NOT TO ABDICATE THOSE POWERS THROUGH REMAND

43.    The Defendants cite many cases where the Administrative Procedures Act (hereinafter "APA"), 5 U.S.C. Chapter 7, Judicial Review, might be brought to bear on the basis of the facts, the particular causes of action, and the particular status of the case within the agency.  The technical language in those cases gives a false appearance of propriety for a remand but they are not appropriate according to the empowering statutes as they apply to our case. Some laws mandate an administrative law tribunal, an administrative remedy that must be exhausted prior to an action in the district court or circuit court.  That mandate does not apply in the law and facts of our case.  In fact, even the Defendant has excluded an optional in-agency appeal (22 C.F.R. § 51.70(b)(2)) to those of us who are accused of willfully, intentionally, negligently, or recklessly putting "religious prohibition, 42 U.S.C. § 2000bb" instead of an the SSN block on the passport form (22 C.F.R. §51.60(f)).

44.    If this case is really a "record on review" as hinted by the Defendants, Section 702 provides a remedy for judicial review of an agency action.  It is not an unqualified remedy.

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to <u>judicial review</u> thereof. An action in a court of the United States seeking relief **other than money damages** and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority **shall not be dismissed** nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be

entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702 (Emphasis added)

45.    If we were only suing the Defendants on the basis of the APA, this provision 5 U.S.C.

§ 702 is one statute that provides waiver of sovereign immunity.  However, this case does not

limit this statute as a remedy according to the allegations and law of our case.

"The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement."  5 U.S.C. § 703.  Form and venue of proceeding  (Emphasis added)

46.    We find in 5 U.S.C. § 703 the definition of judicial review for this statute is "the

special statutory review proceeding relevant to the subject matter."  If there is no special

statutory review proceeding is applicable, then this 5 U.S.C. Chapter 7 Judicial Review, 5 U.S.C.

§ 701 et seq. is an available remedy.  There is no "special statutory review proceeding" but the

statutory judicial remedies upon which our case relies provides remedy at law.

"Under § 10(a) of the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, *is entitled to judicial review thereof*." 5 U.S.C. § 702 (emphasis added). Although § 10(a) provides the general right to judicial review of agency actions under the APA, § 10(c) establishes when such review is available. When an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is "final for the purposes of this section," and therefore "subject to judicial review" under the first sentence. While federal courts may be free to apply, where appropriate, other prudential doctrines of judicial administration to limit the scope and timing of judicial review, § 10(c), by its very

terms, has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates." *Darby v. Cisneros* 509 U.S. 137, 146 (1993)

### A. As Defined By The "Judicial Review" Statute 5 U.S.C. 704, The Process Called "Judicial Review" Cannot Be The Basis Of A Remand Order In This Case

"Agency action made reviewable by statute and final agency action <u>for which there is no other adequate remedy in a court</u> are subject to <u>judicial review</u>. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority."  5 U.S.C. § 704 (Emphasis added) *Actions reviewable*

47.    This 5 U.S.C. Chapter 7, Judicial review statute is controlling as to whether or not the Court is empowered by it as a matter of law and whether the Court can take action under the rubric of "judicial review" or sometimes called "agency action on review."  As far as 5 U.S.C. § 704, the Defendant agency action to deny and revoke are passports is a final action.

48.    When the term "judicial review" is bounced around in case citing, it is contextually confined to the definition of this statute.  "Judicial review" refers to case that is brought to a court upon the claiming of this statute as the remedy.  Yet, according to this statute, the remedy in the statute and defined in the statute using the term "judicial review" is not the sole jurisdictional remedy upon which we must rest our claim.  It is because our case, the law of our case, the injury to us and the public in this case, and the money damages that are available reach well into other statutory remedies provided by law.

""Succinctly put, where a statute affords an opportunity for *de novo* district-court review, the court has held that APA review was precluded because "Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both [the review provision] and the APA." *EDF,* 909 F.2d at 1501; *see Wright v. Dominguez,* 2004 WL 1636961 (D.C. Cir. 2004) (per curiam)"" *El Rio Santa Cruz Neighborhood Health Center, Inc. v. U.S. Department of Health & Human Services*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)

**B. Remand Is Not Contemplated Under 5 U.S.C. § 705, Relief Pending Review, Especially Where There Is No Pending Review**

"When an agency finds that justice so requires, it may **postpone** the effective date of action taken by it, pending <u>judicial review</u>. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, <u>may</u> <u>issue</u> all necessary and appropriate <u>process</u> to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. *Relief pending review*.

49.     We cannot find special statutory provision for remand to the agency in the wording of the special statutory record on review statute 28 U.S.C. § 2112.  We also cannot find it in this special "judicial review" statute 5 U.S.C. § 704.  The closest thing that we can find to contemplate a remand is "5 U.S.C. § 705. Relief pending review."  There the agency can 'voluntarily' postpone the action taken by it pending "<u>judicial</u> review."  This special statute gives injunctive powers, without naming it so, to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.  **In our case, there is nothing for the agency to postpone.**

"In no case may appeal to `superior agency authority' be required by rule unless the administrative decision meanwhile is inoperative, because otherwise the effect of such a requirement would be to subject the party to the agency action and to repetitious administrative process without recourse. <u>There is a fundamental inconsistency in requiring a person to continue `exhausting' administrative processes after administrative action has become, and while it remains, effective.</u>" S.Rep. No. 752, 79th Cong., 1st Sess., 27 (1945); Administrative Procedure Act: Legislative History 1944-1946, S.Doc. No. 248, 79th Cong., 2d Sess., 213 (1946) (hereinafter Leg.Hist.) " *Darby v. Cisneros*, 509 U.S. 137, 148 (1993) (Emphasis added)

50.     With our case, the agency's actions to deny and revoke our passports is final.  There is no pending in-agency adjudication that is part of the case that is before the Court.  According to the constraints of this special statute, the "judicial review" that it contemplates and regulates is not applicable to our case before the Court.  Unless of course the Defendants try to generate a notional excuse under the color of invoking 5 USC Chapter 7 where there was a hearing process

within their agency that was pending review, in order to submarine our actionable case currently

before the Court.   Even if it did apply, the process which the Court could order must be

"necessary" and "appropriate."  The Remand order is neither necessary nor appropriate,

according to the Rules of Civil procedure which provides for a process of two-sided discovery

rather than a one-sided discovery on remand.  Any query regarding identity can be accomplished

fairly by the Court through the lawful discovery process.

