**United States District Court,**
**District of Columbia**

David Alan Carmichael, *et al.*                    )
                                                   )
        *Plaintiffs*                               )
                                                   )   Case No: 19-CV-2316-RC
                v.                                 )
                                                   )   Re:  ECF 92, 95
Antony John Blinken, *in his Offiicial*            )
        *capacity as Secretary of State, et al.,*  )
                                                   )
        *Defendants*                               )

**PLAINTIFFS COMBINED REPLY IN OPPOSITION TO "DEFENDANTS'
OPPOSITION TO MOTION TO INTERVENE AND MOTION FOR JOINDER OF
MICHELLE BOULTON"**

## TABLE OF CONTENTS

Table of contents.................................................................................................... i

Table of Authorities ............................................................................................... ii

Plaintiffs Combined Reply In Opposition To "Defendants' Opposition To Motion......................1
To Intervene And Motion For Joinder Of Michelle Boulton"

I.   The Defendants' Opposition And Declaration Exemplify Extrinsic Fraud........................1

II.   The Defendants' "Post-Remand" Fruit-From-A-Poison-Vine Is No Basis For ................3
Denying Our Motion To Join Michelle Boulton or Allow Her Intervenor Status

III.   The Four Elements For The Right To Intervene Are Met ...................................................3

.   a.  Our Motion To Join Michelle Boulton And For Her to Intervene Is ...........................3
Not Only Timely, It Is Urgent (1st Prong Met)

b.  Legally Protected Interests of All Plaintiffs In The Action, Including Boulton,...........4
Are Threatened By The On Going Unlawful Conduct of The Defendants
(2nd & 3rd Prongs met)

c.  The Plaintiffs Are Not Adequate Representatives of Boulton Since Her Cause of
Action Cannot Be Litigated By Pro-Se Proxy (4th Prong Met)

IV.   The Defendants' Objections To The Pro-Se Plaintiffs' Well-Intended Faux Pas ..............7
Is Not Sufficient Impetus To Deny Joining or The Intervention of Michelle Boulton

V.   The Defendants' Accusation That Michelle Boulton's Claims Are Based Upon ..............8
A False Premise Is A Material Fact That Demands Scrutiny As To Which
Position Is False

VI.   The Defendants' Mischaracterization of The Case's Nature, Status, and Process Is .......10
Deceptive And Evinces A Design For The Miscarriage of Justice

VII.   The Defendants' Rhetoric To Dissuade The Court From Even Permissive ....................11
Intervention or Joinder Lacks Credibility And Ought To Be Reproved

Summary ...........................................................................................................13

# TABLE OF AUTHORITIES

**United States Supreme Court Decisions**

*Lujan v. Defenders of Wildlife* .................................................................................6
    504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992)
*Trbovich v. United Mine Workers of America* ...........................................................6
    404 U.S. 528, 538 *n*. 10, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972)
*United Mine Workers of America v. Gibbs* ..............................................................12
    383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)

**United States Court of Appeals**

*Alexander v. Fulton Co.* ...........................................................................................12
    207 F.3d 1303, 1324 (11th Cir. 2000)
*City of Cleveland v. NRC* ..........................................................................................6
    17 F.3d 1515, 1517 (D.C. Cir. 1994).
*Cook v. Boorstin* ........................................................................................................5
    763 F.2d 1462, 1466 (D.C.Cir.1985)
*Fund for Animals, Inc. v. Norton* ......................................................................3, 6, 7
    322 F.3d 728, 731 (D.C. Cir. 2003)
*Hodgson v. United Mine Workers of Am*. ..............................................................7, 13
    473 F.2d 118, 130 (D.C.Cir.1972)
*Natural Resources Defense Council* ......................................................................4, 6
    561 F.2d 904, 907 (D.C. Cir. 1977)
*Nuesse v. Camp* .........................................................................................................7
    385 F.2d 694, 702 (D.C.Cir.1967)
*Roane v. Leonhart* .................................................................................................6, 7
    741 F.3d 147, 151 (D.C. Cir. 2014)
*Sierra Club v. Environmental Protection Agency* .....................................................6
    292 F.3d at 898
*Williams Humbert Ltd. v. W. H. Trade Marks (Jersey) Ltd* ......................................6
    840 F.2d 72, 75 (D.C. Cir. 1988)

