UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DAVID ALAN CARMICHAEL, *et al.*, | |
| *Plaintiffs,* | |
| v. | Civil Action No. 19-2316 (RC) |
| ANTONY J. BLINKEN, in his official capacity as Secretary of State, *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

CHANNING D. PHILLIPS
Acting United States Attorney

BRIAN F. HUDAK
Acting Chief, Civil Division

CHRISTOPHER C. HAIR
Assistant United States Attorney
U.S. Attorney's Office
for the District of Columbia

# TABLE OF CONTENTS

BACKGROUND ..................................................................................................................... 2

    I.    Plaintiffs' Lawsuit. ................................................................................................ 2

    II.   Procedural History. ............................................................................................... 3

LEGAL STANDARDS ........................................................................................................... 4

    I.    Dismissal Pursuant to Rule 12(b)(1) for Lack of Jurisdiction. ........................... 4

    II.   Dismissal Pursuant to Rule 12(b)(6) for Failure to State a Claim. .................... 5

    III.  Summary Judgment Pursuant to Rule 56. .......................................................... 6

ARGUMENT .......................................................................................................................... 7

    I.    Plaintiffs' Claims for Equitable Relief Related to Their Passport Applications Are Now Moot. .................................................................................................................... 7

       a.  No Mootness Exception Applies. ....................................................................... 9

       b.  Plaintiffs' Other Objections to the State Department's Actions are Irrelevant to Their Claims in this Lawsuit. ...................................................................................... 11

    II.   Plaintiffs' Constitutional Claims Fail. .............................................................. 13

       a.  Carmichael's Fifth Amendment Claim. ........................................................... 13

       b.  Lewis and Pakosz Constitutional Claims Fail. ................................................. 14

    III.  Plaintiffs' Damages Claims Also Fail. ............................................................. 16

       a.  No Damages for Official-Capacity Claims Under the Fifth Amendment or RFRA...... 17

       b.  Plaintiffs Have No Viable Claim for Damages Under The Privacy Act. ....................... 18

CONCLUSION ..................................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Am. Bar Ass'n v. FTC*,
 636 F.3d 641 (D.C. Cir. 2011) (en banc) ............................................................. 7

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ............................................................................................... 6

*Arizonans for Official English v. Arizona*,
 520 U.S. 43 (1997) ................................................................................................. 8

*Armstrong v. FAA*,
 515 F.3d 1294 (D.C. Cir. 2008) ........................................................................ 9, 10

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................... 5

*Beck v. McDonald*,
 848 F.3d 262 (4th Cir. 2017) ............................................................................... 19

*Browning v. Clinton*,
 292 F.3d 235 (D.C. Cir. 2002) .................................................................... 20-21, 22

*Burlington N. R.R. Co., v. Surface Transp. Bd.*,
 75 F.3d 685 (D.C. Cir. 1996) ................................................................................. 8

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ............................................................................................... 6

*Chichakli v. Kerry*,
 203 F. Supp. 3d 48 (D.D.C. 2016) .................................................................. 20, 21

*Christian Knights of the Ku Klux Klan v. District of Columbia*,
 972 F.2d 365 (D.C. Cir. 1992) ............................................................................... 7

*Cierco v. Mnuchin*,
 857 F.3d 407 (D.C. Cir. 2017) ............................................................................... 9

*Cierco v. Mnuchin*,
 No. 16-5185, 2017 WL 2231107 (D.C. Cir. May 23, 2017) ................................. 10

*Clark v. Library of Cong.*,
 750 F.2d 89 (D.C. Cir. 1984) ............................................................................... 17

*Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 5

*Curran v. Holder*,
   626 F. Supp. 2d 30 (D.D.C. 2009) .......................................................................... 4

*Davila v. Gladden*,
   777 F.3d 1198 (11th Cir. 2015) ............................................................................ 17

*Del Monte Fresh Produce Co. v. United States*,
   570 F.3d 316 (D.C. Cir. 2009) ......................................................................... 10-11

*Dick v. Holder*,
   67 F. Supp. 3d 167 (D.D.C. 2014) ........................................................................ 22

*Earle v. Holder*,
   No. 11-5280, 2012 WL 1450574 (D.C. Cir. Apr. 20, 2012) ................................... 21

*Food & Water Watch, Inc. v. Vilsack*,
   808 F.3d 905 (D.C. Cir. 2015) .............................................................................. 11

*Haig v. Agee*,
   453 U.S. 280 (1981) .............................................................................................. 13

*Hollingsworth v. Duff*,
   444 F. Supp. 2d 61 (D.D.C. 2006) .......................................................................... 5

*Hudson v. Palmer*,
   468 U.S. 517 (1984) ......................................................................................... 14-15

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   266 F. Supp. 3d 1 (D.D.C. 2017) .......................................................................... 21

*Tanzin v Tanvir*
   141 S. Ct. 486 (2020) ............................................................................................ 18

*Kingdomware Techs., Inc. v. United States*,
   136 S. Ct. 1969 (2016) ............................................................................................ 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ................................................................................................ 4

*Leonard v. Dep't of Def.*,
   38 F. Supp. 3d 99 (D.D.C. 2014) ............................................................................ 7

iv

*Los Angeles County v. Davis*,
    440 U.S. 625 (1979) ............................................................................................... 9

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................................................... 10, 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................. 11

*Lujan v. G&G Fire Sprinklers, Inc.*,
    532 U.S. 189 (2001) ............................................................................................. 15

*Mandel v. OPM*,
    244 F. Supp. 2d 146 (E.D.N.Y. 2003) ................................................................ 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574–88 (1986) ........................................................................................ 6

*Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*,
    680 F.2d 810 (D.C. Cir. 1982) ........................................................................ 8, 11

