## United States District Court,
## District of Columbia

David Alan Carmichael, *et al.*　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　*Plaintiffs*　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　Case No: 19-CV-2316-RC
　　　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　Re:  ECF 99
Antony John Blinken, *in his Official*　)
　　　*capacity as Secretary of State, et al.,*　)
　　　　　　　　　　　　　　　　　　　　)
　　　*Defendants*　　　　　　　　　　　)


**PLAINTIFFS CARMICHAEL AND LEWIS COMBINED RESPONSE IN OPPOSITION TO "DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT"**

# TABLE OF CONTENTS

Table of contents..................................................................................................... i

Table of Authorities ............................................................................................ iv

Plaintiff Lewis's Reply To Defendants' Response In Opposition To Plaintiffs' Motion To ......... 1
Compel, As Defendants' Response Is Embedded In Their Motion For Dismissal

I.  Plaintiff Opening Summary ........................................................................1

II.  The Case History Reveals The Defendants' Obfuscation of The Law As Applied............2
To The Facts, And A Design To Undermine The Function of Government,
Contrasted To The Plaintiffs' Efforts To Uphold The Law

III.  Background .................................................................................................5

IV.  Procedural History .....................................................................................7

V.  Legal Standards ........................................................................................15

   A.  Legal Standards – Rule 12(b)(1)...................................................................15

   B.  Legal Standards – Rule 12(b)(6)...................................................................15

   C.  Legal Standards – Summary Judgment......................................................16

   D.  Legal Standards – Damages........................................................................19

   E.  Legal Standards – Due Process of Law .....................................................19

VI.  The Plaintiffs' Motion For Declaratory Judgment, With Finding of Fact And Law.........20
Regarding The Remand Order Needs To Be Accomplished Prior To Deciding
The Defendants' Motion For Dismissal

   A.  The Remand Motion Is A Delay Tactic In Bad Faith.................................21

   B.  A Real Remand Looks Completely Different.............................................22

   C.  The Invitation For A Voluntary/Mandatory Photograph Record Under The .............24
Guise of Remand Is A New And Actionable Violation of The Privacy Act

   D.  The Remand Motion Is Prestidigitation To Make The Real Case Disappear..............24
Before Our Very Eyes

VII.    Plaintiffs' Constitutional Claims Succeed ........................................................................25

    A.  Carmichael's Fifth Amendment Claim – Plaintiffs Justifiably Challenge .................25
        The Constitutionality of The Regulation

    B.  The Defendants Waived Contest That The Plaintiffs' Due Process Rights.................28
        Were Violated, Relying Upon The Notion That It Does Not Matter

    C.  *Haig v. Agee* Is Not The Rule or Instructive But Is Merely An Exceptional ..............28
        Exigency.  Revoking Carmichael's Passport Without Prior Due Process
        Remains An Abuse of Discretion And Injures Carmichael's Rights
        Protected Under The Constitution

    D.  The Post-Revocation Appeal Process Available In *Haig* Was Substantially Not .......31
        Available In *Aptheker* Just As The Appeal Process Is Barred In Our Case

    E.  The *Aptheker* Court Declared The Revocation of A Passport, Without Prior ............32
        Due Process And Judgment For Unlaful Conduct, Unconstitutionally Restricted
        The Right To Travel

    F.  Lewis And Pakosz Constitutional Claims – Plaintiffs' Justifiably Challenge ...........33
        The Constitutionality of The Regulation, And Actions of The Defendants.  The
        Court Has Jurisdiction To Provide Relief

VIII.  The Defendants Expose The Unconstitutionality of Another Statue In Order .................36
    To Justify The Unconstitutional Regulation

  IX.  Plaintiffs Damages Claims Will Prevail After Discovery Ripens Them Since Those ......38
    Acting Maliciously In Their Official or Private Capacities Are Hidden

  X.  There Are Damages Due For Religious Freedom Restoration Act And Fifth...................39
    Amendment Violations

  XI.  Plaintiffs Have A Viable Claim For Damage Under The Privacy Act – It Is A ................41
    Novel Case That Is Not On Par With The Case Cited By The Defendants

XII.  The Term Actual Damages Is Identical To The Term Conpensatory Damages As ..........41
    A Matter of Law According T The United States Supreme Court.  Compensation
    Relief For Unlawful Writ Ne Exeat Republica Without Due Process Is Therefore
    Due As Damage In Fact

XIII.  The Religious Freedom Restoration Act Contmplates All Categories of Damages..........43
    As "Appropriate Relief" Payable By The United States or Those In Their
    Private Capacity Depending On The Facts

XIV.  The Privacy Act Relief Due Is Not Merely Monetary.  Change of The Injury To ...........47
    The Record Is Due

XV.     The New Privacy Act Violation Warrants Damages Relief ...............................................47

XVI.    Punitive or Compensatory Damages Value Has Been Qualified By Congress.  It Is........48
        Up To A Jury To Decide The Value Of Compensation Due, For The Injury To The
        Plaintiffs By Malicious Conduct Of Persons Violating Felony Statutes

XVII.   Plaintiffs Adequately Alleged Willfulness of Bad Actors And The Causal .....................49
        Relationship To The Defendants' Violation of The Privacy Act

XVIII.  Defendants' Reference To Special Damages Is Misapplied And No Bar To....................49
        The Plaintiffs' Standing or Relief In This Case

XIX.    The U.S. Supreme Court Got It Wrong In FAA v. Cooper ................................................50

XX.     The Steady Encounter of New Victims Warrants Finding of Fact and Conclusions.........52
        Of Law, With Exposure of The Full Record and Credible Discovery, So That
        Judgment Is Reached To Enable Complete Relief To The Plaintiffs and Protection
        To The Public

XXI.    Nothing Is Waived of Any of Those Things That We Have Argued or Declared............53
        In This Case For Lack of Expressly Citing It Herein; All of Our Assertions of
        This Case To Date Are Incorporation Herein With or Without Reference

Summary ......................................................................................................................................53

## TABLE OF AUTHORITIES

**United States Constitution**

First Amendment .................................................................................7, 8, 30, 36
    *Free Exercise of Religion*

Fifth Amendment ............................................................... 7, 9, 25, 31, *passim*
    *Due Process*

Ninth Amendment...................................................................................29, 36
    *Rights Reserved*

**United States Supreme Court**

*Application of Gault v. Arizona* ......................................................................19
    387 U.S. 1 (1967)

\*    *Aptheker v. Secretary of State* ..............................................................30, 31, 32
    378 U.S. 500 (1964)

*Armstrong v. Manzo* ......................................................................................35
    380 U.S. 545 (1965)

*Birdsdall v. Coolidge* ...............................................................................19, 42
    93 U.S. 64 (1876)

*Bloom v. State of Ill.*......................................................................................19
    391 U.S. 194 (1968)

*Brown* v. *Swann* ..............................................................................................2
    10 Pet. 497 (1836)

*Camp v. Boyd* .................................................................................................2
    229 U.S. 530, 551 (1913)

*Doe v. Chao* ............................................................................................41, 50
    540 U.S. 614 (2004)

*Grannis v. Ordean* .........................................................................................35
    234 U.S. 385 (1914)

*Haig v. Agee*................................................................................28, 29, 30, 31
    453 U.S. 280 (1981)

*Hecht Co. v. Bowles* ....................................................................2
    321 U.S. 321 (1944)

*Hudson v. Palmer* ......................................................................35
    468 U.S. 517 (1984)

*Kent v. Dulle*s ..........................................................................32
    357 U.S. 116 (1958)

*Lujan v. G&G Fire* Sprinklers, *Inc.* ..................................35, 36
    532 U.S. 189 (2001)

*Memphis Comm. School Dist. v. Stachura,* ..........................46
    477 U.S. at 308

*Milliken v. Meyer* ....................................................................35
    311 U.S. 457 (1940)

*Morgan v. U.S.* ....................................................................24, 33
    304 U.S. 1 (1938)

*Mullane v. Central Hanover Tr. Co* ......................................35
    339 U.S. 306 (1950)

*Murray v. Hoboken Land, etc., Co* ......................................20
    59 U.S. 276 (1856)

*Ochoa v Hernandez y Morales* ............................................20
    230 U.S. 139 (1913)

*Porter v. Warner Holding Co*. ..............................................2
    328 U.S. 395 (1946)

*Priest v. Las Vegas* ................................................................35
    232 U.S. 604 (1914)

*Roller v. Holly* ........................................................................35
    176 U.S. 398 (1900)

*Spokeo, Inc. v. Robins* ..........................................................44
    578 U.S. 330 (2016)

*United States v. James Daniel Good Real Property* ..............36
    510 U.S. 43 (1993)

\* *Uzuegbunam, et al., v. Preczewski, et al*..................44, 45, 46
    141 S.Ct. 792, (2021)

*Virginian R. Co. v. System Federation* ............................................................................2
    300 U.S. 515 (1937)

**United States Court of Appeals**

*Carmichael v. United States* ...........................................................................21
    298 F.3d 1367 (Fed. Cir., Aug. 2002)

*Coleman v. Darden* ........................................................................................27
    595 F.2d 533 (1979)

*Garcia v. U.S.* ................................................................................................36
    666 F.2d 960 (C.A.Fla. 1982)

*Gordon v. National Youth Work Alliance* .......................................................15
    675 F.2d 356, Ct. App (D.C. Cir. 1982)

*Hanna v. United States Veterans' Administration Hospital* ............................17
    514 F.2d 1092, Ct. App (3rd Cir., 1985)

*In re Letourneau* ............................................................................................51
    559 F.2d 892 (2nd Cir. 1977)

*Kalaris v. Donovan* ........................................................................................20
    697 F.2d 376 (D.C. Cir. 1983)

*LaBounty v. Adler* ..........................................................................................16
    933 F.2d 121, Ct. App (2nd Cir., N.Y., 1991)

*Lawrence v. Dunbar* .......................................................................................15
    919 F.2d 1525, Ct. App (11th Cir., Fla., 1989)

*Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.* ...................................18
    516 F.2d 33, Ct. App (10th Cir., Okla., 1975)

*Peterson v. United States* ..........................................................................17, 19
    694 F.2d 943, Ct. App (3rd Cir., N.J., 1982)

*Porter v. Prentice* ..........................................................................................16
    155 F.2d 967, Ct. App (7th Cir., Ill., 1946)

*Richardson v. United States* .......................................................................15, 50
    193, F.3d 545, Ct. App. (D.C. Cir., 1999)

*Saint Clair v. Chico* .......................................................................................15
    880 F.2d 199, Ct. App (9th Cir., Cal., 1989)

*Sindermann v. Perry* ...............................................................................18
    430 F.2d 939 (5th Cir., Tex., 1970)

*U.S. v. Husband R. (Roadh)* ................................................. 36
    453 F.2d 1054 (C.A. Canal Zone 1971)

*Vector Research v. Howard & Howard Attorneys P.C.* ...........................16
    76 F.3d 692 (6th Cir., Ohio, 1996)

*Walker v. National Recovery, Inc.* ....................................................16
    200 F.3d 500 (7th Cir., Ill., 1999)

*Williams v. Taylor* ...............................................................................18
    677 F.2d 510 (5th Cir., Miss., 1982)

*Weinstein v. Albright* .........................................................................34
    261 F.3d 127 (2d Cir. 2001)

**United States District Court**

*Anderson v. Industrial Elec. Rells, Inc.* ...........................................18
    812 F. Supp. 999 (Neb. 1993)

*Gainey v. Brotherhood of R. & S.S. Clerks, etc.* .............................16
    155 F. Supp. 421 (Pa., 1959)

*Haft v. Dart Group Corp.* ..................................................................19
    841 F. Supp. 549 (Del., 1993)

*Richardson v. Bd. Of Governors of Fed. Reserve Sys.* ....................50
    288 F. Supp. 3d 231  (D.D.C. 2018)

*U.S. v. Townsend* ...............................................................................20
    151 F. Supp. 373 (D.C. 1957)

**United States Court of Federal Claims**

*Anthony Grace & Sons, Inc. v. United States* ..................................18
    345 F.2d 808, Cl. Ct. (1965)

*Carmichael v. United States* .......................................................21, 23
    66 Fed. Cl. 115 (2005)

**State Supreme Courts**

*Dendy v. Wilson* ...............................................................................35
    142 Tex. 460, 179 S.W.2d 269 (Tex.)

*Ex parte Payne* ...............................................................................35
    301 S.W.2d 194

*Johnston v. Chapman* ...............................................................................35
    279 S.W.2d 597 (Tex)

*Jones v. Willson* ...............................................................................35
    285 S.W.2d 877

*Lee v. Purvin* ...............................................................................35
    285 S.W.2d 405 (Tex.)

