UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID ALAN CARMICHAEL, *et al.*, | |
| *Plaintiffs,* | |
| v. | Civil Action No. 19-2316 (RC) |
| ANTONY J. BLINKEN, in his official capacity as Secretary of State, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND
<u>OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION</u>**

CHANNING D. PHILLIPS, D.C. Bar No. 415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

CHRISTOPHER C. HAIR, PA Bar No. 306656
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2541
Christopher.Hair@usdoj.gov

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

   I.   Plaintiffs' Claims For Equitable Relief Should Be Dismissed. ........................................ 2

     a.   Plaintiffs' Equitable Claims Are Moot........................................................................ 2

     b.   No Mootness Exception Applies.................................................................................. 8

     c.   Plaintiffs' Constitutional Claims Fail....................................................................... 11

   II.   Plaintiffs' Claims For Money Damages Should Also Be Dismissed. .............................. 14

     a.   No Damages for Official-Capacity Claims Under the Fifth Amendment or RFRA. ...... 14

     b.   Plaintiffs' Privacy Act Claim Fails. .......................................................................... 16

   III.   Plaintiffs' Reconsideration Motion Lacks Merit........................................................... 23

CONCLUSION......................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Ahuruonye v. Interior*,
    239 F. Supp. 3d 136 (D.D.C. 2017) ................................................................. 19

*Ali v. Carnegie Inst. of Wash.*,
    309 F.R.D. 77 (D.D.C. 2017) ........................................................................ 25

*Answering Service, Inc. v. Egan*,
    785 F.2d 1084 (D.C. Cir. 1986) ..................................................................... 22

*Armstrong v. FAA*,
    515 F.3d 1294 (D.C. Cir. 2008) ..................................................................... 11

*Cierco v. Mnuchin*,
    857 F.3d 407 (D.C. Cir. 2017) ......................................................................... 8

*Cierco v. Mnuchin*,
    No. 16-5185, 2017 WL 2231107 (D.C. Cir. May 23, 2017) ........................... 10-11

*Citizens for Responsibility & Ethics in Wash. v. SEC*,
    858 F. Supp. 2d 51 (D.D.C. 2012) ................................................................. 10

*Clark v. Library of Congress*,
    750 F.2d 89 (D.C. Cir. 1984) ........................................................................ 16

*Davila v. Gladden*,
    777 F.3d 1198 (11th Cir. 2015) ..................................................................... 15

*Dick v. Holder*,
    67 F. Supp. 3d 167 (D.D.C. 2014) ................................................................. 21

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
    811 F. Supp. 2d 216 (D.D.C. 2011) ............................................................... 24

*Estate of Gaither ex rel. Gaither v. District of Columbia*,
    771 F. Supp. 2d 5 (D.D.C. 2011) ............................................................... 24-25

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ........................................................................ 7

*Glass v. Dep't of Justice*,
    279 F. Supp. 3d 279 (D.D.C. 2017) ............................................................... 23

*Haig v. Agee,*
  453 U.S. 280 (1981) ............................................................................................. 12

*Tanzin v Tanvir,*
141 S. Ct. 486 (2020) ............................................................................................. 15

*Johnson v. Panetta,*
  953 F. Supp. 2d 244 (D.D.C. 2013) ....................................................................... 15

*Judicial Watch, Inc. v. U.S. Dep't of Energy,*
  319 F. Supp. 2d 32 (D.D.C. 2004) ......................................................................... 24

*Kramer v. Gates,*
  481 F.3d 788 (D.C. Cir. 2007) ............................................................................... 24

*Leonard v. George Wash. Univ. Hosp.,*
  273 F. Supp. 3d 247 (D.D.C. 2017) ................................................................ 14, 15

*Los Angeles County v. Davis,*
  440 U.S. 625 (1979) ................................................................................................. 8

*Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ................................................................................................. 11

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ................................................................................................. 7

*M.M.V. v. Barr,*
  456 F. Supp. 3d 193 (D.D.C. 2020) ......................................................................... 8

*Mandel v. OPM,*
  244 F. Supp. 2d 146 (E.D.N.Y. 2003) ................................................................... 21

*Maydak v. United States,*
  630 F.3d 166 (D.C. Cir. 2010) ............................................................................... 19

*McManus v. District of Columbia,*
  530 F. Supp. 2d 46 (D.D.C. 2007) ........................................................................... 6

*N. Air Cargo v. USPS,*
  674 F.3d 852 (D.C. Cir. 2012) ................................................................................. 5

*Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n,*
  680 F.2d 810 (D.C. Cir. 1982) ................................................................................. 4

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,

676 F.3d 829 (9th Cir. 2012) ............................................... 15

*Pierce v. Air Force*,

512 F.3d 184 (5th Cir. 2007) ............................................... 17

*Jacobs v. Bureau of Prisons*,

845 F. Supp. 2d 224 (D.D.C. 2012) ................................. 18-19

*Quinn v. Stone*,

978 F.2d 126 (3d Cir. 1992) ............................................... 17

*Richardson v. Bd. of Governors of Fed. Reserve Sys.*,

288 F. Supp. 3d 231 (D.D.C. 2018) ...................................... 20

*Senate Permanent Subcomm. on Investigations v. Ferrer*,

856 F.3d 1080 (D.C. Cir. 2017) ........................................... 11

*Uzuegbunam v. Preczewski*,

141 S.Ct. 792 (2021) ....................................................... 16

*Webman v. Fed. Bureau of Prisons*,

441 F.3d 1022 (D.C. Cir. 2006) ........................................... 15

*Welborn v. IRS*,

218 F. Supp. 3d 64 (D.D.C. 2016) .................................... 20, 21

*Zubik v. Burwell*,

136 S. Ct. 1557 (2016) ..................................................... 5, 6

**Statutes**

5 U.S.C. § 552a ................................................................. 17

8 U.S.C. § 1504 ................................................................. 13

18 U.S.C. § 242 ................................................................. 14

22 U.S.C. 2714a ............................................................. 18, 19

42 U.S.C. § 408 ................................................................. 14

42 U.S.C. § 1983 ............................................................... 16

**Federal Regulations**

22 C.F.R. § 51.26 ................................................................ 6

22 C.F.R. § 51.60 ................................................................ 5

22 C.F.R. § 51.62 ............................................................................................... 12

22 C.F.R. § 51.65 ............................................................................................... 9, 10

22 C.F.R. § 51.70 ............................................................................................... 12, 13

**INTRODUCTION**

After a Court-ordered remand in this litigation, the U.S. Department of State ("State Department" or "Department") granted religious accommodations for Plaintiffs David Alan Carmichael, Lawrence Donald Lewis, and William Mitchell Pakosz,[1] which permitted each Plaintiff to omit their social security numbers in their respective passport applications.  Plaintiffs had filed this lawsuit to challenge the Department's prior revocation of Mr. Carmichael's passport and denial of Mr. Lewis's and Mr. Pakosz's passport renewal applications, all due to Plaintiffs' refusal to provide their social security numbers for religious reasons.

