## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| DAVID ALAN CARMICHAEL, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 19-2316 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 72, 75, 76, 84, 86, |
| | : | | 92, 93, 94, 99, |
| ANTONY J. BLINKEN, Secretary of State, | : | | 101, 107, 108, |
| *et al.*, | : | | 113, 120, 121 |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION</u>

**DENYING PLAINTIFFS' MOTIONS CONCERNING REMAND (ECF NOS. 72, 75, 76, 86);
DENYING PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO ISSUE PASSPORT RENEWALS TO
LEWIS AND PAKOSZ (ECF NO. 84);
DENYING PLAINTIFFS' AND BOULTON'S MOTIONS CONCERNING INTERVENTION AND JOINDER
(ECF NOS. 92, 93, 94);
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT (ECF NO. 99);
DENYING PLAINTIFF CARMICHAEL'S MOTION FOR COURT TO MAINTAIN CUSTODY OF
REPLACEMENT PASSPORT IN EVIDENCE (ECF NO. 101);
GRANTING PLAINTIFF CARMICHAEL'S MOTION FOR LEAVE OF LATE FILING OF STATEMENT
OF FACTS (ECF NO. 107);
DENYING PLAINTIFFS' COMBINED MOTION FOR RELIEF (ECF NO. 108);
DENYING CARMICHAEL'S AND HOLLINGSWORTH'S MOTIONS REGARDING SUBSTITUTION
(ECF NOS. 113, 120);
DENYING BOULTON'S MOTION FOR SANCTIONS (ECF NO. 121)**

## I. INTRODUCTION

Plaintiffs David Alan Carmichael, Lawrence Donald Lewis, and Mitchell Pakosz bring

this case against Defendants Antony J. Blinken, in his official capacity as Secretary of State, and

the U.S. State Department regarding Plaintiffs' attempts to obtain passports without providing

social security numbers. Plaintiffs assert that identifying with a social security number is

prohibited by their Christian faith and requested religious accommodations. They initially

brought nine causes of action against Defendants under various federal laws. Three causes of

action remained after the Court's opinion resolving Defendants' earlier motion: the Religious

Freedom Restoration Act ("RFRA"), the Fifth Amendment, and the Privacy Act.  As explained

below, Plaintiffs' claims for damages are dismissed, Defendants' motion regarding mootness is

denied, and the parties are ordered to file a joint status report within 60 days either describing

Defendants' progress toward complying with Plaintiffs' proposed procedures or proposing a

briefing schedule to resolve the remaining mootness issues.

## II.  BACKGROUND

### A.  Background Leading up to Previous Opinion[1]

In 2007, Plaintiffs Carmichael and Pakosz applied for U.S. passports and both asked for a

religious accommodation exempting them from the requirement that they provide their social

security numbers on the application.  Am. Compl. ¶¶ 16–17, ECF No. 15.  Plaintiff Lewis did the

same in 2008.  *Id.* ¶ 18.  All three plaintiffs received passports despite not including their social

security numbers on their passport applications.  *Id.* ¶¶ 16–18.  Carmichael, Lewis, and Pakosz

assert that they are "prohibited from identifying with a Social Security Number . . . on the basis

of the Christian religion" and "[a]ny demand for either of them to identify with a [social security

number] places a substantial burden upon their religion."  *Id.* ¶ 14.  While Carmichael, Lewis,

and Pakosz allege that they were granted a religious accommodation when they were originally

issued passports, *see id.* ¶¶ 16–18, the Government asserts that "[t]here was no consideration of

[a] claim for a religious accommodation," and applicants were not required to provide social

security numbers in their passport applications at that time, Rolbin Decl. ¶ 4, ECF No. 24-2.

However, The Government notes that the Fixing America's Surface Transportation ("FAST")

---

[1] This section is drawn from the Court's previous opinion in this case.  *See Carmichael v. Pompeo*, 486 F. Supp. 3d 360, 365–66 (D.D.C. 2020).

Act, enacted in 2015, granted the Government the authority to "deny a passport application if the applicant fails to provide their [social security number]."  *Id.*

In 2018, Carmichael applied to renew his passport and, again, he requested a religious accommodation to the requirement that he provide his social security number in his passport renewal application.  Am. Compl. ¶ 19.  Lewis and Pakosz applied to renew their passports, also including a request for a religious accommodation, in 2019 and 2017, respectively.  *Id.* ¶¶ 20–21. With their passport renewal applications, Carmichael, Lewis, and Pakosz sent letters to the Government explaining why identifying with a social security number violated their religious beliefs.  *See id.* ¶¶ 19, 42–43, 55, 57.  Plaintiffs' passport renewal applications were also accompanied by a "Privacy Act Statement" from the Government that outlined the authority under which the Government requested Plaintiffs' social security numbers, the purpose of requesting the social security numbers, and a non-exhaustive list of routine uses for information collected from passport renewal applications.  *Id.* ¶ 104; *see also* Pls.' Mem. Supp. Resp. Mot. Dismiss & Cross Mot. Summ. J. ("Pls.' Mem.") ¶ 57(ii), ECF No. 27-1 (reproducing the statement as an undisputed fact).  The "Privacy Act Statement" also included a statement that, while providing the requested information was voluntary, failing to provide that information could result in a processing delay or application denial.  Am. Compl. ¶ 104; *see also* Pls.' Mem. ¶ 57(ii).

Carmichael's passport renewal was approved, and his renewed passport was issued in January 2018 without Carmichael providing his social security number on his application.  Am. Compl. ¶ 19.  However, the government contacted Lewis and Pakosz, asking each to either provide their social security number or sign a statement that they had never been issued one.  *Id.* ¶¶ 46, 56.  Both Lewis and Pakosz responded that they could not sign a statement that they had

never been issued a social security number and reiterated their request for a religious accommodation.  *See id.* ¶¶ 47, 56–67.  Both Lewis and Pakosz's passport renewal applications were subsequently denied.  *Id.* ¶¶ 49, 68.  Neither Lewis nor Pakosz was given the opportunity to appeal the denial.  *Id.* ¶¶ 26, 82; *see also id.* ¶ 124 (asserting that all three Plaintiffs were denied an appeal process).

After Pakosz's application was denied, Pakosz contacted Carmichael for assistance and, on Pakosz's behalf, Carmichael spoke to an employee of the government who stated that there was no appeal process for the denial of a religious accommodation.  *Id.* ¶¶ 26–27.  Carmichael and Pakosz then filed Freedom of Information Act requests for the names and contact information of Department employees involved in processing passport applications, *see id.* ¶¶ 29, 73, and sent letters to various politicians, including President Donald Trump and Vice President Mike Pence, among others, further explaining their request for a religious accommodation, *id.* ¶¶ 31, 69–71, 76–79, 86.  Enclosed with one letter to the government, Pakosz states that he "sent information that explains the SSN offence against religion in a document called 'The Mark of The Beast . . . It Is Here, Now.'"  *Id.* ¶ 69.

