United States District Court,
District of Columbia

David Alan Carmichael, *et al.*,   )
                                   )   Plaintiffs, *in propria persona*
    Plaintiffs                     )   Case No: **19-CV-2316-RC**
                                   )
    v.                             )   RE:  ECF 142
                                   )
Michael Richard Pompeo, *et al.*   )
                                   )
    Defendants-Respondents         )

**Plaintiffs' Alternative Motion for Leave To Amend The Complaint**

1.  The Plaintiffs move the District Court, as an alternative motion to a stay of proceedings (ECF-142), for leave to amend the complaint in order to reach justice.

2.  The Plaintiffs have appealed the decisions of the District Court to the United States Court of Appeals, District of Columbia (Case No. 22-5143).  Subsequently, the District Court denied the Defendants' motion for stay (ECF 136) in the court's minute order of May 25, 2022.

3.  This alternative motion is necessary should the District Court refuse the Plaintiffs' motion to stay the proceedings (ECF-142), and should the Circuit Court refuse review.

4.  Notwithstanding the denial of discovery, there are things that have come to light during the course of litigation that warrant complaint amendment for the sake of justice.

5.  Declarations submitted by the Defendants have revealed bad actors (not-in-their-official-capacity-is-deducible), some of whom can be particularly identified by name or role, where they could not have been at the time of the complaint.  There are new violations of law by new Defendants, who can be particularly identified by name or role, that have injured the Plaintiffs in such a way as to add injury upon injury as well as insult, wherefore exemplary

damages are clearly warranted.

6. The United States Supreme Court has declared various damages as being "appropriate relief" as contemplated by the Religious Freedom Restoration Act.  In researching to respond to the Defendants' motions for dismissal, the Plaintiffs have discovered United States Supreme Court decisions that support the Plaintiffs causes of action for damages; and which provide particular language that is on point with the facts and law of this case and the Plaintiffs' Article III standing.

7. Though discovery has been denied the Plaintiffs, information has been discovered serendipitously that supports the Plaintiffs causes of action.

8. The Defendants have revealed statutes that are unconstitutional, and causal to the unconstitutionality of the regulations that are part of what gave rise to the Plaintiffs' injuries.

9. The process of litigation has shown that a bench trial or summary judgment cannot likely reach justice.  The demand of trial by jury is necessary.

### Revelation of Violators and Violations of Law Under The Color of Law

10. When the case was initiated, the only government actor's names which we knew were very limited and it was unclear what role they played.  Christine McClean in her conversation with Mr. Carmichael revealed that at the very least, her perspective was hostile to religion, according to Bowens v. Roy, where she said indicated that there was no room for religious accommodation and that the Department had no discretion but to deny a passport to Mr. Pakosz. (ECF 51, Compl. ¶ 26.)  But we did not know what role she played in the denial or revocation of the Plaintiffs' passports.  Since then, the Plaintiffs have discovered from other people that Ms. McClean is a key party to denials of the past.  We believe that it is likely that Ms. McClean was that party who sought Carmichael's passport revocation.  Whether it was Ms. McClean or

someone else, either one of them would have to be familiar with the religious accommodation issues, requests, correspondence to the White House, and other facts that would have given them notice that their actions were violating constitutionally protected rights.

11.   We have discovered that there are instructions in the Foreign Affairs Manual that explain the particulars of the authority of particular "revocation officers" but those instructions are so far hidden to us.  It seems that Mr. Rolbin, in the office of Law Enforcement Liaison would not be a "revocation officer" who would likely be in the section or Mr. Peek related to adjudications.  Yet, Mr. Roblin said that he ordered the revocation notice.  Even if he did give the order, it seems reasonable that the issue should be adjudicated by those in the adjudication division rather than one of his staff clandestinely whispering in his ear a request for Carmichael's passport revocation.  Mr. Rolbin, in his declaration, excluded any information or material facts that were relevant to the question of whether Carmichael's passport should be revoked in consideration of the matters of religion put to the Department and particularly to the Secretary of State by name.  We need to determine through discovery whether his staff member deliberately deceived him or if Mr. Rolbin is more culpable than merely being negligent in his review.

12.   Mr. Pakosz's dogged approach to putting the matter of law protecting religious before those who were repeatedly denying his passport renewal requests needs discovery to determine whether it was Ms. McLean at the helm of the injury to his religious, due process, and liberty rights also protected by statute.  It is reasonable to conclude that someone in the law enforcement liaison division should not be controlling the actions of an officer who has adjudication authority in the adjudication division.  It is reasonable to conclude that a law enforcement liaison officer's role is to respond to notices from law enforcement agencies that provide evidence of the finding of due process that would indicate that the Plaintiffs might be subject to consideration for the

denial of a passport. It is reasonable to conclude that the information should be passed to the adjudication division by the law enforcement liaison division rather than officers in Ms. McClean or Mr. Rolbin's office dictating the outcome to the adjudicator.