> "Courts are not free to impose an exhaustion requirement as a rule of judicial
> administration where the agency action has already become "final" under § 10(c)."
> *Darby v. Cisneros*, at 154

### C.  The Scope Of Review Provision Of 5 U.S.C § 706 Shows Remand Is Neither Necessary Or Appropriate

51.    The Remand order is not necessary or appropriate according to 5 U.S.C. § 706:

" "To the extent necessary to decision and when presented, the reviewing <u>court</u> shall decide
**<u>all</u>** relevant questions of law, interpret constitutional and statutory provisions, and
determine the meaning or applicability of the terms of an agency action. The reviewing
court shall—
(1)  <u>compel agency action unlawfully withheld or unreasonably delayed</u>; and
(2)  <u>hold unlawful and set aside agency action, findings, and conclusions</u> found to
be—
     (A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance
     with law;
     (B)  contrary to constitutional right, power, privilege, or immunity;
     (C)  in excess of statutory jurisdiction, authority, or limitations, or short of
     statutory right;
     (D)  without observance of procedure required by law;
     (E)  unsupported by substantial evidence in a case subject to  sections 556 and
     557 of this title or otherwise reviewed on the record of an agency hearing provided
     by statute; or
     (F)  unwarranted by the facts to the extent that the facts are subject to trial de
     novo by the reviewing court.
In making the foregoing determinations, the court shall review **the whole record** or
those parts of it cited by a party, and due account shall be taken of the rule of
prejudicial error."  (Emphasis added)

52.    Rather than using the discretionary word "may", the <u>legislature</u> said, "The reviewing

court "**shall**," "decide all relevant questions of law, interpret constitutional and statutory

provisions, and determine the meaning or applicability of the terms of an agency action." There is no room there to delegate those determinations on remand.

53.    The <u>legislature</u> said, "The reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." Rather than a remand order, the <u>Court</u> should be ordering the Defendant to relieve the injured Plaintiffs of what is unlawfully withheld. Instead the Court is compelling the injured plaintiffs to submit to a 90 day unreasonable delay that is neither necessary or appropriate; is not supported by a statutory granted power; and is in subversion to the Rules and this scope of review statute.

54.    The <u>legislature</u> said, "The reviewing <u>court</u> "**shall**," (2) hold unlawful and set aside agency action, findings, and conclusions found to be— (A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;  (B)  contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F)  unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. All of those impositions upon the court by the <u>legislature</u> were invoked by the Plaintiffs and are applicable to our case. It is **the Court** that "**shall**" do these things. We can find no authority in statute or the Supreme Court's Rules that give the Court the authority or power to shirk these responsibilities even where the remedy rests solely upon this "judicial review" waiver of sovereign immunity.

55.    In order to make a determination in any or all of the above instructions for adjudication, the <u>legislature</u> said, "…**the court <u>shall</u>** review the **<u>whole</u>** record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." In our case, we

have been faithful to point out to the Court that there was never any record submitted by the

Defendant to support their Rule 12(b) and Rule 56 motions for dismissal (ECF 24), nor has there

been any record submitted by them to show that there is some questions about the Plaintiffs

identities that warrants their agency's action.  Rather than remand, the Court ought to be

demanding the record so it can make its determinations in accordance with that which the

<u>legislature</u> has demanded in 5 U.S.C. § 706 or in accordance with the <u>Rules</u> of the Supreme

Court, or in accordance with any other provision under the authority of <u>statute</u>.

### D.  The Administrative Procedures Act Imposes The Burden Of Proof Upon The Agency To Justify Their Action

56.    In the law of our land, actions of a man are right unless it is a wrong, or unless it is

expressly prohibited by the legislature.  The Executive's job is to protect those rights which

cannot be enumerated, or enforce the law against those wrongs inherently *mala in se* or expressly

*mala prohibita*.[10]  It is not the duty or the liberty of the Executive to prohibit rights, benefits or

privileges until a person can shoulder the burden to prove what they are doing or wanting to do is

not wrong.  Such is the reason that drives the burden of proof required by the APA.

> "(d) Except as otherwise provided by statute, the proponent of a rule or order has the
> burden of proof."  5 U.S.C. § 556 *Hearings; presiding employees; powers and duties;
> burden of proof; evidence; record as basis of decision*

57.    The burden of proof is upon the Defendants, who are urging the Court to allow them

to enforce their agency **order** denying or revoking our passport renewals; and to enforce the **rule**

of theirs that would paint us as not achieving a minimum threshold for religious accommodation

or personal identification.

> "The NOVA (*), however, is an *unsworn* document signed by a NOAA staff attorney
> not claiming to have personal knowledge of the matters alleged and contains only the
> factual allegations of the charged violation. Thus it does not constitute any summary

---

[10] https://legaldictionary.net/mala-prohibita/ *Mala prohibita* -  wrong because it is prohibited.

judgment evidence. *See Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* ___ U.S. ___, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment."); *see also* 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (1983). Accepting the government's argument would shift the burden of proof to the party charged with the violation; thus, the government would prevail even when it produces no evidence as long as the charged party did not produce any evidence. **Because the ALJ improperly shifted the burden of proof to the parties charged with the violations (\*\*)**, we reverse the district court's judgment granting summary judgment in favor of the government." *U.S. v. Menendez*, 48 F.3d 1401, 1414 (5th Cir. 1995) (Emphasis added) * (Notice of Violation and Assessment) ** (In our case, the non-movants for remand)

"Under APA, "the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). Thus, the government—as the proponent of the decision revoking Plaintiff's passport—bears the burden. See Bosma v. Dep't of Agriculture, 754 F.2d 804, 810 (9th Cir. 1984). The government nonetheless argues, without citation to any statute or regulation, that Plaintiff bears the burden at the administrative hearing stage. At oral argument, the government postulated that it only bore the burden as to the initial passport revocation which occurs when someone in Washington DC reviews the evidence and determines whether a passport should be revoked; thereafter, the burden shifts to the party challenging the determination—here, Plaintiff. The government's unsupported theory contradicts the plain language of the APA as well as its own conduct in this case." Omar v. Kerry, No. 15-cv-01760-JSC (N.D. Cal. Feb. 16, 2016)

## IV.   THE COURT ORDER UNJUSTLY ALLOWS THE DEFENDANTS TO UNILATERALLY ENFORCE A VIRTUAL *WRIT NE EXEAT REPUBLICA*, A POWER RESERVED TO THE DISTRICT COURT BY STATUTE.  IT DOES SO FLIPPING THE BURDEN OF PROOF ON ITS HEAD CONTRARY TO FUNDAMENTAL RIGHT

58.   By accident or providence, when searching the term *ne exeat regno*, we discovered

that it is not the Defendant, neither is it the Secretary, nor Jonathan Rolbin, nor Christine

McClean that has the authority to issue the *writ ne exeat republica* (from the English common

law *writ ne exeat regno*) upon the Plaintiffs.  That is what the Defendants have virtually done.

Our browser search on the term *writ ne exeat regno* gave a hyperlink to 26 U.S.C. 7402 and cited

the phrase *writ ne exeat republica*.  That is the tax code.  The Congress has placed the power to

accomplish such a binding of natural and civil right to the District Court at 26 U.S.C. § 7402.