**United States District Court**

*Aref v. Barr* ...............................................................................................................3
    Civ. A. No. 10-0539, 2020 WL 7974325, at *2 (D.D.C. June 25, 2020)
*Disparte v. Corporate Exec. Bd.* .......................................................................11, 12
    223 F.R.D. 7, 10 (D.D.C. 2004)
*Elliot v. USF Holland, Inc.* ......................................................................................12
    No. 01-159, 2002 WL 826405, at *1 (S.D. Ind. Mar. 21, 2002)
*Hartman v. Duffy* .......................................................................................................5
    158 F.R.D. 525, 536 (D.D.C. 1994)
*HOPI TRIBE et al v. TRUMP et al.* ........................................................................13
    1:17-cv-02590-TSC

*Montgomery v. STG Int'l, Inc.* ............................................................................12
    532 F. Supp. 2d 29, 35 (D.D.C. 2008)
*Moore v. New York Cotton Exchange* ...............................................................11
    270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926)
*Puricelli v. CAN Ins. Co.* ..................................................................................11
    185 F.R.D. 139, 142 (N.D.N.Y. 1999)

**Code of Federal Regulations**

Fed. R. Civ. P. 20(a) ....................................................................................11, 12
    *Persons Who May Join or Be Joined*
Fed. R. Civ. P. 24(a) ...........................................................................................3
    *Intervention of Right*
Fed. R. Civ. P. 24(b) ...........................................................................................3
    *Permissive Intervention*

**United States District Court,**
**District of Columbia**

David Alan Carmichael, *et al.*       )
                                   )
      *Plaintiffs*                )
                                   )  Case No: 19-CV-2316-RC
           v.               )
                                   )  Re:  ECF 92, 95
Antony John Blinken, *in his Official*  )
    *capacity as Secretary of State, et al.,*  )
                                   )
      *Defendants*              )

**PLAINTIFFS COMBINED REPLY IN OPPOSITION TO "DEFENDANTS'
OPPOSITION TO MOTION TO INTERVENE AND MOTION FOR JOINDER OF
MICHELLE BOULTON"**

### I.   The Defendants' Opposition and Declaration Exemplify Extrinsic Fraud

1.     The Plaintiffs Carmichael, Lewis and Pakosz hereby reply in opposition to, object to, and give notice to the Court of, misstatements of fact and the erroneous applications of law that the Defendants have made in their opposition (ECF 95) to our motion to join Michelle Boulton as a Plaintiff (ECF 92).  The cases cited therein support our motion, and supply the support for this our reply to the Defendants' opposition.  If the Court relies upon the unsubstantiated statements of the Defendants, which cannot be substantiated, it will result in error in law, clear error in fact, and would be an abuse of discretion to not test those statements' validity.

2.     The Defendants' first clear error is their reliance on the DECLARATION OF KRISTIA WATKINS (ECF 95-1) **whose declaration exemplifies extrinsic fraud**.  We made our motion to join Michelle Boulton on the basis of the facts, of which we know, that show the Defendants refuse to approve (in other words – have denied) Michelle's passport renewal application unless she identifies herself with a SSN.  We know that Michelle Boulton is

motivated by religion to not identify with the number of the beast and that she communicated that important fact to the Defendants.  We know that the Defendants' non-approval of the Boulton passport application was for want of her identification with a SSN.  That non-approval (denial) came even after Mrs. Boulton sent to the Defendants information from our case file (ECF80, ¶2 – Def. Status Report) where the Defendants said they would not require us to identify with a SSN to have our applications approved should we submit new DS-82 forms.  We know for a fact that we and Mrs. Boulton are not alone as those who are making forthright requests for religious accommodation and are being denied passports by their non-approval.