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,
    676 F.3d 829 (9th Cir. 2012) .............................................................................. 17

*Preiser v. Newkirk*,
    422 U.S. 395 (1975) ........................................................................................... 7, 8

*Renne v. Geary*,
    501 U.S. 312 (1991) ............................................................................................... 7

*Richardson v. Bd. of Governors of Fed. Reserve Sys.*,
    288 F. Supp. 3d 231 (D.D.C. 2018) ............................................................... 20, 21

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
    856 F.3d 1080 (D.C. Cir. 2017) .......................................................................... 10

*Sierra v. Hayden, Civ. A.*
    No. 16-1804, 2019 WL 3802937 (D.D.C. Aug. 13, 2019) .................................. 16

*Simpson v. Fed. Bureau of Prisons, Civ. A.*
    No. 19-3173, 2020 WL 95814 (D.D.C. Jan. 8, 2020) .......................................... 18

*Sossamon v. Texas*
    563 U.S. 277 (2011) ............................................................................................. 17

*Sweats Fashion, Inc. v. Pannill Knitting Co.*,
 833 F.2d 1560 (Fed. Cir. 1987) ............................................................... 6

*Tavera v. Harley–Bell*,
 No. 09-0299, 2010 WL 1308800 (S.D. Tex. Mar. 31, 2010) ................. 16

*Taylor v. Resolution Trust Corp.*,
 56 F.3d 1497 (D.C. Cir. 1995) ............................................................... 7

*Trudeau v. FTC*,
 456 F.3d 178 (D.C. Cir. 2006) ............................................................... 5

*United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*,
 778 F. Supp. 2d 37 (D.D.C. 2011) ........................................................ 5

*Van Valin v. Gutierrez*,
 587 F. Supp. 2d 118 (D.D.C. 2008) ...................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ............................................................................. 8

*Ward v. McDonald*,
 762 F.3d 24 (D.C. Cir. 2014) ................................................................ 6

*Webman v. Fed. Bureau of Prisons*,
 441 F.3d 1022 (D.C. Cir. 2006) ............................................................ 17

*Weinstein v. Albright*,
 261 F.3d 127 (2d Cir. 2001) ................................................................. 14

*Welborn v. IRS*,
 218 F. Supp. 3d 64 (D.D.C. 2016) ................................................. 20, 21

**Statutes**

5 U.S.C. § 552a ................................................................................................................ 18

8 U.S.C. § 1504 ................................................................................................................ 15

42 U.S.C. § 2000bb-1 ...................................................................................................... 15

**Regulations**

22 C.F.R. § 51.26 ............................................................................................................. 12

22 C.F.R. § 51.62 ...................................................................................................... 2, 3, 13, 14

22 C.F.R. § 51.70 ...................................................................................................... 13, 14, 15

Plaintiffs David Alan Carmichael, Lawrence Donald Lewis, and William Mitchell Pakosz, each proceeding *pro se*, initially brought this action to challenge Defendants' decision to deny their passport applications (and, in Mr. Carmichael's case, revoke his passport) because of Plaintiffs' refusal to provide their social security numbers as part of their respective passport applications for religious reasons.  Subsequently, the Court remanded Plaintiffs' passport applications to the State Department for reconsideration and the State Department granted Plaintiffs' religious accommodation requests.  As a result, the State Department reversed its revocation of Carmichael's passport and issued him a replacement passport and invited Lewis and Pakosz to submit updated photographs to receive their passports (assuming they were otherwise eligible).

Dissatisfied with the State Department's removal of any requirement for Plaintiffs to submit their social security numbers, Plaintiffs still refuse to take "yes" for an answer.  Indeed, Plaintiffs now object to the State Department's actions on non-religious grounds and Lewis and Pakosz have unreasonably refused to provide a sufficiently recent photograph.  But those objections and refusals are entirely unrelated to Plaintiffs' claims in this lawsuit and, in light of the State Department's religious accommodations, Plaintiffs' equitable relief claims are now moot.  Moreover, because the State Department's religious accommodations extend to Plaintiffs' subsequent renewal applications (to the extent any are submitted), there is no reasonable, non-speculative expectation that Plaintiffs will again be subject to similar requirement to submit their social security numbers in the foreseeable future.  Finally, any potential claim for money damages must also fail because (1) Plaintiffs are not entitled to damages under RFRA for their official-capacity claims and (2) Plaintiffs' claim for damages under the Privacy Act lacks merit. Therefore, the Court should dismiss this lawsuit with prejudice.

## BACKGROUND

### I.     Plaintiffs' Lawsuit.

Plaintiffs allege that they "are prohibited from identifying with a social security number . . . on the basis of the Christian religion." *See* 2d Am. Compl. (ECF No. 51) ¶ 14.  All three Plaintiffs allege that they were previously given a religious accommodation when they were issued a passport without being required to provide a social security number.  Carmichael alleges that he applied for a passport on or about December 17, 2007, requested a religious accommodation regarding the requirement to provide a social security number, and was subsequently issued a passport on January 23, 2008.  *Id.* ¶ 16.  Pakosz alleges that he was issued a passport in December 2007, after requesting a similar religious accommodation.  *Id.* ¶ 17.  The same occurred for Lewis, who alleges he was issued a passport on May 2, 2008, under similar circumstances.  *Id.* ¶ 18.

According to Plaintiffs, the instant dispute began when the previously-issued passports were required to be renewed.  Mr. Carmichael alleges that he applied on January 20, 2018, to renew his passport along with a renewed request for a religious accommodation.  *Id.* ¶ 19.  Mr. Carmichael alleges he was granted a religious accommodation on January 30, 2018, when he received a passport despite not providing his social security number on his most recent application.  *Id.* ¶ 19.  By letter dated June 20, 2019, Mr. Carmichael received written notice from the Department that it had revoked his passport because it was issued in error.  *Id.* ¶ 33.  That letter informed Mr. Carmichael that he had not provided his social security number on his application and that his passport "should not have been issued and is hereby revoked pursuant to 22 C.F.R. § 51.62(a)(2)."  *Id.* ¶ 33.