*Tweedy v. J.C. Penney Co* ...............................................................................19, 42
    216 Va. 596; 221 S.E. 2d 152 (Va. 1976)

*Zayer of Va. Inc. v. Gowdy* ...............................................................................19, 42
    207 Va. 47 (Va. 1966)

**United States Code**

5 U.S.C. § 552a ................................................................ 7, 9, 21, 22, *passim*
    *The Privacy Act*

5 U.S.C. § 701-706 ...............................................................................23
    *Judicial Review*

5 U.S.C. § 704 ...............................................................................20, 23
    *Actions reviewable*

5 U.S.C. § 705 ...............................................................................20, 23
    *Relief Pending Review*

5 U.S.C. § 706 ...............................................................................20, 23
    *Scope of Review*

8 U.S.C. § 1503 ...............................................................................37
    *Denial of Rights And Privileges As National*

8 U.S.C. § 1504 ...............................................................................36, 37, 38
    *Cancellation of United States Passports*

15 U.S.C. § 1692.................................................................................16
    *Fair Debt Collection Practices Act*

18 U.S.C. § 241.............................................................................7, 48
    *Conspiracy Against Rights*

18 U.S.C. § 242.................................................................................40
    *Deprivation of Rights Under The Color of Law*

22 U.S.C. § 212.................................................................................21
    *Persons Entitled To A U.S. Passport*

22 U.S.C. § 2714a (F.A.S.T. Act, Sect. 32101)....................31, 36, 52

\

    *Revocation or Denial of Passport In Certain Cases for Unpaid Taxes*

22 U.S.C. § 2721...................................................................7, 8, 30, 39
    *Impermissible Basis For Denial of Passports*

26 U.S.C. § 7402...........................................................................38, 52
    *Jurisdiction of The District Court*

28 U.S.C. § 1346.................................................................15, 19, 43
    *Tort Claims Act*

42 U.S.C. §408(a)(8).........................................................7, 39, 40, 48, 49
    *Penalties*

42 U.S.C. § 2000bb........................................................7, 9, 39, 43, 44
    *Religious Freedom Restoration Act*

## Federal Rules Decisions

*Edge v. C. Tech Collections, Inc.*....................................................16
    203 F.R.D. 85 (E.D. N.Y, 2001)

*Streeter v. Erie R. Co.*, ....................................................................18
    25 F.R.D. 272 (S.D.N.Y. 1960)

## Code of Federal Regulations

22 C.F.R. § 51.23................................................................................21
    *Identity of Applicant*

22 C.F.R. § 51.25................................................................................21
    *Name of Applicant To Be Used In Passport*

22 C.F.R. § 51.5 ...........................................................................................21
    *Adjudication and Issuance of Passports*

22 C.F.R. 51.60 ................................................................ 7, 27, 30, 31, *passim*
    *Denial and restriction of passports*

22 C.F.R. 51.62(a)......................................................................................6, 26
    *Revocation or Limitation of Passports*

22 C.F.R. 51.70 ..................................................................... 7, 26, 27, 30, *passim*
    *Request for hearing to review certain denials and*
    *revocations of passports*

**Federal Rules of Civil Procedure**

Rule 12(b)(1)........................................................................................15, 16, 41
    *Lack of Subject Matter Jurisdiction*

Rule 12(b)(6)............................................................................................15, 16
    *Failure To State A Claim Upon Which Relief Can Be Granted*

Rule 56(e)................................................................................................15, 16
    *Summary Judgment, Failing To Properly Support or Address A Fact*

Rule 68 ..........................................................................................................16
    *Offer of Judgment*

**Other**

Sir William Blackstone ...........................................................................3, 4, 52
    *Commentaries on the Laws of England, Introduction, Section The First,*
    *On The Study of Law*

*Magna Charta* ...........................................................................20, 29, 30, 39

*Due Process* | Wex | US Law | LII / Legal Information Institute (cornell.edu)................38

**United States District Court,**
**District of Columbia**

David Alan Carmichael, *et al.*      )
                                  )
      *Plaintiffs*         )
                                  )  Case No: 19-CV-2316-RC
        v.             )
                                  )  Re:  ECF 99
Antony John Blinken, *in his Official*  )
      *capacity as Secretary of State, et al.,*  )
                                  )
      *Defendants*        )


**PLAINTIFFS CARMICHAEL AND LEWIS COMBINED RESPONSE IN OPPOSITION
TO "DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT"**

### I.    Plaintiff Opening Summary

1.    The Defendants' are **not** entitled to the grant of their motion for dismissal or

summary judgment as a matter of law, fact, and due process.  The Defendants wrongly invite the

Court to unjustly dismiss the case with prejudice as if the case were moot.  That would be an

error in law, clear error regarding the facts, and an abuse of discretion as a matter of due process.

2.    The case and controversy is not merely about relief from the injury of the arbitrary

and unlawful loss of passports, it is about getting the government to obey the law with regard to

its issuance of passports.  If the government and its agents would have obeyed the law regarding

the processing of the Plaintiffs' passport renewal applications, the Plaintiffs would now have

passports.  The Plaintiffs would not have unnecessarily lost from weeks to many months of their

lives spent over the last few years in order to return to the status quo while the wrong doers

benefit financially at tax-payer expense being paid for their time and talents it takes to do the

wrong.   The Plaintiffs' applications are still unlawfully denied on the basis of what was supplied

with the passport renewal applications as a matter of fact and law. The revocation of the approval of Carmichael's passport renewal ought to be declared void, since it was in fact and law appropriately, not erroneously, approved on January 30, 2018. The Court needs to declare and publish finding of fact and conclusions of law in order to halt or mitigate the Defendant injuring others who are in like situation; to set aside unconstitutional policies, rules or legislation that gave rise to the injury; to sanction the Defendants for their frivolous delays; and the Plaintiffs need their day in court to prevail substantially for relief and costs.

> Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. *Virginian R. Co. v. System Federation*, 300 U.S. 515, 552. Power is thereby resident in the District Court, in exercising this jurisdiction, "to do equity and to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles,* 321 U.S. 321, 329. It may act so as to adjust and reconcile competing claims and so as to accord full justice to all the real parties in interest; if necessary, persons not originally connected with the litigation may be brought before the court so that their rights in the subject matter may be determined and enforced. In addition, the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances. Only in that way can equity do complete rather than truncated justice. *Camp v. Boyd*, 229 U.S. 530, 551-552.

> Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction." *Brown* v. *Swann,* 10 Pet. 497, 503. See also *Hecht Co.* v. *Bowles, supra,* 330  *Porter v. Warner Holding Co*., 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946)

## II. The Case History Reveals The Defendants' Obfuscation of the Law As Applied To The Facts And A Design To Undermine The Function of Government, Contrasted To The Plaintiffs' Efforts To Uphold The Law

3.    The Defendants' opening summary exposes the stark difference in the worldview of the opposing parties:

""Dissatisfied with the State Department's removal of any requirement for Plaintiffs to submit their social security numbers, Plaintiffs still refuse to take "yes" for an answer. Indeed, Plaintiffs now object to the State Department's actions on non-religious grounds and Lewis and Pakosz have unreasonably refused to provide a sufficiently recent photograph."" (Def. Mot. Memorandum ECF 99-1, p. 1)

4.      The Plaintiffs are rightly "dissatisfied." We believe that the Defendants must act in a ministerial capacity, not only persuaded by, but actually bounded by, objective standards and **requirements of law**.  The Plaintiffs expose the text of the law and regulations that all parties must uphold.  In contrast to verified sworn <u>documentary</u> and testimonial evidence provided by the Plaintiffs, the Defendants evade disclosing the administrative record upon which this case and their mere allegations must rely.  They beguile the Court by elevating unsupported efficiency and reasoning above fundamental, statutory and regulatory law and rules.

5.      The ""yes" for an answer" statement neglects to point out that there were strings attached that required the Plaintiffs to abandon the rule of law.  It is a sleight-of-hand distraction from the reality that the remand motion is a delay tactic based upon a false premise.

6.      The Plaintiffs know that municipal law is fixed by legislation rather than variable according to arbitrary reasoning of each magistrate, passport agency Director, or minion.

MUNICIPAL law, thus understood, is properly defined to be "a rule of civil conduct prescribed by the supreme power in "a state, commanding what is right and prohibiting what is "wrong." …  AND, first, it is a rule; <u>not a transient sudden order from a superior to or concerning a particular person</u>; but <u>something permanent, uniform, and universal</u>. Therefore a particular act of the legislature to confiscate the goods of Titius, or to attaint him of high treason, does not enter into the idea of a municipal law: for the operation of this act is spent upon Titius only, and has no relation to the community in general; it is rather a sentence than a law. But an act to declare that the crime of which Titius is accused shall be deemed high treason; this has permanency, uniformity, and universality, and therefore is properly a rule. It is also called a rule, <u>to distinguish it from advice or counsel</u>, which we are at liberty to follow or not, as we see proper; and <u>to judge upon the **reasonableness** or **unreasonableness** of the thing advised</u>. Whereas our obedience to the law depends not upon our approbation, but upon the maker's will. <u>Counsel is only matter of persuasion, law is matter of injunction; counsel acts only upon the willing, law upon the unwilling also</u>. Sir William Blackstone, *Blackstone's Commentaries on the Laws*

*of England*, Introduction, Section The First, On The Study of Law, P. 44, First Edition, Oxford : Printed at the Clarendon Press, 1765-1769 (font modernized, emphasis added) https://avalon.law.yale.edu/subject_menus/blackstone.asp

7.     The Defendants invitation to provide a new application and photograph (ECF 80, ¶ 3.), is a matter of 'counsel' subject to variable 'reasonableness' of either the Defendants or the Plaintiffs.  It is only a matter of persuasion, not a rule of law which is lawfully coercive.

8.     The Defendants say "because the State Department's religious accommodations extend to Plaintiffs' subsequent renewal applications (to the extent any are submitted), there is no reasonable, non speculative expectation that Plaintiffs will again be subject to similar requirement to submit their social security numbers in the foreseeable future."  Yet, they leave us to speculate what that future protection actually is since they do not provide any **black-letter** evidence.  The maladministration that they continue to exact on other applicants demonstrates that they intend to continue putting others through hell should they apply for a passport without identifying themselves with a SSN for reasons of religion.  Intervener Michelle Boulton is one such victim and we introduce the Court to others (Declaration of Carmichael, Attach. 1)

9.     The Defendants admit that the Plaintiffs' passport renewals were denied or revoked for not identifying themselves with a Social Security Number (hereinafter, "SSN").  They describe the Plaintiffs' conduct as a refusal when actually the Plaintiffs are not authorized to identify with a SSN as a matter of the highest law.  The unconstitutional policy, rules, statutes, and demonstrated hostility to the Plaintiffs and religion move the Defendants to unlawfully presume the Plaintiffs are wrong-doing rather than right-doing-for-good-cause.

10.     The Defendants left out a significant amount of history of the process when they elevate their remand motion as the center of the case's universe.  The actual history reveals that the Plaintiffs challenge the legitimacy of the basis for the remand motion (ECFs 53-60, 63, 65),

as well as the legitimacy of the order of remand and its basis in law and fact (71, 72).  The Plaintiffs made a motion for declaratory judgment (ECF 75) regarding the bogus remand to which the Defendants never responded and upon which the Court still needs to act.

11.     The Defendants' summary is not accurate in its characterization of saying that they "reversed its revocation of Carmichael's passport" though it accurately stated that they "invited" Lewis and Pakosz to submit updated photographs.  There is no administrative-record documentary evidence to support that conclusive statement.  What they did was evade administrative-record scrutiny, hid the identity of malevolent actors acting in bad faith, and produced a smoke-screen "replacement" passport making up the rules as they go instead of applying law and law-driven regulation.  Their protocol is improper as a matter of law.

### III.   Background

12.     The Defendants point out that the Plaintiffs alleged that we each had obtained passports without identifying with a SSN, beginning in 2007 and 2008 (ECF 99-1, Def. Mot. p.2).  We each had communicated a request for religious accommodation to not identify with a SSN as directed to on the DS-11 passport application forms.  We each subsequently applied for passport renewals using Form DS-82, and supplied with those applications a written request for religious accommodation to not identify with a SSN as was directed on the form.  The Defendants refer to these things as allegations but themselves attested to those facts in an extra-administrative-record declaration by Jonathan Rolbin (ECF 24-2) in their first motion to dispose of this case.  Mr. Rolbin's declaration is not evidence.  It includes no documentary evidence of the record to which he refers in his conclusive statements.  However, it constitutes admissions.

13.     Carmichael vouched for the sincerity of the faith of some people in the past in order for them to receive an accommodation for their religion to not identify with a SSN to get their

passport (ECF 51, beginning ¶22, and section Amendment 2, ¶1-21, pp. 33-42).  Plaintiff Pakosz

told Carmichael that his passport renewal request was denied because he did not provide a SSN.

Carmichael contacted the passport agency by telephone on behalf of Pakosz under a power of

attorney in an administrative capacity, where he had a debate with a representative from the Law

Enforcement Liaison Division.  The agency officer admitted that they issue passports to people

who could swear that they had never been issued a SSN.   Carmichael contended that there was

a requirement to consider a religious accommodation for other people and the agency officer said

that that they had no discretion but to deny the passport and there was no avenue for religious

accommodation.  Carmichael and others wrote to Congressional Representatives, and the White

House to try to get a policy/practice correction for William and others.  The White House sent

Carmichael's correspondence to the Defendant.  The Defendant sent a letter to Carmichael

referring to the White House letter and explained that nobody could have a passport without

identifying with a SSN.  The next day, Carmichael received a letter saying his renewed passport

was revoked.  Carmichael believes that it was an act of retaliation.

14.     There is an important nuance as to the authority upon which the Defendants claim

they were authorized to revoke Carmichael's passport.  Yet the premise upon which they claim

for their authorization is not supported by the facts of the case nor is it supported by the

regulation that they cite, 22 C.F.R. § 51.62(a)(2), in their *ex post facto* notice of revocation and

their motion for dismissal (ECF 99, Def. Mot. p.2).  The context of that particular regulation

allows, not mandates, the Defendant to revoke a passport if Carmichael <u>had done a wrong</u> in his

attempt to obtain a passport.  There is no claim Carmichael had done a wrong in any way.

15.     The action at law was initiated by Carmichael, filed July 31, 2019 (ECF-1).  Plaintiffs

Lewis and Pakosz petitioned to join September 2019.  The original complaint summarized that

the matter requires the court's declaration of law as it relates to the constitutionality of the conduct of United States officers and agents, the guiding statutes and regulations. The remedy and relief required is writ of mandamus, declaratory judgment, and injunction for protection of religion, and other relief in law and equity, and compensation for costs and fees where allowable by statute. (ECF-51, pp. 59-62)

16.    Having also applied for a renewal to her passport with a request of religious accommodation to not identify with a SSN, and being denied, Michelle Boulton moved to join as intervenor, May 21, 2021 (ECF 94). Mrs. Boulton limited her causes of action to violation of 22 U.S.C. § 2721, 42 U.S.C. 2000bb, declaratory and injunctive relief (ECF94-1, pp. 2-4).

17.    According to the Complaint, the Defendants are originally Michael Richard Pompeo, Secretary of State, in his official capacity; and now Antony Blinken as substitute; the United States; and the United States Department of State; with reservation for other "**co-conspirators and agents that shall be identified or confirmed upon discovery (ECF 51, ¶7).**"

### IV.    Procedural History

18.    Carmichael filed the action on July 31, 2019, see Compl. (ECF 1), raising nine causes of action: 1st Cause, 22 USC § 2721 (impermissible basis for denial of passport); 2nd Cause, 42 USC § 2000 bb (RFRA); 3rd Cause, violation of Executive Order 13798; 4th Cause, violation of 22 C.F.R. 51.70 and the Fifth Amendment to the U.S. Constitution; 22 C.F.R. 51.60 is overbroad in violation of the 1st and 5th Amendments to the U.S. Constitution; 6th Cause; violation of 42 USC §408(a)(8); 7th Cause; violation of 5 USC §552a, Privacy Act; 8th Cause, Violation of the First and Fifth Amendments, Abridging The Right of Redress of Grievances and Hiding Perpetrators; 9th Cause, violation of 18 USC §241, Conspiracy against rights. Carmichael moved for, and Lewis and Pakosz petitioned to, join in late September, 2019 (ECFs 5-6).