After granting Plaintiffs' religious accommodations, the Department reversed its revocation of Carmichael's passport and issued him a replacement passport.  The Department also invited Mr. Lewis and Mr. Pakosz to reapply for passports without the need to submit any fees or (of course) their social security numbers.  After further discussion among the parties during the remand, the Department offered that Mr. Lewis and Mr. Pakosz need only submit updated photographs to receive their passports (assuming eligibility) since the photographs they had initially submitted were outdated.  In response, both Mr. Lewis and Mr. Pakosz refused to submit updated photographs.  Accordingly, the Department again denied their passport renewal applications, this time for failure to submit a photograph taken within a six-month period.

On July 2, 2021, Defendants moved to dismiss Plaintiffs' remaining claims in this litigation or, alternatively, for summary judgment.  *See* Defs.' Mot. (ECF No. 99).  Defendants' motion made two primary arguments.  *First*, Defendants argued that Plaintiffs claims for equitable relief are now moot considering Plaintiffs' religious accommodations were approved

---

[1]     Shortly after Defendants filed their motion, Plaintiffs notified the Court that Mr. Pakosz died on July 5, 2021.  *See* ECF No. 103.

by the Department.  *Second*, Defendants argued that Plaintiffs' have failed to plead any viable claim for damages under either the Religious Freedom Restoration Act ("RFRA"), U.S. Constitution, or the Privacy Act.

Plaintiffs' opposition fails to persuasively rebut either of these points.  *See* Opp'n (ECF No. 106).  Specifically, Plaintiffs fail to establish that there is any reasonable, non-speculative expectation that they will again be required to submit their social security numbers despite their religious beliefs in the foreseeable future.  Plaintiffs have also failed to establish that the United States has waived its sovereign immunity for their official-capacity claims under RFRA and the Fifth Amendment.  Finally, Plaintiffs' opposition makes clear that they have failed to state a viable claim for damages under the Privacy Act, especially in light of the Department's approval of their requests for religious accommodations.  Therefore, for the reasons stated in Defendants' motion and discussed further below, the Court should dismiss this lawsuit with prejudice or, alternatively, grant summary judgment in favor of Defendants.  Finally, the Court should dismiss Plaintiffs' motion for reconsideration, which merely repeats their prior arguments.

## ARGUMENT

## I.     PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF SHOULD BE DISMISSED.

As established in Defendants' motion and discussed further below, Plaintiffs claims related to their religious accommodations are now moot and there is no reasonable, non-speculative chance that any Plaintiff will be subjected to similar alleged harm in the future. Finally, even if they were not moot, Plaintiffs' due process claims lack merit.

### a.   Plaintiffs' Equitable Claims Are Moot.

Plaintiffs' claims for equitable relief seeking to reverse Defendants' actions related to their passport applications and social security numbers are moot.  As established in Defendants'

motion via the uncontroverted declaration of Kristia Watkins (*see* ECF No. 99-3),[2] the State Department concluded that Plaintiffs have sincerely held religious beliefs and approved their religious accommodation requests. *See* Watkins Decl. ¶¶ 4-5. Those religious accommodations have been recorded in State Department records and will be referenced in the event any Plaintiff chooses to apply for a passport in the future. *Id.* ¶ 6. Additionally, as explained by Ms. Watkins, the Department is currently formalizing new policies regarding adjudicating religious accommodation requests that will be in place if Plaintiffs apply for passports again in the future. *Id.* ¶ 7.

The State Department's actions resolve Plaintiffs' request for equitable relief in this case because Plaintiffs seek to reverse the State Department's passport decisions "for reasons of failure to be identified with a [social security number] in the basis of their religion[.] 2d Am. Compl. ¶ 143. In their opposition, Plaintiffs spill much ink requesting the Court to go further. Specifically, Plaintiffs urge the Court to use its equitable powers to stop Defendants from "injuring others who are in like [sic] situation" and "set aside [the] unconstitutional policies, rules or legislation that gave rise to the injury[.]" Opp'n at 2. Plaintiffs also continue to challenge the Court's prior remand order permitting the State Department to reconsider its prior administrative actions. *See id.* at 21-24. And Plaintiffs also assert that the Department's subsequent actions do not remedy the agency's alleged earlier violations of law. *See, e.g., id.* at

---

[2]     Despite Plaintiffs' conclusory argument that the Watkins declaration is "not evidence," *see* Opp'n at 17, Defendants note that Ms. Watkins based her declaration on her personal knowledge of the documents supporting the State Department's actions in this case and, as the Acting Director of the Office of Adjudication within the State Department's Passport Services Directorate, is an appropriate official to submit a supporting declaration in this case. *See* Watkins Decl. ¶¶ 1-2.

39 (arguing that the Department's "relief after-the-fact" does not "negate[] a before-the-fact due process violation").

But Plaintiffs' opposition entirely fails to acknowledge that their religious accommodations have been granted. Plaintiffs further fail to acknowledge the Court's prior ruling in this matter, wherein the Court dismissed Plaintiffs' facial challenges to the State Department's regulations regarding the issuance of passports. *See generally* Mem. Op. Moreover, Plaintiffs ignore the effect of the Department's actions on their claims for equitable relief and they also fail to acknowledge that the D.C. Circuit has recognized that "[c]orrective action by an agency is one type of subsequent development that can moot a previously justiciable issue." *Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982) ("*NRDC*"). Once the corrective action has been taken, the case becomes moot because a court "can hardly order [an agency] . . . to do something that it has already done." *Id.* Here, the Department has taken corrective actions with respect to Plaintiffs' passport applications; therefore, Plaintiffs have no live claim for any equitable relief related to their social security numbers.