Approximately three months later, Carmichael received a letter from the government stating that his renewed passport had been issued erroneously because he did not provide his social security number in his passport renewal application, that his passport had been revoked pursuant to 22 C.F.R. § 51.62(a)(2), and that he could request an appeal hearing.  *Id.* ¶ 33.  Carmichael seemingly did not request a hearing.  Def. Mot. Dismiss at 20, ECF No. 24; *see also* Am. Compl. (nowhere mentioning that Carmichael availed himself of this opportunity for a hearing).

Carmichael brought this action on July 31, 2019, *see* Compl., ECF No. 1, and Plaintiffs Lewis and Pakosz were added to this action in November 2019, *see* Order, ECF No. 11. Carmichael, Lewis, and Pakosz filed their amended complaint in December 2019, in which they raised nine causes of action under the United States Constitution and various federal laws. *See* Am. Compl. Defendants moved to dismiss or, in the alternative, for summary judgment, on all nine causes of action. Carmichael, Lewis, and Pakosz moved for partial summary judgment and requested an injunction on their first cause of action under the Foreign Relations Authorization Act. *See* Pls. Mem.

### B. Background Since Previous Opinion

The Court denied Plaintiffs' motion for partial summary judgment, granted Defendants' motion to dismiss on several grounds, and denied Defendants' motion on three grounds. *Carmichael*, 486 F. Supp. 3d at 377. Remaining after that opinion were Plaintiffs' second, fourth (with respect to Lewis and Pakosz), and seventh causes of action, which concern RFRA, the Fifth Amendment Due Process Clause, and the Privacy Act, respectively. *Id.* Plaintiffs were granted leave to file an amended complaint regarding Carmichael's claim for a Fifth Amendment violation, *id.*, and they did so, 2d Am. Compl., ECF No. 51.

A few months later, Defendants moved to voluntarily remand this matter to the State Department so it could "reconsider its prior renewal and revocation actions," after "acknowledge[ing] that it did not previously consider Plaintiffs' religious accommodation requests." Defs.' Mot. Voluntary Remand at 1, 5, ECF No. 61. The Court granted this motion over Plaintiffs' objection and remanded the passport applications to the State Department for 90 days. Min. Order (Jan. 20, 2021). The Court encouraged Plaintiffs "to comply with Defendants' reasonable requests for further information in furtherance of Defendants' efforts on remand." *Id.*

During the remand period, Plaintiffs filed several motions objecting to the remand, which are discussed below.  After most of these were filed, the Court denied one of these motions and stated that "[t]he Court does not intend to dissolve the remand order."  Min. Order (Apr. 19, 2021).  The Court noted that "Plaintiffs brought this case in order to obtain Passports without having to identify with a Social Security Number," Defendants were offering them that opportunity, and Plaintiffs' "refusal to take advantage of that opportunity" was "perplex[ing]." *Id.*  Also, the Court assured Plaintiffs that if they still had viable damages claims after the passports were issued, the case would not necessarily be moot.  *Id.*

During the remand period, Defendants alerted the Court that they were satisfied with the sincerity of Plaintiffs' religious beliefs, stated that Plaintiffs would not need to identify any social security numbers to receive passports, and invited Plaintiffs to submit U.S. Passport Renewal Applications for Eligible Individuals with new photographs.  Joint Status Report ¶¶ 9–10, ECF No. 87.  Defendants also sent a replacement passport to Carmichael without requiring a new photograph.  *Id.* ¶ 14.  Lewis and Pakosz objected that, among other things, new photographs were not necessary under the relevant rules and accordingly did not send them.  *Id.* ¶ 11.  Defendants denied Lewis's and Pakosz's applications for failure to submit new photographs.  *Id.* ¶ 14.  Carmichael objected to the procedure used to issue his new passport and refused to sign it, as discussed below.

Shortly after the Court confirmed that it would not dissolve the remand order, Plaintiffs filed what they styled as their Motion to Compel Defendants to Issue Passport Renewals to Lewis and Pakosz ("Mot. Compel"), ECF No. 84.  The Court then set a briefing schedule for responses to the motion to compel and Defendants' forthcoming dispositive motions.  Min. Order (May 7, 2021).  The briefing was somewhat scattered, but the issues appear to be fully

briefed.[2]  Defendants argue that Plaintiffs' claims for equitable relief are moot after Defendants granted the religious accommodations, Plaintiffs' Due Process claims fail on the merits, and Plaintiffs' damages claims fail because no damages are available under RFRA or the Fifth Amendment for official-capacity claims or the Privacy Act given the facts alleged.  *See* Defs.' Mem.

Plaintiffs filed several additional motions while these motions were being briefed: Plaintiffs and a proposed intervenor, Michelle Boulton, moved for joinder and intervention and to allow Carmichael to file Boulton's documents electronically.  *See* ECF Nos. 92–94. Carmichael moved the Court to maintain custody of the replacement passport he was sent.  Pl. Carmichael Mot. Court Maintain Custody of Replacement Passport in Evidence ("Custody Mot."), ECF No. 101.  Plaintiffs moved for reconsideration of the Court's earlier opinion.  Pls.' Carmichael & Lewis Combined Mot. Relief from Order of Aug. 28, 2020 & Mem. Supp. ("Mot. Reconsideration"), ECF No. 108.  And there are motions to substitute Pakosz's son-in-law or, in the alternative, Carmichael, for Pakosz after his death.  Mot. Substitute Pl. Pakosz, ECF No. 113; Pl. Carmichael's Mot. Grant Pl. Carmichael Powers as the Alternative Pakosz Substitute, ECF No. 120.

### III.  PRELIMINARY MOTIONS

#### A.  Motion to Compel Passports

Shortly before the parties' main substantive briefing began regarding Defendants' motion discussed below in Section V, Plaintiffs filed a short motion asking the Court to compel

---

[2] *See* Mem. P. & A. Supp. Defs.' Mot. Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mem."), ECF No. 99-1; Pl. Lewis's Reply at 2, ECF No. 102; Pls. Carmichael & Lewis Combined Resp. Opp'n to Defs.' Mot. Dismiss or, in the Alternative, for Summ. J. ("Pls.' Opp'n"), ECF No. 106; Defs.' Reply Supp. Mot. Dismiss or, in the Alternative, Summ. J. & Opp'n Pls.' Mot. Reconsideration, ECF Nos. 117, 118.

Defendants to issue passport renewals to Lewis and Pakosz.  Mot. Compel.  Neither the motion nor its supporting memorandum of points and authorities identifies the legal basis for the motion, e.g., a Federal Rule of Civil Procedure under which the motion was brought.  *See* Mot. Compel & ECF No. 84-2.  Plaintiffs argue essentially that they should not need to provide the new photographs requested by Defendants because Defendants are mistaken that photographs must be taken within six months of the passport's issue date, as opposed to within six months of the passport application date.  *See* Mot. Compel at 2.  Defendants acknowledge this motion in their motion to dismiss or, in the alternative, for summary judgment, but do not discuss it in detail. *See* Defs.' Mem. at 4 (citing ECF No. 84).  But they do address the relevant issue by reaffirming that they require passports photographs that are "taken within the six months preceding the issue date." *Id.* at 12.  Plaintiff Lewis filed a reply responding to the parts of Defendants' motion "which reach the motion to compel."  Pl. Lewis's Reply at 2.