13. Mr. Lewis's denial is again a flagrant violation of law and a injury to his rights and the names of the perpetrators are hidden behind a bureaucratic pseudonym. His response to their first denial of his passport renewal was ample notice to the perpetrators' of their violations and a suitable and timely demand for them to correct and reverse their unlawful conduct.

14. These considerations have only become possible by the even miniscule information eked out inadvertently during litigation. It is reasonable to allow the Plaintiffs to amend their complaint to make allegations that account for the revelation of particular parties and their interactions between one another and different offices.

15. The Defendants committed another egregious unlawful denial of passports to Plaintiffs Lewis and Pakosz when they told the Plaintiffs that they did not "volunteer" new photographs, treating that which was voluntary as if it were mandatory. That injurious act was a new violation of the Privacy Act (5 U.S.C. § 552a) and the Paperwork Reduction Act (44 U.S.C. § 3512). This time, we know the name of at least one of the culprits. The unlawful act of Mr. Steven Miller maliciously, intentionally, willfully, knowingly, recklessly and unreasonably denied passports, to Paksoz and Lewis (Att. 1, Lewis Passport Denial Letter, 04-19-2021). Mr. Miller gave reference to 8 FAM 402 as the authority under which Mr. Miller acted. That reference contradicts the assertions of Mr. Miller in his false justification for the denial of the passports in violation of even the non-religious law. Not only did Mr. Miller cite a contradictory authority reference, he placed a statement in quotes, of a statement that does not exist. He also referenced a Department of State internet web page that also did not contain the statement that he

placed as if it were an actual quote.  It is clearly reasonable to measure that the correct action according to the law, the approval and issuance of Mr. Lewis's and Mr. Pakosz's renewed passports, should have been accomplished no later than the same time they issued and express-mailed a passport document to Plaintiff Carmichael.  It is likely that Mr. Miller did not commit the unlawful act solely on his own accord but was likely helped, influenced or even cajoled by another party.  That colorable denial for supposed "non-religious" reasons is not so non-religious.  Mr. Miller's letter ties the shenanigans of the Defendant Attorney and their litigation tactics to entice the Plaintiffs into abandoning the object of their cause of action.  Obtaining a passport was merely the <u>subject</u> of our cause of action.  The applications that were denied were the <u>objects</u> of the cause of action.  That new offence, and the identification of at least one perpetrator, warrants the amendment to the Plaintiffs' complaint.

16.   Plaintiff Michelle Boulton had been tortured in July of 2020 by a party, acting on the color of law of a passport issuing officer, who needs to be named as a defendant.  It is for good cause that Mrs. Boulton did not initially disclose the details of the event.  She was so traumatized by it, she was unable to communicate it to the court until being double traumatized by Kristia Watkins.  Not only we, but the Defendants, have the evidence in their records to show that Kristia Watkins willfully, intentionally, knowingly, recklessly, shamefully, and many other appropriate adjectives indicating malevolence, lied to the Court explaining that Mrs Boulton's request for religious accommodation was not denied but that Kristia Watkins was just waiting for more information.  It will shock the conscience of the jury.  Kristia Watkins needs to be named as a defendant and sued to the highest degree of punitive, and exemplary damages that will be contemplated by a reasoned jury.  Kristia Watkins needs to shoulder exemplary damages for each day that Mrs. Boulton was denied her passport from the day Kristia Watkins became

involved in the circumstances of denying Mrs. Boulton's passport. The person who communicated to Mrs. Boulton the denial of her passport renewal is also implicated but may have been controlled directly by Kristia Watkins or some other person. The complaint needs to be amended to include the appropriate allegations to hold Kristia Watkins and her accomplices accountable and to render the appropriate incentive to never hurt anyone of the public again.

### United States Supreme Court Rulings Support Damages Relief For This Case

17. The difficulty of the untrained pro se plaintiffs in crafting a suitable complaint to reach justice is in finding the language that identifies the nature of the wrong, the injury, and the full injustice of the unlawful conduct of the defendants. It is also difficult to find the words necessary to describe the duty of the court that will connect the court's powers with the appropriate relief that both salves the wounds of the injured and establishes justice for all.

> There is no necessity whatever that a tort have a name.[1] New and nameless torts are being recognized constantly, <u>and the progress of the common law is marked by many cases of first impression</u>, in which the court has struck out boldly to create a new cause of action, <u>where not had been recognized before</u>. The intentional infliction of mental suffering, the obstruction <u>of the right to go where the plaintiff likes</u>,[2] the invasion of the right of privacy, the denial of the right to vote,[3] the conveyance of land to defeat a title, the infliction of prenatal injuries, the alienation of the affection of a parent, and injury to a person's reputation by entering the person in a rigged television contest, to name only a few instances, <u>could not be fitted into any accepted classifications when they first arose</u>, but nevertheless have been held to be torts. The law of torts is anything but static, and the limits of its development are never set. **When it becomes clear that the plaintiff's interests are entitled to legal protection against the conduct of the defendant, the mere fact that the claim is novel will not of itself operated as a bar to the remedy**. Prosser and Keeton of Torts, Fifth Edition, West Publishing Co. 1984, pp. 3-4 (Emphasis added)