"The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of ne exeat republica, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."  26 U.S.C. § 7402 *Jurisdiction of District Courts*, ¶ (a) *To issue orders, processes, and judgments*

59.    As we said in our Objections (ECFs 71, 72) the Defendants are in effect unlawfully adjudicating their own claim against us, under their own rules legislated by themselves, with no complaint before them by any injured tax authority, saying that we ought to be prevented from leaving the *republica*.  The provision in the passport statutes that "authorizes – not mandates" that they deny or revoke a passport for the applicant not identifying with a SSN is a matter regarding taxes (22 U.S.C. §2714a ***Revocation or denial of passport in case of certain unpaid taxes***).  That adjudication power to declare as a matter of law that we are excluded from being issued passports is granted to the district court, not granted to the Defendant agency.  Once the Court orders a *writ ne exeat republica,* the Defendant is right to apply the injunctive order and deny a passport until the order is rescinded.  But the power to adjudicate and issue orders remains expressly in the bailiwick of the United States District Court through the means of an adversarial process where it can find fact and conclude law.  *Lex Rex*.  The Order to delegate to the Defendants the adjudication of whether they can reverse their exclusion of our travel on remand is an exercise of power without authority on the basis of the facts and law in this case.

"While section 7402(a) of the Internal Revenue Code expressly authorizes the district courts of the United States to issue the writ of *ne exeat republica* in tax cases, it does not spell out the terms and conditions on and under which the writ is to be issued in such cases. This very omission, however, makes it clear that the writ is to be issued in a tax case only in circumstances which would render the issuance proper in some other type of suit in equity.

From the standpoint of procedure, it is proper to issue a temporary or provisional writ upon an ex parte showing of **probable cause**, but when that course is followed, as it was in the instant case, **the defendant is entitled to a full and speedy**

**hearing**, and a failure to accord such a hearing **amounts to a denial of liberty without due process of law**. *Jacobsen v. Jacobsen*, 75 U.S.App.D.C. 223, 126 F.2d 13. And, at the hearing <u>the burden is upon the plaintiff to establish that the writ should be continued in force</u>." *United States v. Robbins* 235 F. Supp. 353, 356-357 (E. D. Ark., 1964) (Emphasis added)

60.    The above quotation of a *writ ne exeat republica* case shows the necessary elements for when the government would restrict travel, the burden of evidence required, and the presumption of innocence and liberty that rests on the person whose liberty is being challenged.

"""The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." ***Addington v. Texas***, **441 U.S. 418, 423** (1979) (internal citation and quotation marks omitted). "At one end of the spectrum is the typical civil case involving a monetary dispute between private parties" wherein the "plaintiff's burden of proof is a mere  preponderance of the evidence [and] [t]he litigants [] share the risk of error in roughly equal fashion." Id. At the other end of the spectrum, in a criminal case, the beyond a reasonable doubt standard applies because "the interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment." Id. An intermediate "clear" and "convincing" standard applies where the interests at stake "are deemed to be more substantial than mere loss of money" or where "particularly important individual interests" are at stake. Id. at 424.

Clear and convincing evidence requires evidence that could "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (internal citation and quotation marks omitted); see also *United States v. Yi*, 704 F.3d 800, 806 (9th Cir. 2013) ("Clear and convincing evidence creates a conviction that the factual contention is highly probable."). In contrast, evidence satisfies the preponderance of the evidence standard if it is "reliable and thoroughly tested." *United States v. Mezas de Jesus*, 217 F.3d 638, 644 (9th Cir. 2000) (internal citation and quotation marks omitted).

While the preponderance of evidence standard generally applies in ordinary civil cases, the Supreme Court has applied the clear and convincing evidence standard when certain fundamental rights are at stake. See, e.g., *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 286 (1990) (cessation of life support); *Santosky v. Kramer*, 455 U.S. 745, 760-70 (1982) (termination of parental right); *Addington*, 441 U.S. at 433 (civil commitment); *Woodby v. Immigration & Naturalization Serv.*, 385 U.S. 276, 286 (1966) (deportation); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (denaturalization). Plaintiff, relying *Kent v. Dulles*, 357 U.S. 116 (1958), contends that an individual's right to travel

internationally is likewise a fundamental right. In Kent, the Supreme Court held that Congress had not authorized the Secretary of State to inquire of passport applicants as to any affiliation with the Communist Party finding that "[t]he right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." Id. at 125. In so holding, the Court observed that "[t]ravel  abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values." Id."'" *Omar v. Kerry*, No. 15-cv-01760-JSC (N.D. Cal. Feb. 16, 2016)

61.    The key point here is that it is the jurisdiction, and principal interest, of the District Court to protect the liberty of the person; and to demand a strong showing of proof by the government why liberty should be restricted.  The Court's remand order flips this principle on its head, keeping the Plaintiffs captive through a remand process when the government can show no evidence why it is necessary to deny or revoke the Plaintiffs passport renewals.

## V.    THE NATURE OF THE RESTRICTED LIBERTY RIGHT DEMANDS STRICT SCRUTINY IN A COURT OF LAW

62.    The nature of the right to travel, as a matter of revealed and natural law, is one that demands strict scrutiny whenever a power of the government (God's minister) would claim to be justly imposing upon that revealed and natural right.  That is a matter for a court of law.

63.    The revealed law tells us that each of us has a duty to take dominion over the Earth (Genesis 1:28).  The divine Lawgiver has now ordered to as many as received him, such as the Plaintiffs, to travel into all the world as His ambassadors (Matthew 28: 19-20).  To enter or cross each country's borders, we must pass through ports of entry where passports are required.

64.    The people of the United States of America, and those who administer their delegated powers through the entity of the United States, are partners with other nations and their governments to be God's ministers for our good.  The people of the United States delegated to their Legislature the duty to enact civil law that empowers the Executive to administer God's good to the people.  One of those goods is to protect the right of its people to fulfill their freedom

and duty to travel as their natural right and revealed duty.  The United States protects those rights in harmony with its partner nations under the law of nations.  The law of nations is therefore the law of God where it conforms to, and advances, the law revealed.

65.    It is commonly understood that nearly all countries, if not all, require a passport to transit across their national boundaries as a matter of the law of their land and the law of nations. The passport is an aid to a man in his right to travel as broadly as practicable.

66.    We can only assume that the legislature has declared it unlawful to exit the *republica* without a passport, notwithstanding the natural and revealed right to travel, as a function of associating with the society of nations and loving our international neighbors (8 U.S.C. § 1185). Such a law, restricting natural liberty, is constitutional only where is does not serve to injure a man in his rights and duties of higher law for which government is instituted to protect.