3.      Kristia N. Watkins declared that she was "familiar with Michelle Boulton and her pending passport application" and that she reviewed the Departments records and discussed the matter with employees.  Unless those records were not complete and the employees were less than candid, Kristia N. Watkins knew or should have known that Michelle Boulton had made a request for religious accommodation to not identify with a SSN.  Kristia N. Watkins knew or should have known that the "requested" … "additional information" that the agency is demanding is a SSN (ECF 95-1, ¶4.).   On the basis of Kristia N. Watkins's declared subject matter expertise, she appears to us to have willingly, intelligently, negligently, and recklessly communicated technically accurate language, and excluded relevant and material information in such a way that willingly, intelligently, negligently, and recklessly leads the reader to believe a falsehood.  Her exclusion of relevant facts is relied upon the by the Defendant attorney who erroneously accused Mrs. Boulton of making a false allegation.  Kristia N. Watkins appears to us to be obstructing the justice that we seek to establish not only for ourselves, but to our posterity and everyone else who is similarly being injured.  Robust discovery is necessary to reveal the truth that will show and prove that the law is being willingly, intelligently, negligently,

recklessly, and systematically being violated by the Defendants to the hurt of ourselves, Michelle Boulton, and others of whom we know.

## II.  The Defendants' "Post-Remand" Fruit-From-A-Poison-Vine Is No Basis For Denying Our Motion To Join Michelle Boulton or Allow Her Intervenor Status

4.      We've objected to the remand and its parallel-government machinations (ECFs 79, 78, 76, 75, 72, 71, 68, 65-63, 60-53), and we demanded the Court make a finding of fact and declaration of law regarding its legitimacy.  We've begged the Court to apply the law and rules of court to our case procedure.  The Court has been silent on our pleas, and practiced an effectual final judgment by application <u>through its minute orders</u> without ever addressing our substantial objections.  The Defendant is now emboldened to attempt to elevate its faux remand in such a way as to eviscerate the statutes and rules of court that are designed make a path for justice in a timely and efficient manner.   The Defendants' appeal to a 'post-remand' briefing schedule as a basis to deny our joining motion is erroneous as well as frivolous.

## III.  The Four Elements Required For The Right To Intervene Are Met

5.   In our motion to join Michelle Boulton (ECF 92), we referenced the Rules of Civil Procedure, Rule 24(a) Intervention of Right.  She ought to be able to intervene as a matter of right rather than is merely permissive under Rule 24(b), and we endorsed it by our motion.

6.      In their opposition to the motions to join and intervene, the Defendants quote four elements that support intervention as a matter of right:

> "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests."  Quoting *Aref v. Barr*, Civ. A. No. 10-0539, 2020 WL 7974325, at *2 (D.D.C. June 25, 2020) (quoting Fed. R. Civ. P. 24(b)(1)(B)).  See *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003)

### a.    Our Motion To Join Michelle Boulton And For Her to Intervene Is Not Only Timely, It Is Urgent (1st Prong Met)

7.     This Court has yet to adjudicate any of the subject matter upon which it opined that the Plaintiffs have standing (ECF 44 & 45).  Those matters of law, as applied to similar or same facts and concrete injuries of the Plaintiffs and intervenor, are yet to be determined and are relevant and material to the rights, the remedies, and the relief of all.  When Boulton's allegations are tested in trial, they will prove that the Defendants are denying religious accommodation until the persecuted Christian files an action at law.  Even then, they litigate tooth-and-nail to evade judicial accountability.  Time for intervention is not only ripe for intervention by Boulton, but by the others who are suffering from the same Defendants' violations of law.  It is the Defendant that is dictating the timing of injuries to us and Michelle Boulton.  We and other victims should not be denied relief due to the timing of the Defendants' misconduct.  It will continue to be timely to join others before the court eventually allows remedial litigation reaching findings of fact and conclusions of law on any of the other actionable causes of action and damages.

> """Judged by these standards, it is clear that the District Court abused the "sound discretion" it is accorded to assess timeliness. In relying upon the age of the case and its closeness to settlement, the Court failed to take into account "the purpose for which intervention [was] sought," namely, the concern for participation in the implementation of the agreement. In Hodgson, supra, for example, this court allowed an application for intervention seven years after the case was filed when, as here, the applicant [561 F.2d 908] did not seek to reopen the settled issues in the case but sought to participate in an upcoming, remedial phase. *Natural Resources Defense Council*, 561 F.2d 904, 907 (D.C. Cir. 1977)

**b.     Legally Protected Interests of All Plaintiffs In The Action, Including Boulton, Are Threatened By The On Going Unlawful Conduct of The Defendants (2nd & 3rd Prongs met)**

8.     Our shared legally protected interest is not only the securing of our access to passports without forsaking the duty of religion to not identify with the number of the beast SSN. We each, as one of the People of the United States of America, have property and liberty rights

in the government that is founded on the promise of being of-law-and-not-of-men.  We each have an interest and duty to our posterity to ensure that the ministerial duties of government are not usurped by the adverse encroachment of our lives, liberties and property rights in happiness and safety by bureaucrats operating against the law under the color of law.  The Defendant demanding that we forsake our duties of religion in order to have a passport, and then communicating it is mandatory up until the time that we or others separately file an action at law, among other things of which we complained, are legally protected interests that are injured and threatened by the identical and continual unlawful actions of the Defendants.  The policies and practices that injure us, and that are injuring Boulton and others, needs to be halted as soon as possible to decrease the swarm of others in our same situation that might need to join.