Mr. Pakosz alleges he applied to renew his passport in February 2019 and the Department improperly denied his request for a religious accommodation to the requirement that he provide

his social security number on his passport application.  *Id.* ¶¶ 55, 68.  Similarly, Lewis alleges he

applied to renew his passport on April 3, 2019 and the Department improperly denied his request

for a religious accommodation to the requirement that he provide his social security number on

his passport application.  *Id.* ¶¶ 42, 49.

## II.   **Procedural History.**

Carmichael brought this action on July 31, 2019, *see* Compl. (ECF No. 1), and Lewis and

Pakosz were later added to this action in November 2019, *see* Order (ECF, No. 11).  Carmichael,

Lewis, and Pakosz filed their amended complaint in December 2019, in which they raised nine

causes of action under RFRA, the United States Constitution, and various federal laws.  *See*

*generally* 1st Am. Compl. (ECF No. 15).

On January 17, 2020, Defendants moved to dismiss, or in the alternative for summary

judgment, on all nine causes.  *See* ECF No. 24.  On August 28, 2020, the Court largely granted

Defendants' motion.  *See* Order (ECF No. 44).  However, the Court found that Plaintiffs had

stated a viable claim under RFRA, the Fifth Amendment (as to Pakosz and Lewis but not

Carmichael), and the Privacy Act.  *See* Mem. Op. (ECF No. 45) at 2.  The Court also afforded

Plaintiffs the opportunity to file another amended complaint with respect to their Firth

Amendment claim related to Mr. Carmichael's passport revocation, *id.* at 18, which Plaintiffs

have now filed.  *See generally* 2d Am. Compl.

On November 11, 2021, the Court stayed Defendants' response to Plaintiffs' second

amended complaint to consider Defendants' opposed motion for a voluntary remand to

reconsider its actions related to Plaintiffs' passports, *see* ECF No. 61.  The Court ultimately

granted Defendants' motion and remanded Plaintiffs' passport applications to the State

Department for a period of 90 days.  *See* Jan. 20, 2021, Order (stating that "Plaintiffs are

encouraged to comply with Defendants' reasonable requests for further information in

furtherance of Defendants' efforts on remand" and "[t]he refusal by Plaintiffs to provide such requested information . . . may serve as a basis for the State Department to legitimately deny the requests for accommodation).

During the remand period, Defendants granted Plaintiffs' religious accommodations and issued a replacement passport to Carmichael on April 19, 2021, to replace the previously revoked passport issued on January 30, 2018.  The replacement passport used the photo from the 2018 passport and is valid until the expiration date of the previous passport—January 29, 2028. Defendants also sent a letter to Lewis and Pakosz stating that their passport applications were denied for not providing a photograph taken within the prior six months.  *See* Exhibit A (copies of the State Department's letters issued to Lewis and Pakosz).

Mr. Carmichael objected to the State Department's reissuance of his passport on non-religious grounds.  *See e.g.,* ECF No. 90.  Further, in response to the State Department's denial of the passport renewals application of Lewis and Pakosz, Plaintiffs filed a motion for the Court to compel the Defendants to issue passport renewals, *see* ECF 84.  The Court requested Lewis and Pakosz to notify the Court if they wished to be appointed counsel by the Court, *see* May 7, 2021, Order, to which Plaintiffs objected.  *See* ECF Nos. 90 & 91.

## LEGAL STANDARDS

### I.     Dismissal Pursuant to Rule 12(b)(1) for Lack of Jurisdiction.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance."  *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted).  "[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), unless the plaintiff can establish by a preponderance of the evidence

that the Court possesses jurisdiction. *See, e.g.*, *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011) (citing *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006)). Thus, the "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Id.* (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal citation and quotation marks omitted)).

## II.    Dismissal Pursuant to Rule 12(b)(6) for Failure to State a Claim.

In order to survive a Rule 12(b)(6) motion, the plaintiff must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In satisfying this requirement that it "state a claim to relief that is plausible on its face," *id*. at 570, a complaint cannot survive a motion to dismiss through only "a formulaic recitation of the elements of a cause of action." *Id.* at 555. As with facial challenges to subject matter jurisdiction under Rule 12(b)(1), a district court is required to deem the factual allegations in the complaint as true and consider those allegations in the light most favorable to the non-moving party when evaluating a motion to dismiss under Rule 12(b)(6). *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). But where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557. Accordingly, a "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### III.     Summary Judgment Pursuant to Rule 56.

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 248.  In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).  The moving party may discharge its burden by "'showing' – that is point out to the [Court] – that there is an absence of evidence to support the non-moving party's case." *Sweats Fashion, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987); *see also Celotex*, 477 U.S. at 332. Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, and must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Anderson*, 477 U.S. at 252.

"By its very terms, [the summary judgment] standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. 242, 247-48 (emphasis in original).  "A dispute about a material fact is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014) (quoting *Mogenhan v. Napolitano*, 613 F.3d 1162, 1165 (D.C. Cir. 2010)).  Thus, summary judgment is due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]." *Id.*

**ARGUMENT**

**I.     Plaintiffs' Claims for Equitable Relief Related to Their Passport Applications Are Now Moot.**

Plaintiffs seek equitable relief to reverse Defendants' actions related to Plaintiffs' passport applications "for reasons of failure to be identified with a [social security number] in the basis of their religion[.]  2d Am. Compl. ¶ 143.  However, "[a] request for injunctive relief remains live only so long as there is some present harm left to enjoin."  *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995)).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *Renne v. Geary*, 501 U.S. 312, 320-21 (1991) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)); *Christian Knights of the Ku Klux Klan v. District of Columbia*, 972 F.2d 365, 369 (D.C. Cir. 1992)).  Subsequent events "may render a claim moot if there is no reasonable expectation that the conduct will recur."  *Leonard v. Dep't of Def.*, 38 F. Supp. 3d 99, 104 (D.D.C. 2014) (citing *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002)).