19.     At the sixty-day deadline after service, Nov. 12, 2019, the Defendants filed notice of appearance (ECF 7) and a motion for additional time to respond to the complaint without any claim of good cause or excusable neglect (ECFs 7-9).  Before allowing time for Plaintiffs to object after reading the Defendants' motion (ECFs 10, 12, 13), the Court granted the Defendants motion notwithstanding the Rules of Judicial Procedure and the Rules of Court (ECF 11).

20.     The Court ordered the complaint amended to correctly reflect the proper parties.  The Plaintiffs filed the amended complaint (ECF 15) that was docketed December 3, 2019.

21.     The Defendants filed for additional time on December 19, 2019, without any claim of good cause or excusable neglect (ECF 19).  Over the Plaintiffs' opposition (ECF 20) and contrary to the rules, the Court granted the motion on January 14, 2020 (Minute Order), and ordering a response by January 20, 2020.

22.     On January 17, 2020, Defendants moved to dismiss, or in the alternative for summary judgment, on all nine causes (ECF 24).   They did not supply the administrative record to the court.  They supplied extra-administrative record declarations, one of which was written as the personal knowledge of one person, and signed as executed by another person (ECF 24-3).

23.     The Plaintiffs filed a response in opposition, including with it declarations of disputed and undisputed facts (ECF 27).  With their response, Plaintiffs filed a cross-motion for summary judgment on the first cause of action, violation of 22 U.S.C. § 2721, impermissible basis for denying a passport for those things protected by the First Amendment (ECF 28).

24.     From April 6th to 12th, 2020, the Plaintiffs moved the court to consider the sworn statements in various filings to date be considered as evidence for the record, and filed documents related to their combined reply to the Defendants opposition to Plaintiffs motion for partial summary judgment.  The Plaintiffs complained to the Court that the documents were

misfiled and mislabeled on the docket, with the Plaintiffs again filing their document on April 12, 2021, with the Clerk labeling the main document as an attachment to errata (ECF 39).

25.   Plaintiffs moved to compel Defendants to answer discovery materials, which was opposed by the Defendants (ECF 40-42).

26.   On June 22, 2020, the Plaintiffs filed a notice and praecipe regarding the Court's non-action (ECF 43).

27.   August 28, 2020, the Court dismissed several causes of action of the Plaintiffs' complaint, but found that the Plaintiffs had standing on the Religious Freedom Restoration Act, the Privacy Act, and the Fifth Amendment for Plaintiffs Lewis and Pakosz (Mem. Op. ECF 45). The Court also gave Plaintiffs a chance to file another amended complaint with respect to their Fifth Amendment claim related to Mr. Carmichael's passport revocation, *id*. at 18.

28.   On September 25, 2020, the Plaintiffs mailed the filing of their "*Remonstrance, Objections, And Preservation of Error Regarding The Dismissal Opinion And Memorandum Of August 31, 2020*" which was filed when received by the Clerk on October 2, 2020.

29.   Pursuant to the Court's August 28, 2020 order, the Plaintiffs filed their motion to amend the complaint, mailing it on September 28, 2020 (ECF 46-0) which was filed by the Clerk, September 30, 2020.  The motion included a memorandum in support substantiating the due process claim (ECF 46-1).  It also included nine attachments as exhibits cited in the memorandum, separated by individual cover sheets, which the clerk's office merely docketed as one attachment.  The ninth exhibit was the actual amended complaint.

30.   Due to the obscuring of the exhibits by the Clerk's office, on October 2, 2020, the Court ordered an additional three weeks for the Plaintiffs to submit the amended complaint that was already in the record.  That notice of a three week deadline took two weeks for the Clerk's

office to post to the docket.  Notice to the Plaintiffs did not come by mail but was delivered by the Plaintiffs' online third-party automated docket alert mechanism.  The Plaintiffs filed a letter to the Clerk on October 16th, and a timely notice to the Court on October 20th complaining of the misadministration on (ECFs 48-49).  The Court subsequently docketed the complaint as ECF 51, without citing its association with the exhibits filed with the amended complaint (ECF 46-2).

31.  On October 20, 2020, <u>the Plaintiffs initiated the process to confer with the Defendants regarding a Rule 16(b) scheduling conference</u>, providing a comprehensive discovery plan.  They also sent a letter stating that mandatory initial disclosures include the documentary evidence that and identification of people referred to in the declarations submitted by the defendants, pursuant to Rule 26 (Plaint. Status Report, ECF 54, p. 1, ¶3.)  There has been <u>no response</u>.

32.  On October 28, 2020, the Court ordered the Defendants to respond to the amended complaint by November 11, 2020 (Minute Order, October 28, 2020).

33.  On November 11, 2020, the Defendants said, "In lieu of responding to the complaint, however, the Department of State intends to seek a temporary stay of proceedings and a voluntary remand to <u>reconsider the passport adjudications relevant to this matter and determine whether it can grant Plaintiffs' religious accommodation requests</u>."  (Emphasis added)  The Defendants' requested time to confer with the Plaintiffs, and the Plaintiffs agreed to a deadline of December 4, 2020 (ECF 50).

34.  Upon conferring with the Defendants, <u>the Plaintiffs determined that the Defendants proposal was in bad faith</u>.  The Plaintiffs submitted their own status report which arrived at the Court soon enough for the filing on December 3, 2020 (ECFs 53, 56, 57-60), though the clerk did not put it on the docket until December 7, 2020 (ECF 54), after the government Defendants' status report (ECF 52) that was filed later than the Plaintiffs'.  In the same package as their status

report, the Plaintiffs filed separate notices and demands for the Defendants to show cause <u>why the premise</u> of their not-yet-filed status report and motion for remand <u>had any merit as a matter of fact</u> (ECFs 53-60). The Clerk showed them filed on December 3, 2020, out of the order which was clearly communicated in writing on each envelope containing each document.

35.     The Defendants filed their status report the next day, on December 4, 2020, notifying the Court that they intended to file a motion for remand by December 19, 2020 (ECF 52).

36.     The Plaintiffs filed an objection to the Defendants' motion and proposed order for stay of proceedings that was embedded in their December 4, status report (ECF 63-64). It was sent overnight delivery to be delivered by Thursday, December 17, 2020. When the postal service failed to deliver the document, the Plaintiffs filed by email on Friday, December 18th. It was intended to be filed two days before the Defendants' filed their motion for remand (ECF 63-1). The Clerks office initially docketed it as a response to Defendants' motion for remand (ECF 61), but corrected it on December 30, 2020.

37.     The Defendants filed a motion to remand, December 18, 2020 (ECF 61); to which the Plaintiffs opposed December 30th (ECF 65). The Defendants' replied January 6, 2021 (ECF 66).

38.     On the same day as their reply regarding the remand motion, the Defendants filed a response (ECF 67) to the Plaintiffs notices and demands (ECFs 53, 56-60), <u>not challenging any of the facts sworn to in the Plaintiffs notices</u>. Believing their deadline to be 14 days, the Plaintiffs on January 19, 2021, mailed their reply to the Defendants response to the notices.

39.     The court granted the Defendants' motion for remand in the order of January 20, 2021 after the Plaintiffs' reply relevant to the motion (ECF 68) was mailed.

40.     The Plaintiffs filed (by mail Feb. 2nd) objections to the remand order; a motion for reconsideration and rescission; an alternate motion for stay to file motion for declaration; and an

alternative motion to certify the order for interlocutory appeal (Feb. 10, ECF 71/72).

41. The Court granted the Plaintiff CM/ECF filing access, February 17, 2021 (ECF 74).

42. On February 25, 2021, the Plaintiffs filed their motion for Declaratory Judgment (ECF 75) and a motion to lift the stay (ECF 76) regarding the Court's remand order. The Court responded the next day, ordering the Defendants to file a status report (Order Feb 26, 2021).

43. That same day, the Defendants filed their response (ECF 77) to Plaintiffs February 10th motion for reconsideration (ECF 72). The Plaintiffs replied March 2, 2021 (ECF 78).

44. On March 4th, Plaintiff Carmichael filed a supplemental memorandum to the Declaratory Judgment motion (ECF 75). The supplement was a declaration of fact regarding copies of documents that are in the possession of the Defendants showing all that was submitted by Carmichael to verify his identity for his 2008 passport application (ECF 79).

45. March 5, 2021, the Defendants filed their one-party status report where they reported to the Court by memorandum that the agency already had everything that was needed to satisfy religious accommodations for the Plaintiffs. Without documentary evidence, they explained that the Defendants were inviting the Plaintiffs to provide a new application and photographs.

46. March 19, 2021, in reaction to the Defendants' status report, the Plaintiffs moved for a status conference to schedule a hearing on the matter of their motion for Declaratory Judgment (ECF 82/83). The Court denied the Plaintiffs' motion for a hearing, reminding the parties of the scheduled joint status report due May 6, 2021, saying, "… the parties can convey their positions to the Court at that time, a hearing now is unnecessary." (Minute Order, April 19, 2021). That same day, April 19, 2021, the agency made its **first** **communication** with the Plaintiffs during the challenged remand period. They sent a notice to Lewis and Pakosz saying that the renewal applications submitted in 2019 could not be processed without newer photographs (Def. Mot.

Exhibit A) while they issued an illegitimate "replacement" passport <u>regarding</u> (not "to") Carmichael using the photograph he submitted in 2018 (ECF 84-6).

47.    April 23, 2021, Plaintiffs Lewis and Pakosz filed a motion for the Court to compel the Defendants to issue the passport renewals that were unlawfully denied at the time of application. The Plaintiffs provided exhibits to show that the motion was warranted by fact and law.

48.    May 4, 2021, the Plaintiffs filed an opposition to the Court's Minute Order of April 19, 2021, and moved for relief from the order (ECF 85/86).  The Defendants did not respond.

49.    May 6, 2021, the parties filed a Joint Status Report as directed by the Court (ECF 87).

50.    The first Minute Order of May 7, 2021, the Court ordered the Defendant to file their dispositive motions and their response to (ECF 84) Plaintiffs' Combined Motion to Compel Defendants to Issue Passport Renewals to Lewis and Pakosz on or before July 2, 2021; Plaintiffs shall file their response and reply on or before August 6, 2021.

51.    The second Minute Order of May 7, 2021, the Court *sua sponte* gave 14 days for Lewis and Pakosz to notify the Court if they wish to be appointed counsel by the Court, saying Carmichael's interests were potentially separate and that Carmichael had received a passport through litigation.  May 21, 2021, Plaintiffs Lewis and Pakosz responded in objection to the first Court Minute Order of May 7, 2021 (ECF 88) regarding the Court's response to the Joint Status Report (87)  Carmichael also responded in objection to that order (ECF 89).

52.    That same day, Plaintiffs Lewis and Pakosz responded in objection to the second Minute Order of May 7, 2021 (ECF 90).  Plaintiff Carmichael also responded in objection to that order (ECF 91).

53.    That same day, Plaintiffs moved to join Michelle Boulton as Plaintiff (ECF 92); and a motion for leave to file for intervener (ECF 93).  Michelle Boulton moved to intervene as

Plaintiff (ECF 94).

54.     June 4, 2021, the Defendants responded in opposition to Plaintiff Michelle Boulton's motion to intervene and Plaintiffs', Carmichael, Lewis and Pakosz, motion to join Boulton (ECF 95).  Among other things, the Defendants <u>falsely</u> said that Boulton's passport was not being denied because of her failing to identify with a SSN against her objection of religion.  Rather they said it was because the agency was waiting for further information from Boulton.

55.     June 15, 2021, Michelle Boulton replied to Defendants' opposition response, and provided documentation to show that the information the Defendant said it was waiting for Boulton to provide was in fact a SSN (ECF 98).  It exposed fraud upon the Court.

56.     After an extension of time agreed upon in the Joint Status Report (ECF 87), Plaintiffs filed their reply to the Defendants' opposition to the joining of Michelle Boulton (ECF 97).

57.     The Defendants filed their motion to dismiss all causes of action by Plaintiffs Carmichael, Lewis and Pakosz on July 2, 2021 (ECF 99).

58.     July 6, the Court issued a FOX/NEAL Order, telling the Plaintiffs that their response to the Defendants' dispositive motion is now due no later than August 20, 2021 (ECF 100).

59.     July 6, 2021, the Court filed Plaintiff Carmichael's motion sent by mail that moved the Court to hold in its custody the passport document sent to Carmichael on April 19, 2021, with the motion, in its priority mail package, was that unsigned passport document (ECF 101).

60.     July 19, 2021, in accordance with the first Minute Order of May 7, 2021, Plaintiff Lewis replied (ECF 102) regarding his motion to compel the issuance of his passport, extrapolating those things that were contextually relevant in the Defendants' motion to dismiss (ECF 99) and its accompanying exhibits.

61.     July 19, 2021, Plaintiffs Carmichael and Lewis gave notice of the July 5, 2021, death

of Plaintiff William Mitchell Pakosz.

62. August 8, 2021, the Court ordered the Defendants to provide a status report since the claimed deadline for Mrs. Boulton to give further information had passed on June 7, 2021.

## V.  LEGAL STANDARDS

### A.  LEGAL STANDARDS – Rule 12(b)(1)

63. "Under Rule 12(b)(1) procedural safeguards equivalent to those in Rule 56 are required, with Rule 56 used selectively as guide to insuring fairness." *Gordon v. National Youth Work Alliance*, 675 F.2d 356, Ct. App. (D.C. Cir., 1982).  *** "When District Court faces factual challenge to complaint's jurisdictional allegations, it must grant opportunity of conducting additional discovery before making its decision only if it is possible that plaintiff can demonstrate requisite jurisdictional facts if afforded that opportunity.  *St. Clair v. Chico*, 880 F.2d 199 (9th Cir., Cal., 1989)  *** "While court may consider matters outside pleadings in resolving Rule 12(b)(1) motion and may weigh evidence to determine if it has jurisdiction, fundamental fairness requires that non-moving party be afforded opportunity to conduct discovery so that he can if possible meet his burden of establishing jurisdiction." *Mill v. United States*, 530 F. Supp 611 (E.D. Pa., 1982).  *** "Suit brought under Federal Tort Claims Act (28 USCS §§ 1346 et. seq.) should not have been dismissed for lack of subject matter jurisdiction where that determination was intermeshed with merits of claim and there was dispute as to material fact." *Lawrence v. Dunbar* (1990, CA 11 Fla) 919 F2d 1525  ." *** "District court should have read all of pro se plaintiff's filings together before dismissing case for lack of subject matter jurisdiction. " *Richardson v. United States* (1999, App DC) 338 US App DC 265, 193 F3d 545.