Perhaps recognizing the mootness of their claims, Plaintiffs point out the fact that neither Mr. Lewis nor Mr. Pakosz were issued passports because of the remand. They argue that "[i]f the government and its agents would have obeyed the law regarding the processing of the Plaintiffs' passport renewal applications, the Plaintiffs would now have passports." Opp'n at 1. Plaintiffs are wrong. Defendants have made it clear throughout this litigation that receiving a religious accommodation, in and of itself, does not necessarily mean that Plaintiffs will receive a passport. To be sure, in Defendants' motion for a voluntary remand, Defendants stated the following:

4

> Defendants note that [a religious accommodation] does not mean that Plaintiffs
> are necessarily eligible for the passports they seek.  Indeed, Plaintiffs appear to
> acknowledge as much in their Second Amended Complaint.  *See* 2d Am. Compl.
> ¶ 142 (requesting the Court to compel the renewal of each of Plaintiff's passports
> "unless the [Department] can show a lawful prohibition" of their receiving one).
> Subsequent to a remand, Plaintiffs would be afforded the opportunity to present
> evidence to substantiate their RFRA claim, and would need to submit appropriate
> evidence to sufficiently verify their respective identities and demonstrate that they
> are otherwise eligible for a passport.  *See* 22 C.F.R. § 51.60.

*See* Defs.' Mot. for Voluntary Remand (ECF No. 61) at 6–7.

Moreover, Ms. Pakosz is now deceased and so an order requiring the Department to issue him a passport will do Plaintiffs no good.  In any event, State Department policy prohibits the issuance of passports to deceased individuals.  *See* Defs.' Resp. to Mot. to Substitute (ECF No. 114) at 3, n. 2.  And even if Plaintiffs were to prevail in this litigation, they would not necessarily be entitled to passports because "[w]hen a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency[.]"  *N. Air Cargo v. USPS*, 674 F.3d 852, 861 (D.C. Cir. 2012) (citing *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995)).  During any remand, the parties should "be afforded an opportunity to arrive at an approach going forward that accommodates . . . religious exercise" while fulfilling the agency's requirements.  *See Zubik v. Burwell*, 136 S. Ct. 1557, 1560 (2016).  Here, the approval of passports benefits, and determinations regarding eligibility for those benefits, is within the sole purview of the Secretary of State.

Defendants acknowledge that, although the Department issued Mr. Carmichael's passport after it reversed its revocation action, the State Department did not issue a passport to either Mr. Lewis or Mr. Pakosz.  Indeed, the Department asked both Mr. Lewis and Mr. Pakosz to submit new passport photographs taken within the prior six months.  *See* Defs.' Ex. A (ECF No. 99-4).

However, the State Department never received the requested photographs.  *Id.*  Mr. Lewis acknowledges in his declaration that, although he obtained a new photograph, he "did not send it in, waiting for Judge Contreras to make a determination regarding the lawfulness of his remand order about which we contested."  *See* Lewis Decl. (ECF No. 106-2) ¶ 5.  Notably, the Court previously responded to Plaintiffs' objections to the remand and stated that it "does not intend to dissolve the remand order."  Apr. 19, 2021, Order.  The Court has also repeatedly encouraged Plaintiffs to "comply with Defendants' reasonable requests for further information in furtherance of Defendants' efforts on remand."  *Id.* (quoting Jan. 20, 2021, Order).  Due to Mr. Lewis's failure to submit his photograph, the Department denied his renewal application.

Considering the above, there is no live controversy here even though neither Mr. Lewis nor Mr. Pakosz received a passport during the remand.  Plaintiffs' operative complaint contains no allegations regarding the State Department's requirement under 22 C.F.R. § 51.26 for passport applicants to "submit with his or her application photographs as prescribed by the Department that are a good likeness of and satisfactorily identify the applicant."  And it is well settled that a plaintiff may not amend their complaint in opposition to a dispositive motion.  *See McManus v. District of Columbia*, 530 F. Supp. 2d 46, 74 n. 25 (D.D.C. 2007).  Further, as previously noted by the Court, "the refusal by Plaintiffs to provide . . . requested information, if the Court finds that Defendants' new requests were justified, may serve as a basis for the State Department to legitimately deny the requests for accommodation."  Jan. 20, 2021, Order. Whatever Plaintiffs' disagreements with this Court's prior remand Order, those disagreements are entirely unrelated to their dispute with the Department regarding their social security numbers.

As noted, the Department offered Mr. Lewis and Mr. Pakosz the ability to obtain passports if they submitted recent photographs.  The Department also made it clear that, so long as Mr. Lewis and Mr. Pakosz would confirm their respective addresses and submit new photographs, the Department would issue renewed passports without any further action required on their part (assuming eligibility).  *See* Defs. Mot. at 12.  In response, Plaintiffs chose to submit nothing, in apparent fear that doing so would negatively impact their lawsuit.  *See* Opp'n at 22 (admitting that "[i]f [Plaintiffs] file a new application, the applications that are the subject of this litigation become moot").  Further, Plaintiffs have offered no valid reason why they were unable to complete this task.  Indeed, as noted above, Mr. Lewis even obtained a passport photograph but unreasonably declined to submit it.  *See* Lewis Decl. ¶¶ 4-5.  Plaintiffs also rebuffed the Court's invitation to appoint counsel on behalf of Mr. Lewis and Mr. Pakosz.  *See* ECF Nos. 90 & 91.  Under these circumstances, the Department's actions were patently reasonable.

Finally, there is no dispute that the State Department issued Mr. Carmichael a passport. As noted, Plaintiffs' operative complaint does not challenge how his passport was issued.  Even if it had, Plaintiffs would lack standing to challenge those means because they can point to no concrete injury related to receiving a passport *benefit* that would somehow be redressed by a favorable decision in this case.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Furthermore, any self-inflicted injury caused by Carmichael's failure to sign his passport (*see* ECF No. 90 at 1) is not fairly traceable to the State Department.  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015).  In other words, Carmichael cannot "manufacture standing merely by inflicting harm on [himself]" based on his subjective apprehensions regarding how his passport was reissued.  *Id.* (quotation omitted).  Even if Mr. Carmichael had standing, his claims should still be dismissed because they are no longer properly joined to this

action.  *See* Fed. R. Civ. P. 20(a); *M.M.V. v. Barr*, 456 F. Supp. 3d 193, 221 (D.D.C. 2020) (dismissing parties from lawsuit where their claims did not arise out of the same transaction or occurrence as the others).

> **b.  No Mootness Exception Applies.**

Plaintiffs do not specifically argue that any exception to mootness applies to their case. As noted in Defendants' motion, courts recognize an exception to mootness based on a defendant's "voluntary cessation of allegedly illegal conduct," which generally "does not deprive [a court] of power to hear and determine the case."  *Cierco v. Mnuchin*, 857 F.3d 407, 414 (D.C. Cir. 2017) (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)).  But voluntary cessation will make a case moot where "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" and "there is no reasonable expectation . . . that the alleged violation will recur."  *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (citations and internal quotation marks omitted).