The Court construes this motion as a motion for summary judgment on Lewis and Pakosz's claims for equitable relief, i.e., issuing renewed passports, because they are asking the Court to "compel" Defendants to do exactly what they request in their complaint's prayer for relief.  *See* 2d Am. Compl. ¶ 142(1) (demanding that the Court "compel renewal of their passport applications").  Under that interpretation, the motion clearly fails.  Plaintiffs' five-page memorandum and its attachments, which do not even explain which causes of actions are relied on, do not demonstrate entitlement to judgment in Plaintiffs' favor beyond any genuine dispute of material fact.  Regardless, the main issue of the motion—whether Lewis and Pakosz must submit new photographs—is addressed below regarding mootness.

**B.  Substitution for Pakosz**

Plaintiff Pakosz died during this litigation and his son-in-law, Rick Dale Hollingsworth, moves to be substituted.  Mot. Substitute Pl. Pakosz, ECF No. 113.  Defendants object for several reasons, including that passports may not be issued to the deceased (albeit without citation).  Defs.' Resp. Mot. Substitute Pl. Pakosz, ECF No. 114 at 3 n.2.  Hollingsworth's reply does not contest that passports may only be issued to living persons.  *See* Pl.'s Reply Mot. Substitute Pl. Pakosz, ECF No. 115.  Plaintiff Carmichael later moved to become Pakosz's alternate substitute.  Pl. Carmichael's Mot. Grant Pl. Carmichael Powers as the Alternative Pakosz Substitute, ECF No. 120.

Federal Rule of Civil Procedure 25(a)(1) provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of a proper party or by the decedent's successor or representative."  Fed. R. Civ. P. 25(a)(1).  As explained below, Defendants' motion is granted as to all damages claims, and with the equitable claim for Pakosz's passport no longer available due to his death, there appears to be no remaining claim.  The motions for substitution are therefore denied.

**C.  Remand**

Plaintiffs have several outstanding motions regarding this Court's remand to the State Department, which began January 20, 2021, and ended 90 days later.  *See* Min. Order (Jan. 20, 2021); Pl.'s Mot. for Recons. & Rescission, Stay of Remand, & Mot. Certify for Interlocutory Appeal ("Remand Mot."), ECF No. 72; Pl.'s Mot. Declaratory J. or Partial Finding of Facts & Conclusions of Law Regarding Remand Order of Jan. 19, 2021, ECF No. 75-1 ("Mot. Declaratory J."); Pl. Carmichael's Mot. Immediate Lifting of Stay, ECF No. 76; Pls.' Request for Relief from Apr. 19, 2021 Order, ECF No. 86; *see also* Pl.'s Reply Defs.' Opp'n Pls.' Mot.

Remand, Stay, Certification for Interlocutory Appeal, ECF No. 78.  Plaintiffs also addressed the remand in their opposition to Defendants' motion to dismiss or, in the alternative, for summary judgment.  *See* Pls.' Opp'n at 20–24.  After most of those motions were filed, Plaintiffs moved for a hearing to discuss, among other things, whether the Court would rescind its remand order.  *See* Pl. Carmichael's Mot. for Status Conference at 1, ECF No. 83 (stating that "we need to determine" if recent "admission[s]" were "sufficient to motivate the Court to rescind its remand order" and, if not, whether the Court will act on "Plaintiffs' Motion For Declaratory Judgment Or Partial Finding Of Facts And Conclusions Of Law Regarding Remand Order Of January 19, 2021," ECF No. 75-1).  The Court denied Plaintiffs' motion for a hearing by minute order, stating that "[t]he Court does not intend to dissolve the remand order."  Min. Order (Apr. 19, 2021).  Although this minute order did not officially deny Plaintiffs' motions seeking reversal of the remand, the Court holds the same view today despite Plaintiffs' briefing.

    The clearest justification for denying these motions is that the remand period concluded many months ago, rendering this issue moot.  *See* Min. Order (Jan. 20, 2021) ("After conclusion of the remand period, the parties shall submit a joint status report on or before May 6, 2021 . . . .").  In fact, we now know that the remand was largely productive because the State Department concluded that it could issue passports to Plaintiffs without them submitting social security numbers.  *See* Joint Status Report ¶ 16 (Defendants stating that "the State Department granted Plaintiffs' religious accommodation requests during the remand period").  The parties' briefs do not address mootness because they were filed before the end of the remand period, i.e., before the issue became moot.  But reversing the remand order at this point would have no effect.

Upon review of the parties' briefs, the Court does not see any reason to doubt the legality or propriety of the remand order.  "A district court has broad discretion to decide whether and when to grant an agency's request for a voluntary remand.  But a voluntary remand is typically appropriate only when the agency intends to revisit the challenged agency decision on review." *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 381 (D.C. Cir. 2017); *see also id.* at 387 (explaining that agency need not "confess error or impropriety in order to obtain a voluntary remand[,] [b]ut the agency ordinarily does at least need to profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge").  Here, Defendants sought a remand "to reconsider its prior renewal and revocation actions relevant to this action."  Defs.' Mot. Voluntary Remand at 1.  We now know that Defendants did reconsider their prior decisions during the remand because they did not previously consider Plaintiffs' religious accommodation requests yet have now granted them and will allow Plaintiffs to obtain passports without identifying with social security numbers.  Joint Status Report ¶¶ 5, 10.  Despite any remaining issues about whether existing passports or applications are appropriate versus new passports or applications, Defendants clearly revisited their original decision not to allow (or consider) Plaintiffs' religious accommodation.

Plaintiffs' first motion is for reconsideration of the remand order.  Remand Mot. at 5. They do not specify the rule under which they bring the motion for reconsideration, and Defendants suggest Federal Rule of Civil Procedure 59(e), Def.'s Opp'n Pls.' Mot. Remand, Stay, & Certification for Interlocutory Appeal at 2, ECF No. 77, but Rule 54(b) is the relevant rule, *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the

11

entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").  Relief

pursuant to Rule 54(b) is to be provided "as justice requires," and may be warranted when a

court has "patently misunderstood the parties, made a decision beyond the adversarial issues

presented, made an error in failing to consider controlling decisions or data, or where a

controlling or significant change in the law has occurred."  *United States ex rel. Westrick v.*

*Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (cleaned up); *see also*

*Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004).  "These considerations leave a great deal

of room for the court's discretion and, accordingly, the 'as justice requires' standard amounts to

determining 'whether [relief upon] reconsideration is necessary under the relevant

circumstances.'"  *Lewis v. District of Columbia*, 736 F. Supp. 2d 98, 102 (D.D.C. 2010)

(alteration in original) (quoting *Cobell*, 224 F.R.D. at 272).  Here, reconsideration is not

necessary under the relevant circumstances because the Court continues to believe that the order

under reconsideration was correct.  Plaintiffs' complaint that the Court did not consider one of

their filings before entering the remand order is irrelevant because that filing was in response to a

different motion; the Court did consider Plaintiffs' opposition to Defendants' motion for remand.