---

[1] *Smith*, Torts Without Particular Names, 1921, 69 U.Pa.L.Rev. 91
[2] *Cullen v. Dickinson,* 1913, 33 S.D. 27, 144 N.W. 656
[3] *Ashby v. White*, 1703, 2 Ld.Raym. 938, 92 Eng. Rep. 126. A famous case, if only because of Chief Justice Holt's declaration that for every interference with a recognized legal right the law will provide a remedy. Accord: *Nixon v. Herndon*, 1927, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759; *Valdez v. Gonzales*, 1946, 50 N.M. 281, 176 P.2d 173; *Lane v. Mitchell*, 1911, 153 Iowa 139, 133 N.W. 381  See also *Morningstar v. Lafayette Hotel Co.*, 1914, 211 N.Y. 465, 105 N.E. 656, to the effect that the triviality of the right is all the more reason for allowing the action.

    *18.* The case of *Scott v. Donald*, 165 U.S. 58 (1896) sheds light on the language appropriate for tort claims against government officers who injure someone under the color of their government position.  In our case, borrowing from the language of *Scott*,  "the defendants well knew when they ... committed said trespasses, that said acts were unlawful, and forbidden by the laws and Constitution of the United States, but that they so acted, trusting and believing that they would be shielded and protected from all harm by their official superiors... and they ... committed such trespasses willfully and maliciously, with the purpose and intent to trample on the plaintiff's rights under the law, and to do him all the injury in the power of the defendants." *Id.* pp. 84-86.

    19.  We now know that even the Religious Freedom Restoration Act, let alone the ordinary Article III relief available, provides for damages ordinarily contemplated for torts.  Therefore, the Plaintiffs are due those same things touted as appropriate relief in *Scott v. Donald*. "Damages have been defined to be the compensation which the law will award for an injury done, and are said to be exemplary and allowable in excess of the actual loss where a tort is aggravated by evil motive, actual malice, deliberate violence, or oppression. While some courts and text writers have questioned the soundness of this doctrine, it has been accepted in England, in most of the states of this Union, and has received the sanction of this Court." *Id.* p. 86  Not only that, there is plenty of language already in the complaint to account for nominal damages.  The citing of the statutory maximum of $500,000 against the United States, and the minimum of $1,000 under the privacy act contemplates a pecuniary amount for which a jury could determine what is appropriate relief.  The jury might even conclude a pecuniary amount of $1.00, under that award of what it might call nominal damages.

Applying what he called Lord Holt's "incontrovertible" reasoning, Justice Story explained that a prevailing plaintiff "is entitled to a verdict for nominal damages" whenever "no other [kind of damages] be proved." Webb v. Portland Mfg. Co., 29 F. Cas. 506, 508–509 (No. 17,322) (CC Me. 1838). Because the common law recognized that "every violation imports damage," Justice Story reasoned that "[t]he law tolerates no farther inquiry than whether there has been the violation of a right." Ibid. Justice Story also made clear that this logic applied to both retrospective and prospective relief. *Uzuegbunam v. Preczewski*, 592 U.S. _____ Slip Op. p. 6 (2021)

**Summary**

20.   It is clear and incontrovertible that the Defendants named, and more to be named by complaint amendment, have violated the rights of the Plaintiffs.  The culpability of each participant needs to be determined by the jury after the due process of discovery that is necessary to expose the particular of the wrongs of each bad actor.  Should the unlikely result of discovery be that there are no bad actors, but only an unconstitutional statute, and unconstitutional force of law regulations, nominal damages are suitable to ensure the complete relief to the Plaintiffs for the injustice that they suffered.. If the Court cannot reasonably deduce that the complaint in its current form provides for nominal damages, let the Plaintiffs amend the complaint to incorporate the express language used in *Uzuegbunm* to clear up the misconception.

21.   Therefore, the Plaintiffs hereby move the District Court for leave to amend the complaint to account for those things found by serendipitous or other discovery, for recent injuries to the rights of the Plaintiffs by wrongs of the Defendants, and for revelations provided by the United States Supreme Court.

22.   The Defendants' Attorney has been queried by email and responded explaining is so many words that they oppose any motions that are intended by us for advancing our litigation to the ends of reaching a judgment in our favor.  There are no issues to narrow by comity.

(s) *David Alan Carmichael*
David Alan Carmichael
1748 Old Buckroe Road
Hampton, Virginia  (23664}
(757) 850-2672 (LL) (757) 320-2220 (c)
david@freedomministries.life


s/Lawrence Donald Lewis
Lawrence Donald Lewis
966 Bourbon Lane
Nordman, Idaho  83848
(208) 443-3852  /  larrynordlewis@povn.net


s/Michelle Boulton
Michelle Boulton
8491 Hospital Dr., # 178
Douglasville, GA 30134-2412
770-315-5724 / LadyTia2@aquawest.net


s/Rick Dale Hollingsworth
Rick Dale Hollingsworth
The First Substitute of William Pakosz
14930 Greenbrier Lane
Homer Glen, IL 60491