> **The right to travel is a part of the "liberty" of which the citizen cannot be deprived without due process of law under the Fifth Amendment**. So much is conceded by the Solicitor General. In Anglo-Saxon law that right was emerging at least as early as the Magna Carta. Chafee,  Three Human Rights in the Constitution of 1787 (1956), 171-181, 187 et seq., shows how deeply engrained in our history this freedom of movement is. Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. **Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values**. See *Crandall v. Nevada*, 6 Wall. 35, 44; *Williams v. Fears*, 179 U.S. 270, 274; *Edwards v. California*, 314 U.S. 160. "**Our nation,**" wrote Chafee, "**has thrived on the principle that, outside areas of plainly harmful conduct, every American is left to shape his own life as he thinks best, do what he pleases, go where he pleases**." Id., at 197.  *Kent v. Dulles*, 357 U.S. 116 (1958) (Emphasis added) Relied upon by *Aptheker v. Secretary of State*, 378 U.S. 500 (1964)

67.    Therefore, a passport ought to be granted, and should be presumed to be grantable, to a person who requests one for themselves.  When a man has done an injury to another person on this land, and his deeds are so pernicious as to be a threat to the society upon another land, there is due cause for the injured or threatened party to take action to prevent the miscreant from

traveling cross border to escape the consequences of his actions or to be a danger to our international neighbors.

### A. Preventing All Men From Acting In Order To Disable Any Man From Acting Wrongly Is Not The Purpose For Which This Government Is Instituted

68.     Until that which is perfect is come, there will be liars (Rev. 21:8).  The subliminal instrument to dissuade a fraudulent act is the final judgment.  Whether or not it is prosecuted upon the Earth, nobody gets away with anything ultimately ("And as it is appointed unto men once to die, but after this the judgment" Hebrews 9:27).   The lawful temporal instrument to dissuade a person from committing fraud to obtain a passport is the penalty of law, **after the fact** of the wrongful act.

69.     The principal purpose of government is to protect a man in his life, liberty, and pursuit of happiness (Declaration of Independence).  Secondary to that, the punishment of wrongdoing is a legitimate means to those ends.  It is not an end in itself.  Preventing all men from acting in order to disable any man from acting wrongly is not the purpose for which this government is instituted.  An officer of the United States government unlawfully restricting the liberty of one man, or all men, until they prove that they are not a wrongdoer is nigh unto sedition and treason.

### B. The Oath On The Ds-11 And Ds-82 Forms Fulfills The Threshold Necessary To Affirm Identity And Liberty To Travel

70.     Because of this nation's relationship among the nations, it is reasonable to us that the government would be remiss if they did not place some scrutiny upon the validity of a man's application for the passport.   Requiring a man to give evidence under oath that the information is true fulfills the burden of the state to validate the document issued pursuant to the application. The passport issuing agency bears no guilt.  God is the affiant's judge.  If what they swear is not

true, they have sworn using the name of God in vain.  They bear their own guilt and will answer

at the final judgment.  The Department of State passport and passport renewal application forms

DS-11, and DS-82 respectively, provide that evidence of validation of the applicant's identity

and liberty by means of oath:

> "I declare under penalty of perjury all of the following:  1)  I am a citizen or non-
> citizen national of the United States and have not, since acquiring U.S. citizenship or
> nationality, performed any of the acts listed under "Acts or Conditions" on page four
> of the instructions of this application (unless explanatory statement is attached); 2) the
> statements made on the application are true and correct; 3) I have not knowingly and
> willfully made false statements or included false documents in support of this
> application; 4) the photograph attached to this application is a genuine, current
> photograph of me; and 5) I have read and understood the warning on page one of the
> instructions to the application form."  State Department Passport and Passport
> Renewal Application Forms DS-11 and DS-82, Affidavit Section  (ECF 53, p. 27 of
> 112)

71.    Once that oath is given affirming identity and liberty, the burden shifts to the United

States to file for a writ of *ne exeat republica* pursuant to 24 U.S.C. § 7402 to shoulder the burden

of proof that a man's life, liberty, and property rights[11] ought to be restricted as they relate to

international travel and the passport that affirms their right.  In the Plaintiffs case, **there is no**

**probable cause to suggest that our natural or civil liberty should be restricted**.

## VI.    REMAND IS A PRODUCT OF DICTUM RATHER THAN CONSTITUTIONAL STATUTORY CONSTRUCTION.  IT IS AN ABUSE-OF-DISCRETION REACH TO SUBJECTIVE EQUITY WHEN THE PROCESS IS DIRECTED BY LAW

### A.    Relying Upon District And Circuit Court's Dictum Regarding Remand Usurps The Constitution, Eviscerating The Power Of The Congress And The Supreme Court

72.    The Defendants' citing district court practices of coercive remands, disjointed from

justification in law, eviscerated the power of the Congress and the Supreme Court.  The power

that the Supreme Court is given to remand is 28 U.S.C. § 2106, to order further proceedings.  But

that power is limited to further proceedings to a lower <u>court</u>.  When the Congress empowered the

---

[11] Pursuit of happiness is a property right according to Locke)

Supreme Court to review agency action, 28 U.S.C. § 2112, it limited the Supreme Court's

powers to: enjoin, set aside, suspend, modify, or otherwise review or enforce orders of

administrative agencies, boards, commissions, and officers.  We can only see in the statutes that

remand is contemplated in the context of remanding to a judicial tribunal where there is

adversarial due process.  We do not know whether an administrative court or tribunal constitutes

a "court" as contemplated by 28 U.S.C. § 2106.  Assuming that it is, we presume that it ought to

be a full adversarial process before an administrative law judge of a board.  The agency action

we are subject to has no statutory mandate that we can find for such a administrative tribunal.

The Secretary has excluded us from such a process by subject matter through 22 C.F.R. §

51.70(b)(2).

73.    Some of those circuit court cases cited by the Defendants indicate that remand is not

authorized.  The remand demanded by the Defendants must be considered de novo by the Court.

> """Regarding Commerce's new position and request for remand, the court held that it could not "**rely on the post-hoc position advanced by Commerce in its brief as the basis to uphold or overturn its administrative action**. . . ." Id. at 1345 n. 3. The court cited *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962), for the proposition that "**an agency's discretionary order [must] be upheld, if at all, on the same basis articulated in the order by the agency itself**." *SKF USA Inc*., 77 F.Supp.2d at 1345 n. 3 (brackets in original)."" *SKF USA Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001) (Emphasis added)

**B.    Remand Is An Abuse-Of-Discretion Reach To Subjective Equity When The Process Is Directed By Law**

74.    The wrong in the remand is to deny the Plaintiffs the remedy that is dictated by four-

hundred thirty-five Representatives, one hundred Senators, one President, nine Supreme Court

Justices, and the council of their advisors, tangible in the U.S. Statutes At Large and the Federal

Rules of Civil Procedure.  Equity will not suffer a wrong to be without remedy, but equity cannot

enter where there is a remedy at law.  The remedy is the law and rules regarding two-sided

discovery and a fully adversarial process, to a final judgment that provides complete relief to the plaintiffs, their posterity, and society.