> "The Court concludes that the class members' and intervenors' complaints are similar enough to those of Ms. Hartman that the individual filing of multiple EEOC complaints was not necessary, nor would it have been efficient. As the Court of Appeals for this Circuit has observed, " [a]lthough the specific circumstances giving rise to the grievances of each of the plaintiffs and the would-be intervenors in this case are distinguishable, each of the employees [seeks to show] the same thing: a pervasive ' pattern and practice' of racial discrimination" in hiring throughout the Agency." *Hartman v. Duffy*, 158 F.R.D. 525, 536 (D.D.C. 1994) citing *Cook v. Boorstin*, 763 F.2d 1462, 1466 (D.C.Cir.1985).

9.     Michelle Boulton used the documents produced by the Defendants in our case (ECF 80, ¶2.), which the Defendant used to convince the court that religious accommodation was being applied in good faith.  It appears by their actions to be merely the color of correct policy and practice.  The conduct of the Defendants against Michelle Boulton goes directly contrary to the façade that the Defendants portrayed to the District Court in their Status Report, *id*.  Mrs Boulton has equal standing with us in the identical ongoing injuries in fact perpetrated by the Defendants which give her Article III standing for redress by litigation.

> """As we have explained, "because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing

requirements imposed on those parties." *Funds for Animals, Inc. v. Norton*, 322 F3d. 728, 732 (D.C. Cir. 2003) citing *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994).

"To establish standing under Article III, a prospective intervenor — like any party — must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Funds for Animals v. Norton*, 322 F.3d 728, 732-733 (D.C. Cir. 2003) citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992); *Sierra Club*, 292 F.3d at 898.

    10.    Boulton's pleading shows a legally sufficient claim and she is likely to prevail on those merits.

"An application to intervene should be viewed on the tendered pleadings — that is, whether those pleadings allege a legally sufficient claim . . . and not whether the applicant is likely to prevail on the merits." *Williams Humbert Ltd. v. W. H. Trade Marks (Jersey) Ltd*., 840 F.2d 72, 75 (D.C. Cir. 1988)

### c.    The Plaintiffs Are Not Adequate Representatives of Boulton Since Her Cause of Action Cannot Be Litigated By Pro-Se Proxy (4th Prong Met)

    11.    We in our case cannot adequately represent the interests of Michelle Boulton for many reasons. We are not her licensed attorney, first friend, or first blood. The facts of which we've been made aware that support her allegations shock the conscience when she eventually brings them to light via due process of discovery. Should the Court actually adjudicate our causes of action, declaration of the application of law will show Michelle Boulton's relief as well as ours should be granted; but she needs to be a party to the matter to secure that relief.

"[a] district court must grant a timely motion to intervene that seeks to protect an interest that might be impaired by the action and that is not adequately represented by the parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014).

""The requirement of the Rule is satisfied if the applicant shows that representation of his interest "may be" inadequate; and the burden of making that showing should be treated as minimal."" *Natural Resources Defense Council*, 561 F.2 d 904, 911 (D.C. Cir. 1977) citing *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 *n*. 10, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972)

"At a minimum, if the suit proceeds without (Intervenor), a decision rejecting the inmates' claims could establish unfavorable precedent that would make it more

difficult for (Intervenor) to succeed on similar claims if he brought them in a separate lawsuit of his own, which is sufficient to support intervention under our case law.  See *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C.Cir.2003); see also *Nuesse v. Camp,* 385 F.2d 694, 702 (D.C.Cir.1967).  Likewise, it seems obvious that the existing parties to the suit may be inadequate representatives of (Intervenor). *See Hodgson v. United Mine Workers of Am*., 473 F.2d 118, 130 (D.C.Cir.1972)."  *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) ("Intervenor" replacing Appellant's name)