Simply put, Plaintiffs brought this case to obtain passports without having to identify with a social security number.  The State Department has now granted that request.  When "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," a case becomes moot, and the courts no longer have jurisdiction over the matter.  *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011) (citing *Clarke v. United States*, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (en banc) (quotation marks omitted)); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).  For courts to have jurisdiction over a matter under Article III of the U.S. Constitution, "'an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation.'"

*Kingdomware Techs., Inc. v. United States,* 136 S. Ct. 1969, 1976 (2016) (quoting *Already, LLC*

*v. Nike*, 133 S. Ct. 721, 726 (2013)); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67

(1997); *Preiser*, 422 U.S. at 401.  In addition, a court will dismiss a case as moot where events

have transpired that prevent the court from granting the plaintiff effective relief.  *Burlington N.*

*R.R. Co., v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996).  Similarly, a plaintiff who

cannot reasonably be expected to benefit from prospective relief ordered against the defendant,

in light of intervening events, has no claim for an injunction. *See Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338, 364-65 (2011) (concluding that plaintiffs whose employment ended after an action

was filed had no claim for injunctive relief against their former employer concerning its

employment practices).

　　　In this case, events have transpired during the remand period that have removed any

controversy related to Plaintiffs' social security numbers or their religious beliefs.  Specifically,

as noted above, the State Department reversed its prior revocation of Carmichael's passport and

invited Lewis and Pakosz to update their photographs to allow the State Department to

adjudicate their renewal applications without the need to submit their social security numbers.

Accordingly, the remand has permitted the State Department to reconsider its prior decisions and

take appropriate corrective actions.  As the D.C. Circuit has recognized, "[c]orrective action by

an agency is one type of subsequent development that can moot a previously justiciable issue."

*Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 680 F.2d 810, 814 (D.C. Cir.

1982) ("*NRDC*").  Once the corrective action has been taken, the case becomes moot because a

court "can hardly order [an agency] . . . to do something that it has already done."  *Id.*  Because

that is the case here, Plaintiffs have no viable claim for any further equitable relief.

### a.  No Mootness Exception Applies.

Courts recognize an exception to mootness based on a defendant's "voluntary cessation of allegedly illegal conduct," which generally "does not deprive [a court] of power to hear and determine the case." *Cierco v. Mnuchin*, 857 F.3d 407, 414 (D.C. Cir. 2017) (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)).  But voluntary cessation will make a case moot where "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" and there is no reasonable expectation . . .' that the alleged violation will recur." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (citations omitted).

In this case, there can be no reasonable expectation that the alleged unlawful revocation and renewal actions will recur because the State Department has granted Plaintiffs' religious accommodations and there is no reasonable expectation that Plaintiffs will again be required to submit their social security numbers on any future passport application.  *See* Declaration of Kristia Watkins ¶¶ 5-6 (attached hereto).  Specifically, the Department found that Plaintiffs "had sincerely-held religious beliefs that the Department could accommodate." *Id.* ¶ 5.  Further, the Department notated in its records Plaintiffs' religious accommodation request so that, if Plaintiffs apply for a passport in the future and request a religious accommodation, the Department will reference those notations when adjudicating any future passport applications. *Id.* ¶ 6.

A matter is capable of repetition only if a party can make "a reasonable showing that [it] will again be subjected to the alleged illegality." *Armstrong v. FAA*, 515 F.3d 1294, 1296 (D.C. Cir. 2008).  As the D.C. Circuit has stated, "jurisdiction cannot be predicated upon a speculative or irrational fear as to future agency conduct." *Regan*, 727 F.2d at 1166 n.6.  Similarly, there is no doubt that granting of Plaintiffs' religious accommodations completely and irrevocably eradicated the effects of any prior action based on Plaintiffs' failure to submit a social security

number.  *See Van Valin v. Gutierrez*, 587 F. Supp. 2d 118, 120-21 (D.D.C. 2008) (holding that the agency's rescission and republication of challenged regulations completely and irrevocably eliminated prior effects).  Accordingly, this Court lacks jurisdiction over Plaintiffs' Complaint and should dismiss it.

The Supreme Court also recognizes an exception to the mootness doctrine for cases that are "'capable of repetition, yet evading review.'"  *Kingdomware Techs.*, 136 S. Ct. at 1976 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).  This exception applies only in the "'exceptional situation,'" *id.*, "where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Cierco v. Mnuchin*, No. 16-5185, 2017 WL 2231107, at \*5 (D.C. Cir. May 23, 2017) (emphasis added) (quoting *Davis v. FEC*, 554 U.S. 724, 735 (2008)).  The plaintiff has the burden of making "a reasonable showing that he will again be subjected to the alleged illegality," *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), and "[a] controversy 'is capable of repetition' only if 'the same parties will engage in litigation over the same issues in the future.'"  *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017) (emphasis added) (quoting *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 633 (D.C. Cir. 2002)).

This case is not one that would typically evade review.  The passport revocation and renewal application denials were not "too short in duration to be fully litigated prior to its cessation or expiration."  *Armstrong*, 515 F.3d at 1296 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).  Nor can the Plaintiffs establish that the short duration was "typical of the challenged action[s]," as is required to establish that the action cannot be fully litigated prior to its cessation.  *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir.