### B.  LEGAL STANDARDS – Rule 12(b)(6)

64.     "Courts are cautious in dealing with motions to dismiss for failure to state claim on which relief can be granted, particularly where to grant motion would terminate litigation before parties have had their day in court." *Gainey v. Brotherhood of R. & S.S. Clerks, etc.*, 177 F Supp 421 ( D.C. Pa., 1959).  *** "Complaint should not have been dismissed on Rule 12(b)(6) motion for failure to plead facts sufficient to demonstrate malice and thus overcome defendants' immunity, since under Rule 9(b) malice may be averred generally, and no further proof was required at that point in litigation."  *Vector Research v. Howard & Howard Attorneys P.C.*, 76 F3d 692, (6th Cir., Ohio, 1996).  ***  "Rule 12(b)(6) does not give district court authority to consider matters outside pleadings; if movant wishes to test factual underpinnings of complaint, it may submit proper evidence outside pleadings and move for summary judgment under Rule 56.  *LaBounty v. Adler*, 933 F2d 121 (2nd Cir., N.Y., 1991)."  *** Complaint that presents claim turning on factual issues and inferences may not be terminated under Rule 12(b)(6).  *Walker v. National Recovery, Inc.*, 200 F3 500, (7th Cir., Ill, 1888).  *** "… and motion should be considered as answer, then plaintiff was entitled to be fully heard and to introduce competent evidence upon factual question thereby presented.  *Porter v Prentice*, 155 F2d 967 (7th Cir., Ill., 1946)."  *** "Where FRCP 68 offer of judgment in action brought under Fair Debt Collection Practices Act (15 USCS §§ 1692 et seq.) provides maximum statutory relief available under Act, but caps amount of costs and attorney's fees, such offer does not represent maximum amount that Plaintiff could recover under Act, and plaintiff still has personal stake in litigation which is not moot; consequently, case or controversy still exists, and defendant's motion to dismiss complaint pursuant FRCP 12(b)(1) and (6) will be denied."  *Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85 (E.D. N.Y., 2001)

C.      **LEGAL STANDARDS – Summary Judgment**

65. There is a significant amount of evidence upon which this case turns that goes to the matter of the relief yet due the Plaintiffs. It is all so far hidden by the Defendants whose conduct in their administration we've alleged to be unlawful. The Rules of appellate procedure require the whole administrative record to be reviewed by the court before the Court takes action based upon the law as applied to the documentary facts. "On motion for summary judgment, if question of fact exists concerning existence of defense, issue cannot be determined on affidavits. *Hanna v. United States Veterans' Administration Hospital*, 514 F.2d 1092 (3d Cir. 1975). Under the circumstances, the judgment must be set aside for failure to comply with Rule 56(e)." *Peterson v. U.S.*, 694 F.2d 943, 946 (3rd Cir. 1982).

66. All the Defendants have supplied in their motion for dismissal is the Declaration of Kristin N. Watkins. For the purpose of summary judgment, Kristin N. Watkins's declaration is not only outside the record, it is not evidence. A real affidavit would be verifying by personal knowledge the authenticity of a document, not merely summarizing Kristin N. Watkins conclusions about the document. ""Fed.R.Civ.P. 56(e) requires a party who files an affidavit to "**attach thereto and serve therewith**" sworn or certified copies of all papers <u>referred to in the affidavit</u>.[6] (Fn[6] - This rule provides that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.)"" *Peterson v. U.S.*, 694 F.2d 943, 945 (3rd Cir., N.J., 1982)[1] (Emphasis added.).

[1] Subdivision (c)(4) carries forward some of the provisions of former subdivision (e)(1). Other provisions are relocated or omitted. The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record, Committee Notes On Rules – 2009 Amendment

**67.** In order to evade adjudication, the Defendants are injecting things outside of the administrative record to virtually rewrite the complaint so that it erroneously appears moot. Notwithstanding, even those things supplied by unworthy affidavit and memorandum indicate the Defendants cannot prevail on the facts as well as the merits. "Movant for summary judgment must demonstrate entitlement beyond a reasonable doubt." *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33 (10th Cir., Okla., 1975), on remand 411 F.Supp. 705 "A motion for summary judgment is not a substitute for a trial, and on such a motion court must decline to decide any factual issue whose answer admits of reasonable doubt." *Streeter v. Erie R. Co.*, 25 F.R.D. 272 (S.D.N.Y. 1960) "Moving party must prove his right to summary judgment with such clarity that the nonmoving party cannot recover under any discernible circumstance." *Williams v. Taylor*, 677 F.2d 510 (5th Cir., Miss., 1982) ** Summary judgment should be granted only when truth is clear, where basic facts are undisputed and parties are not in disagreement regarding material factual inferences that may be properly drawn from such facts. *Sindermann v. Perry*, 430 F.2d 939 (5th Cir., Tex., 1970). Summary judgment is an extreme and treacherous device which should not be granted unless the moving party has established a right to judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any discernible circumstance. *Anderson v. Industrial Elec. Reels, Inc.*, 812 F.Supp. 999 (D. Neb., 1993) *** Denial of motion for summary judgment is appropriate when legal issues are of particular significance or particularly complex, or where legal issues can be intelligently resolved only upon fully developed record. *Anthony Grace & Sons, Inc. v. U.S.*, 345 F.2d 808, Ct.Cl. (1965) *** Summary judgment is rarely proper in cases raising equitable defense of unclean hands because summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith, and other

subjective feelings play dominant roles, particularly when parties allege fundamentally

confliction facts. *Haft v. Dart Group Corp.*, 841 F.Supp. 549, (D.Del., 1993)

**D.  LEGAL STANDARDS – Damages**

*68*.  In the Federal Tort Claims Act, Congress waived the sovereign immunity of

the United States. *Peterson v. U.S.*, 694 F.2d 943, 944 (3rd Cir., N.J., 1982).  Damages are

given as a compensation, recompense, or satisfaction to the plaintiff, for an injury actually

received by him from the defendant. Compensatory damages and actual damages mean the same

thing; that is, that the damages shall be the result of the injury alleged and proved, and that the

amount awarded shall be precisely commensurate with the injury suffered, neither more nor less,

whether the injury be to the person or estate of the complaining party. 2 Greenl. Ev. (10th ed.)

sect. 253. *Birdsall v. Coolidge*, 93 U.S. 64 (1876).  "Although actual malice must be proved to

justify punitive damages, legal malice inferred from circumstances is sufficient to support award

of compensatory damages." *1976 Tweedy v. J.C. Penney Co.*, 216 Va. 596, 221 S.E.2d 152.

"False imprisonment is restraint of one's liberty without any sufficient cause therefor[; it is not

essential that a person is] confined in jail or in the custody of an officer." *Zayre of Va., Inc. v.

Gowdy*, 207 Va. 47, 50-51 (1966). "If a person is under a reasonable apprehension that force will

be used unless he willingly submits, and he does submit to the extent that he is denied freedom

of action, this, in legal contemplation, constitutes false imprisonment." Id. at 51

**E.  LEGAL STANDARDS – Due Process of Law**

69.  "Due process of law is primary and indispensable foundation of individual freedom.

*Application of Gault v. Arizona,* 387 U.S. 1 (1967).  This amendment forbids federal government

from depriving any person of life, liberty or property without due process of law, *Bloom v. State

of Ill.*, 391 U.S. 194 (1968).  "The words 'due process of law' were undoubtedly intended to

convey the same meaning as the words, "by the law of the land.' in Magna Charta. *Murray v. Hoboken Land, etc., Co.*, 59 U.S. 276 (1856). See, also, *Ochoa v Hernandez y Morales,* Puerto Rico, 230 U.S. 139 (1913). Due process under this amendment, when applied by federal courts, serves as basic protection of citizen against unjust federal action and must be given even broader connotation than due process under Amend. 14. *U.S. v. Townsend*, 151 F. Supp. 373 (D.C. 1957). Constitutional limitations on commingling of executive and adjudicatory functions arise out of this clause, not separation of powers principle. *Kalaris v. Donovan,* 697 F.2d 376 (D.C. Cir., 1983) cert. denied 462 U.S. 1118.

### VI.   The Plaintiffs' Motion For Declaratory Judgment, With Finding of Fact And Law Regarding The Remand Order Needs to Be Accomplished Prior To Deciding The Defendants' Motion For Dismissal

70.    The Plaintiffs motion for Declaratory Judgment and Partial Finding of Fact and Conclusions of Law regarding the remand needs to be adjudicated as demanded (ECF 75):

1) whether it is lawful or just for the Court to remand without the grant of authority specified by a particular statute or Rule;

2) whether the statutes of 5 U.S.C. Chapter 7, Judicial Review, shows that:  5 U.S.C. § 704, Actions reviewable cannot be the basis for remand; Remand in our case is not contemplated by 5 U.S.C. § 705, Relief pending review; 5 U.S.C § 706, Scope of review, shows remand is neither necessary nor appropriate; The administrative procedures act imposes the burden of proof upon the agency to justify their action.

3)     whether the court order unjustly allows the defendants to unilaterally enforce a virtual writ ne exeat republica,…(Emphasis added)

4)     whether the nature of the restricted liberty right demands strict scrutiny in a court of law; Preventing all men from acting in order to disable any man from acting

wrongly (is constitutiona);  the oath on the (applications) fulfills the threshold necessary to affirm identity…

5)   whether the nature of this case is distinguished from the cases cited by the defendants; remand is not appropriate to the persons or to the subject matter….

6)   whether the Privacy Act says that the District Court has jurisdiction to adjudicate the complaint and to order the agency to correct its record.

7)   whether remand is unnecessary and inappropriate where the defendant says they look for least restrictive means when the compelling interest has not been first shown.

8)   whether (a legitimate) (GVR) would be like *Carmichael v. United States*, 298 F.3d 1367 & 66 Fed. Cl. 115.

9)   whether the weight of evidence shows there is no question plaintiffs' identity apart from a SSN; whether the regulations say the previous passport is sufficient; whether The passport eligibility requirements, 22 U.S.C. § 212, are fulfilled; the weight of evidence shows the identification requirements of 22 C.F.R. §§ 51.23, 51.25 and 51.5 are presumed fulfilled in the initial passport.

10)   **whether remand undermines or causes unnecessary interference or delay with the plaintiffs discovery; … the remand motion on its face is frivolous and for the purpose to delay or deny plaintiffs discovery and complete relief**. (Emphasis added)

### A.   The Remand Motion Is A Delay Tactic In Bad Faith

71.   The Plaintiffs claimed the Defendants were acting in bad faith before the Defendants remand motion was even filed (ECFs 52-57).

72.   The Defendants have not provided any evidence that their remand was warranted on any premise put to the Court.  They admitted that fact in their Status Report (ECF 80, ¶2).  Their

proposed remand order, that the Court issued like carte blanche, included new quasi legislation

that the Defendants could demand from the Plaintiffs anything that is reasonable, naturally

implying that it would not be based upon law (ECF 61, p. 10).  Since their remand motion was

frivolous for the purpose of delay, and since we opposed it with our comprehensive motion and

memorandum in support for the Declaratory Judgment and Findings (ECF 75), they had to come

up with an artifice to moot our opposition and evade sanction for their bogus remand.  Their

scheme - bait us with a 'reasonably' new application and photograph not required by law,

regulation, or their written policy.  If we file a new application, the applications that are the

subject of this litigation become moot.  New applications as a matter of law and regulation

require a fee.  But payment of a new and otherwise unnecessary fee qualifies for damages that

would make the Privacy Act case still actionable on the denials of the passports.  Thus, just like

the not-based-upon-law invitation for a new application, the Defendants provide a not-based-

upon law waiver of an application fee.  But a new photograph qualifies under the Court's quasi-

legislative mandamus that the Plaintiffs submit to a one-sided discovery according to the not-

based-upon law 'reasoning' of the Defendants.  If we voluntarily submit to their invitation to go

out and get another photograph, it will be voluntary, and the cost of the unnecessary photograph

can't qualify for "actual damages" under their new violation of the Privacy Act.  If we send in

the new photograph for the convenience of a not-based-upon law passport issuance, we abandon

our contest of the challenge to the legality and bad faith of the bogus remand motion.  The

voluntary "invitation" became a post-facto mandate once the Plaintiffs would not take the bait.

**B.    A Real Remand Looks Completely Different**

73.    In a real remand, a court would make at least a partial finding of fact and conclusion

of law before make a statement like:  "We reverse and remand for further proceedings

consistent with this opinion." A real remand to an agency for a legitimate agency review is one where the Court action is actually suspended in the Court of Appeals while the entirety of the case actually rests in the administrative tribunal of the agency. The U.S. Attorney for the Defendant would not be acting as in-litigation settlement negotiator between the parties as was done in this fiasco.

74. In a real remand, the agency would communicate directly with the aggrieved applicant. An example is the communications from the Board For Correction of Naval Records to Carmichael during the real remand in the case of *Carmichael v. United States*, Case No. 98-835C) in the Court of Federal Claims (Carmichael Decl. Attachment 1, Item 1). There would be some hard-copy record of that communication between the agency and the aggrieved applicant (Carmichael Decl. Attachment 1, items 2-4). There would be some evidence of a record of the agency's taking measures to adjudicate the complaint and something to which an aggrieved applicant could rebut (*Id.* item 2). If the agency wanted more information from the applicant, there would be a direct request from the agency (*id*, item 3). In this case, the Agency's Mr. Miller (ECF 99-2) appears to be acting according to the memorandum of the U.S. Attorney's Status Report (ECF 80, ¶ 3.) rather than adjudicating an administrative action of the applicant like in a BCNR remand (Carmichael Decl., item 4). Mr. Miller never made a formal request for information on agency letterhead. He avoided being the one to violate the Privacy and Paperwork Reduction Acts. It is the U.S. Attorney and the Judge who have stepped in as tag-team quasi-agents for the agency.

75. Also, a real remand like that contemplated by the law (A.P.A. 5 U.S.C. § 701-706 and Rules of Appellate Procedure, Rule 10) is one where an administrative tribunal would have been reviewed and given instructions by the court as to where the tribunal was in error. The administrative tribunal would then be re-engaged, with due process commensurate with the gravity

of the rights of the aggrieved party, with the limitations or discretions of the tribunal legislatively defined. In this bogus remand, there is some unnamed wizard operating without adversarial access according to unpublished policies and procedures and no reportable record of the determinative proceedings.