Plaintiffs' opposition fails to establish that there is any reasonable expectation that the alleged unlawful revocation and renewal actions will recur.  As noted, the State Department has granted Plaintiffs' religious accommodations and those accommodations will be applied to any further passport adjudications required for Plaintiffs.  *See* Watkins Decl. ¶¶ 5-6.  Plaintiffs appear to acknowledge as much by arguing that their case is not moot because of the Department's alleged actions with respect to non-parties, including proposed intervenor Ms. Michelle Boulton. *See* Opp'n at 4 (arguing that Defendants "intend to continue putting *others* through hell should they apply for a passport without identifying themselves with a [social security number] for reasons of religion") (emphasis added).  Plaintiffs do not specifically name any such non-parties except for Ms. Boulton.  *See* Carmichael Decl. (ECF No. 106-1) at ¶ 6 (referring to a "Jane

Doe"); ¶ 12 ("John Doe"); and ¶ 14 ("Monty Poe").  Accordingly, Defendants cannot

specifically address these claims other than to point out that each passport adjudication must be

based on the unique circumstances of the applicant, who bears the burden to establish eligibility

for any passport benefit.

As for Ms. Boulton, Defendants have already informed the Court that the State

Department has issued Ms. Boulton a passport without the need for her to submit her social

security number.  *See* Defs.' Status Report (ECF No. 105) at 1.  Ms. Boulton's "response" to the

Department's status report does not establish otherwise.  *See* Resp. to Defs.' Status Report (ECF

No. 109) ¶ 3 (asserting that her application was "denied multiple times").  Indeed, the

correspondence appended to Ms. Boulton's filing makes clear that her application was never

denied. [3]  *See id.*, Ex. 2 at 2 (Embassy email dated March 30, 2021, stating that Ms. Boulton's

"passport application will remain pending at the Embassy for 90 days" and "[i]f the required

information is not received within the 90-day period, the application will be denied").  After Ms.

Boulton submitted additional information, *see id.*, Ex. 3, the Department notified her that "[t]he

administrative process has been completed and your passport has been issued."  *Id.*, Ex. 8 at 1.

Further, as Ms. Boulton herself concedes, the Department issued her a passport without requiring

her to provide her social security number.  *See* Resp. to Defs.' Status Report ¶ 24 (stating that

she "received [her passport], valid for 10 years without submitting a social security number[.]").

Accordingly, for the reasons discussed in Defendants' opposition to Plaintiffs' motion for joinder

---

[3]     Defendants note that State Department regulations provide specific requirements for how
the Department must notify applicants that their passport application has been denied.  22 C.F.R.
§ 51.65(a) (providing that the notification must "set forth the specific reasons for the denial,
revocation or cancellation and, if applicable, the procedures for review available[.]").

and to intervene (*see* ECF No. 95), Ms. Boulton cannot point to any concrete injury and lacks standing to bring suit.

Moreover, Mr. Carmichael's alleged fear of "retaliation" does not resuscitate his claims. Specifically, Mr. Carmichael asserts that the government retaliated against him when he tried to assist others in obtaining passports. Carmichael Decl. ¶ 16. He claims that his computer crashed when he received an e-mail from undersigned counsel for Defendants due to "a virus or malware." *Id.* (noting that he lacks "the expertise to prove that it was the government who did it"). He also asserts that, after a deposition in his prior litigation against the government, "the stenographer's house was burglarized with nothing taken but the main device she used to record the deposition." *Id.* These alleged fears are based purely on speculation and apparent coincidence. Importantly, as the D.C. Circuit has stated, "jurisdiction cannot be predicated upon a speculative or irrational fear as to future agency conduct." *Ctr. for Sci. in the Public Interest v. Regan*, 727 F.2d 1161, 1166 n.6 (D.C. Cir. 1984). Also, such allegations fail to demonstrate that there is any reasonable, non-speculative chance that any Plaintiff will be subjected to similar alleged harm in the future. Further, where (as here) the government is the defendant "there is less concern about the recurrence of objectionable behavior." *Citizens for Responsibility & Ethics in Wash. v. SEC*, 858 F. Supp. 2d 51, 61-62 (D.D.C. 2012).

Plaintiffs have similarly failed to establish that their claims are "'capable of repetition, yet evading review.'" *Kingdomware Techs.*, 136 S. Ct. at 1976 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). This exception applies only in the "'exceptional situation,'" *id.*, "where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Cierco v. Mnuchin*, No. 16-5185, 2017 WL 2231107, at *5

(D.C. Cir. May 23, 2017) (emphasis added) (quoting *Davis v. FEC*, 554 U.S. 724, 735 (2008)).

The plaintiff has the burden of making "a reasonable showing that he will again be subjected to

the alleged illegality," *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), and "[a] controversy 'is

capable of repetition' only if 'the same parties will engage in litigation over the same issues in

the future.'" *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088

(D.C. Cir. 2017) (emphasis added) (quoting *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d

627, 633 (D.C. Cir. 2002)).

As discussed in Defendants' motion, the passport revocation and renewal application

processes are not "too short in duration to be fully litigated prior to its cessation or expiration."

*Armstrong v. FAA*, 515 F.3d 1294, 1296 (D.C. Cir. 2008) (quoting *Weinstein v. Bradford*, 423

U.S. 147, 149 (1975)).  Plaintiffs' opposition does not suggest otherwise.  Moreover, as noted

above, Plaintiffs cannot show that they will again be subjected to similar alleged harm in the

future.  *See Lyons*, 461 U.S. at 109.