*See* Pls.' Resp. in Opp'n to Defs.' Mot. Voluntary Remand, ECF No. 65 (filed several weeks

before remand order).

        Plaintiffs then move the Court to certify this question for interlocutory appeal under 28

U.S.C. § 1292.  Remand Mot. at 5.  That statute requires at least that the Court "shall be of the

opinion that such order involves a controlling question of law as to which there is substantial

ground for difference of opinion and that an immediate appeal from the order may materially

advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  This is not met at least

because the mootness of this question ensures that certifying it to the court of appeals would not materially advance the ultimate termination of the litigation.

Plaintiffs also move for a stay of the remand order to allow the Court to consider their motion for declaratory judgment or judgment on partial findings "on the matter of whether the court has any lawful power to remand to the agency." Remand Mot. at 5. The request for a stay is denied as moot given the conclusion of the remand period. Regarding the related motion itself, which Plaintiffs filed shortly after moving for a stay, Plaintiffs make a dizzying number of arguments in this paper styled "Plaintiffs' Motion for Declaratory Judgment or Partial Finding of Facts and Conclusions of Law Regarding Remand Order of January 19, 2021."[3] *See, e.g.*, Mot. Declaratory J. at 12 (arguing that the Federal Rules of Civil Procedure do not provide for a remand); *id.* at 16 (arguing that the APA does not empower the Court to abdicate its powers through a remand); *id.* at 31 (arguing that the Privacy Act "does not say that the Court may remand the action without ordering the agency to correct the record"). But none refute that the D.C. Circuit has clearly endorsed this Court's authority to remand matters to agencies, nor show that this Court abused its discretion by ordering remand here. *See Limnia, Inc.*, 857 F.3d at 381 ("A district court has broad discretion to decide whether and when to grant an agency's request for a voluntary remand. But a voluntary remand is typically appropriate only when the agency intends to revisit the challenged agency decision on review."). Despite this precedent, Plaintiffs maintain that the remand procedure is unlawful. *See* Mot. Declaratory J. at 1 ("The statutes and rules give adjudication remedy and relief powers to the Court as a matter of law, and remand is not provided for as a matter of the law of this case."); Pls.' Request for Relief from Apr. 19,

---

[3] Plaintiffs also moved the Court to lift the "stay," referring to the remand order, to allow the Court to consider this motion. Pl. Carmichael's Mot. Immediate Lifting of Stay, ECF No. 76. It is denied for the same reason as the request for a stay—the remand has concluded so there is nothing left to stay.

2021 Order at 5 ("In our search of the Judicial Procedure statutes and the Rules of Appellate Procedure and Civil Procedure, we cannot find the authority or power for the remand order."). This Court disagrees.  But, even if it did not, it must follow binding circuit precedent.

Finally, after the Court's minute order on April 19, 2021, confirming that it did not intend to dissolve the remand order, Plaintiffs filed a motion requesting relief from that April 19, 2021 minute order under Federal Rule of Civil Procedure 60(b).  Pls.' Request for Relief from Apr. 19, 2021 Order at 11.  However, Rule 54(b) is again the relevant standard to reconsider an interlocutory order.  Because nothing in this motion convinces the Court that the remand was unlawful or that the Court erred in denying Plaintiffs' request for a hearing, reconsideration is again not necessary under the relevant circumstances.  The motion touches on other issues, such as the rules governing passport photo currency and whether new forms must be submitted, *id.* at 3, 7–8, but those issues are dealt with in other motions discussed below.

### D.  Joinder and Intervention

Michelle Boulton moves for leave to intervene as a plaintiff.  Mot. Leave Intervene, ECF No. 94.  Plaintiffs move to join her as well.  Pls.' Combined Mot. Join Michelle Boulton, ECF No. 92.  Boulton argues that intervention is justified as a matter of right under Federal Rule of Civil Procedure 24 because her claims "relat[e] to the transactions that are the subject of the action."  Mot. Leave Intervene at 2.  Defendants oppose intervention or joinder because Boulton and Plaintiffs failed to confer with Defendants before filing their motions, Boulton's passport application was not denied, and the motions are untimely given the stage of this litigation.  Defs.' Opp'n Mot. Intervene & Mot. Joinder of Boulton at 1, ECF No. 95.  After the parties' briefs were filed, and in response to the Court's request, Defendants filed a status report with an update about Boulton's passport application: the processing of Boulton's application had completed and

her passport had been issued.  Defs.' Status Report at 2, ECF No. 105.  Boulton confirmed that

she received her passport on August 20, 2021, without submitting a social security number.

Boulton's Resp. Defs.' Status Report ¶ 24, ECF No. 109.

Boulton does not have standing for equitable relief because she already has her passport.

And, as explained below, there are no live claims for damages.  Therefore, even if Boulton were

joined as a plaintiff in this case, she would not have standing for any relief.  The motions for

leave to intervene, for joinder, and to file documents on behalf of Boulton, ECF No. 93, are

therefore denied.

### E.  Sanctions

Boulton moves for Rule 11 sanctions against Defendants, a State Department declarant

whose declarations were used to support Defendants' positions, and the Assistant U.S. Attorney

who signed Defendants' briefs.  Boulton's Mot. Sanctions & Mem. Supp. ("Sanctions Mot."),

ECF No. 121.[4]  She argues that Defendants misrepresented three facts about her passport

applications process.  The facts seem largely undisputed even though the parties' interpretations

of them differ.  Although Boulton's complaints are somewhat understandable given Defendants'

descriptions of the facts, sanctions are not justified.

Boulton received an email from the State Department on March 12, 2021, informing her

that her passport application lacked a social security number and that "if an applicant has been

issued a Social Security Number and either cannot or refuses to provide it for whatever reason,

they are only eligible for a direct return passport."  *See* Boulton's Resp. Defs.' Status Report Ex.

---

[4] Boulton also asks the Court to appoint a special prosecutor or otherwise cause an
investigation and prosecution for violations of 18 U.S.C. § 1001.  Sanctions Mot. at 7.  The
Court will not do so at least because, as Defendants point out, Section 1001 "does not apply to a
party to a judicial proceeding, or that party's counsel, for statements, representations, writings or
documents submitted by such party or counsel to a judge or magistrate in that proceeding."  18
U.S.C. § 1001(b).