## VII.   THE PRIVACY ACT SAYS THAT THE DISTRICT COURT HAS JURISDICTION TO ADJUDICATE THE COMPLAINT *DE NOVO* AND TO COERCE THE AGENCY TO CORRECT ITS RECORD

75.    The Privacy Act says the district court has original jurisdiction to adjudicate the adversarial process of the Defendants wrongdoing (5 USC § 552a(g)(1) Civil Remedies).  When the Defendant "failed to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an  individual , "… the individual may bring a civil action against the agency, and **the district courts** of the United States **shall have jurisdiction** in the matters under the provisions of this subsection."  (5 USC § 552a(g)(1)(D)) (Emphasis added)  The court under that authority can <u>order the agency to amend the record</u> in accordance with our request, "the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct. In such a case **the court shall determine the matter de novo**."  (5 USC § 552a(g)(2)  (Emphasis added)  **It does not say** that the Court may remand the action without ordering the agency to correct the record, leaving to the wrongdoing agency the opportunity to cunningly repair their case or re-persecute the Plaintiffs.

## VIII.   REMAND IS UNNECESSARY AND INAPPROPRIATE WHERE THE DEFENDANT USES THE EXCUSE OF TRYING TO DISCOVER IF THEY CAN REACH A LEAST RESTRICTIVE MEANS (4TH PRONG OF RFRA) WITHOUT FIRST PROVING COMPELLING INTEREST (3rd PRONG OF RFRA)

76.    The Defendants admit that they did not consider Plaintiffs religious accommodation requests (ECF 61, p. 5).   They then say, "The Department is willing to consider Plaintiffs' religious accommodation requests as it reconsiders Plaintiffs' applications."  (ECF 61, p. 6)  The Defendants convey their rudimentary lack of understanding of the fundamental law that protects

absolute rights.  They do not have the prerogative to be "willing to consider."  They have a duty

to protect the Plaintiffs' absolute rights.  Waiving the "alternate identity" distracter, they show

that they do not understand the hierarchy of the four prongs of the Religious Freedom

Restoration Act.  Their alternate identity non-issue is essentially a query on the 'least restrictive

means' test.  If the government has not "demonstrated" the threshold of having a compelling

interest, that is at least in equipoise with the religious observance, the government is duty bound

to excuse the religious objector from the general requirement.  Identifying with a SSN is not an

absolute requirement to obtain a passport.  There is no need then to query for an alternate means

(least restrictive test) to identify someone without a SSN.  Find fact and conclude law regarding

whether seeking 'an alternative means to verify the Plaintiffs' identities' is really a necessity to

fulfill RFRA mandated accommodation in light of the actual identity verification pursuant to 22

C.F.R. § 51.23(b).

## IX.    THE MODEL CASE SHOWING HOW THIS COURT MUST ADJUDICATE IS THE FEDERAL CIRCUITS' GRANT OF APPEAL, VACATE OF JUDGMENT, AND REMAND TO THE LOWER COURT (GVR) IN *CARMICHAEL V. UNITED STATES*, 298 F.3D 1367 & 66 FED. CL. 115

77.    Plaintiff Carmichael filed suit against the United States claiming that the U.S. Navy

violated law and regulation when it refused to consider Carmichael's religious accommodation

request to not be identified with a SSN has the Navy's Military Personnel Identification Number

(MPIN) (Court of Federal Claims, Case No. 99-958C) Carmichael v. United States, 298 F.3d

1367, U.S. Ct. App. (Fed. Cir. Aug. 2002); 66 Fed. Cl. 115 (2005); 70 Ct. Fed. Cl. 81 (2006).

The Federal Circuit found:  "…there is no evidence in the record that Carmichael's request

procedurally was treated as a request for religious accommodation, or that it would have been

denied had it been so treated."  Carmichael v. United States, 298 F.3d 1367, 1376 (Fed.Cir.2002)

**The District court in our passport case likewise found**, "the record suggests that Plaintiffs'

requests for religious accommodations were not seriously considered on their merits when submitted." (ECF 45, p. 14, 1st para.)   Neither do they show evidence that it would be denied.

78.   We cite the Federal Circuit's ruling because the guidance given to the Court of Federal Claims is guidance that ought to be applied by the District Court in our case.   The Federal Circuit Granted the appeal, gave particular declaration of law as it applied to the facts, Vacated the lower court's decision, and Remanded the case with particular guidance to the lower **court** to determine what would have happened if the agency, the U.S. Navy, had followed their religious accommodation procedures:

> ""We therefore remand for a hearing to determine Carmichael's claim. The <u>trial court</u> must determine whether at the time Carmichael sought religious accommodation, the Navy "wrongfully" failed to follow its own rules and procedures in considering his request (e.g., whether the agency had "no lawful authority" for its action), and whether any such failure "directly caused" Carmichael's separation. If these conditions are met, the <u>trial court</u> then must evaluate whether "a reasonable employee confronted with the same circumstance would feel coerced into resigning," and <u>whether</u> the Navy <u>can show that it would have taken the same action after following proper procedures</u>."" *Carmichael v. United States*, 298 F.3d 1367, 1376 (Fed.Cir.2002) (Emphasis added)

79.   The Court of Federal Claims **did not remand the case back to the accused agency** so that the agency, as a post-facto super-religious-accommodation process, might prove to itself what it might have done.   The Court initiated discovery so that the <u>Court</u> would have access to the evidence necessary for the Court to do justice:

> ""After conducting a telephonic conference with the parties, this court resolved the first three questions in plaintiffs favor and ordered the parties to undertake discovery pertaining to the lone remaining issue: "<u>whether the Navy can show that it would have taken the same action after following proper procedures</u>." *Id.*[1] The parties' discovery proceedings consisted of conducting depositions of Captain Joseph Benkert, plaintiffs Commanding Officer, and Rear Admiral L.R. Marsh, Acting Deputy Chief of Naval Personnel (Acting DCNP),[2] as well as producing any documents relevant to the issue."" *Carmichael v. United States*, 66 Fed. Cl. 115, 117 (2005) (Emphasis added)

80.   After reading a 500-page actual agency record, the Court initiated admissions,

interrogatories, production of procedure documents, and deposition of the principal officers.  The

Court of Federal Claims thoroughly explained how Carmichael had been injured in denial of his

right to in-agency review of his religious accommodation request, even to the Secretary of The

Navy.  *Ibid* at 126-128   The Court rejected the idea of a remand to the agency.