## IV.   Defendants' Objections To The Pro-Se Plaintiffs' Well-Intended Faux Pas Is Not Sufficient Impetus To Deny Joining or The Intervention of Michelle Boulton

12.   The objections of the Defendants over our attempts at ECF filing should be overruled.  We Plaintiffs diligently considered what might be the appropriate and most efficient procedure to facilitate Mrs. Boulton's intervention by searching the Rules.  We realized that the Court's discretion needed to be applied to allow for the filing of Mrs. Boulton's documents.  We applied to that Court discretion to allow for, or to direct, the filing/docketing of the documents (ECF 93).  Should the Court deny the CM/ECF filing request, the Court has the discretion to direct procedural demands.  We were particularly motivated by the horrendous experience we've had in the past trying to get a well organized filing on to the docket by means of the Clerk's office's handling of filings by mail.  It appeared to us that for the sake of efficiency, cost, timeliness, and benefit to an orderly docket, that filing by ECF was best with all things considered.  To alleviate the objections of the Defendants regarding our lack of affidavit, we include above our signatures herein, a declaration under perjury to verify the factual statements contained herein.

13.     The objections of the Defendants are mooted regarding the filing of Mrs. Boulton's documents in that she delivered the documents electronically by email after coordinating with the Clerk's office.  Case management coordination and documents to support it are being filed by the several parties.

14.     The Defendants objection to not conferring with them prior to Michelle Boulton's motion to intervene is unwarranted, yet noted where they say, "The Court routinely denies non-dispositive motions for failure to comply with Rule 7(m)." (ECF 95, p5.)

15.     Michelle Boulton had no duty to confer with the Defendants' Attorney except to file notice of her action against the Defendant through their Attorney.  The stance of the Defendants against every position of the Plaintiffs prompts a natural presumption of their intending to object.  There was no field to narrow with regard to the unlawful and injurious conduct of the Defendant that motivated Mrs. Boulton's motion to intervene and our natural inclination to join her.  The Defendant's objection to Plaintiffs' not checking in with them over every event cannot be the intent of Rule 7, and their objection is not accompanied with an affidavit or allegation of injury.  The cry of the Defendant over this issue is especially egregious where the Defendant and the Court have wantonly flouted the substantive and vital due process Rule (n).  We note their objection and will be sure to notify the Defendants Attorney prior to our next motion to join an intended intervenor in hopes that the Attorney can recommend to their client that the accommodation should be granted rather than litigated.  The objection and denial of our motion to join Michelle Boulton on the basis of non-conferring should be overruled in this instance.

**V .   The Defendants' Accusation That Michelle Boulton's Claims Are Based Upon A False Premise Is A Material Fact That Demands Scrutiny As To Which Position Is False**

15.     The Defendants asserts that "Ms. Boulton's claims are based on the false premise that her passport application has been denied." (ECF 95, p. 5)  Whether that accusation of the Defendant is true or false is a matter fact that is material to our motion to join Mrs. Boulton.  It appears to us that the Defendants are mincing their words to convey the opposite of the practical reality.  It begs discovery.  In fact, deposition of Kristin N. Wilson is clearly necessary to the

determination of whether or not the allegations of Michelle Boulton or the accusations of the

Defendants are true.  Such a deposition of Kristin N. Wilson is likely necessary to get to the

bottom of all the allegations of all the Plaintiffs and Boulton.  The Defendants have cited

unnamed or unpublished policies that injure the rights of the several and joined plaintiffs, and

that contradict or violate the Constitution, the statutes, and lawfully instituted regulations (ECF

24-2, Decl. J. Rolbin).  It might be Kristin N. Wilson who is unilaterally issuing those policies

and practices.