2009); *see also NRDC*, 680 F.2d at 814 ("no reason to believe that [agency] will promulgate other rules without notice and comment during this proceeding or that, if it does, its actions will be so short in duration as to preclude judicial review"). (citation omitted). Moreover, as noted above, Plaintiffs cannot show that they will again be subjected to the alleged illegality. *See Lyons*, 461 U.S. at 109.

> **b. Plaintiffs' Other Objections to the State Department's Actions are Irrelevant to Their Claims in this Lawsuit.**

To the extent that Plaintiffs raise issues regarding their passport applications that are unrelated to their social security numbers, those issues do not resuscitate their claims for equitable relief. As a result of the Court's remand, the State Department has issued Carmichael a valid passport. Plaintiffs' operative complaint contains no claim with respect to the process by which Carmichael's passport was reissued, nor would Plaintiffs have standing to raise such a claim. This is because they cannot show any concrete injury related to receiving a passport *benefit* that would somehow be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Furthermore, any self-inflicted injury caused by Carmichael's failure to sign his passport (*see* ECF No. 90 at 1) is not fairly traceable to the State Department. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). Indeed, Carmichael cannot "manufacture standing merely by inflicting harm on [himself]" based on his subjective apprehensions regarding how his passport was reissued. *Id.* (quotation omitted).

Unlike Carmichael, however, Lewis and Pakosz have not received their passports. This is because of their failure to provide sufficiently recent photographs. *See* Exhibit A. On March 5, 2021, Defendants invited Plaintiffs to submit a new passport renewal application, with new photographs, without the need to provide a social security number or pay any fees. *See* Defs.'

11

Status Report (ECF No. 80) ¶ 3.[1]  Further, in subsequent discussions with Plaintiffs, Defendants made it clear that, so long as Lewis and Pakosz would confirm their respective addresses and submit new photographs, the State Department would issue renewed passports without any further action required on their part (assuming eligibility).  Section 51.26 of Title 22 of the U.S. Code of Federal Regulations (22 C.F.R. § 51.26) provides that an applicant for a U.S. passport "must submit with his or her application photographs as prescribed by the Department that are a good likeness of and satisfactorily identify the applicant."  The State Department follows the International Civil Aviation Organization's ("ICAO") standards for machine-readable documents and requires that passport photographs must be "taken within the six months preceding the issue date."[2]  As previously noted by the Court, "the refusal by Plaintiffs to provide . . . requested information, if the Court finds that Defendants' new requests were justified, may serve as a basis for the State Department to legitimately deny the requests for accommodation."  Jan. 20, 2021, Order.  Here, notwithstanding Plaintiffs' tortured reading of the State Department's regulations and requirements regarding the submission of photographs, the State Department's request for updated photographs was reasonable.  Therefore, and because Plaintiffs have failed to raise any issue regarding their photographs in their operative complaint, Plaintiffs' equitable relief claims must be dismissed.

---

[1]     Because Carmichael's passport had been revoked, the State Department subsequently determined that no renewal application or new photograph was required prior to reissuing his passport.

[2]     *See* https://travel.state.gov/content/travel/en/passports/how-apply/photos.html, 8 FAM 402.1, and ICAO Machine Readable Travel Document 9303 3.9.1.

## II.     Plaintiffs' Constitutional Claims Fail.

As discussed above, because of the State Department's granting of Plaintiffs' religious accommodation requests during the remand, Plaintiffs' due process claims are now moot. Therefore, the Court need not consider Plaintiffs constitutional claims any further.  Even if the Court were to address those claims, Plaintiffs' second amended complaint still fails to state a claim with respect to Carmichael's passport revocation and, in light of Defendants' actions during the remand, Lewis and Pakosz's constitutional claims fail on the merits.[3]

### a.   Carmichael's Fifth Amendment Claim.

The Court previously granted Plaintiffs leave to amend their complaint with respect to their fourth cause of action related to Carmichael's passport revocation.  *See* Mem. Op. at 18. Carmichael received a letter from the State Department notifying him that his passport had been issued erroneously, that it had been revoked pursuant to 22 C.F.R. § 51.62(a)(2), and that he had the ability to request a post-revocation hearing.  2d Am. Compl. ¶ 33.  As the Court previously concluded, this notice is identical to the procedures found to have met the demands of due process in *Haig v. Agee*, 453 U.S. 280, 310 (1981).  *See* Mem. Op. at 17.

Carmichael alleges he was denied due process following the revocation of his passport because he was denied access to an appeal process pursuant to 22 C.F.R. § 51.70(b)(2), which provides that hearings are not afforded to people whose passports were revoked or denied for failing to provide social security numbers.  *See* 2d Am. Comp. at pp. 35-36.  But Plaintiffs are mistaken.  The Department did not revoke his passport pursuant to Section 51.70(b)(2).  Rather, the Department revoked his passport pursuant to 22 C.F.R. § 51.62(a)(2).  Indeed, the Court acknowledged this fact in its prior opinion.  *See* Mem. Op. at 16, n.1 ("The Government,

---

[3]     To the extent the Court considers the merits of Plaintiffs' claims, Defendants respectfully refer the Court to Defendants' Statement of Material Facts (attached hereto).

however, did not apply 22 C.F.R. § 51.70(b)(2) to Carmichael[.]  Carmichael's passport was revoked pursuant to 22 C.F.R. § 51.62(a)(2) *because it was issued erroneously*, and he was thus given the opportunity to request a hearing under 22 C.F.R. § 51.70(a).") (emphasis in original).