> Where Congress intrusts administrative agenies with broad control over activities which in their detail cannot be dealt with directly by the Legislature, Congress must determine the standards of administrative action, and in administrative proceedings of a quasi-judicial authority, liberty and property of citizens must be protected by fair and open hearings. *Morgan v. U.S.,* 304 U.S. 1 (1938) ***

### C. The Invitation For A Voluntary/Mandatory Photograph Record Under The Guise of A Remand Is A New and Actionable Violation of the Privacy Act

76. Their sleight-of-hand demand for a new photograph record, contrary to law, in itself is a new injury and violation of the Privacy Act. This time, Mr. Hair is a co-conspirator. He knew or had a duty to know that the demand for a record, as defined by 5 U.S.C. § 552a(a), without the authority of law, and without expressly and accurately stating whether it is voluntary or mandatory and what that ramifications would be based upon the law, is a violation of the Privacy Act, 5 U.S.C. § 552a(e), and subject to a $1,000 minimum civil penalty paid to the victim 5 U.S.C. § 552a(g). In this case, Mr. Lewis expended funds unnecessarily to obtain a new photograph that is not required by law. (Lewis declarations, Attachments 2 & 3)

### D. The Remand Motion Is Prestidigitation To Make The Real Case Disappear Before Our Very Eyes

77. Just as the Plaintiffs warned before the remand motion was made, the Defendants are using the remand motion as an illegitimate means to convert the case into an entirely new action in order to persuade the Court to erroneously moot the legitimate case that is before the Court (ECFs 52-57).

## VII. Plaintiffs' Constitutional Claims Succeed.

78. The Defendants' in their section, "II. Plaintiffs' Constitutional Claims Fail" are providing a response or answer to our Amended Complaint. Here again, the Defendants put the Court in the position of having to <u>actually read the references</u> they cite as evidence to support their argument. And again, their entire foundation for the basis of their argument is that the new action that they created to replace the actionable complaint is "because of…during the remand…due process claims are now moot." They say, in so many words: 'There is nothing to see here… move along! No matter what it is - whether violation of the constitution by agency action, or renegade action, or by regulation, or by statute. The agency and its attorney's self-measured reasons cover a multitude of sins notwithstanding their disassociation with written law, regulation and policy that are supposed to be controlling.'

**A. Carmichael's Fifth Amendment Claim – Plaintiffs Justifiably Challenge The Constitutionality of The Regulation**

79. The Defendants' statement in their section "a. Carmichael's Fifth Amendment Claim" about the text and meaning of the regulations is clearly erroneous in contrast to the regulation that they reference that bars in-agency post-revocation appeal to Carmichael. It is as if <u>the Defendants are certain that the Court will not actually read the reference</u>. The Defendant attorney is repeating the same false conclusion statement made in their first motion for dismissal, extracted from the false conclusion statement made by the Defendant in the post-revocation letter notifying Carmichael of his without-opportunity-to-contest revocation. The Plaintiffs objected to the Court's error of merely repeating the conclusive statement of the Defendant Attorney <u>instead of reading the actual regulation</u> the Defendant cited in the notification letter and first motion to dismiss (ECF 47, p.1 of 24). The original complaint (ECF 1, p. 9, ¶ 27) and the 2nd amended complaint (ECF 46, p. 10-11, ¶ 33) has the actual text of the revocation notice. The **plain text of the letter in evidence** <u>contradicts</u> the claim of the Defendants at their first motion for dismissal,

<u>contradicts</u> the Court's order of August 28, 2020, and <u>contradicts</u> the argument made by the Defendant now (at Def. Mot. Dis, p. 13, ¶ II.a.). In our 2nd Amended Complaint, we allege those facts that had already been exposed to the court in the record to some extent. (Amended complaint para. 9):

> "A hearing is <u>not</u> provided in a case of an adverse passport action taken for failure to provide a SSN." (ECF 46-2, p. 4 of 88)

> "However, our regulations <u>don't</u> provide hearings for no security number for denial." (ECF 46-2, p. 7 of 88)

> "Pursuant to 22 C.F.R. 51.70, a hearing is <u>not</u> provided for applications denied or passports revoked for failure to provide a social security number." (ECF 46-2, p. 11 of 88)

80. The last paragraph on Page 13 of their motion to dismiss, the Defendants again distract the Court from the actual words of the Amended Complaint, and the actual words of the Defendants' correspondence to Carmichael. The regulation cited by the Defendant in the post-revocation notice as a path to appeal, if read and applied to all other statements in the post-revocation notice, actually holds that the appeal available to Carmichael is predisposed by the regulation as "none." By that regulation, 51.70(b)(2) appeal is barred since it was for not identifying with a SSN that the passport was revoked supposedly in error under 51.62(a)(2). The supposed error was that they issued the passport notwithstanding there was no SSN provided in violation of 51.61(f) which makes it one of those things for which appeal is barred pursuant to 51.70(b)(2). The Defendant falsely states, "… he was thus given the opportunity to request a hearing…" and then goes on to say, "Notwithstanding Plaintiffs' erroneous reading of the State Department's regulations, Carmichael received a letter from the State Department notifying him that his passport had been issued erroneously, that it had been revoked pursuant to 22 C.F.R. § 51.62(a)(2), and that he had the ability to request a post-revocation hearing." **It is important for**

**the Court now to determine whom it is that has the "<u>erroneous reading</u>.**"  For what reason

was the passport supposedly "erroneously" issued?  It was for not identifying with a SSN,

supposedly contrary to 22 C.F.R. 51.60(f).  Since that is the reason, is the supposed offense

against 51.60(f) one of those reasons why an appeal is barred by 22 C.F.R. 51.70(b)(2)?  **Yes.**

This is a substantial, material, and relevant disputed fact.

81.    The full quote of the June 20, 2019 post-revocation letter regarding appeal is, "You

may request a hearing under 22 C.F.R. §§ 51.70-51.74.  The hearing would take place in

Washington, D.C. and **would only address the basis upon which the Department revoked**

**your passport**." (Carmichael Decl. Attachment 1, Item 5, emphasis added)   Five days later,

from the same office, Carmichael received a letter that stated, "Pursuant to 22 C.F.R. § 51.70, a

hearing is not provided for applications denied <u>or **passports revoked** for failure to provide a</u>

<u>social security number</u>."  (Amendment motion attachment #1, Emphasis added). The second

letter on June 25th, countermanded the first letter on June 20th that was from a subordinate office.

But is not merely the influence of the authoritative voice of the second letter, it is the influence

of the actual reading of the regulations that explains an appeal is prohibited to Carmichael

because it was for not identifying with a SSN that an appeal is denied under 22 C.F.R. § 51.70-

51.74.

82.    **The Defendants' regulation itself is a due process violation of the U.S.**

**Constitution**.  <u>It compels the Defendants to violate the due process rights of the applicants who</u>

<u>cannot identify with a SSN for a good cause</u>.

> Statutes creating permanent irrebuttable presumptions, which are neither necessarily
> nor universally true, are disfavored under both this amendment and Amend. 14,
> because they preclude individualized determination of fact upon which substantial
> rights or obligations may depend.  *Coleman v. Darden*¸ 595 F.2d 533 (10th Cir. Colo.,
> 1979), certiorari denied 44 U.S. 927

**B. The Defendants Waived Contest That The Plaintiffs' Due Process Rights Were Violated, Relying Upon The Notion That It Does Not Matter**

83. The Plaintiffs motion to amend the complaint (ECF 46), with which the Amended Complaint was filed on September 30, 2020, is that to which the Defendant made no objection for its docketing. Therefore, the Defendants abandon any contest that they revoked Carmichael's passport without due process, only that the case of *Haig* somehow makes the *writ ne exeat republica* somehow justified. They incorrectly say that the complaint fails to rebut the Court's prior finding. The Defendants are wrong. We rebutted the Court finding (ECFs 46-1, 47). In accordance with the Court's invitation to amend the complaint to address the due process claims of Carmichael, the Plaintiffs filed a motion to amend, providing allegations by sworn statement that support the position of the Plaintiffs, and filed a memorandum in support that rebutted the Court's finding. We alleged facts so that it would not escape the Court's notice that the Court's finding was contrary to the written evidence and case text. The **Plaintiffs' Memorandum In Support Of Motion To Amend The Complaint Regarding Due Process** (ECF 46-1) addresses how *Haig* is very much distinguished from Carmichael's case. Applying the *Haig* rule in Carmichael's case contravenes the ordinary principles of justice. We reiterate here that which was filed as a memorandum in support of our motion to amend, to which the Defendant neglected to rebut :

**C. *Haig v. Agee* Is Not The Rule Or Instructive But Is Merely An Exceptional Exigency. Revoking Carmichael's Passport Without Prior Due Process Remains An Abuse Of Discretion And Injures Carmichael's Rights Protected Under The Constitution**

84. The Defendants claim *Haig v. Agee* is instructive regarding Carmichael's passport revocation, but the Court has erroneously as a matter of law, and clear error as a matter of fact, applied it as the rule in this case. To equate the Defendants' no-process revocation of

Carmichael's passport with Mr. Agee's wrongly elevates Executive discretion to a place of monarchic power that has been opposed in our law since the *Magna Carta*. The Executive discretion exercised in *Haig v. Agee* was a show of rightful monarchal prerogative in a very particular situation of a clear and convincing need against particular threats by a particular person who presented a clear and present danger to national security. Mr. Agee's conduct was a willful attack upon the security of the nation at large, as well as the security of the lives of overseas personnel who were agents (spies) or personnel of the United States. That exigency of national security against Mr. Agee cannot be an excuse to act in martial law in all situations, unleashing the fetters of the Constitution as a general rule. It shatters the foundational law and our reserved rights protected by the Fifth and Ninth Amendments, even going back to the *magna carta*:

> "No free man shall be seized or imprisoned, or stripped of his rights or possessions, or outlawed or exiled, or deprived of his standing in any other way, nor will we proceed with force against him, or send others to do so, except by the lawful judgment of his equals or by the law of the land." *Magna Carta*, https://www.crf-usa.org/foundations-of-our-constitution/magna-carta-text.html (King John, 17th yr. of his reign,Runnymede England, June 15, 1215)

85. Though the nation might not have been at war, Mr. Agee's actions might have started one. The exception-to-the-rule revocation of Mr. Agee's passport, prior to a hearing, was an action like that of a police officer who stops an assault and battery by grabbing hold of a man's arm while it is in full swing with the fist headed for someone's nose. The intervening detention of the man's arm-property without an arrest or seizure warrant is tolerable in that situation. That is analogous to Mr. Agee's situation, consistent with the history of law of national security going back to Magna Carta:

> "All merchants may enter or leave England unharmed and without fear, and may stay or travel within it, by land or water, for purposes of trade, free from all illegal exactions, in accordance with ancient and lawful customs. **This**, however, **does**

**not apply in time of war** to merchants from a country that is at war with us. Any such merchants found in our country at the outbreak of war shall be detained without injury to their persons or property, until we or our chief justice have discovered how our own merchants are being treated in the country at war with us. If our own merchants are safe they shall be safe too." *Ibid* (Emphasis added)

"In future it shall be lawful for any man to leave and return to our kingdom unharmed and without fear, by land or water, preserving his allegiance to us, **except in time of war**, for some short period, for the common benefit of the realm. People that have been imprisoned or **outlawed** in accordance with the law of the land, people from a country that is at war with us, and merchants - who shall be dealt with as stated above - **are excepted from this provision**." *Ibid* (Emphasis added)

86.     Mr. Agee had in effect outlawed himself by swinging at the nose of the United States foreign intelligence service and its personnel.  The Executive action to stop him, notwithstanding the demands of the civil due process law, keeps with the higher revealed law, "If a man knows the good he ought to do, and does not do it, to him it is a sin."[2]  The pre-hearing intervention is tolerated by the United States Supreme Court in *Haig v. Agee* like a without-arrest-warrant seizure of a man mid-assault.  <u>That parallel is nowhere near the particulars of our case.</u>  The Rule applied in *Aptheker v. Secretary of State* is the rule in our case, rather than is the **exception** of *Haig*.

87.     **In the Plaintiffs' Memorandum In Support Of Motion To Amend The Complaint Regarding Due Process (ECF 46-1), we said, r**ather than being controlled by *Haig v. Agee*, our case is much more related to *Aptheker v. Secretary of State*, 378 U.S. 500 (1964) which should be the controlling case.  *Aptheker* appears to be a case closely related to the spawning of 22 U.S.C. § 2721 and its prohibition of the denial or revocation of passports for things protected by the First Amendment.  The *Aptheker* rule applies to the unconstitutional bar to appeal by 22 C.F.R. § 51.60(f) with 22 C.F.R. 51.70(b)(2), as well as the unconstitutional revocation without prior due process, as well as the Court's misapplication of 22 U.S.C. § 2721,

---

[2] Holy Bible, The Epistle of James, Chapter 4, Verse 17

as well as the Defendants' unconstitutional misapplication of 22 U.S.C. § 2714a(f), and the

unconstitutionality of the overbreadth and vague of 22 C.F.R. 51.60(f) and 22 U.S.C §2714a(f).

### D. The Post-Revocation Appeal Process Available In *Haig* Was Substantially Not Available In *Aptheker* Just As The Appeal Process Is Barred In Our Case

88.    In *Haig*, there was a very clear avenue to an in-agency post-revocation (or post-

denial) appeal process.  Carmichael's revocation, and Lewis's and Pakosz's denial, has an

**automatic bar** to the agency's appeal process like in *Aptheker* where the conclusion of the

appeal was fixed by statute so that <u>applying for an appeal through the agency was futile</u>.  In our

case, the dead-end is immediate, stopping at the door of appeals board as a function of

regulations 22 C.F.R. 51.60(f) and 22 C.F.R. 51.70(b)(2).  In *Aptheker*, <u>the Supreme Court held</u>

the statute "**§ 6 of the Control Act too broadly and indiscriminately restricts the right to**

**travel and thereby abridges the liberty guaranteed by the Fifth Amendment**." *Aptheker v.*

*Secretary of State*, 378 U.S. 500, 505 (1964). (Emphasis added)

89.    In *Aptheker*, the appeals hearing examiners determined that their hands were tied by

statute.  The Court determined that Aptheker's appeal could not be considered because they

concluded, "the Department of State had reason to believe that [appellants are] within the

purview of Section 6 (a) (2) of the Subversive Activities Control Act … and as a result thereof

… use of a passport would be in violation of the law." *Ibid* at 503  The Secretary of State

subsequently approved the recommendation of the Board, saying that he, "relied solely on the

evidence in the record" and that he "specifically adopted as his own the [Board's] finding of fact

that 'at all material times [appellants] were members' of the Communist Party of the United

States with knowledge or notice that such organization had been required to register as a

Communist organization under the Subversive Activities Control Act." *Ibid* at 503  ""Each

appellant-plaintiff alleged that § 6 was unconstitutional as, *inter alia,* "a deprivation without due

process of law of plaintiff's constitutional liberty to travel abroad, in violation of the Fifth Amendment to the Constitution of the United States.'"" "The parties agreed that all administrative remedies had been exhausted and that **it would be futile**, and indeed a criminal offense, for either appellant to apply for a passport while remaining a member of the Communist Party." *Ibid* at 503-504 In our case, **it is futile** to file an application for appeal because **the regulation** controlling appeals **excludes appeals** to those whose passport denials or revocations are done because of the applicant not giving a SSN.