### c.  Plaintiffs' Constitutional Claims Fail.

As noted in Defendants' motion, *see* Defs.' Mot. at 13, the Court need not consider

Plaintiffs' equitable relief claims any further because they are moot.  But even assuming (for the

sake of argument) that Plaintiffs' claims for equitable relief were not moot, Plaintiffs' second

amended complaint still fails to state a claim with respect to Carmichael's passport revocation and,

considering Defendants' actions during the remand, Mr. Lewis's and Mr. Pakosz's constitutional

claims fail on the merits.[4]

---

[4]      *See* Defendants' Statement of Undisputed Material Facts (ECF No. 99-2).  Although
Plaintiffs responded to Defendants' Statement of Facts, *see* ECF No. 107-1, they fail to point to
any record evidence to dispute Defendants' factual assertions, as required.  *See* LCvR 7(h)(1).
Accordingly, "the Court may assume that [Defendants'] facts . . . are admitted[.]"  *Id.*

   i. *Plaintiffs Fail to State Any Viable Due Process Claim Regarding Mr. Carmichael's Passport Revocation.*

Here, Plaintiffs allege that Mr. Carmichael was denied due process following the revocation of his passport because he was denied access to an appeal process pursuant to 22 C.F.R. § 51.70(b)(2), which provides that hearings are not afforded to people whose passports were revoked or denied for failing to provide social security numbers. *See* 2d Am. Comp. at pp. 35-36. However, as discussed in Defendants' motion, Plaintiffs are mistaken. The Department revoked Mr. Carmichael's passport pursuant to 22 C.F.R. § 51.62(a)(2). *See* Mem. Op. at 16, n.1 (noting that the State Department "did not apply 22 C.F.R. § 51.70(b)(2) to Carmichael[.] Carmichael's passport was revoked pursuant to 22 C.F.R. § 51.62(a)(2) *because it was issued erroneously*, and he was thus given the opportunity to request a hearing under 22 C.F.R. § 51.70(a).") (emphasis in original)).

Neither Plaintiffs' operative complaint nor their opposition asserts that Mr. Carmichael requested a hearing. Rather, Plaintiffs pivot to challenge the constitutionality of the State Department regulations themselves. Opp'n at 25-26. To wit, they argue that the "regulation itself is a due process violation." *Id.* at 27. However, Plaintiffs forget that their facial challenge to the State Department's regulations was previously dismissed by this Court. *See* Mem. Op. (ECF No. 45) at 18-20. Indeed, in permitting Plaintiffs to amend their claims regarding Mr. Carmichael's passport revocation, the Court noted that Plaintiffs "must allege sufficient facts that demonstrate that the procedure Carmichael received was constitutionally defective." *See id.* at 18. Plaintiffs have failed to allege any such facts. Accordingly, Plaintiffs' second amended complaint fails to rebut the Court's prior finding that Carmichael received the same due process that were approved in *Haig v. Agee*, 453 U.S. 280 (1981). Accordingly, Plaintiffs has again failed to state a claim that Mr. Carmichael was denied due process.

   *ii. Plaintiffs' Constitutional Claims Regarding Mr. Lewis and Mr. Pakosz*
    *Also Fail.*

   Plaintiffs Lewis and Pakosz similarly continue to press their due process claims.  As noted, during the remand period the State Department granted their religious accommodations and requested that they submit updated passport photographs.  They declined to do so and did not submit any reasons for their refusal outside of the instant litigation.  Under Department regulations, Plaintiffs were not entitled to a hearing under these circumstances.  This is because, under 8 U.S.C. § 1504, the Department is only required to provide hearings to individuals whose passports are cancelled due to illegality, fraud, or error.  *See* 8 U.S.C. § 1504(a); 22 C.F.R. § 51.70, *et seq.*  In general, due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner" when an individual is deprived of liberty or property interests. *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552  (1965)).  This requirement, however, is not "a technical conception with a fixed content unrelated to time, place and circumstances."  *Mathews*, 424 U.S. at 334 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)).  Rather, "due process is flexible and calls for such procedural protections as the particular situation demands."  *Id.* (citation omitted).

   Here, as part of the supplemental review afforded to Plaintiffs during the remand period—including the opportunity to engage with the Department to adjudicate their passport renewal applications without the need to submit their social security numbers—Plaintiffs have received all due process.  The fact that they refused to submit sufficiently recent photographs does not undercut this conclusion.  Accordingly, even if the Court finds that Plaintiffs' constitutional claims are not moot, those claims still fail on the merits.

## II.      PLAINTIFFS' CLAIMS FOR MONEY DAMAGES SHOULD ALSO BE DISMISSED.

Plaintiffs' claims for money damages should be dismissed because: (1) neither the U.S. Constitution nor RFRA waives the federal government's sovereign immunity for Plaintiffs' official capacity claims and (2) Plaintiffs have failed to plead any viable claim for damages under the Privacy Act.

### a.    No Damages for Official-Capacity Claims Under the Fifth Amendment or RFRA.

As demonstrated in Defendants' motion, the United States and Secretary of State (in his official capacity) are immune from Plaintiffs' constitutional damages claims.  Plaintiffs' opposition fails to point to a specific waiver for their alleged constitutional damages claims, nor is there any.[5]  And Plaintiffs' citation to several criminal statutes is inapposite.  *See* Opp'n at 40.  Specifically, Plaintiffs cite to the criminal conspiracy statute, 18 U.S.C. § 242, and a provision of the Social Security Act that makes it a felony for anyone who "discloses, uses, or compels the disclosure of the social security number of any person in violation of the laws of the United States."  42 U.S.C. § 408(a)(8).  Even assuming that these statutory provisions are somehow applicable here, neither provision provides for a concurrent civil remedy.  *See Leonard v. George Wash. Univ. Hosp.*, 273 F. Supp. 3d 247, 260 (D.D.C. 2017) (finding that various criminal statutes cited by plaintiff failed to provide any private right of action).  Indeed, "the Supreme Court has rarely implied a private right of action under a criminal statute, and a bare criminal statute, with no other statutory basis for inferring that a civil cause of action exists, is insufficient

---

[5]      Plaintiffs cite to the Federal Tort Claims Act ("FTCA") as providing an example of a waiver of sovereign immunity, but Plaintiffs do not bring any claims under the FTCA nor do they claim to have exhausted any administrative remedies for such claims as required to do so.

to imply Congress intended to create a concomitant civil remedy." *Id.* at 256-57 (quoting *Lee v. U.S. Agency for Int'l Dev.*, 859 F.3d 74, 77 (D.C. Cir. 2017) (internal quotation marks and citations omitted).  Therefore, Plaintiffs' claim for damages under the U.S. Constitution must fail.

Defendants' motion also established that in an official-capacity suit like this one, RFRA does not supply a damages remedy.  *See* Defs.' Mot. (citing *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006); *Davila v. Gladden*, 777 F.3d 1198 (11th Cir. 2015); and *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012)). Plaintiffs' opposition fails to address any of Defendants' cited authorities, arguing only that Defendants' citation to those authorities "misguide[s] the Court."  Opp'n at 44.  The Court need not tarry long with this argument because Plaintiffs' fail to flesh it out any further.  *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) (noting that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived") (citation omitted).