1, ECF No. 109-1.  It said that her application "will remain pending for 90 days" and said Boulton should let them know if she wished to proceed with a direct return passport or if she wished to email them her social security number to process her application.  *Id.*  After receiving that email, Boulton "reiterated" her request for a religious accommodation.  Sanctions Mot. at 4.  On March 30, Boulton received another email from the State Department confirming receipt of her reiterated request.  *See* Boulton's Resp. Defs.' Status Report Ex. 2, ECF No. 109-2.  The State Department said that "[t]he situation remains unchanged," her application would remain pending for 90 days, and "[i]f the required information is not received within the 90-day period, the application will be denied."  *Id.*

A declaration dated June 3, 2021, submitted by Defendants in support of their opposition to Boulton's motion to intervene stated that the declarant was familiar with Boulton and her application.  Defs.' Opp'n Mot. Intervene & Mot. Joinder of Boulton Decl. ¶ 2, ECF No. 95-1.  It stated that, on or around March 9, the State Department "requested that Ms. Boulton provide additional information regarding her identi[t]y" and gave her 90 days to respond.  *Id.* ¶ 4.  Finally, it said that Boulton's application was open, pending review, and had not been denied.  *Id.* ¶ 5.  On August 10, 2021, the State Department emailed Boulton saying that her passport has been issued.  *See* Boulton's Resp. Defs.' Status Report Ex. 8, ECF No. 109-8.  Boulton picked up her passport on August 20.  Boulton's Resp. Defs.' Status Report ¶ 24.  On October 11, in Defendants' reply supporting their motion to dismiss or, in the alternative, for summary judgment, they state that Boulton's passport was issued "[a]fter Ms. Boulton submitted additional information."  Defs.' Reply Supp. Mot. Dismiss or, in the Alternative, Summ. J. & Opp'n Pls.' Mot. Reconsideration at 9.

"By presenting to the court a pleading, written motion, or other paper[,] . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the factual contentions have evidentiary support . . . and . . . the denials of factual contentions are warranted on the evidence." Fed. R. Civ. P. 11(b).  If a "court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction."  Fed. R. Civ. P. 11(c)(1).  A motion for sanctions under Rule 11 must be served before being filed to allow 21 days for "the challenged paper, claim, defense, contention, or denial [to be] withdrawn or appropriately corrected."  Fed. R. Civ. P. 11(c)(2); *see Dixon v. Midland Mortg. Co.*, No. 09-CV-1789 (RLW), 2013 WL 5350906, at *2 (D.D.C. Sept. 25, 2013) ("Pursuant to the Rule's 'safe-harbor' provision, a motion for sanctions may not be filed until at least 21 days after serving the motion on the offending party.").

Courts impose "an objective standard of reasonable inquiry on represented parties who sign papers or pleadings."  *Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 554 (1991).  And courts have "discretion to determine both whether a Rule 11 violation has occurred and what sanctions should be imposed if there has been a violation."  *Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002) (internal quotations omitted).  Rule 11 sanctions are an extreme punishment for filings that frustrate judicial proceedings.  *See Henok v. Chase Home Fin., LLC*, 926 F. Supp. 2d 100, 104 (D.D.C. 2013); *see also Robinson-Reeder v. Am. Council on Educ.*, 626 F. Supp. 2d 11, 18 (D.D.C. 2009) ("The Court must also take into consideration that Rule 11 sanctions are a harsh punishment, and what effect, if any, the alleged violations may have had on judicial proceedings." (internal quotation marks omitted)).

Preliminarily, sanctions are not warranted because Boulton did not comply with Rule 11's procedural requirement to serve the motion for sanctions 21 days before filing to allow the

17

accused offender to correct the problem. *See* Fed. R. Civ. P. 11(c)(2). Boulton does not argue that she served the motion on Defendants at least 21 days before filing. She instead argues that she put Defendants "on notice of their Rule 11 violation" several months earlier when she described Defendants' supposed lies in earlier filings. Boulton's Reply Supp. Mot. Sanctions at 6–7, ECF No. 123. Boulton invokes the purpose behind the rule—providing an opportunity to "repent." *Id.* at 7. But purpose cannot override the rule's unambiguous provisions.

Even if the motion were procedurally proper, it would still fail. Boulton argues that Defendants made three false statements: (1) Boulton's application was not denied, Sanctions Mot. at 2; (2) the State Department sought some "further information" other than a social security number, *id.* at 5; and (3) Boulton submitted some "additional information" that allowed her passport approval, *id.* at 6. None of these succeed.

Boulton argues that her application was denied either when the State Department gave her 90 days to provide her social security number or, alternatively, when those 90 days ran out. Boulton's Reply Supp. Mot. Sanctions at 2. For support, she cites a State Department regulation: "An application for a passport . . . will be denied if an applicant . . . does not provide additional information as requested by the Department within the time provided in the notification by the Department that additional information is required." 22 C.F.R. § 51.65(b). Although the State Department said that it *would* deny Boulton's application absent her providing a social security number, that is not the same as going through with the denial. In fact, the same regulation cited by Boulton says that "[t]he Department will send notice in writing to any person whose application for issuance of a passport or Consular Report of Birth Abroad *has been denied*." *Id.* § 51.65(a) (emphasis added). Boulton's apprehension of a denial was understandable, but Boulton points to no notice informing her that her application had been denied.

The latter two accusations can be analyzed together.  Boulton's argument seems to be that Defendants are trying to make their actions sound more defensible by claiming that they needed "further information" (when they really meant social security number) and that Boulton provided "additional information" to justify granting her application (when they really mean information they already had).  Her complaints are not unreasonable.  Defendants do not explain in detail what "further information" or "additional information" they refer to.  They do cite one document dated March 3, 2021, Defs.' Opp'n Boulton's Mot. Sanctions at 6, ECF No. 122, but they do not say what in this document constitutes the additional information.  Also, it is a stretch to claim that Defendants approved the application in October *because of* this document that had been in their possession since March.  But that is what Defendants seem to be implying when they say that "[t]his information was *eventually* considered by the Department."  *Id.* (emphasis added).

Even if these were attempts to save face, they were at worst misleading and ultimately harmless given the stakes of this particular factual dispute and Boulton's access to the evidence allowing her to call out her concerns (e.g., emails sent to her by the State Department).  Boulton's theory is that Defendants are "providing a false narrative" to keep her out of the case, Boulton's Reply Supp. Mot. Sanctions at 3, but her motion to intervene is denied regardless of any supposedly false statements, as explained above.  Therefore, even if there were false statements here, the Court would exercise its discretion against imposing sanctions.

### F.  Reconsideration

Exactly one year after this Court issued its earlier opinion resolving the parties' motions for partial summary judgment and to dismiss, Plaintiffs moved for reconsideration of that opinion under Federal Rule of Civil Procedure 60, Mot. Reconsideration, although, again, Rule

54(b) is the relevant reconsideration standard.  Specifically, Plaintiffs focus on their first cause of action—violation of 22 U.S.C. § 2721, which prohibits denying or revoking passports because of, among other things, belief that is protected by the First Amendment.  *Id.* at 1.  In the earlier opinion, the Court granted Defendants' motion to dismiss this cause of action because Plaintiffs did "not cite any facts suggesting that the Government . . . denied and revoked [Plaintiffs'] passports because of their religious belief," as opposed to alleging that Plaintiffs' religious beliefs were burdened by having to provide their social security numbers, the latter being covered by the RFRA claim.  *Carmichael v. Pompeo*, 486 F. Supp. 3d 360, 368 (D.D.C. 2020).  Plaintiffs argue that this was wrong because they have "sufficiently alleged . . . that the activity for which the Defendants denied and revoked our passports was motivated by our religious belief."  Mot. Reconsideration at 2.  But their only support is the (uncited) facts that Plaintiffs' reason for not identifying with social security numbers was their religion and that this was communicated to Defendants.  *Id.*  This does not demonstrate allegations that the denials or revocations were "because of" Plaintiffs' beliefs.  22 U.S.C. § 2721.  As with the motions for reconsideration discussed above, the Court maintains that its earlier decision was correct and again concludes that reconsideration is not necessary under the relevant circumstances.  This motion is therefore denied.