> "… the mere fact that the CNP made the final decision without regard to
> regulations applicable to religious accommodation requests did not vitiate the
> error. *Carmichael*, 298 F.3d at 1375. Rather, <u>the burden is on the Navy to
> demonstrate how it would have processed plaintiffs request for a religious
> accommodation under the mandates of applicable instructions and regulations</u>.
> The focus here is on the means and the end, for the means dictate the end. The
> **Navy has already once disregarded the applicable regulations and to allow it
> to do so again in the context of a harmless error analysis would permit the
> Navy to commit the same mistake twice and avoid any accountability for its
> actions**." *Carmichael v. United States*, 66 Fed. Cl. 115, 122 (2005) (Emphasis
> added)

81.    The <u>Court</u> determined that the Navy could not prove that Carmichael's request for

accommodation would not have been approved since the in-agency appeal was thwarted where it

might have been appealed even to the <u>Secretary</u> of the Navy.

> ""Therefore, because plaintiff has not been afforded said review, the court
> concludes that the Navy has not "[shown] that it would have taken the same
> action after following proper procedures." *Carmichael,* 298 F.3d at 1376. Plainly
> stated, **the Navy failed to proffer substantial evidence that its error was
> harmless**. See *Christensen,* 60 Fed.Cl. at 29 (quoting *Sanders,* 219 Ct.Cl. at
> 310, 594 F.2d 804). Accordingly, the court resolves the Federal Circuit's final
> question against defendant and plaintiff prevails on his motion for summary
> judgment."" *Ibid* at 127-128.

82.    Rather than remand, the Court in our case needs to adjudicate the facts as applied to

the law to see if the Defendants can proffer substantial evidence that its 'error' was harmless.

## X.    FIND FACT AND CONCLUSIONS OF LAW FOR ALL RESPONSES, REPLIES NOTICES, REPORTS, DOCUMENTS AND DECLARATIONS SUBMITTED

   **A.    The Weight Of Evidence In The Matter Of Verification Of Identity Shows That
   The Defendants Have Not Demonstrated Or Shown Substantial Evidence That
   There Is A Question Of The Plaintiffs' Identity Apart From A SSN; And It Is
   Not Material Given That The Regulations Say That The Previous Passport Is**

**Sufficient**

83.   <u>The Defendants Attorney affirmed</u> on November 10, 2020, in a statement made to Carmichael that <u>there was no question as to the validity of the identity of any of the Plaintiffs</u> made by the Defendants in this case (ECF 53, p. 5, para. 10; ECF 56, p. 2, para. 7; ECF 57, p. 2, para. 7; ECF 54, Att. 4, 2nd page, page 40 of 50 as docketed).  We said in our Reply (ECF 68) to their consolidated Response (ECF 67) which has declarations under oath, the declarations under oath in the complaint, the declarations under oath on the passport forms, and the documentation sent to the Defendants for passport processing and the passports issued establish a threshold of evidence for which the Defendants cannot surmount with their "fallacious rhetorical strategy whereby their rationale for a remand is shown disingenuous." (ECF 68, p. 1, ¶1.)  We said in our Reply  that "The Defendants willful and intelligent neglect to refute any facts regarding the Plaintiffs' identities and the Department of State's not questioning their identities in the Plaintiffs' notices and demands (ECFs 57, 56, 53) is **their composite response's (ECF 67) tacit affirmation that the Plaintiffs' identities were not an issue in the adjudication of their passport renewals**.  (ECF 68, pp. 5-12, ¶s 9, 9A.-9C.)  The Plaintiffs have proffered documents and declarations that constitute evidence that is sufficient for finding of fact, especially when the Defendants have not contested it.

84.   The Defendants have not offered evidence to refute facts of the Plaintiffs.  The "DECLARATION OF FLORENCE FULTZ" is not the declaration of Florence Fultz as a matter of law since it was executed by her as information of the personal knowledge of Paul Peek (ECF 24, Att. 3).  **It does not constitute evidence sufficient for the finding of fact**.  (ECF 68, p. 13, ¶11.) It is on the basis of that non-evidentiary document that the Defendants rest their claim that it is the social security number upon which a passport applicant's identity is based.  That does

not comport in the passport regulations that explain that identity is establish by the submission of a previous passport, not an SSN.   The Court must **Find fact, conclude law** on what constitutes evidence sufficient for finding of fact, and find on the weight of evidence proffered by the parties regarding the Plaintiffs' identities and the matters put forth in the Plaintiffs' Reply (ECF 68, pp. 2-3, 5-12, 13, ¶s 6, 9, 9A.-9C, 11, and as otherwise there referenced to the court record).

**B.     The Statutory Passport Eligibility Requirements, 22 U.S.C. § 212, Are Shown To Be Fulfilled By The Weight Of Evidence, With No Evidence Of Ineligibility**

85.     The Defendants' Response (ECF 67) makes statements regarding the notion that 'generally' ""the prior issuance of a passport does not necessarily warrant an "automatic" approval of any subsequent renewal application."" (ECF 67, p. 2 – Emphasis added)  Take note, the prior issuance of a passport generally validates the identity of the passport renewal applicant according to 22 C.F.R. 51.23(b).  In fact, the statute titled "Persons Entitled To Passport" points out not what makes a man entitled to a passport, but what would make a man not entitled.  "No passport shall be granted or issued to or verified for any other persons than those owing allegiance, whether citizens or not, to the United States. 22 U.S.C. § 212.  The sophistic rhetoric of the Defendants conveyed a mindset abhorrent to the foundation of American law.  The Court must **find fact and conclude law** regarding those facts and principles put to the Court in our Reply (ECF 68, pp. 3-5, ¶ 7.-8)

> ""The intermediate standard, which usually employs some combination of the words "clear," "cogent," "unequivocal" and "convincing," is less commonly used, but nonetheless "is no stranger to the civil law." Woodby v. INS, 385 U.S. 276, 285 (1966). See also C. McCormick, Evidence § 320 (1954); 9 J. Wigmore, Evidence § 2498 (3d ed. 1940). One typical use of the standard is in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. The interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof. Similarly, this Court has used the "clear, unequivocal and convincing" standard of proof to protect particularly important individual interests in various civil cases.

See, e.g., *Woodby v. INS*, supra, at 285 (deportation); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (denaturalization); *Schneiderman v. United States*, 320 U.S. 118, 125, 159 (1943) (denaturalization).'"" *Addington v. Texas*, 441 U.S. 418 (1979)

## C.   The Correct Application The Regulations As They Apply To The Weight Of Evidence And The Arguments Of Our Reply (ECF 68, P. 14-15, ¶ 13.) Is That The Identification Requirements Of 22 C.F.R. §§ 51.23, 51.25 Are Presumed Fulfilled In The Initial Passport

86.   The Plaintiffs in their Reply conveyed that the Defendants misquoting Federal Regulations was deceptive (ECF 68, p. 13-15, ¶s 12-14).  The Defendant artfully and deceptively implies that there is some remaining examination of the passport application and all documents, photographs and statements submitted in support of the application in accordance with guidance issued by the Department.  There is no evidence that the requirements of 22 C.F.R. §§ 51.23, 51.25 and 51.5 were not fulfilled in the initial passport on the matter of identity, and the weight of evidence indicates that it was fulfilled there and in the passport renewal applications.  We then rightly refuted the Defendants claim as being "duty bound."  We explained the law that makes them duty bound.  (ECF 68, p. 14-15, ¶ 13.)  The Court must **find fact and conclude law** as to the right application of 22 C.F.R.  §§ 51.23, 51.25 as it applies to the weight of evidence and the arguments of our Reply (ECF 68, p. 14-15, ¶ 13.).