       16.    Indeed, our motion to join Mrs. Boulton rests on her allegation that her passport

renewal application was denied "despite claiming a religious objection to providing a Social

Security Number on her passport application . . . [the State Department has] refused to issue her

a passport." (Quote Def. citing Plaintiff ECF No. 94, p. 2) .   Yet the Defendant either accurately

or inaccurately made the conclusory statement, "As explained in Ms. Kristia Watkins's

declaration, Ms. Boulton has not been denied any passport for failing to provide a social security

number. On the contrary, Ms. Boulton executed a passport application on March 9, 2021. On or

around the same day, the U.S. Embassy in San Jose, Costa Rica, sent Ms. Boulton a letter

requesting additional information. She has yet to respond to this request and her application is

still pending review."  When we discussed this with Mrs. Boulton, we were privy to the written

communications between her and the Defendants.  It was clear to our reasonable minds that the

Defendants were refusing to approve, therefore are denying, her passport renewal unless she

identified herself with a SSN notwithstanding her pleas for protection of religion.  **Each day that**

**her passport is unlawfully not approved is a day that it is denied.**  A "delay" and relief from

the injuries thereby, will be material after the passport renewal is approved.

       17.    Mrs. Boulton has suffered, and is suffering, an injury in fact that is cognizable in

this proceeding.  We know from our first hand experience of the injury which we share with her, and which has been opined by the Court to have standing on several of our causes of action (ECFs 44, 45).  The Defendants' sophistry of delay rather than deny is an unsustainable smoke screen.

## VI.   The Defendants' Mischaracterization of The Case's Nature, Status, and Process Is Deceptive And Evinces A Design For The Miscarriage of Justice

18.     Though the question of its legitimacy has not been determined, "the remand period" is now being wrongfully promoted as a moral imperative to quash Mrs. Boulton's motion because she did not get injured prior to the faux remand debacle.  The Defendant also falsely states that it "has rescinded its revocation of Mr. Carmichael's passport."  If the revocation was rescinded, the passport I've maintained in my possession since 2018 would be something of which I could use as a passport.  The passport document mailed to me, for which the regulations require an application and new photograph that was not submitted by me, is not only not lawfully issued but is wholly unnecessary.  There is no evidence in correspondence from the agency or provided by its Attorney that indeed my passport revocation has been rescinded.  The Defendant falsely states that it granted the other Plaintiffs a religious accommodation.  In actuality, the Defendants attorney rather than the agency wrote that the Defendant would provide a passport renewal to Plaintiffs Lewis and Pakosz only if they would provide a photograph that the regulations say is not required.  It was a ploy to lure the Plaintiffs into participating with an illegitimate delay tactic whereby the Plaintiffs would not be able to contest the scheme if they sought or obtained a benefit from it.  A true grant of religious accommodation would be for the Defendants to apply the law and the regulations that continue to demand that they approve the unlawfully denied passport renewal applications of Plaintiffs Lewis and Pakosz.  All that the law and regulations require of Lewis and Pakosz, for the

approval of their applications, are in the hands of the Defendants.  The Defendants' duty to issue the passports is not a function of a remand but has been continual from the inception of the controversy.

## VII.  The Defendants Rhetoric To Dissuade The Court From Even Permissive Intervention or Joinder Lacks Credibility And Ought To Be Reproved

19.     The Defendants acknowledge that a person may be joined under Rule 20 of the Federal Rules of Civil Procedure where "(A) they assert any right to relief, jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences…" Fed. R. Civ. P. 20(a)(1).  Ours and Mrs. Boulton's relief, whether jointly or severally, is tied to the Defendants injuring each of us because for our belief and activities of religion.  The case and controversy arises out of the same occurrence and series of occurrences where a policy and practice of the Defendants violates the Constitution; violates statutes protecting religion, privacy, and administrative due process; and violates lawfully instituted regulations.  The litigation also address questions of law or fact common to all plaintiffs that will arise in the action, Fed. R. Civ. P. 20(a)(1).

> "The well-established policy underlying permissive joinder is to promote trial convenience and expedite the resolution of lawsuits." *Disparte v. Corporate Exec. Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004) (quoting *Puricelli v. CAN Ins. Co.,* 185 F.R.D. 139, 142 (N.D.N.Y. 1999)).