Notwithstanding Plaintiffs' erroneous reading of the State Department's regulations, Carmichael received a letter from the State Department notifying him that his passport had been issued erroneously, that it had been revoked pursuant to 22 C.F.R. § 51.62(a)(2), and that he had the ability to request a post-revocation hearing.  He did not request a hearing.  Plaintiffs' second amended complaint fails to rebut the Court's prior finding that Carmichael received the same due process that were approved in *Haig*.  Accordingly, Carmichael has again failed to state a claim that he was denied due process.

### b. Lewis and Pakosz Constitutional Claims Fail.

Plaintiffs Lewis and Pakosz similarly argue they were denied due process following the denial of their passport applications.  Considering the State Department's actions during the remand period, Lewis and Pakosz's constitutional claims fail on the merits.

The key inquiry in evaluating whether the government provides due process is whether the class of persons affected are given notice and provided with an opportunity to contest the relevant determination 'at a meaningful time and in a meaningful manner[.]'"  *Weinstein v. Albright*, 261 F.3d 127, 135 (2d Cir. 2001) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  It does "not [matter] which arm of the government provides such procedures."  *Id.*  In other situations, the U.S. Supreme Court has held that procedural due process was not infringed when individuals had to seek redress through litigation, instead of an administrative hearing process.  *See, e.g., Hudson v. Palmer*, 468 U.S. 517 (1984) (holding there was no due process violation where a prison guard intentionally destroyed a prisoner's personal effects because the

prisoner could seek redress through a tort action); *Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001) (holding the state could withhold payments in a labor dispute without a hearing because the subcontractor could file a breach of contract suit to protect its interests).

In this case, Pakosz and Lewis had grounds with which to challenge their passport denials. RFRA provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government[.]" 42 U.S.C. § 2000bb-1(c). Thus, individuals who sought religious accommodations in the passport application process and were denied are eligible for federal judicial review under § 2000bb-1(c). As a result, the lack of an administrative hearing did not inhibit Plaintiffs from the opportunity to contest the relevant determinations in a meaningful time and manner.

Plaintiffs may contend that the due process afforded to them was insufficient and that they should be entitled to an administrative hearing, which is evidenced by the fact that the State Department does afford hearings to some individuals whose passports have been denied or revoked. This argument fails to address the difference in these groups of individuals as well as the case law upholding the Department's regulations. Under 8 U.S.C. § 1504, the Department is required to provide hearings to individuals whose passports are cancelled due to illegality, fraud, or error. *See* 8 U.S.C. § 1504(a). The Department's regulations specify in what circumstance a hearing is available. *See* 22 C.F.R. § 51.70, *et seq.* They specifically do not afford hearings when an individual has had her application denied or passport revoked on the basis of non-nationality. *See* 22 C.F.R. § 51.70(b). Similarly, hearings are not generally provided when an applicant has refused to provide information or is claiming that an accommodation should have been granted. These claims are better served by judicial review. In fact, courts have upheld this

distinction and held that the Department's regulations comply with due process requirements. *See Ngai v. Kerry,* Civ. A. No. 2:15-1513 (W.D. Was. Apr. 1, 2016) (ECF No. 16 at 5, Order Granting Motion to Dismiss) (holding that the absence of an administrative hearing in a passport revocation case based on non-nationality did not amount to a due process violation); *see also Tavera v. Harley–Bell*, Civ. A. No. 4:09-0299, 2010 WL 1308800, at *4 (S.D. Tex. Mar. 31, 2010) (finding the individual's due process rights were not violated where the Government denied a U.S. passport because the individual could seek judicial review under 8 U.S.C. § 1503, a statute providing for judicial review of denials on the basis of non-nationality).

Here, as part of the supplemental review afforded to Plaintiffs' during the remand period, including the opportunity to engage with the State Department to adjudicate their passport renewal applications without the need to submit their social security numbers, Plaintiffs have received all due process. The fact that they refused to submit sufficiently recent photographs does not undercut this conclusion. Accordingly, even if the Court finds that Plaintiffs' constitutional claims are not moot, those claims still fail on the merits.

## III.   Plaintiffs' Damages Claims Also Fail.

Finally, Plaintiffs' claims for money damages do not survive because (1) neither the U.S. Constitution nor RFRA waives the federal government's sovereign immunity for Plaintiffs' official capacity claims and (2) Plaintiffs have failed to plead any viable claim for damages under the Privacy Act.[4]

---

[4]   Plaintiffs may argue that the Court has already ruled that Plaintiffs have stated a claim under the Privacy Act, but that should not end the inquiry. *See Sierra v. Hayden*, Civ. A. No. 16-1804, 2019 WL 3802937, at *7-*8 (D.D.C. Aug. 13, 2019) (permitting a second Rule 12(b)(6) motion where unnecessary delay was not a concern and adjudication of the second motion facilitated an efficient resolution of the pending matters). Here, the Court's prior opinion has clarified Plaintiffs' Privacy Act claim and the Court has not ruled on whether Plaintiffs' have stated a viable damages claim under the Privacy Act. Now that the circumstances of this case have

### a. No Damages for Official-Capacity Claims Under the Fifth Amendment or RFRA.

As an initial matter, "[s]overeign immunity . . . bar[s] suits for money damages against officials in their official capacity absent a specific waiver by the government." *Clark v. Library of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984) (citations omitted).  Plaintiffs do not point to a specific waiver for damages for their alleged constitutional injuries, nor is there any.  As a result, the United States and Secretary of State in his official capacity are immune from Plaintiffs' constitutional damages claims.