### E. The *Aptheker* Court Declared The Revocation Of A Passport, Without Prior Due Process And Judgment For Unlawful Conduct, Unconstitutionally Restricted The Right To Travel

90.    The *Aptheker* Court cited *Kent v. Dulles,* 357 U.S. 116, 127 (1958) where the Supreme Court ""… declared that the right to travel abroad is "an important aspect of the citizen's 'liberty' guaranteed in the Due Process Clause of the Fifth Amendment.'"" The passport-denying and revoking statute was held unconstitutional for reasons on par with the reason the Defendants regulations, 22 C.F.R. 51.60(f) and 22 C.F.R. 51.70(b)(2), and their application to us are unconstitutional in the way they arbitrarily restrict our right to travel. The *Aptheker* Court, continuing to quote *Kent*, declared:

> "The right to travel is a part of the `liberty' of which the citizen **cannot be deprived** <u>without due process of law under the Fifth Amendment</u>. . . . Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. Travel abroad, like travel within the country, . . . may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values." *Aptheker v. Secretary of State* at 505-506 citing *Kent v. Dulle*s, 357 U.S. 116 at 125-126. (Emphasis added)

> "**The substantiality of the restrictions cannot be doubted.** The Denial of a passport, given existing domestic and foreign laws, **is a severe restriction upon, and in effect a prohibition against**, world-wide foreign travel." *Aptheker* at 507 (Emphasis added)

91.    Again, the effect of the passport renewal denial and revocation is a common law injury of writ ne exeat republica (regna), without due process, contrary to the law of the land. Contrary to the statement of the Defendant, we continue to state a claim that Carmichael was denied due process in the revocation of his passport without due process, and all were denied due process by 22 C.F.R. § 51.60(f) that institutes the denial of our passports because of not identifying with a SSN, which is not a wrong, lumping us in with those who have been found after due process to be guilty of wrong as listed in the other subparagraphs 51.60(a)-(h).  It is also an injury of due process where § 51.70(b)(2) excludes the ordinary pre-denial-execution appeal process that is denied to us but is available to all others who are denied for things that are also not wrong.

> Where Congress intrusts administrative agenies with broad control over activities which in their detail cannot be dealt with directly by the Legislature, Congress must determine the standards of administrative action, and in administrative proceedings of a quasi-judicial authority, liberty and property of citizens must be protected by fair and open hearings. *Morgan v. U.S.,* 304 U.S. 1  (1938)

**F.    Lewis and Pakosz Constitutional Claims – Plaintiffs' Justifiably Challenge The Constitutionality of The Regulation, And Actions of The Defendants, And The Court Has Jurisdiction To Provide Relief**

92.    Again, the Defendants base their whole argument against the complaint upon the Defendants alleged "actions during the remand period."  The Defendants treat the vital natural liberties of the Plaintiffs, for which the government is instituted to protect, as mere material property that is remediable by replacement.  Every day that a man suffers *ne exeat republica* without the judgment of his equals or the law of the law is a new injury.  Immediate relief from the chains is necessary to stop and prevent further injury, and damages ought to be paid to provide salve to the injury and incentive to dissuade the wrongdoer from repeating its wrongs. The Defendants treat laborious litigation as no harm.  However, laborious litigation is only

tolerable in a before-the-fact threat of injury where the government is making an accusation that there should be the execution of writ ne exeat republica.

93.    The cases the Defendants cite are inapposite to our case in that due process was afforded the complainant prior to passport denial or revocation, and they are cases regarding material property rights where the property lost can be remedied by replacement, ie, "without a cause" injury.   The first case cited by the Defendant shows the denial of a passport was warranted under 22 C.F.R. § 51.60 because the person was in arrears of child support of more that $5,000.   There was a before-the-fact due process applied to the man where the Court said, "Plaintiff has never challenged the state's determination of arrears, either administratively or in a state court Article 78 proceeding, despite being counseled by state defendant employees that he can still do so at any time." *Weinstein v. Albright,* 261 F.3d 127, 135 (2d Cir. 2001).   Weinstein could not successfully challenge the implementing statute or the particular subparagraph of the regulation because he had meaningful time and manner 'before-the-fact' due process.

94.    The case cited by the Defendants corroborates our complaint.   It also exposes the gravity of the due process wrong done to us in penalty for our loyalty to the Living God.   Mr. Weinstein could have shrunken his child support debt to less than $5,000 in arrears.   Not so for us.   There is no bond for which we can apply or material wealth which we can sacrifice to ward off the *writ ne exeat republica*.   We are indentured until we forsake religion and identify with the unnatural number of the beast.   The unconstitutional vague and overbroad regulation and statute spawn our confinement without due process and without of a natural or civil wrong prerequisite.

95.    The U.S. Supreme Court decision cited as a *Weinstein* quote also has the Defendant corroborating our constitutional claims.

In disposing of the first issue, there is no occasion to linger long. It is clear **that failure to give the petitioner notice of the pending adoption proceedings violated**

**the most rudimentary demands of due process of law**. "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at <u>a minimum</u> they require that deprivation of life, liberty <u>or</u> property by adjudication be <u>preceded by notice and opportunity for hearing appropriate to the nature of the case</u>." *Mullane v. Central Hanover Tr. Co*., 339 U.S. 306, at 313. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer*, 311 U.S. 457; *Grannis v. Ordean*, 234 U.S. 385; *Priest v. Las Vegas*, 232 U.S. 604; *Roller v. Holly*, 176 U.S. 398. . . ." Id., at 314" *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965) (Emphasis added)

96.    Prior to making its remark quoted by our Defendant, "at a meaningful time and in a meaningful manner", the U.S. Supreme Court explained the nature of the process that is required for it to be meaningful in time and manner.  That meaningful time and manner is <u>before</u> the deprivation of right, for a number of meaningful reasons:

> The Texas Court of Civil Appeals implicitly recognized this constitutional rule, but held, in accord with its understanding *551 of the Texas precedents, that whatever constitutional infirmity resulted from the failure to give the petitioner notice had been cured by the hearing subsequently afforded to him upon his motion to set aside the decree. 371 S.W.2d, at 412. **We cannot agree**. 551 7 7 See *Lee v. Purvin*, 285 S.W.2d 405; *Dendy v. Wilson*, 142 Tex. 460, 179 S.W.2d 269; *DeWitt v. Brooks*, 143 Tex. 122, 182 S.W.2d 687; *Johnston v. Chapman*, 279 S.W.2d 597. Had the petitioner been given the timely notice which the Constitution requires, the Manzos, as the moving parties, <u>would have had the burden of proving their case as against whatever defenses the petitioner might have interposed</u>. See *Jones v. Willson*, 285 S.W.2d 877; *Ex parte Payne*, 301 S.W.2d 194. It would have been incumbent upon them to show not only that Salvatore Manzo met all the requisites of an adoptive parent under Texas law, but also to prove why the petitioner's consent to the adoption was not required. Had neither side offered any evidence, those who initiated the adoption proceedings could not have prevailed.  *Armstrong v. Manzo at  550-551*

97.    The case which the Defendant cites, *Hudson v. Palmer*, 468 U.S. 517 (1984) regards damage of personal property on the de minimis level of that which is possessed in a jail cell where the property or its value can be replaced, and tort action was available in a State court. Where the Defendant cited *Lujan v. G&G Fire* Sprinklers*, Inc*., 532 U.S. 189 (2001), that case is one where the U.S. Supreme Court overruled a 9th Circuit finding of the state statutes being

unconstitutional as a violation of due process.  However, the Supreme Court pointed out that the nature of that particular injury to the plaintiff <u>was not like ours</u>.  If it had been like ours, the <u>statute precluding a hearing prior to the intrusion on a property right would be unconstitutional</u>.

> In each of this Court's *190 cases relied upon by the Ninth Circuit, the claimant was denied a right by virtue of which he was presently entitled either to exercise ownership dominion over real or personal property, or to pursue a gainful occupation. See, e.g., *United States v. James Daniel Good Real Property*, 510 U.S. 43, 62. Unlike those claimants, G G has not been deprived of any present entitlement.  *Lujan v. G G Fire Sprinklers, Inc*. 532 U.S. 189, 190 (2001)

98.    The statute 22 U.S.C. § 2714a(f) and the associated regulations that empower and direct the Defendant to deny or revoke our passport without prior due process makes them unconstitutional.  Without our having to do a wrong, and without having the government bear any burden to prove us doing wrong, they injure our entitlement to life, liberty and property associated with our natural right to travel.  The Defendants' case corroborates our complaint.

99.    It is a fact that there is a property interest in the passport itself, and remedy of a passport in hand as a matter of property restored is actionable.

> Whether a particular constitutional protection attaches depends upon the relative weight of private interest affected and governmental function involved and not upon assignment of meaning to the word "property."  *U.S. v. Husband R. (Roadh)*, C.A. Canal Zone 1971, 453 F.2d 1054, certiorari denied 92 S.Ct. 1783, 406 U.S. 935, 32 L.Ed. 2d 136  p. 525

> For purpose of this amendment a "property interest" is an <u>entitlement to a government benefit arising out</u> of law or contract and it is not created by the Constitution.  *Garcia v. U.S,* C.A.Fla. 1982, 666 F.2d 960, cert. denied 103 S.Ct. 73, 459 U.S. 832, 74 L.Ed.2d 72, (Emphasis added)

### VIII.    The Defendants Expose The Unconstitutionality of Another Statute In Order To Justify The Unconstitutional Regulation.

100.  The Defendants enlighten us to the statute 8 U.S.C. § 1504(a), which spawned the denial of appeal through 22 C.F.R. § 51.70(b)(2).  That statute is unconstitutional due to violation of the fifth, first and ninth amendments to the U.S. Constitution.  The Congress cannot

authorize by 8 U.S.C. § 1504(a), that which the Constitution prohibits.

> (a) The Secretary of State is authorized to cancel any United States passport or Consular Report of Birth, or certified copy thereof, if it <u>appears</u> that such document was illegally, fraudulently, or erroneously obtained from, or was created through illegality or fraud practiced upon, the Secretary. The person for or to whom such document has been issued or made shall be given, at such person's last known address, written notice of the cancellation of such document, together with the procedures for seeking a prompt post-cancellation hearing. The cancellation under this section of any document purporting to show the citizenship status of the person to whom it was issued shall affect only the document and not the citizenship status of the person in whose name the document was issued. 8 U.S.C. § 1504(a) *Cancellation of United States passports and Consular Reports of Birth* (Emphasis added)

101. The Defendants raise another issue in saying that people offended by 8 U.S.C. § 1504(a) are afforded a hearing pursuant to 8 U.S.C. § 1503 which is only available to those who are "nationals" of the United States but not to those who are citizens. The Defendants explain that, "the State Department does afford hearing to some individuals whose passports have been denied or revoked." In fact, in some cases they might even provide notice to some prior to the execution of what is a *writ ne exeat republica*, citing cases relating to non-nationality, **but <u>not</u> us**. The statute in effect says that the Secretary of State may be the agent who accomplishes a *writ ne exeat republica* without even an accusation, investigation, notice of suspicion, opportunity for the accused to rebut the "appearance", or even such process or "appearance" being brought to the attention of the Secretary. This statute is facially an unconstitutional denial of natural and fundamental right without due process.

> "Under 8 U.S.C. § 1504, the Department is required to provide hearings to individuals whose passports are cancelled due to illegality, fraud, or error. See 8 U.S.C. § 1504(a). The Department's regulations specify in what circumstance a hearing is available. See 22 C.F.R. § 51.70, et seq. They specifically do not afford hearings when an individual has had her application denied or passport revoked on the basis of non-nationality. See 22 C.F.R. § 51.70(b). Similarly, hearings are not generally provided when an applicant has refused to provide information or is claiming that an accommodation should have been granted." (ECF 99, Def. Mot. Dismiss, p. 15)

102. Another serious flaw is that the notice of the cancellation must include procedures for

**seeking** a prompt post-cancellation hearing.  It is capriciously vague allowing the Defendant to do what they did in the Carmichael letter, which was to show the path of seeking a hearing, where the search leads you down **a path that absolutely denies a post-cancellation hearing**.

103.  In the tax code, the Congress gave the U.S. District Court the jurisdiction to adjudicate actions for *writ ne exeat republica*, 26 U.S.C. § 7402.  In contrast to 8 U.S.C. § 1504, it is a constitutional statute that provides a venue for the government to bear its burden of proof, and the accused to have their day in court, <u>prior</u> to the denial of the natural and fundamentally protected right to travel.  The Congress cannot by its own fiat, nor secondarily through the fiat of the Secretary, empower the Secretary or his biased agent to exact a *writ ne exeat republica* <u>on even the guilty</u>, no less those who merely have an "appearance" of guilt, without due process. Here are a list of things which provide the structure to due process in an unbiased tribunal:

> "1)  Notice of the proposed action and the grounds asserted for it.  2)  Opportunity to present reasons why the proposed action should not be taken.  3)  The right to present evidence, including the right to call witnesses.  4)  The right to know opposing evidence.  5)  The right to cross-examine adverse witnesses.  6)  A decision based exclusively on the evidence presented.  7)  Opportunity to be represented by counsel. 8)  Requirement that the tribunal prepare a record of the evidence presented.  9) Requirement that the tribunal prepare written findings of fact and reasons for its decision."  *Due Process* | Wex | US Law | LII / Legal Information Institute (cornell.edu)

104.  To close their argument regarding our constitutional claims, the Defendants again erroneously waive their maxim-maximus, "during the remand period" as that which supersedes their obligations of the laws of the United States and the constitution (ECF 99, p. 16, 2nd para.). They then reiterate their "sufficiently recent photographs" non-law whimsy.  It is absurd.