Nevertheless, Plaintiffs argue that they are entitled to "appropriate relief" under RFRA, to include money damages, per the Supreme Court's decision in *Tanzin v Tanvir*, 141 S. Ct. 486 (2020).  *See* Opp'n at 43-45.  Not so.  As discussed in Defendants' motion, *Tanzin* is distinguishable from earlier case law because the plaintiffs in that case sued several Federal Bureau of Investigations ("FBI") agents in both their official and individual capacities.  The Court held that the limitations on interpreting "appropriate relief" broadly in the sovereign immunity context worked in the opposite direction when the case was brought against actors in their *individual* capacity.  141 S. Ct. at 493.  Importantly, the Court did not hold that monetary

damages were available under RFRA for claims brought against government officials in their *official* capacity.  *Id.*

Plaintiffs' reliance on *Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021) is also misplaced, *see* Opp'n at 44, because that case pertains to constitutional standing and not a waiver of sovereign immunity.  In *Uzuegbunam*, the plaintiffs sued their school (and its officials) for enforcing policies that violated their First Amendment rights. 141 S. Ct. at 795.  In their complaint, the plaintiffs sought nominal damages and injunctive relief under 42 U.S.C. § 1983.  *Id.*  After discontinuing the challenged policies, the parties agreed that the defendants' policy changes rendered the claims for injunctive relief moot.  *Id.*  However, the parties disagreed whether their claim for nominal damages sufficiently conferred standing for the plaintiffs to maintain their suit.  *Id.*  The Supreme Court held that "for the purpose of Article III standing, nominal damages provide the necessary redress for a completed violation of a legal right."  *Id.* at 802.  That holding has no bearing here because money damages of any kind—including nominal damages—are unavailable absent a waiver of sovereign immunity.  *See Clark v. Library of Congress*, 750 F.2d 89, 102-03 (D.C. Cir. 1984).  Therefore, even setting aside the fact that Plaintiffs' operative complaint does not include a claim for nominal damages, it would be futile to accept Plaintiffs' invitation to amend (or interpret) their complaint to include such a claim.  *See* Opp'n at 45.

In sum, because only official capacity claims are at issue in this litigation, the United States and the Secretary of State are immune from Plaintiffs' damages claims.

### b.  Plaintiffs' Privacy Act Claim Fails.

While the Privacy Act does permit a damages remedy in some circumstances, Plaintiffs' claim under the Privacy Act is meritless.  In this case, Plaintiffs allege that Defendants violated

the Privacy Act by failing to state the circumstances under which providing a social security number is mandatory and those when it is voluntary. *See* 2d Am. Compl. ¶ 133 (alleging that the Department's Privacy Act statement for passport applications failed "to correctly state in what conditions make [disclosure of a social security number] voluntary and what make[s] [disclosure] mandatory"); *see* Mem. Op. at 20. The Privacy Act allows an individual to "bring a civil action against the agency" when it "fails to comply with any [] provision of" the Act. 5 U.S.C. § 552a(g)(1). Here, Plaintiffs' Privacy Act claim pertains to the requirements under 5 U.S.C. § 552a(e)(3), which states in relevant part that agencies must "inform each individual whom it asks to supply information . . . whether disclosure of such information is mandatory or voluntary." 5 U.S.C. § 552a(e)(3)(A).

In a suit for damages under subsection (g)(1)(D), a plaintiff must establish that: (1) the information at issue is covered by the Privacy Act's provisions; (2) the agency violated a provision of the Privacy Act not covered by the other civil remedies provisions; (3) the violation had an "adverse effect" on the plaintiff that was a "causal nexus" between the violation and the adverse effect; and (4) the violation was "willful or intentional." *See, e.g., Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir. 1992); *Pierce v. Air Force*, 512 F.3d 184, 186 (5th Cir. 2007). Plaintiffs' claim fails to meet any of the final three prongs.

*First*, Plaintiffs fail to establish that the Department's conduct violated the Privacy Act. Indeed, their claim rests on the faulty premise that disclosure of a social security number is mandatory to obtain a passport even though the Department's Privacy Act Statement says that disclosure is voluntary. 2d Am. Compl. ¶¶ 13, 133; *See* Mem. Op. at 21. Specifically, the Department's Passport Application Form states the following, under the heading "Privacy Act Statement:"

DISCLOSURE: Providing information on this form is voluntary.  Be advised, however, that failure to provide the information requested on this form may cause delays in processing your U.S. passport application and/or could result in the refusal or denial of your application.

Failure to provide your Social Security number may result in the denial of your application (consistent with 22 U.S.C. 2714a(f)) and may subject you to a penalty enforced by the Internal Revenue Service, as described in the Federal Tax Law section of the instructions to this form. Your Social Security number will be provided to the Department of the Treasury and may be used in connection with debt collection, among other purposes authorized and generally described in this section.

*See* DS-11, Passport Application Form, https://eforms.state.gov/Forms/ds11.pdf (last visited Oct. 11, 2021).  Defendants' actions during the remand period in approving Plaintiffs' religious accommodations established that disclosure of a social security number is not always required. The same is true with respect to Ms. Boulton, who (like Mr. Carmichael) successfully obtained a passport without providing a social security number.[6]  Therefore, the Department's Privacy Act statement that the failure to provide a social security number *may* result in a denial is accurate. That dooms Plaintiffs' Privacy Act claim, especially where Plaintiffs' opposition fails to acknowledge the fact of their religious accommodations.

*Second*, Plaintiffs have failed to establish that Defendants' alleged Privacy Act violation was in any way intentional or willful, as required to support a claim for damages under the Privacy Act.  To meet this requirement, a plaintiff "must prove that the offending agency acted 'without grounds for believing [that its actions were] lawful' or prove that it 'flagrantly disregarded' the rights guaranteed under the Privacy Act." *Jacobs v. Bureau of Prisons*, 845 F. Supp. 2d 224, 229-30 (D.D.C. 2012) (quoting *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242

---

[6]     Defendants note that the proponents of this lawsuit do not constitute an exclusive list of individuals who have received a passport without identifying with a social security number. Each adjudication is necessarily based on the information contained in the respective application and the applicant's explanation and evidence regarding the omission of a social security number.

(D.C. Cir. 1987)).  This element "cannot be established with mere speculation."  *Maydak v. United States*, 630 F.3d 166, 183 (D.C. Cir. 2010) (citation omitted).