Plaintiffs also include a short reference to their other causes of action, arguing that they "warrant the Plaintiffs having the opportunity to prove their case applying ordinary discovery."  Mot. Reconsideration at 3.  This bare reference is insufficient to be considered a motion for reconsideration relating to these other causes of action.

### G.  Motion for Court to Maintain Custody of Replacement Passport

Carmichael moves the Court to maintain custody of the replacement passport he received in the mail because it is, according to him, evidence relevant to Lewis and Pakosz's claims. Custody Mot. at 2–3.  To support this motion, Carmichael cites Federal Rule of Civil Procedure 79(a)(2)(A).  Custody Mot. at Proposed Order.  Carmichael interprets this rule to allow the Clerk of Court "to keep records of the papers filed with the Clerk."  *Id.*  But that rule provides that "papers filed with the clerk" "must be marked with the file number and entered chronologically on the docket."  Fed. R. Civ. P. 79(a)(2)(A).  It does not appear to require the Clerk to maintain custody of a party's potential evidence.  With no citation to a rule requiring the Court to maintain custody of this replacement passport, Carmichael's motion is denied.  The parties shall explain in their next status report how they would like to handle transporting this passport to Carmichael, e.g., if the Clerk of Court should mail it to Carmichael's address listed in his signature blocks, or if Carmichael will collect it from the Clerk of Court.

### IV.  LEGAL STANDARD

Federal courts have subject-matter jurisdiction where a claim "arises under" federal law. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  "Rule 12(b)(1) presents a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance."  *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (quoting *Agrocomplect, AD v. Republic of Iraq*, 524 F. Supp. 2d 16, 21 (D.D.C. 2007)).  Subject-matter jurisdiction cannot be waived, and "[w]hile *pro se* complaints are held to a less stringent standard than other complaints, even a *pro se* plaintiff bears the burden of establishing that the Court has subject-matter jurisdiction."  *Id.* at 33 (citations and internal quotations omitted); *see also Jathoul v. Clinton*, 880 F. Supp. 2d 168, 170 (D.D.C. 2012)

("To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that

the Court has subject-matter jurisdiction to hear her claims.").  To evaluate "a motion to dismiss

under Rule 12(b)(1), [courts] must treat the complaint's factual allegations as true . . . [granting]

plaintiff the benefit of all inferences that can be derived from the facts alleged." *Clinton*, 880 F.

Supp. 2d at 169 (internal quotations omitted) (quoting *Sparrow v. United Air Lines, Inc.*, 216

F.3d 1111, 1113 (D.C. Cir. 2000)).  Courts are not required to accept "legal conclusion[s]

couched as factual allegations[s]" as true. *Id.* (quoting *Trudeau v. Fed. Trade Comm'n*, 456 F.3d

178, 193 (D.C. Cir. 2006)).

To invoke federal jurisdiction, a plaintiff must demonstrate the existence of an actual and

concrete dispute. *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018).  If, at any

point before or during the proceedings, the case becomes moot, then such a case is no longer

within the jurisdiction of the federal courts. *Id.*  The D.C. Circuit has explained that "[f]ederal

courts lack [subject matter] jurisdiction to decide moot cases because their constitutional

authority extends only to actual cases or controversies." *Larsen v. U.S. Navy*, 525 F.3d 1, 4

(D.C. Cir. 2008) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)); *see also*

*Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (noting that a court has "no

authority to give opinions upon moot questions or abstract propositions, or to declare principles

or rules of law which cannot affect the matter in issue in the case before it") (citations omitted).

A case becomes constitutionally moot when "the issues presented are no longer live or the

parties lack a legally cognizable interest in the outcome," *Conservation Force, Inc. v. Jewell*, 733

F.3d 1200, 1204 (D.C. Cir. 2013), or when "intervening events make it impossible to grant the

prevailing party effective relief," *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008)

(quoting *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996)).

"Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue." *Nat. Res. Def. Council*, *Inc. v. U.S. Nuclear Regul. Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982); *see also Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011) (finding as moot superseded agency Record of Decision that had "no current force or effect").  "The initial 'heavy burden' of establishing mootness lies with the party asserting a case is moot." *Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010).  The party opposing mootness has the burden of showing an exception to the mootness doctrine.  *Id.*

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim" to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" under that standard; it asks whether the plaintiff has properly stated a claim.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

However, a court considering a motion to dismiss presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), while a dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant, *see Scott v. Harris*, 550 U.S. 372, 380 (2007). The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court cannot make credibility determinations or weigh the evidence. *See Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007). All underlying facts and inferences must be analyzed in the light most favorable to the non-movant. *See Anderson*, 477 U.S. at 255. That said, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## V.  ANALYSIS

The main substantive motion at this time is Defendants' motion to dismiss or, in the alternative, for summary judgment. Defendants argue that (1) Plaintiffs' claims for equitable

relief of issuance of their passports are moot because the State Department has granted their requests to obtain passports without having to identify with a social security number, Defs.' Mem. at 7; (2) Carmichael still fails to state a claim for a Fifth Amendment Due Process violation even after amending the complaint, *id.* at 13–14, (3) Lewis and Pakosz's Fifth Amendment Due Process claims fail in light of "the State Department's action during the remand period," *id.* at 14, (4) neither RFRA nor the Fifth Amendment allow damages claims for official-capacity suits, *id.* at 17, and (5) Plaintiffs have no viable claim for damages under the Privacy Act, *id.* at 18.  As explained below, Defendants' motion regarding mootness is denied and the parties are ordered to file a joint status report within 60 days either describing Defendants' progress toward complying with Plaintiffs' proposed procedures or proposing a briefing schedule to resolve the remaining mootness issues.  Defendants' motion is granted with respect to damages claims under the three causes of action.

### A.  Mootness

Defendants move to dismiss Plaintiffs' claims as moot to the extent Plaintiffs seek the equitable relief of obtaining their passports without providing social security numbers.  *Id.* at 7.  If Defendants have in fact provided passports to Plaintiffs, then the requests for equitable relief would be moot because "intervening events [will have made] it impossible to grant the prevailing party effective relief."  *Lemon*, 514 F.3d at 1315–16 (quoting *Burlington N. R.R. Co.*, 75 F.3d at 688).  But the parties do not squarely address each other's arguments.