## XI.   FIND FACT AND CONCLUDE LAW AS TO WHETHER REMAND UNDERMINES OR CAUSES UNNECESSARY INTERFERENCE OR DELAY WITH THE PLAINTIFFS' DISCOVERY FOR THE PURPOSE OF COMPLETE RELIEF ON ALL CAUSES OF ACTION

### A.  Remand Undermines Or Causes Delay With Plaintiffs' Discovery And Complete Relief Regarding RFRA

87.   If the RFRA is applied to the Defendants' motion for remand, the Court is in effect granting an arbitrary summary judgment in favor of the Plaintiffs' second cause of action without the Plaintiffs having the benefit of discovery required by the Rule, and without opportunity to frame the discussion to reach the judgment that protects the Plaintiffs and society.  It gives the

Defendants a no-fault pass notwithstanding the lawlessness of their conduct, the injury to the

Plaintiffs, and the injury to society.  Justice Scalia, with Justice Thomas joining, revealed

something of the requisites of legitimate remand in the opening remarks of their dissent in

*Lawrence*.  Their statement quoted here is not substantively in opposition to the finding by the

majority.  Rather, it appears to be something upon which their colleagues could agree.

> "It sometimes occurs that, after having considered the lower court decision and
> found error, an appellate <u>court</u> merely reversed or vacates and then remands – that
> is, it sets the judgment aside and sends the case back to the lower <u>court</u> for further
> proceedings, rather than entering or directing entry of judgment for the appellant
> or petitioner.  That is the appropriate course whenever the finding of error does
> not automatically entitle the appellant or petitioner to judgment, and the appellate
> court cannot conduct (or chooses not to conduct) the further inquiry necessary to
> resolve the questions remaining in the litigation."  *Lawrence v. Chater*, 516 U.S.
> 163 (1996), Scalia and Thomas dissent, at 177-178   (Emphasis added)

88.        Justices Scalia and Thomas went on to complain, ""What is at issue here,

however, is a different sort of creature, which might be called "no-fault VR": vacation of a

judgment and remand without any determination of error in the judgment below.""  *Ibid*, dissent

at 178   In our case, the situation is much worse.  The Defendants want a "no-fault R" (Remand)

without a "V" (Vacate) in an action that does not amount to a "G" (Grant Of Review) according

to its statutory jurisdictional basis.

89.        The dissent of Justice Scalia and Thomas is empathetic to the Plaintiffs'

frustration at the Court granting the Defendants' remand motion where the Justices said:

> "It is disrespectful enough of a lower court to set its considered judgment aside
> because the Government has altered the playing field on appeal; it is downright
> insulting to do so when the Government's bait-and-switch performance has not
> for a certainty altered any factor relevant to the decision."  *Ibid*, dissent at 188

90.        The government's bait and switch in our case promises no certainty.  They promise

only that they might enjoy a willy-nilly "look" at whether they can grant the Plaintiffs' religious

accommodation after the accommodation was proven grantable ten years before the Plaintiffs

applied for their renewal.  In our case, the Plaintiffs are entitled to judgment against the

Defendants in the matter for which they partially admit that they failed.  Coming to the point of

that ultimate final judgment still needs discovery, to expose the extent of the Defendants' failure

to fully apply the rule of law, to grant the Plaintiffs complete relief and to protect society.

91.    The money damages available by the Plaintiffs' Second Cause of Action cannot

obtain complete relief for their RFRA claim with the machination of the Defendants' remand.

There needs to be discovery to find the people who acted unlawfully, negligently, willfully,

intelligently, negligently, malevolently, in bad faith, etc., in order to determine the extent of

damages that are due the Plaintiffs for complete relief.  **(ECF 65, pp. 17-19, ¶¶ 49-51)** citing

*Tanzin v. Tanvir*, 592 U.S. ____ (2020), Case No. 19–71, 894 F. 3d 449, affirmed

### B.  Remand Undermines Or Causes Delay With Plaintiffs' Discovery And Complete Relief Regarding Privacy Act

92.    The Privacy Act, U.S. Stat. 93-579, encoded at 5 U.S.C. §552a, places our claims

against Privacy Act offenses in the original jurisdiction of the District Court:

> "—Whenever any agency
>        (D)  fails to comply with any other provision of this section, or
> any rule promulgated thereunder, in such a way as to have an adverse effect on
> an individual, the individual may bring a civil action against the agency, and the
> district courts of the United States shall have jurisdiction in the matters under the
> provisions of this subsection."  5 USC 552a(g)(1)Civil Remedies.

93.    The Privacy Act <u>does not give</u> to the District Court <u>power to remand</u> the action back

to the agency for adjudication.  The District Court adjudicates the matter *de novo*, and then

orders that agency to act according to the orders of the court in accordance with the law as it

applies to the facts:

> "In any suit brought under the provisions of subsection (g)(1)(A) of this section,
> the court may order the agency to amend the individual's record in accordance
> with his request or in such other way as the court may direct. In such a case the
> court shall determine the matter de novo."  5 USC 552a(g)(2)(A)

94.    The Privacy Act provides for the District Court to grant to the Plaintiffs relief for

costs when they substantially prevail in the District Court:

> "The court may assess against the United States reasonable attorney fees and
> other litigation costs reasonably incurred in any case under this paragraph in
> which the complainant has substantially prevailed."  5 USC 552a(g)(2)(B)

95.    The Privacy Act provides for the District Court to order the agency records that we

have demanded in our correspondence with the Defendants where we cited their obligations

under the "Initial disclosures" rules of court:

> In any suit brought under the provisions of subsection (g)(1)(B) of this section,
> the court may enjoin the agency from withholding the records and order the
> production to the complainant of any agency records improperly withheld from
> him. In such a case the court shall determine the matter de novo, and may
> examine the contents of any agency records in camera to determine whether
> the records or any portion thereof may be withheld under any of the exemptions
> set forth in subsection (k) of this section, and the burden is on the agency to
> sustain its action."  5 USC 552a(g)(3)(A)

96.    The Privacy Act provides for the District Court to make determinations of whether

the Defendants' violations were intentional or willful; and to determine the amount of money

damages that the United States shall be liable to the Plaintiffs.