20.     The first prong of Rule 20(a) is met, the claims are logically related.  The flexible test cited by the Defendant is fulfilled:

> ""The well-established policy underlying permissive joinder is to promote trial convenience and expedite the resolution of lawsuits." *Puricelli v. CNA Insurance Co*., 185 F.R.D. 139, 142 (N.D.N.Y.1999). Multiple claims are properly joined if they (1) " aris[e] out of the same transaction or occurrence, or series of transactions or occurrences and (2) if any question of law or fact common to all [the plaintiffs] will arise in the action." Fed.R.Civ.P. 20(a). In order to satisfy the first prong of this equation, the claims must be logically related. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926). The logical relationship test is

flexible because " the impulse is toward entertaining the **broadest possible scope of action** consistent with fairness to the parties; **joinder of claims, parties and remedies is strongly encouraged."** *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).'"" *Disparte v. Corp. Exec. Bd.* 223 F.R.D. 7, 10 (D.D.C. 2004)

21.     Rule 20(a)'s second prong is met where the circumstances and Defendant's

pattern of behavior produces the injury, violation of law, and similar or identical facts that are

common to each of us.  In fact, they appear to be ultimately directed by the same officer, Kristia

N. Watkins.

> "Rule 20's second prong requires some common question of law or fact in the plaintiffs' claims, but not all issues have to be common to all plaintiffs. *Disparate*, 223 F.R.D. at 11. In employment discrimination cases, courts often consider the circumstances surrounding the plaintiffs' claims, including the people involved, the location, the time frame, and the defendant's pattern of behavior. Id. at 11-12. In the employment discrimination context, courts have found joinder to be proper **when the plaintiffs were injured due a systematic pattern or practice,** *Alexander v. Fulton Co.,* 207 F.3d 1303, 1324 (11th Cir. 2000), as reflected in, for example, a written uniform company policy. *Elliot v. USF Holland*, *Inc*., No. 01-159, 2002 WL 826405, at *1 (S.D. Ind. Mar. 21, 2002)" *Montgomery v. STG Int'l, Inc*., 532 F. Supp. 2d 29, 35 (D.D.C. 2008).  (Emphasis added)

22.     We encourage the Court to scrutinize the unpersuasive writings of the Defendant

regarding permissive intervention.  The Defendants' citing "undue delay" to the parties and the

deciphering of arguments is grossly misplaced.  Judicial adjudication according to the rules

should have commenced long ago were it not for the delay tactics of the Defendant whose filings

have whipped our deciphering obligations to a frenzy.  Contrary to the Defendant complaining

about delay from discovery needs, we would love find anything that will motivate the Court to

unleash the discovery that is absolutely critical to justice in this case.  Such discovery will

produce proof of fact upon which the Court can make conclusions of law and issue orders that

shall establish justice for all.

23.     The Defendants commentary in their Argument section III, p. 8, has been

addressed in the previous paragraphs.

**Summary**

24.     It is clear by the allegations of each complainant that concerted action by the Defendant is designed to exclude protection of religion.  With the complaints of Michelle Boulton, we see an ongoing policy and practice of coercing us, Michelle Boulton, and others, to cave-in to identifying with a SSN notwithstanding duties of religion using the threat of passport denial (under the color of 'not yet approved waiting for further information').  The Defendant's Declaration supplied with their opposition to our motions reveals that the unlawful policy and practice might be the work of Kristia N. Watkins.

25.     The interest of justice is served granting our motion to join Michelle Boulton as Intervenor.  In the analysis section of *HOPI TRIBE et al v. TRUMP* et al, 1:17-cv-02590-TSC, the order of the court granting intervention cited the D.C. Circuit court in their well-stated spirit of the rule that should encourage this court to acknowledge the right of Boulton to intervene or join:

> """The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972)""  *HOPI TRIBE et al v. TRUMP* et al, 1:17-cv-02590-TSC

I hereby certify that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1)  The motion is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;  (2)  The claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;  (3)  The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and  (4)  The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

And,

The statements of fact regarding Michelle Boulton's personal belief and activities of religion, and her attempts at obtaining a passport while requesting religious accommodation, and the Defendants' not approving it unless she violate religion and identify with a SSN, are known my me as she has communicated it to me and my fellow plaintiffs.

Under penalty of perjury under the laws of the United States of America,


s/*David Alan Carmichael*                          s/*Lawrence Donald Lewis*
David Alan Carmichael                          Lawrence Donald Lewis
1748 Old Buckroe Road                          966 Bourbon Lane
Hampton, Virginia  23664                          Nordman Idaho  83848



I, David Alan Carmichael certify that William Mitchell Pakosz communicated his general agreement to our submission here on the basis of our several conversations on the phone.  For good cause, he is not available to review this final edition of this Plaintiffs' reply document for signature prior to its submission.  He communicated to me that he agreed to our filing this without his signature.



s/David Alan Carmichael
(Same service address as above)