Likewise, in an official-capacity suit like this one, RFRA does not supply a damages remedy.  Several circuit courts have explicitly held that RFRA's waiver of sovereign immunity does not extend to monetary damages.  *See Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006); *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012); *Davila v. Gladden*, 777 F.3d 1198 (11th Cir. 2015).  This understanding of RFRA is bolstered by the Supreme Court's decision in *Sossamon v. Texas*, 563 U.S. 277 (2011).  The *Sossamon* case was brought under Religious Land Use and Institutionalized Persons Act ("RLUIPA"), but the Court relied on the same RFRA sovereign immunity arguments developed in the Circuit Courts.  The Court held that the term "appropriate relief is open-ended and ambiguous about what types of relief it includes" and as a result "by itself it does not unambiguously include damages against a sovereign." *Id.* at 286; *see also* Availability of Money Damages Under the Religious Freedom Restoration Act, 18 Op. O.L.C. 180 (1994) (the first interpretation of the "appropriate relief" language in section 3(c) of RFRA).

---

fundamentally changed after the remand, Defendants respectfully submit that it would be most efficient to resolve the damages issue at this juncture.

The recent Supreme Court decision in *Tanzin v Tanvir*, 141 S. Ct. 486 (2020) distinguished itself from this earlier case law.  The plaintiffs in *Tanzin* brought their case against Federal Bureau of Investigations ("FBI") agents in both their official and individual capacities.  The Court held that the limitations on interpreting "appropriate relief" broadly in the sovereign immunity context worked in the opposite direction when the case was brought against actors in their individual capacity.  As a result, monetary damages were appropriate under RFRA when brought against individuals, but not when they were in their *official* capacity.  *Id.* at 493. Therefore, because only official capacity claims are at issue in this litigation, the State Department and its employees are immune from Plaintiffs' damages claims under RFRA. *Simpson v. Fed. Bureau of Prisons*, Civ. A. No. 19-3173, 2020 WL 95814, at *2 (D.D.C. Jan. 8, 2020).

### b.   Plaintiffs Have No Viable Claim for Damages Under The Privacy Act.

Plaintiffs also allege that Defendants violated the Privacy Act by failing to state the circumstances under which providing a social security number is mandatory and those when it is voluntary.  2d Am. Compl. ¶ 133; *see* Mem. Op. at 20.  Plaintiffs' Privacy Act claim pertains to the requirements under 5 U.S.C. § 552a(e)(3), which states in relevant part that agencies must "inform each individual whom it asks to supply information . . . whether disclosure of such information is mandatory or voluntary."  5 U.S.C. § 552a(e)(3)(A).  Plaintiffs allege that the Privacy Act Statement that they received failed "to correctly state in what conditions make [disclosure of a social security number] voluntary and what make[s] [disclosure] mandatory." *See* 2d Am. Compl. ¶ 133.

The Privacy Act allows an individual to "bring a civil action against the agency" when it "fails to comply with any [] provision of" the Act.  5 U.S.C. § 552a(g)(1).  Section 552a(g) of the Title 5 of the U.S. Code describes the civil remedies of the Privacy Act.  Subsection (g)(1) lays

out four categories of agency misconduct for which a civil action may be brought and then makes separate provisions for each.  As relevant here, the Court may grant actual damages (not less than $1000) and the cost of the lawsuit under subsection (g)(4) if the agency intentionally and willfully failed to maintain the record so as to assure fairness or didn't comply with the Privacy Act in such a way as to adversely affect the individual.  5 U.S.C. §§ 552a(g)(1)(D) & (g)(4).

In *Doe v. Chao*, the Supreme Court held that a plaintiff must prove some actual damages to qualify for the minimum statutory award under section 552a(g)(4) of the Privacy Act.  *See* 540 U.S. 614, 616 (2004).  In that case, the petitioner filed for benefits under the Black Lung Benefits Act and the Labor Department used his social security number on various documents (e.g., hearing notices), which it admitted had violated the Privacy Act.  The Court held that, despite there being evidence of some general harm and risk of future identity theft, no actual damages were shown.  *Id.* at 621; *see also Beck v. McDonald*, 848 F.3d 262, 267 (4th Cir. 2017) (holding that enhanced risk of future identity theft was too speculative to constitute an injury-in-fact). "[T]raditional understanding that tort recovery requires not only wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be assessed." *Id.*  This decision was affirmed and extended in *FAA v. Cooper*, where the Court held that mental or emotional distress do not constitute actual damages for the Privacy Act.  566 U.S. 284, 287 (2012).  "The basic idea is that Privacy Act victims, like victims of libel *per quod* or slander, are barred from any recovery unless they can first show actual -- that is, pecuniary or material -- harm. Upon showing some pecuniary harm, no matter how slight, they can recover the statutory minimum of $1,000, presumably for any unproven harm." *Id.* at 296.

As an initial matter, Plaintiffs' Privacy Act claim rests on the premise that disclosure of a social security number is mandatory to obtain a passport and yet the Privacy Act Statement says disclosure is voluntary.  *See* Mem. Op. at 21 (citing Am. Compl. ¶ 133).  But Defendants' actions during the remand removed any ambiguity on that issue: such disclosure is indeed voluntary.  The fact that the State Department did not fully consider Plaintiffs' request for a religious accommodation when initially adjudicating their respective passport applications does not change this fact.  Further, Plaintiffs nowhere allege that those prior alleged violations of the Privacy Act were in any way intentional or willful, as required to support a damages claim under the Privacy Act.  *See generally* 2d Am. Compl.  Rather, the State Department's statement merely supports its long-standing practice of requesting social security numbers to assist its review of an applicant's eligibility for a passport benefit under State Department regulations.