### IX.  Plaintiffs Damages Claims Will Prevail After Discovery Ripens Them Since Those Acting Maliciously In Their Official Or Private Capacities Are Hidden

105.  Privacy Act, Due Process, and Religious liberty injuries in our case came from real people ignoring the law, conspirators who, some under obligation of an oath, knew or had the

duty to know that they were violating the law.  Even if there were not statutory monetary relief from the United States, there are people who did act, and are acting, under the color of law, maliciously, against the law.  In so doing, they are acting in their private capacity and are not yet particularly named because the record of their wrong-doing has been unlawfully sequestered.

106.   Jonathan Rolbin, Kristen Watkins, Christine McClean, Steven Miller, Paul Peek, Florence Fultz, Michael Richard Pompeo are each suspect of being actors and conspirators to the violation of our rights under the United States Constitution, the Privacy Act, 42 U.S.C. § 408, 18 U.S.C. 242, 22 U.S.C. § 2721 and the Religious Freedom Restoration Act.  Christine McClean was the only known actor besides Mr. Pompeo until the involvement of others was introduced in the Defendants' extra-record declaration filings and memoranda.

107.   Discovery is necessary for the Court to examine evidence to see: who it is and was, who did or are, violating the law; are acting unilaterally or in collusion, or under orders; who are under an oath to support and defend the Constitution and to uphold the law of the United States, and who those are who are agents acting willfully, negligently, intelligently or recklessly.  They are defendants who are described as co-conspirators in the complaint and who are liable.

## X.   There Are Damages Due For Religious Freedom Restoration Act And Fifth Amendment Violations

108.   The Defendants erroneously argue that the 42 U.S.C. § 2000bb-1(c) remedy to seek relief after-the-fact somehow negates a before-the-fact due process violation.  They also argue erroneously that there are no damages due since the violator was the immune official of the immune department of the immune most powerful government on the planet.  And… since damages cannot be due, there is no cause of action.  Therefore, 42 U.S.C. § 2000bb-1(c) must be held as no remedy at all, and the Plaintiffs case must be dismissed.  Under that logic, 42 U.S.C. § 2000bb-1(c) has obliterated a civil prohibition against government abuse as old as Magna Charta.

If there is no relief but merely a statutory remedial façade, taxpayer-funded power-exerters, like the co-conspirators in our case, are free to abuse power to the injury of any person's life, liberty and property according to each bureaucrat's recalcitrant whim.

109.  The Defendant's say that immunity bars damages relief from Secretary Pompeo, or his successor, since he is sued in his official capacity.  That is no bar to damages relief in this case.  The Defendants erroneously summarize that "only official capacity claims are at issue in this litigation."  The United States is subject to damages according to congressional act as mentioned in paragraph 8 of the complaint (ECF 51, from ECF 46-2, Motion-Mem. Attach. 9), The complaint cited other defendants, "…co-conspirators and agents that shall be identified or confirmed upon discovery" which includes those acting in or out of their official capacity.

110.  The conspiracy statute 18 U.S.C. § 242 was one of the counts in the complaint, as well as violations of the Privacy Act, as well as violation of 42 U.S.C. § 408 which says that denied rights, benefits and privileges to us for not identifying with a SSN, in violation of United States Law is a *mala prohibita* felony.  Such violations by their nature are by perpetrators acting under the color of law, not in their official capacity.  They are those who violated laws of the United States, as well as the constitution, and therefore their acts are subject to punitive or other damages depending on the facts of their particular behaviors and the chains of law that would otherwise bind them in an official capacity.  The actual name of those co-conspirators are not revealed in their under the color of law correspondence.  "Sincerely, Bureau of Consular Affairs, Passport Services, Office of Legal Affairs and Law Enforcement Liaison" is a pseudonym for some actual natural person who violated the law to our injury.  No thanks to the initial 90 days of unwarranted additional time without good cause or excusable neglect, and going on ten-months of frivolous "remand period" tactical delay, our access to fresh memory of the hostile witnesses

must be victim of natural decay.  It is shameful.  Nonetheless, though delay may decrease our odds of credible discovery, we have standing and the court has the grant of power over our remedy and relief.  **The Defendants motion for dismissal under Rule 12(b)(1) and (6), and summary judgment fails.**

### XI.  Plaintiffs Have a Viable Claim For Damages Under The Privacy Act – It Is A Novel Case That Is Not On Par With The Case Cited By The Defendants

111.    The Defendants admitted that they mandated the Plaintiffs to identify with a SSN in order to receive a passport when in fact, they said in their memorandum, "such disclosure is indeed voluntary."(Def. Mot. Dis., ECF 99-1, p. 27, ¶1st).  The Defendants admitted that proving a minimum threshold of $1,000 of "actual damages" is not required, saying," Upon showing some pecuniary harm, no matter how slight, they can recover the statutory minimum of $1,000, presumably for any unproven harm." Id. at 296."" (Def. Mot. ECF 99-1, p. 19).  Plaintiffs Lewis and Pakosz spent pre-litigation money which would not have been necessary had the defendants issued his passport rather than unlawfully deny it (Lewis Declaration, Attachment 2, & Pakosz ECF 53).  Those who survive Pakosz have the option of succession in his case for his family and estate.  The discovery that should have been unleashed long ago according to the rules will expose and verify the Plaintiffs' accusations against the malicious wrong-doers who are hidden behind the monikers of Customer Service, or Law Enforcement Liaison Division.

> If a court determines in a subsection (g)(1)(D) suit that the agency acted in an "intentional or willful" manner, the Government is liable for "actual damages sustained by the individual … , but in no case shall a person entitled to recovery receive less than … $1,000." §552a(g)(4)(A). Pp. 3—4.  *Doe v. Chao*, 540 U.S. 614, 617 (2004)

### XII.  The Term Actual Damages Is Identical To The Term Compensatory Damages As A Matter Of Law According To The United States Supreme Court.  Compensation Relief For Unlawful Writ Ne Exeat Republica Without Due Process Is Therefore Due As Damage In Fact

112.  The term actual damages is compensatory damages or "compensation."  The U.S.

Supreme Court said, "the phrases compensatory damages and actual damages are identical."

*Birdsdall v. Coolidge,* 93 U.S. 64 (1876).   The definition of actual damages is not limited to

measurable dollar injuries or personal property injuries that can be particularly valued at the

latest suggested retail price.  The compensation for violation of due process manifesting in a

liberty injury, actual damage, is "Compensatory damages" which are actual damages.  A loss of a

leg is an actual damage that has no price tag.  The injury to the Plaintiffs must include the cost to

the life, livelihood, and liberty of the injured Plaintiffs, before and after commencement of

litigation, is a matter of fact to be determined by a jury.

> Damages are given as a compensation, recompense, or satisfaction to the plaintiff, for
> an injury actually received by him from the defendant. Compensatory damages and
> actual damages mean the same thing; that is, that the damages shall be the result of
> the injury alleged and proved, and that the amount awarded shall be precisely
> commensurate with the injury suffered, neither more nor less, whether the injury be to
> the person or estate of the complaining party. 2 Greenl. Ev. (10th ed.) sect. 253.
> *Birdsdall v. Coolidge*, 93 U.S. 64 (1876)

113.  Discovery will verify the malice inferred from circumstances to justify punitive

damages.

> Although actual malice must be proved to justify punitive damages, legal malice
> inferred from circumstances is sufficient to support award of compensatory damages.
> *Tweedy v. J.C. Penney Co.*, 216 Va. 596; 221 S.E.2d 152 (1976)

114.  In legal contemplation, the restraint of our liberty constitutes false imprisonment.

> "False imprisonment is restraint of one's liberty without any sufficient cause
> therefor[; it is not essential that a person is] confined in jail or in the custody of an
> officer." *Zayre of Va., Inc. v. Gowdy*, 207 Va. 47, 50-51 (1966). "If a person is under
> a reasonable apprehension that force will be used unless he willingly submits, and he
> does submit to the extent that he is denied freedom of action, this, in legal
> contemplation, constitutes false imprisonment." Id. at 51

115.  In the States where the Plaintiffs reside, false imprisonment is an injury-in-fact that

warrants an award of pecuniary compensation damages, or actual damages, notwithstanding the

lack of a retail receipt.  It is a matter of fact for a jury's determination.

### XIII.   The Religious Freedom Restoration Act Contemplates All Categories of Damages As "Appropriate Relief" Payable By The United States Or Those In Their Private Capacity Depending On The Facts

116.  The Defendants' claim that the RFRA does not waive sovereign immunity is erroneous..  Certainly, the remedial RFRA's use of the broad term "appropriate relief" contemplates any damages payments due for an injury-in-fact by the United States through its agents acting in their official capacity, or by its agents who are liable in their private capacity for their unlawful acts done under the color or law.

117.  It is not necessary that the RFRA expressly state "sovereign immunity is waived" just as those words are not used in the Federal Tort Claims Act.  Under the Federal Tort Claims act, the United States is liable for those wrongful injurious actions take by those agents of the United States in their official capacity as any "legal" person would be.

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages. 28 U.S. Code § 2674 - *Liability of United States*

118.  The Federal Tort claims act does not say "sovereign immunity is waived."  In fact, it itemizes where immunity is specifically retained to those natural persons who are acting in their official capacity (See 28 U.S.C. 2674, 3rd para.) who themselves are immune from liability as an employee, legislator or judge.  Proving that a natural person injured us while acting in their official capacity is necessary to prove the liability for money damages by the artificial person, the United States.  RFRA does not reserve any particular immunity.  The Congress exercised its prerogative in RFRA to use broad terms that are contemplated in law to be liberally construed.  Whether or not the United States is liable for actions taken by those in their official capacity, or whether natural persons are liable for actions taken in their private capacity acting under the

color of law or their office, turns on facts that must be considered post-discovery.

119.   The Defendants misguide the Court saying "Several circuit courts have explicitly held that RFRA's waiver of sovereign immunity does not extend to money damages."  The United States Supreme Court has given important guidance on the topic of damages in our case, particularly in a situation where the Defendant argues that their intention to change their behavior makes a case moot for want of available quantifiable money relief.  In the case of *Uzuegbunam, et al., v. Preczewski*, et al., "The college officials ultimately chose to discontinue the challenged policies rather than to defend them, and they sought dismissal on the ground that the policy change left the students without standing to sue. The **parties agreed that the policy change rendered the students' request for injunctive relief moot**, but disputed whether the students had standing to maintain the suit based on their remaining claim for nominal damages." *Uzuegbunam, et al., v. Preczewski*, et al., 141 S.Ct. 792, 797 (2021).  The Eleventh Circuit held that while a request for nominal damages can sometimes save a case from mootness, such as where a person pleads but **fails to prove an amount of** compensatory damages, the students' plea for nominal damages alone could not by itself establish standing.  **The U.S. Supreme Court disagreed,** as summarized in the Syllabus:  "A request for nominal damages satisfies the redressability element necessary for Article III standing where a plaintiff's claim is based on a completed violation of a legal right. Pp. 797-802."

120.   We establish that we have an **injury** in fact which raised causes of action on several counts, and the injury is a result of the challenged conduct.

> To satisfy the "'irreducible constitutional minimum'" of Article III standing, a plaintiff must not only establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct, but he must also seek (3) a remedy that is likely to redress that injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)

121.   Thus, we now refute the Defendants' attempt to escape scrutiny by their claiming that

there is no relief which the court can provide.  Discovery, declaratory judgment, injunction, mandamus, are relief that is due as well as monetary relief (Amended Complaint, Mot. Memo. Attach 9., pp. 59-62; ECF 46-2, pp. 80-83).   The damages contemplated by the general terms in the amended complaint, paragraph 148, include and are not limited to nominal damages.  That is relief which the Court can provide.

> Later courts, however, reasoned that *every* legal injury necessarily causes damage, so they awarded nominal damages absent evidence of other damages (such as compensatory, statutory, or punitive damages), and they did so where there was no apparent continuing or threatened injury for nominal damages to redress. See, *e.g., Barker v. Green,* 2 Bing. 317, 130 Eng. Rep. 327 (C. P. 1824) (nominal damages awarded for 1-day delay in arrest because "if there was a breach of duty the law would presume some damage"); *Hatch v. Lewis,* 2 F. & F. 467, 479, 485-486, 175 Eng. Rep. 1145, 1150, 1153 (N. P. 1861) (ineffective assistance by criminal defense attorney that does not prejudice the client); *Dods* v. *Evans,* 15 C. B. N. S. 621, 624, 627, 143 Eng. Rep. 929, 930-931 (C. P. 1864) (breach of contract); *Marzetti* v. *Williams,* 1 B. & Ad. 415, 417-418, 423-428, 109 Eng. Rep. 842, 843, 845-847 (K. B. 1830) (bank's 1-day delay in paying on a check); *id.,* at 424, 109 Eng. Rep., at 845 (recognizing that breach of contract could create a continuing injury but determining that the fact of breach of contract by itself justified nominal damages).  *Uzuegbunam, et al., v. Preczewski*, et al., 141 S.Ct. 792, 798 (2021). ***

122.  The Supreme Court's decision in *Uzuegbunam* was not available to the Plaintiffs when the original complaint was filed or amended.  The Plaintiffs did not understand the term "appropriate relief" as it related to standing until they read *Tanzir* (Oct. 2020) months after it was decided and after the complaint was amended; and more recently *Usegbunam* .  None-the-less, nominal damages are contemplated among others in paragraph 148 of the amended complaint (ECF 46-2, p. 82 of 88 & ECF 51, p. 61).  The case should not be dismissed without the Plaintiffs being able to amend the complaint to be consistent with the law that has recently been made clear by the United States Supreme Court.  Amendment of the complaint needs to be done post-discovery for the sake of both efficiency and justice.

> Applying what he called Lord Holt's "incontrovertible" reasoning, Justice Story explained that a prevailing plaintiff "is entitled to a verdict for nominal damages"

whenever "no other [kind of damages] be proved." *Webb v. Portland Mfg. Co.,* 29 F.Cas. 506, 508-509 (No. 17,322) (CC Me. 1838). Because the common law recognized that "every violation imports damage," Justice Story reasoned that "[t]he law tolerates no farther inquiry than whether there has been the violation of a right." *Ibid.* Justice Story also made clear that this logic applied to both retrospective and prospective relief. *Id.,* at 507 (stating that nominal damages are available "wherever there is a wrong" and that, "[a] fortiori, this doctrine applies where there is not only a violation of a right of the plaintiff, but the act of the defendant, if continued, may become the foundation, by lapse of time, of an adverse right"). *Uzuegbunam, et al., v. Preczewski*, et al., 141 S.Ct. 792, 798 (Placement earlier?)