Here, as discussed in Defendants' motion, the Department's Privacy Act statement supports the agency's long-standing practice of requesting social security numbers to assist its review of an applicant's eligibility for a passport benefit under Department regulations. Specifically, social security numbers assist the Department in determining an applicant's eligibility to be issued a passport (including, but not limited to, any tax delinquency under 22 U.S.C. § 2714a(e)(1)(A)) and to verify an applicant's identity.  Plaintiffs do not dispute any of these legitimate uses.  Rather, Plaintiffs merely infer "malice" as to the Department's actions by interpreting the language of the Department's Privacy Act in a vacuum.  Opp'n at 42.  To be sure, Plaintiffs offer only their conclusory allegations that the Department's actions were "intentional, willful, malevolent, and with hostility[.]"  Opp'n at 49.  But conclusory allegations of intent or willfulness are insufficient to support a claim under the Privacy Act.  *See Ahuruonye v. Interior*, 239 F. Supp. 3d 136, 144 (D.D.C. 2017) (finding plaintiff had failed to demonstrate that defendant acted intentionally or willfully because plaintiff relied "exclusively upon speculative and conclusory statements").  Therefore, Plaintiffs' Privacy Act claim must be dismissed.

*Third*, Plaintiffs have failed to adequately allege any actual damages that were caused by Defendants allegedly unlawful actions.  In *Doe v. Chao*, the Supreme Court held that a plaintiff must prove some actual damages to qualify for the minimum statutory award under section 552a(g)(4) of the Privacy Act.  *See* 540 U.S. 614, 616 (2004).  The Court also held in *FAA v. Cooper* that mental or emotional distress do not constitute actual damages for the Privacy Act. 566 U.S. 284, 287 (2012).  As numerous courts have recognized, actual damage allegations must

satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(g), which

provides that "[i]f an item of special damage is claimed, it must be specifically stated." *See*

*Richardson v. Bd. of Governors of Fed. Reserve Sys.*, 288 F. Supp. 3d 231, 237 (D.D.C. 2018)

(accepting Government's argument that actual damages under Privacy Act must, per Rule 9(g),

be "'specifically stated' and alleged with 'particularity,' and must 'specify facts showing that

such special damages were the natural and direct result of the defendant's conduct.'"); *see* Defs.'

Mot. at 20-22 (citing additional cases).

As a threshold matter, some of the "damages" Plaintiffs allege do not qualify as "actual

damages" as a matter of law.  To wit, Carmichael alleges that his lack of a passport has

"damaged [his] soul" by being denied the opportunity to visit with family outside of the United

States.  2d Am. Compl. ¶ 87.  In his declaration, Mr. Carmichael asserts that "[t]he undue stress

that [he is] experiencing is . . . shortening [his] life."  Carmichael Decl. ¶ 17.  Setting aside the

fact that Plaintiffs may not amend their complaint via an opposition brief, these are precisely the

types of "non-pecuniary harms" courts have deemed insufficient.  *See, e.g., Cooper*, 566 U.S. at

295-99, 304 (concluding that the Privacy Act does not authorize recovery for "loss of reputation,

shame, mortification, injury to the feelings," or "mental or emotional distress"); *Richardson*, 288

F. Supp. 3d at 236-37 (plaintiff's "claims of 'mental distress, emotional trauma, embarrassment,

[and] humiliation' are insufficient to state a claim under the Privacy Act"); *Welborn v. IRS*, 218

F. Supp. 3d 64, 82 (D.D.C. 2016) (noting that "[t]he Privacy Act does not allow a claim for

damages based on reputational or emotional harm" and dismissing claim that failed to plead

"calculable damages").  These allegations thus cannot satisfy Plaintiffs' heightened burden to

plead actual damages.

Further, Plaintiffs have failed to establish that any of their remaining alleged damages were caused by the Department's conduct.  Specifically, Plaintiffs allege that Mr. Pakosz paid "extra fees" for additional renewal applications for "passports which were still valid when [Plaintiffs] began the process to renew it[,]" 2d Am. Compl. ¶¶ 62, 147.  Plaintiffs also allege that Mr. Lewis submitted two renewal applications and, on January 13, 2018, paid the fee twice.  *Id.* ¶ 62.[7]  But Plaintiffs fail to plead or otherwise establish any causal link between that loss and the alleged Privacy Act violation, let alone plead such a link with "particularity" as required by Rule 9(g).  *See Browning*, 292 F.3d at 245.  Further, Plaintiffs' complaint concedes that Mr. Lewis's renewal application was denied on April 2, 2018, *see id.* ¶ 68, and Plaintiffs provide no reason why Mr. Lewis paid a second fee before that denial, let alone any reason why this payment was in any way related to the State Department's Privacy Act statement.  This defeats causation as matter of law.  *See, e.g., Dick v. Holder*, 67 F. Supp. 3d 167, 182 (D.D.C. 2014) (dismissing Privacy Act claim for lack of causation where the "plain language of the complaint . . . only suggests that it was [plaintiff's] independent actions," rather than defendant's issuance of a document that "merely described [plaintiff's] actions," which caused alleged harm); *Mandel v. OPM*, 244 F. Supp. 2d 146, 153 (E.D.N.Y. 2003) (plaintiff failed to establish "causal connection between the disclosures made and the adverse effect" where cause of alleged harm was plaintiff's own "acts of omissions and falsifications" on job application).

Plaintiffs' opposition fares no better in terms of establishing a "causal nexus" between any damages and the Department's allegedly unlawful conduct.  Mr. Carmichael asserts in his declaration that he has had to forego certain work because of the "work necessary to work this

---

[7]     Plaintiffs' complaint concedes that Carmichael was not required to pay any additional fees due to the revocation of his passport.  2d Am. Compl. ¶ 33.

case in order to recover [his] status quo[.]" Carmichael Decl. ¶ 17. The D.C. Circuit has articulated the "general rule" that "attorney's fees and other expenses of litigation are not recoverable as an element of damages." *Answering Service, Inc. v. Egan*, 785 F.2d 1084, 1086 (D.C. Cir. 1986) (finding the common-law tort for "wrongful involvement in litigation," which is not relevant here, to be a narrow exception to this rule). Next, Carmichael claims that his ability to travel domestically has been impacted. Carmichael Decl. ¶ 17. As noted in Defendants' motion, Plaintiffs have articulated no requirement for a passport to engage in interstate travel, nor can they. *See* Defs.' Mot. at 15, n. 5. For Mr. Lewis's part, he asserts that the money spent on mailing of a letter during his passport renewal application damaged him. Lewis Decl. (ECF No. 106-2) ¶ 1. However, he does not explain what this letter pertained to or why it was related to the State Department's Privacy Act statement. Next, Mr. Lewis claims that the cost of obtaining a new passport photograph injured him. But he admits that he never submitted that photograph. Moreover, Plaintiffs' opposition concedes that this voluntary expense cannot qualify as damages. *See* Opp'n at 22 (stating that if Plaintiffs "voluntarily submit to their invitation to go out and get another photograph, it will be voluntary, and the cost of the unnecessary photograph can't qualify for "actual damages" under their new violation of the Privacy Act").