Defendants argue that they have granted Plaintiffs' request "to obtain passports without having to identify with a social security number" such that Plaintiffs' related request for equitable relief is now moot.  Defs.' Mem. at 7.  According to Defendants, "the State Department reversed its prior revocation of Carmichael's passport and invited Lewis and Pakosz to update

their photographs to allow the State Department to adjudicate their renewal applications without the need to submit their social security numbers." *Id.* at 8. Although Plaintiffs dispute the propriety of the procedures followed by Defendants, Plaintiffs do not dispute that Defendants communicated to Plaintiffs that their religious accommodations would be granted to allow them to receive passports, one way or another, without providing social security numbers. *See* Pls.' Dispute Defs.' Statement of Material Facts ¶¶ 5–11, ECF No. 107-1.[5] Defendants also argue that no mootness exception applies, Defs.' Mem. at 9–11, that Carmichael cannot manufacture standing "based on his subjective apprehensions regarding how his passport was reissued," *id.* at 11, and that, "notwithstanding Plaintiffs' tortured reading of the State Department's regulations and requirements regarding the submission of photographs, the State Department's request for updated photographs was reasonable," *id.* at 12. The last one concerns Defendants' insistence "that passport photographs must be 'taken within the six months preceding the *issue date*.'" *Id.* (emphasis added) (citing "https://travel.state.gov/content/travel/en/passports/how-apply/photos.html, 8 FAM 402.1, and ICAO Machine Readable Travel Document 9303 3.9.1").

Lewis argues that Defendants' requirement that the photograph be taken within six months of the passport's issue date is incorrect; instead, according to Lewis, the photograph needs to be taken within six months of the *application*, and the photograph he already submitted meets this requirement. Pl. Lewis's Reply at 6. Indeed, the sources cited by Defendants for this proposition do not seem to support their proposed issue-date limitation, despite Defendants purporting to quote that phrase from one of their sources. The first source—a State Department website—only states that "[y]our passport photo needs to have been taken within the last 6

_____

[5] Plaintiffs moved for leave to file their response to Defendants' statement of undisputed material facts one day late. Pl. Carmichael's Mot. Leave Late Filing Statement of Facts, ECF No. 107. Seeing no opposition from Defendants, the motion is granted.

months."  The second source—the Foreign Affairs Manual—appears to state that a "photograph must be taken within the past six months (ICAO 9303 Section 3.9), be a good likeness of and satisfactorily identify the applicant *at the time of the application*."  8 FAM 402.1-2: Passport Photograph Requirements, ECF No. 84-8 (emphasis added).  The third source—an International Civil Aviation Organization document—appears to require that "[a] submitted portrait shall have been captured within the last six months before *application*."  (emphasis added).  International Civil Aviation Organization, *Machine Readable Travel Documents: Part 3: Specifications Common to all MRTDs*, § 3.9.1.2 (2021), https://www.icao.int/publications/Documents/ 9303_p3_cons_en.pdf.[6]  Accordingly, the source of Defendants' insistence on requiring an updated photograph for Lewis—and, therefore, one of the roadblocks to Lewis receiving his passport—is unclear.

Plaintiffs' opposition does not explain Carmichael's objections to accepting and signing the passport that was sent to him, but it does argue that the revocation of his passport should be declared void.  Pls.' Opp'n at 2.  Carmichael explained his objection in earlier filings.  He seems to want Defendants to void the cancelation of his passport rather than issue a replacement passport.  Pl. Carmichael Resp. Opp'n 2d Min. Order ¶¶ 3, 5, ECF No. 90.  His justifications seem to be that the regulations only allow replacement passports for certain reasons that are not applicable to him, the relief he requested was voiding the earlier cancelation, and Defendants stated that the revocation of his passport would be rescinded.  *Id.*  Defendants' briefs do not address the propriety of issuing Carmichael a replacement passport rather than voiding the cancelation.  And Defendants' argument that this is irrelevant because "Plaintiffs' operative

---

[6] Although it appears to be the document referenced by Defendants, it is possible that the document cited here by the Court is not the one intended by Defendants; the Court could not locate a copy of the ICAO standard in the parties' attachments.  If a party believes that this is the incorrect document, it can be addressed in further briefing.

complaint contains no claim with respect to the process by which Carmichael's passport was reissued, nor would Plaintiffs have standing to raise such a claim," Defs.' Mem. at 11, is misplaced because that process is relevant to whether the claims are moot. Defendants must appreciate that, hypothetically, providing Carmichael a passport issued via an obviously invalid process—likely rendering that hypothetical passport ineffective—would not moot this case. Yet Defendants' argument about the complaint's contents would apply equally to such a scenario.

On one hand, Plaintiffs have received the major part of the equitable relief requested and their objections now turn on issues unrelated to their religious accommodation. They have been given relatively low-burden pathways to obtaining passports without providing social security numbers. On the other hand, Plaintiffs raise arguments about the processes followed by Defendants that are not clearly incorrect. In light of the issues raised by Plaintiffs, Defendants have not convincingly shown that the requests for equitable relief have become moot based on their actions during the remand. Defendants' motion is therefore denied on that ground.

However, based on Defendants' representations and actions in this litigation, including them granting Plaintiffs' religious accommodation requests, it appears that Defendants have all intentions of providing Plaintiffs passports without Plaintiffs providing social security numbers and there may be an opportunity to resolve this issue without further litigation. Defendants are ordered to reevaluate their positions on the appropriate ways, consistent with federal law and regulations, to get Plaintiffs their passports in light of Plaintiffs' arguments and this opinion. The parties are ordered to file a joint status report within 60 days of the issuance of this opinion either describing Defendants' progress toward complying with Plaintiffs' proposed procedures or proposing a briefing schedule to resolve these issues. Such briefing must address at least

Plaintiffs' existing objections to the procedures used by Defendants and Defendants' authority authorizing their chosen procedures.

## B.  Due Process

It is not necessary at this time to address Defendants' motion with respect to due process because there appears to be a nontrivial chance that the equitable relief issues can be resolved without further litigation and, as explained below, there are no remaining claims for damages.

## C.  Damages

Defendants move to dismiss or, in the alternative, for summary judgment on, Plaintiffs' claims for damages.  For RFRA and the Fifth Amendment claims, Defendants argue that sovereign immunity is not waived for damages on official-capacity claims.  Defs.' Mem. at 16. For the Privacy Act, Defendants argue that "Plaintiffs have failed to plead any viable claim for damages."  *Id.*  The Court agrees.