> "In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this
> section in which the court determines that the agency acted in a manner which
> was intentional or willful, the United States shall be liable to the individual in an
> amount equal to the sum of—
>      (A)  actual damages sustained by the individual as a result of the refusal or
> failure, but in no case shall a person entitled to recovery receive less than the
> sum of $1,000; and
>      (B)  the costs of the action together with reasonable attorney fees as
> determined by the court."  5 USC 552a(g)(4)

97.    The Privacy Act provides for the District Court to enforce liability, and gives the

Plaintiffs an additional two years to make a particular claim after its discovery.  Barring the

discovery for which we've moved on December 3, 2020, **obstructs our investigation**.

"An action to enforce any liability created under this section may be brought in the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, without regard to the amount in controversy, within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation. Nothing in this section shall be construed to authorize any civil action by reason of any injury sustained as the result of a disclosure of a record prior to September 27, 1975."  5 USC 552a(g)(5)

### C.  Remand Undermines Or Causes Delay With Plaintiffs' Discovery And Complete Relief Regarding The Claims On The Fifth Amendment And Due Process

98.    The Court has power to provide remedy and relief to the Plaintiffs' Fourth Cause of

Action claim that includes 22 U.S.C. 2714a(f), 22 CFR 51.60(f) and 51.70(b) that violate the

fundamental law.  Until that is accomplished, the Defendants "Review" is barred by that rule in

the Code of Federal Regulations 22 CFR §51.70(b) which excludes agency appeal to us under

the Defendants' accusation that the Plaintiffs can be characterized as "willfully, intentionally,

negligently, or recklessly" or "failing" to identify with a SSN.  If the Defendants continue to

claim that the law bars Plaintiffs from having a passport according to 22 USC §2714a(f), their

claim is in bad faith where they say they will consider "religious accommodation" on remand.

ECF 65, p. 22, ¶ 62.)

99.    The Plaintiffs' claim, among other things, that 22 USC §2714a(f) violates the

Constitution as being overbroad and vague where it has caused injury to the Plaintiffs in their

fundamental rights without due process of law.  The regulations upon which the Defendants rely,

to justify the injury to the Plaintiffs, are likewise unconstitutional.  The Plaintiffs also claim that

the Defendants' violation of 44 U.S.C. §3512 is part of their injuring the Plaintiffs.  Even if the

Defendants promise a change of conduct so that the RFRA statute is applied in a constitutional

way, having the Plaintiffs and others receive their passports without having to identify with a

SSN, the Fourth Cause of action still has matters of relief that are only provided by the remedy

of adjudication by the District Court.  The Court has to determine the constitutionality of the

statute, the regulations, and the conduct of the Defendants.  The Court has to determine the

lawfulness of the Defendants' non-OMB form for which they excuse their denial of the

Plaintiffs' passports.  The Court has to determine money damages for appropriate relief.

### D.  The Premise Upon Which The Remand Motion Is Based Has No Support In Fact. Otherwise Find That The Motion On Its Face Is Frivolous And For The Purpose To Delay Or Deny Plaintiffs' Discovery And Complete Relief

100.  The Defendants unwarranted new agency action on the matter of identity, if they ever

initiate such a new agency action according to lawful authority and process, will be subject to a

claim by the Plaintiffs that will be brought to a District Court under the provisions of 5 U.S.C.

Chapter 7, Judicial Review.  They will have the burden to prove that their, not yet issued, new

order to deny or revoke Plaintiffs' passport renewals, is justified on the basis of their record.

101.  So far, we have not seen any officer of the Defendant agency that has put their law

license, or risk of a personal lawsuit, on the line to initiate an new agency action for the denial or

revocation of the Plaintiffs' passports on the basis of their having a legitimate question about the

Plaintiffs' identities.  The Defendant Attorney has merely bought a 90 day stall on the lawsuit

under an unsupported notion that a "new action" is something that the Defendant agency is able

to do.  The Court has been erroneously persuaded by the rhetoric of the Defendants' Attorney

that the burden of proof is upon the Plaintiffs to show the, yet unseen, agency order to deny or

revoke the Plaintiffs' passport renewals on the basis of an identity question is unjust.  That

burden of proof in the Court's order is opposite of that which is demanded by the Administrative

Procedures Act, 5 U.S.C. § 556(d).  The Defendants' motion to remand, on its face, is an

illegitimate tactic to delay or deny due process and complete relief to the Plaintiffs.

**SUMMARY**

102.   The Defendants' remand-motion opening summary says that they "request a voluntary remand for the Department to reconsider its prior renewal and revocation actions relevant to this action." (ECF 61, p. 1)   That reconsideration opportunity has been before them from the first reply to their actions from each plaintiff and from the filing of this action at law. The Rules of discovery provide for opportunity to negotiate settlement.  Rule 16(a)(5); 16(c)(1) It is not a resolution to their accommodation dilemma that the Defendants seek.  Notice it is not for justice but is instead they say for "judicial economy."  Judicial economy is provided by that two-sided directive of the Rules 16(a)(5) and 16(c)(1).    It is not judicially economical to the Court, the Plaintiffs, or the Defendants to have to suffer the damage to our lives and work to have to wrangle over the unjust acts of the Defendants and our having to combat every maneuver of their evasion.  They used prestidigitation waving the 'alternate means of verifying Plaintiffs' identifies' without a sworn declaration to claim it is warranted, to distract from their glaring abuse of power and process,

103.   There is a benefit to the maneuvering of the Defendants, acting as The Adversary's advocate.  It has caused the Plaintiffs to have to dig deep into the statutes, rules and regulations that exist as a minister of God for our good.  The Defendants said, "The Department is currently evaluating the need for additional guidance in this area regarding religious objections (ECF 61 p. 6).  The Plaintiffs' studied-treatises are intended to rightly guide the Defendant to lawful conduct in reaching our goals of relief.  However, without the Court making finding of facts and conclusions of law, on the basis of those facts and law rather then the mere rhetoric of the

Defendants, the labor and the treatises of the Plaintiffs are merely chasing the wind.[12]

104.  Upon finding of fact and concluding law pursuant to this motion and memorandum, the Court should rescind its remand order and commence discovery pursuant to its duties under the statutes and Rules.  Otherwise, the Court should sua sponte coerce the Defendant to either grant passports to Pakosz and Lewis, and void Carmichaels' passport revocation or show evidentiary cause why that partial but crucial relief should not be granted.  Should the Court not be persuaded by our motion and memorandum, grant our alternative motion to certify the Court's finding of fact, conclusions of law, and the Court's order for our interlocutory appeal to the D.C. Circuit.

/s/ David Alan Carmichael
David Alan Carmichael, Plaintiff
1748 Old Buckroe Road
Hampton, Virginia  23664
david@freedomministries.life
(757) 850-2672

---

[12]  Then I applied myself to the understanding of wisdom, and also of madness and folly, but I learned that this, too, is a chasing after the wind.  For much wisdom comes much sorrow; the more knowledge, the more grief.  Shelomo Ben David, King of Israel, *Ecclesiastes* 1:17-18