Moreover, Plaintiffs have failed to adequately allege any actual damages in this lawsuit.  As numerous courts have recognized, actual damage allegations must satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(g), which provides that "[i]f an item of special damage is claimed, it must be specifically stated."  *See Richardson v. Bd. of Governors of Fed. Reserve Sys.*, 288 F. Supp. 3d 231, 237 (D.D.C. 2018) (accepting Government's argument that actual damages under Privacy Act must, per Rule 9(g), be "'specifically stated' and alleged with 'particularity,' and must 'specify facts showing that such special damages were the natural and direct result of the defendant's conduct.'"); *Chichakli v. Kerry*, 203 F. Supp. 3d 48, 57-58 (D.D.C. 2016) (same); *Welborn v. IRS*, 218 F. Supp. 3d 64, 82 (D.D.C. 2016) ("Plaintiffs must specifically allege actual damages to survive a motion to dismiss for failure to state a claim."); *see also Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002) (Rule 9(g) demands that allegations be made with "particularity," which may require identifying, for

example, "particular customers whose business has been lost or facts showing an established business and the amount of sales before and after the disparaging publication, along with evidence of causation.").

Following *Cooper*, numerous courts in this Circuit have granted motions to dismiss Privacy Act claims for failure to plead actual damages. *E.g., Earle v. Holder*, Civ. A. No. 11-5280, 2012 WL 1450574, at *1 (D.C. Cir. Apr. 20, 2012); *Richardson*, 288 F. Supp. 3d at 236-37; *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 39-40 (D.D.C. 2017); *Chichakli*, 203 F. Supp. 3d at 57-58; *Welborn*, 218 F. Supp. 3d at 82-83.

Here, Plaintiffs fail to plead actual damages in two respects. First, many of the damages Plaintiffs allege plainly do not qualify as "actual damages" as a matter of law. Plaintiffs assert that they are entitled to punitive damages and criminal penalties in this matter. 2d Am. Compl. ¶¶ 145-46. Carmichael alleges that his lack of a passport has "damaged [his] soul" by being denied the opportunity to visit with family outside of the United States.[5] *Id.* ¶ 87. But these are precisely the types of "non-pecuniary harms" courts have deemed insufficient. *See, e.g., Cooper*, 566 U.S. at 295-99, 304 (Privacy Act does not authorize recovery for "loss of reputation, shame, mortification, injury to the feelings," or "mental or emotional distress"); *Richardson*, 288 F. Supp. 3d at 236-37 (plaintiff's "claims of 'mental distress, emotional trauma, embarrassment, [and] humiliation' are insufficient to state a claim under the Privacy Act"); *Welborn*, 218 F. Supp. 3d at 82 (noting that "[t]he Privacy Act does not allow a claim for damages based on

---

[5]     Carmichael also alleges that he was "excluded" from a military facility where he had hoped to attend a reunion and that he lacked "suitable identification" for airplane travel to California. *See* 2d Am. Compl. ¶ 113. However, Carmichael entirely fails to explain why a passport would be required in these situations, nor are Defendants aware of any such reasons.

reputational or emotional harm" and dismissing claim that failed to plead "calculable damages").
These allegations thus cannot satisfy Plaintiffs' heightened burden to plead actual damages.

Second, insofar as Plaintiffs do allege pecuniary harm relating to "extra fees" paid for
additional, unnecessary renewal applications for "passports which were still valid when
[Plaintiffs] began the process to renew it[,]" 2d Am. Compl. ¶ 147, they fail to plead any causal
link between that loss and the alleged Privacy Act violations, let alone plead such a link with
"particularity" as required by Rule 9(g).  *See Browning*, 292 F.3d at 245.  To the contrary,
Plaintiffs' complaint concedes that Carmichael was not required to pay any additional fees due to
the revocation of his passport.  *Id.* ¶ 33.  In fact, only Lewis alleges that he submitted two
renewal applications and, on January 13, 2018, paid the fee twice.  *Id.* ¶ 62.  But Lewis's renewal
application was denied on April 2, 2018, *see id.* ¶ 68, so the complaint itself provides no reason
as to why Lewis paid a second fee, let alone any reason why this payment was in any way related
to the State Department's Privacy Act statement.  This defeats causation as matter of law.  *See,
e.g., Dick v. Holder*, 67 F. Supp. 3d 167, 182 (D.D.C. 2014) (dismissing Privacy Act claim for
lack of causation where the "plain language of the complaint . . . only suggests that it was
[plaintiff's] independent actions," rather than defendant's issuance of a document that "merely
described [plaintiff's] actions," which caused alleged harm); *Mandel v. OPM*, 244 F. Supp. 2d
146, 153 (E.D.N.Y. 2003) (plaintiff failed to establish "causal connection between the
disclosures made and the adverse effect" where cause of alleged harm was plaintiff's own "acts
of omissions and falsifications" on job application).  Moreover, even if Plaintiffs had established
that all three of them paid an additional $110 in duplicate payments (which they have not), that
would still be well below the $1,000 threshold required under the Privacy Act.

In sum, Plaintiffs have failed to establish any plausible claim for damages under the Privacy Act.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Alternatively, Defendants respectfully request the Court to issue summary judgment in their favor.

Dated July 2, 2021                     Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar No. 415793
Acting United States Attorney

BRIAN F. HUDAK
Acting Chief, Civil Division

/s/   *Christopher C. Hair*
CHRISTOPHER C. HAIR, PA Bar No. 306656
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2541
Christopher.Hair@usdoj.gov

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of July, 2021, I caused the foregoing to be served on

*pro se* Plaintiffs David Carmichael, William Mitchell Pakosz, and Lawrence Donald Lewis, via

U.S. Mail with pre-paid postage, addressed as follows:

David Alan Carmichael
1748 Old Buckroe Road
Hampton, VA 23664

William Mitchell Pakosz
P.O. Box 25
Matteson, IL 60443

Lawrence Donald Lewis
966 Bourbon Lane
Nordman, ID 83848

*/s/ Christopher C. Hair*
CHRISTOPHER C. HAIR
Assistant United States Attorney