123. The *Uzuegbunam* Court could be quoted en masse because of it being on point with our opposition to the grounds upon which the Defendants base their motion for dismissal. Thus there is no doubt that we have the burden to prove compensatory damage, but that is a matter of fact for a jury. And where compensation cannot be materially proven, nominal damages are appropriate relief at a minimum by default.

They are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages. See, *e.g., Dods,* 15 C. B. N. S., at 621, 627, 143 Eng. Rep., at 929, 931 (prevailing plaintiff entitled to nominal damages as a matter of law even where jury neglected to find them); see also *Stachura,* 477 U.S. at 308, 106 S.Ct. 2537 (rejecting the argument that courts could presume, without proof, damages greater than nominal). *Uzuegbunam,* at 800

124. Like in *Uzuegbunam,* the Defendants have completed a violation of our constitutional rights when they unlawfully denied and revoked our passport renewals, and when they did so without pre-enforcement adversarial due process, and when they did so with wanton, willful, intelligent and not merely negligent but reckless disregard for statutory obligations and prohibitions.

## XIV.  The Privacy Act Relief Due Is Not Merely Monetary.  Change of The Injury To The Record Is Due

125. The Privacy Act provides for the correcting of the record. The Defendants' Record is in error and needs to be corrected. On certain dates, the Defendants record regarding the

Plaintiffs was made to say, passport renewal denied, or passport renewal approved application canceled. Those records need to be changed to say, passport renewal application approved, and passport approved renewal not cancelled. See 5 U.S.C. § 552a(d)(2).

126. That determination of fact and law, and appropriate relief remains to be granted.

## XV.   The New Privacy Act Violation Warrants Damages Relief

127. **The Defendants have committed another <u>violation</u> of the Privacy Act** through their demanding that the Plaintiffs volunteer to provide a record with the penalty of denial of their passports for not volunteering for non-religious reasons even though the law does not require the record that they demanded.

> (4) the term "record" means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to,… that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a **photograph**; 5 U.S.C. § 552a(a)(4) (Emphasis added)

128. The Defendant has thus violated 5 U.S.C. § 552a(e)(1), where they demanded the Plaintiffs to volunteer to provide a photograph that is not relevant or necessary according to the laws and regulations of the United States; while the ramification of not volunteering was the denial of the applications that should have been lawfully approved years earlier.

> (e)Agency Requirements.—Each agency that maintains a system of records shall—
> (1)  maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President;  5 U.S.C. § 552a(e)(1)

129. The Defendant violated 5 U.S.C. § 552a(e)(2) where the agency did not even attempt to collect information directly from the individual when it might result in an adverse determination but instead merely had their lawyer communicate to a Court about the possibility of their intentions to communicate the request for a record.

> (e)Agency Requirements.—Each agency that maintains a system of records shall—

(2) collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs; *Id*

130. The Defendant has thus again violated 5 U.S.C. 552a(e)(3)(A-D). The demand did not explain that their invitation for a voluntary submission of a new photograph record was actually mandatory. Also, they cited as an authority a certain written policy and explained a false requirement of the written policy rather than quoting the true written policy:

(3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—
(A) the authority (whether granted by statute, or by executive order of the President) <u>which authorizes the solicitation of the information</u> and whether disclosure of such information is **mandatory** or **voluntary**;
(B) the principal purpose or purposes for which the information is intended to be used;
(C) the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and
(D) <u>the effects on him</u>, if any, of not providing all or any part of the requested information; *Id* (Emphasis added)

131. Those new violations of the Privacy Act demand an amendment to the complaint that should be part of the final complaint amendment that comes upon the completion of discovery.

**XVI.** Punitive or Compensatory Damages Value Has Been Quantified By Congress. It Is Up To A Jury To Decide The Value Of Compensation Due For The Injury To The Plaintiffs By Malicious Conduct Of Persons Violating Felony Statutes

132. Notwithstanding the Court's premature dismissal of our Sixth Cause of Action, Violation of 42 USC §408(a)(8), and our Ninth Cause of Action, Violation of 18 USC §241, Conspiracy against rights, we still have a right to the money penalty owed by whomever it is that is responsible to pay for the violations of those statutes to our hurt. The Congress has quantified the pecuniary value to the injury that to us in direct result of the violation of those laws. It is up to a jury to decide upon evidence verified by discovery.

**XVII.** **Plaintiffs Adequately Alleged Willfulness of Bad Actors And The Causal Relationship To The Defendants' Violation of The Privacy Act**

133. Contrary to the Defendants statement, we did allege that Defendants actions were intentional, willful, malevolent, and with hostility and were causal to the violation of the Privacy Act. Malicious conduct is expressly alleged or inferred where there was allegations of willful, neglectful, intelligent, reckless, malicious, bad faith, or etcetera conduct by the actors whose violations of law and injury to the Plaintiffs result ultimately in the violation of the Privacy Act. (Am. Comp., ¶¶ 95, 108, 109, 110, 111, 11;, Amend. Two ¶ 1., 2., 13, 18., 19, 20, 21, 25; 116, 118, 119, 124.f.-k, , 119, 125. 128, 140. Such conduct, violating the laws of the United States, including the Privacy Act, are felonies according to 42 U.S.C. ¶ 408(a)(8).

**XVIII.** **Defendants' Reference To Special Damages Is Misapplied And No Bar To The Plaintiffs' Standing Or Relief In This Case**

134. Rule 8 of the Federal Rules of Civil Procedure lays out the instructions to the Plaintiffs in their case. "(a) Claim for Relief. A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief. Rule 8(e) says, "(e) Construing Pleadings. Pleadings must be construed so as to do justice." Rule 9 is about pleading special matters, a term that is nowhere there defined. Nothing in the Privacy Act states that "actual damages" means particularly "special damages" listed in rule 9(g). Neither is the term "special damages" defined. We painstakingly included as much crossing of T's and dotting of I's as we could conceive in our untrained status and believed that we had not only left anything out but would irritate the court in our effort to be thorough. The Court cannot demand

"a short plain statement showing that the pleader is entitled to relief", and then eject our claim because we thought all the grounds had been covered and ought to be obvious. We in fact did list special damages in specificity by listing what the Congress has declared the "Special Damages" are at a minimum, $1,000.00 (ECF 51, p. 61, ¶ 144). Proof of the warranting of those special damages will be the result of discovery, where we make our evidence available to the Defendants, and we inspect the evidence accessible from the Defendants. The case cited by the Defendants is one where the plaintiff did not <u>prove</u> as a matter of fact, actual damage, that constituted the warrant of damage payment of a $1,000.00 minimum. *Richardson v. Bd. Of Governors of Fed. Reserve Sys., 288 F. Supp. 3d 231* (D.D.C. 2018).

## XIX. The U.S. Supreme Court Got It Wrong In FAA v. Cooper

135. <u>The U.S. Supreme Court got it wrong</u> in FAA v. Cooper, 132 S.Ct. 1441 (2012) and Doe v. Chao, 540 U.S. 614, 124 S.Ct. 1204 (2004). The Court flounced around a myriad of definitions of actual damage, when the definition of actual damage as it relates to the Privacy Act is found in the statute itself: "substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained." (5 U.S.C. § 552a(e)(10). The harm to us is the unlawful denial of our passports where the Defendants conduct violated the law that was enacted particularly to ward of complaints that the SSN was becoming the number of the beast.

136. Our relying of the plain reading of the Privacy Act statute is what drove the writing of our complaint. It appeared to our plain English reading that our in-country captivity is contemplated by the statute as one of those inconveniences (torts) that statute protected; and that the $1,000.00 minimum is the intrinsic evidence of an obvious waiver of sovereign immunity. On its face, the Privacy Act appears to protect the people from intrusions upon natural and civil rights, with a violation thereof being nominal damages in pecuniary compensation of a minimum

of $1,000.00.  The actual damage, or injury, for which the award is given logically should include confinement within the boarder of the country without due process.  It is a natural injury tort for which the government is instituted to protect us.  Rather than impose sovereign immunity upon the Privacy Act, the Court needs to accept the broad and liberal description that the Congress gave to those things that are an injury that the statute is written to dissuade, "…which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained."  (5 U.S.C. § 552a(e)(10).

> Subject to due process limitations, Congress may grant jurisdiction over particular subject matter to the federal courts while withholding the power to give certain remedies; when congressional intent is unclear, however, no dimunition in the remedial powers of the federal courts may be inferred.  *In re Letourneau,* 559 F.2d 892, Ct. App. (2nd Cir. 1977)

137.  With the Court relying upon its own interpretation rather than actually applying the text of the Privacy Act, it elevates an otherwise unnecessary material or merchantile damage as small as a postage stamp above the natural rights and civil liberties that the government is instituted to protect.  The Court completely disregards the description of injury in 5 U.S.C. § 552a(e)(10).  The Court completely eviscerates the Act as making it have practically no situation where damages relief can be claimed in order to have standing for a court to adjudicate the unlawful and injurious conduct of the most coercively powerful civil force on the planet.  Our case may be the case that is necessary to turn the Court's disintegration of the Privacy Act on its head with full reversal of the Supreme Court's application of its destructive interpretation.  Otherwise, the government is free to violate the Privacy Act as an ordinary practice, notwithstanding the egregious injuries it exacts upon the ordinary life and liberties of those who need protection by the Privacy Act, especially to those who forsake the SSN due to its number of the beast manifestation.

XX.    **The Steady Encounter of New Victims Warrants Finding of Fact and Conclusions of Law, With Exposure of The Full Record and Credible Discovery, So That Judgment Is Reached To Enable Complete Relief To The Plaintiffs and Protection To The Public**

138.    The Declaration of David Alan Carmichael (Carmichael Decl. Attach. 1) alerts the Court to the reality that the Defendant has been imposing a *writ ne exeat republica* to many people besides the Plaintiffs, without due process ever since the passing of the Fixing America's Surface Transportation Act.  Whether or not a person identifies with a SSN has nothing to do with the legislature's reasonable efforts to maintain interstate infrastructure.  The F.A.S.T. Act section 32101 (22 U.S.C. § 2714a) is a dangerous innovation for which each member of the legislature has a duty to avoid and avert.[3]  In light of the statute that the Congress passed that gave jurisdiction to the U.S. District Courts to adjudicate government actions to impose *writ ne exeat republica* with full due process, 26 U.S.C. § 7402, it appears the members of Congress voted for a new law, ignorant of the old, and ignorant of its derogation of the U.S. Constitution.

139.    The Items attached to the Carmichael Declaration, Items 6 through 8, are evidence to show that agents of the Defendants argue what they believe the obligations of the law are, and do

---

[3] YET farther; most gentlemen of considerable property, at some period or other in their lives, are ambitious of representing their country in parliament: and those, who are ambitious of receiving fo high a trust, would also do well to remember it's nature and importance. They are not thus honourably distinguished from the rest of their fellow-subjects, merely that they may privilege their persons, their estates, or their domestics; that they may lift under party banners; may grant or with-hold supplies; may vote with or vote against a popular or unpopular administration; but upon considerations far more interesting and important. They are the guardians of the English constitution; the makers, repealers, and interpreters of the English laws; delegated to watch, to check, and to avert every dangerous innovation, to propose, to adopt, and to cherish any solid and well-weighed improvement; bound by every tie of nature, of honour, and of religion, to transmit that constitution and those laws to their posterity, amended if possible, al least without any derogation. And how unbecoming must it appear in a member of the legislature to vote for a new law, who is utterly ignorant of the old ! what kind of interpretation can he be enabled to give, who is a stranger to the text upon which he comments. *Sir William Blackstone*, Blackstone's Commentaries on the Laws of England, Introduction, Section The First, On The Study of Law, p. 9 (Emphasis added)

so differently than that which was initially argued by the Defendants in our case, and has not been expressly recanted by them (*Id* Item 7). Their website still violates the Privacy Act. The letters from their agency show there remains a hostility and obstinacy against those who need protection of religion, and the fact that those people have paid all taxes due to support the F.A.S.T. Act infrastructure is of no consequence (*Id* Items 6 and 8).

140. It is in each case of those who are being betrayed by the Defendants, that those causes of action of which we complained are the same abuses that the Defendants are imposing on each person who contacts Carmichael looking for help. Joiners are beginning to line up. We've come to the Court for adjudication on black-letter law, as applied to what should be a black-letter record, and as applied to those proofs of facts that are necessary to be exposed by legitimate discovery. Efficiency can meet with justice where our case is a model for present and future cases and it is adjudicated as to allow the Plaintiffs their due substantial success on the merits.

## XXI. Nothing Is Waived Of Any of Those Things That We have Argued or Declared In This Case For Lack of Expressly Citing It Herein; All of Our Assertions of This Case To Date Are Incorporation Herein With or Without Reference

141. Nothing is waived of any of those things that we have alleged, argued, declared, proved, or otherwise, in this case for lack of expressly citing it herein; all of our assertions of this case to date are incorporation herein with or without reference.

## Summary

142. The government has yet to produce the administrative record which is a necessary prerequisite for even their filing of the summary judgment motion. They continue to make law up as they go, even contrary to the express text of their own written policy. They have not expressly refuted any fact of our entire pleading except for whether or not "religious accommodation" was contemplated by their staff at the first adjudication and approval of our

passports in 2007 and 2008. They falsify the facts of the actual text of the written policy and regulations that require the photographs to be current within six month of the issue date. They violate the Privacy Act, again and again, demanding things that are not required by law. They've waived any contest to our claims and the facts that show the premise of their remand motion was frivolous. It is time they are held accountable to the reality of the law, the rules, and right versus wrong. Damages are those things which are wholly dependent upon verification or proof of facts through discovery which this Court has not availed itself, or to us for rebuttal. The Declarations supplied by the Defendants show that each of the Declarers need to be deposed since there is no sworn documentation to support their conclusion statements about the import of those documents, or interviews with staff. Kristen N. Watkins cannot be taken as credible, especially without sworn verified documentation, since she artfully dodged the fact that the "information" for which they were waiting to receive from Boulton was a SSN, and they had written on two occasions that without it, the application was as good as denied (Extrinsic fraud). We intend to prove that the threshold necessary to prove damages for all causes of action will be fulfilled, including those causes yet to be added from the Defendants' recent violations of law and regarding those things might come to light as a consequence of legitimate discovery.


s/David Alan Carmichael, August 20, 2021
David Alan Carmichael
1748 Old Buckroe Road
Hampton, Virginia 23664
(757) 850-2672
david@freedomministries.life

s/Lawrence Donald Lewis, August 20, 2021
Lawrence Donald Lewis
966 Bourbon Lane
Nordman, Idaho 83848