Plaintiffs gain no greater traction with their conclusory statements that they might have otherwise engaged in international travel. Lewis Decl. ¶¶ 2-3 (noting that he "travel[s] to Canada to celebrate religious festivals" and "intended to travel to the Philippines"); Carmichael Decl. ¶ 17 (alluding the "invitations" to travel to "Brazil, Australia and Costa Rica"). These damages are based on mere speculation regarding Plaintiffs' intentions and are certainly not pled

with any particularity in Plaintiffs' operative complaint.[8]   *See Glass v. Dep't of Justice*, 279 F.

Supp. 3d 279, 281 (D.D.C. 2017), *aff'd*, Civ. A. No. 18-5030, 2018 WL 5115524 (D.C. Cir.

Sept. 19, 2018) (concluding that plaintiff's "vague description of the harms allegedly sustained

as a result of Defendant's disclosure cannot support a demand for actual damages that must be

'limited to proven pecuniary or economic harm'").

In sum, Plaintiffs have failed to establish any plausible claim for damages under the

Privacy Act.[9]

## III.    PLAINTIFFS' RECONSIDERATION MOTION LACKS MERIT.

Finally, Plaintiffs seek relief from the Court's August 28, 2020, Order, which dismissed

most of their claims.  *See* ECF No. 108.  Plaintiffs seek this relief under Federal Rule of Civil

Procedure 60, which allows the Court to relieve a party from a final judgment for "any . . .

reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Specifically, Plaintiffs assert that the

Court's prior Order was "unjust."  *See* Plaintiffs' Proposed Order (ECF No. 108-1) at 1.

Although Plaintiffs' proffered basis for this relief is unclear, they assert that the religious

---

[8]      Plaintiffs are correct that they need not identify a minimum of $1,000 in damages in order
to state a claim under the Privacy Act, as Defendants' memorandum inadvertently suggested.
*See* Opp'n at 41.  Specifically, Defendants' motion inaccurately referred to the $1,000 minimum
as a "threshold" when it is a minimum amount of recovery.  *See* Defs.' Mot. at 22.  Undersigned
counsel for Defendants regrets this error.

[9]      Confusingly, Plaintiffs' opposition appears to propose a different Privacy Act theory to
include Defendants' alleged failure to correct an agency record.  *See* Opp'n at 46.  Specifically,
Plaintiffs aver that "[o]n certain dates, the Defendants['] record regarding the Plaintiffs was
made to say, passport renewal denied, or passport renewal approved application canceled.  Those
records need to be changed to say, passport renewal application approved, and passport approved
renewal not cancelled."  Opp'n at 46-47.  *First*, this claim does not appear in Plaintiffs' operative
complaint and (as noted) Plaintiffs may not amend their complaint in their opposition brief.
*Second*, any potential confusion is erased later in Plaintiffs' opposition, which continues to argue
that the Department's "demand did not explain that their invitation for a voluntary submission of
a new photograph record was actually mandatory."  Opp'n at 48.  This is clearly a recitation of
their existing Privacy Act claim, which lacks merit for the foregoing reasons.

accommodations provided to Plaintiffs by Defendants during the remand period demonstrate that the State Department's prior denials of their passport applications was impermissibly "motivated by religious belief and practice." *Id.* at 2.  Plaintiffs also claim that, contrary to the Court's order, they sufficiently alleged that Defendants have committed "felonies whereby they denied the Plaintiffs' rights, benefits, and privileges because they did not identify with a[] [social security number]." *Id.*

The D.C. Circuit has "observed that Rule 60(b)(6) 'should be only sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'" *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)).  A party seeking reconsideration bears the burden of establishing that such relief is warranted under the circumstances.  *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 226 (D.D.C. 2011) ("The party seeking relief from a judgment bears the burden of demonstrating that it satisfies the prerequisites for such relief.").

Here, Plaintiffs' conclusory arguments fail to satisfy the high standard for a motion for reconsideration.  All of the arguments contained in their motion are merely repeated from their opposition brief and prior motion for reconsideration.  *See Judicial Watch, Inc. v. U.S. Dep't of Energy*, 319 F. Supp. 2d 32, 34 (D.D.C. 2004) ("The purpose of a motion for reconsideration is not to repeat arguments which the Court has already found unpersuasive.").  "[I]t is well-established that 'motions for reconsideration,' whatever their procedural basis, cannot be used as 'an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (quoting

*SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)); *Ali v. Carnegie Inst. of Wash.*, 309

F.R.D. 77, 81 (D.D.C. 2017).  Plaintiffs fail to identify any error in the Court's prior opinion or

any change in relevant authority supporting that opinion.  Therefore, the Court should deny

Plaintiff's Rule 60 motion.

## CONCLUSION

For the reasons set forth in Defendants' motion and as discussed further above,

Defendants respectfully request that the Court dismiss Plaintiffs' complaint under Federal Rules

of Civil Procedure 12(b)(1) and 12(b)(6).  Alternatively, Defendants respectfully request the

Court to issue summary judgment in their favor.  The Court should also deny Plaintiffs' motion

for reconsideration.

Dated October 11, 2021                Respectfully submitted,

                                      CHANNING D. PHILLIPS, D.C. Bar No. 415793
                                      Acting United States Attorney

                                      BRIAN P. HUDAK
                                      Acting Chief, Civil Division

                                      /s/   *Christopher C. Hair*
                                      CHRISTOPHER C. HAIR, PA Bar No. 306656
                                      Assistant United States Attorney
                                      555 Fourth Street, N.W.
                                      Washington, D.C. 20530
                                      (202) 252-2541
                                      Christopher.Hair@usdoj.gov

                                      *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of October, 2021, I caused the foregoing to be served on *pro se* Plaintiffs David Carmichael, William Mitchell Pakosz, and Lawrence Donald Lewis, and proposed intervenor Michelle Boulton, via U.S. Mail with pre-paid postage, addressed as follows:

Michelle Boulton
8491 Hospital Dr. #178
Douglasville, GA 30134-2412

David Alan Carmichael
1748 Old Buckroe Road
Hampton, VA 23664

William Mitchell Pakosz
c/o Rick Dale Hollingsworth
P.O. Box 25
Matteson, IL 60443

Lawrence Donald Lewis
966 Bourbon Lane
Nordman, ID 83848

*/s/ Christopher C. Hair*
CHRISTOPHER C. HAIR
Assistant United States Attorney