### 1.  RFRA

Defendants argue that "RFRA does not supply a damages remedy" in official-capacity suits.  *Id.* at 17.  Indeed, "RFRA does not waive the federal government's sovereign immunity for damages."  *Simpson v. Fed. Bureau of Prisons*, No. 19-CV-03173 (CJN), 2020 WL 95814, at *2 (D.D.C. Jan. 8, 2020) (quoting *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006)).  The Supreme Court recently "clarified in *Tanzin* that monetary damages are available for individual-capacity RFRA claims," but this did not disturb "Circuit precedent" that RFRA does not waive sovereign immunity for damages.  *Driever v. United States*, No. CV 19-1807 (TJK), 2021 WL 1946391, at *3 (D.D.C. May 14, 2021).  The Court stated in *Tanzin* that "this case features a suit against individuals, who do not enjoy sovereign immunity."  *Tanzin v. Tanvir*, 141 S. Ct. 486, 493 (2020).  Plaintiffs do not cite anything to the contrary.  They suggest

that *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), supports their argument, but, as Plaintiffs acknowledge, that case concerned Article III standing, not sovereign immunity.  Pls.' Opp'n at 44.  Defendants' motion to dismiss Plaintiffs' damages claims under RFRA is therefore granted.

### 2.  Fifth Amendment

Defendants argue that sovereign immunity bars Plaintiffs' official-capacity claims for damages under the Fifth Amendment.  Defs.' Mem. at 17.  "The D.C. Circuit's decision in *Clark* bars suits for money damages against officials for actions taken in their official capacity absent a waiver."  *Williams v. Veneman*, No. CV 03-2245(CKK), 2005 WL 8177882, at *4 (D.D.C. July 5, 2005); *see Clark v. Library of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984) ("Sovereign immunity . . . does bar suits for money damages against officials in their official capacity absent a specific waiver by the government.").  Plaintiffs do not point to an applicable waiver.  Therefore, Defendants' motion to dismiss Plaintiffs' damages claims under the Fifth Amendment is granted.

### 3.  Privacy Act

Defendants argue that "Plaintiffs have failed to establish any plausible claim for damages under the Privacy Act."  Defs.' Mem. at 23.  The Court's previous opinion laid out its understanding of Plaintiffs' Privacy Act claim:

> Plaintiffs' Privacy Act claim pertains to the requirements under 5 U.S.C. § 552a(e)(3), which states in relevant part that agencies must "inform each individual whom it asks to supply information . . . whether disclosure of such information is mandatory or voluntary."  5 U.S.C. § 552a(e)(3)(A).  Plaintiffs allege that the Privacy Act Statement that they received failed "to correctly state in what conditions make [disclosure of a social security number] voluntary and what make[s] [disclosure] mandatory."  *See* Am. Compl. ¶ 133.  The Court understands Plaintiffs' claim to be that while the Privacy Act Statement indicates that providing a social security number is voluntary, it is in fact mandatory and, therefore, the Government has not complied with the statutory requirements.

*Carmichael*, 486 F. Supp. 3d at 375 (alterations in original).  The Court then denied Defendants' motion to dismiss because Plaintiffs alleged that "disclosure of a social security number is

mandatory to obtain a passport and yet the Privacy Act Statement says disclosure is voluntary," and Defendants' briefing suggested that providing a social security number was indeed mandatory. *Id.*

Defendants make several arguments for why Plaintiffs' Privacy Act claim cannot support a damages award: (1) given Defendants' subsequent decision to allow Plaintiffs' to obtain passports without identifying with social security numbers, the Privacy Act Statement correctly stated that providing a social security number was voluntary, Defs.' Mem. at 20; (2) Plaintiffs do not allege that the violations were intentional or willful, as required by the Privacy Act, *id.*, (3) the Privacy Act requires proving actual damages and Plaintiffs' alleged damages do not qualify, *id.* at 20–22; and (4) Plaintiffs "fail to plead any causal link between [the alleged losses] and the alleged Privacy Act violations, let alone plead such a link with 'particularity' as required by Rule 9(g)," *id.* at 22. Several of these may be correct, but the last is most obviously correct.

The relevant civil remedies provision of the Privacy Act states that an individual may bring a civil action against an agency for "fail[ure] to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual." 5 U.S.C. § 552a(g)(1)(D). "[T]he reference in § 552a(g)(1)(D) to 'adverse effect' acts as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue." *Doe v. Chao*, 540 U.S. 614, 624 (2004).

Here, Plaintiffs do not plead any connection between the alleged Privacy Act violations and any adverse effects or damages. The section of the operative complaint stating the Privacy Act cause of action lists these injuries: unlawful denial of passport or cancelation of passport, expenses and injury to property right in passport application and its process; injury to "property

and liberty rights in travel and the applied-for passport necessary to that travel," and "monetary suffering in the amounts and ways set forth in the demand for relief below."  2d Am. Compl. ¶ 134.  All of these are traced to Defendants' decisions not to issue passports, not to the Privacy Act Statements.  *See, e.g.*, Pls.' Opp'n at 41 ("Plaintiffs Lewis and Pakosz spent pre-litigation money which would not have been necessary had the defendants issued his passport rather than unlawfully deny it.").  As best the Court can tell, no material facts would have changed based on any hypothetical change to the contents of the Privacy Act Statement, as opposed to changes to Defendants' actual decisions or policies about how to handle passport applications.  Accordingly, Defendants' motion to dismiss Plaintiffs' damages claims under the Privacy Act is granted.

## VI.  CONCLUSION

For the foregoing reasons, the parties' motions are decided as follows:

- Plaintiffs' motions concerning the remand (ECF Nos. 72, 75, 76, 86) are **DENIED**.

- Plaintiffs' Motion to Compel Defendants to Issue Passport Renewals to Lewis and Pakosz (ECF No. 84) is **DENIED**.

- Plaintiffs' and Boulton's motions concerning Boulton's intervention and joinder (ECF Nos. 92, 93, 94) are **DENIED**.

- Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 99) is **GRANTED IN PART** with respect to Plaintiffs' damages claims and otherwise **DENIED IN PART**.  Defendants are **ORDERED** to reevaluate their positions on the appropriate ways, consistent with federal law and regulations, to get Plaintiffs their passports in light of Plaintiffs' arguments and this opinion.  The parties are **ORDERED** to file a joint status report within 60

days of the issuance of this opinion either describing Defendants' progress toward

complying with Plaintiffs' proposed procedures or proposing a briefing schedule

to resolve these issues.  Such briefing must address at least Plaintiffs' existing

objections to the procedures used by Defendants and Defendants' authority

authorizing their chosen procedures.

- Plaintiff Carmichael's Motion for Court to Maintain Custody of Replacement Passport in Evidence (ECF No. 101) is **DENIED**.  The parties shall explain in their next status report how they would like to handle getting this passport to Carmichael, e.g., if the Clerk of Court should mail it to Carmichael's address listed in his signature blocks, or if Carmichael will come collect it from the Clerk of Court.

- Plaintiff Carmichael's Motion for Leave of Late Filing of Statement of Facts (ECF No. 107) is **GRANTED**.

- Plaintiffs' Combined Motion for Relief from Order of August 28, 2020 and Memorandum in Support (ECF No. 108) is **DENIED**.

- Carmichael's and Hollingsworth's motions regarding substitution for Pakosz (ECF Nos. 113, 120) are **DENIED**.

- Boulton's Motion for Sanctions (ECF No. 121) is **DENIED**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  March 25, 2022                                      RUDOLPH CONTRERAS
                                                           United States District Judge