**United States District Court,**
**District of Columbia**

| | | |
|---|---|---|
| David Alan Carmichael, *et al.* | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | Case No: 19-CV-2316-RC |
| v. | ) | |
| | ) | Re:  ECF 140 |
| Michael Richard Pompeo, *in his Offiicial* | ) | |
| *capacity as Secretary of State, et al.*[*], | ) | |
| | ) | |
| *Defendants* | ) | |

**PLAINTIFFS' COMBINED RESPONSE**
**TO DEFENDANTS' THIRD MOTION TO DISMISS**

---

[*] Antony L. Blinken as Secretary of State succeeding Secretary Pompeo

TABLE OF CONTENTS

Table of contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Plaintiff Combined Response To Defendants' Third Motion To Dismiss ....................................... 1

Jurisdiction Status ............................................................................................................... 1

The Defendants' Introduction Falsely Represents the Plaintiffs' Positions ................................... 3

The Background Falsely Represents the Plaintiffs' Positions ...................................................... 8

Cases Cited By the Defendants Support the Plaintiffs' Standing ................................................ 14

Damages Are Due and Judiciable ........................................................................................ 15

It Is Reasonable to Expect Carmichael Will Be Subjected to Involvement ................................ 16
    Due to Further Unlawful Conduct of the Defendants

The May 25, 2022, Order Raises a Matter for Injunctive Relief ................................................ 18

Summary ......................................................................................................................... 19

# TABLE OF AUTHORITIES

**The Holy Bible**

First Peter ...........................................................................................................7
    *Chapter 1, verse 13*

James  ..............................................................................................................18
    *Chapter 4, verse 17*

**United States Constitution**

First Amendment ............................................................................................1, 18
    *Free Exercise of Religion*

Fifth Amendment.............................................................................................1, 18
    *Due Process*

Ninth Amendment............................................................................................1, 18
    *Rights Reserved*

**United States Supreme Court**

*Chafin v. Chafin* .............................................................................................15
    568 U.S. 165, 172 (2013)

*City of Mesquite v. Aladdin's Castle, Inc.* ....................................................18
    455 U. S. 283 (1982)

*Day v. Woodworth* ..........................................................................................16
    54 U.S. 363, 13 How. 371 (1851)

*Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.* ...........................18
    528 U. S. 167 (2000)

\*    *Mission Prod. Holdings, Inc. v. Tempnology*.................................................15
    LLC, 139 S. Ct. 1652 (2019)

*Parents Involved in Community Schools v. Seattle School Dist. No. 1* ............................18
    551 U. S. 701 (2007)

\*    *Scott v. Donald*.................................................................................................2, 3, 16
    165 U.S. 58 (1897)

*United States v. Concentrated Phosphate Export Assn., Inc.* ...........................................18

393 U. S. 199

\*    *Uzuegbunam, et al., v. Preczewski, et al* ..........................................................17
     592 U.S. _____, 141 S.Ct. 792, (2021)

     *West Virginia v. E.P.A.* ........................................................................17, 18
     597 US ____ (June 27, 2022)

**United States Court of Appeals**

     *Bois v. Marsh* ...........................................................................................15
     801 F.2d 462 (D.C. Cir. 1986)

     *Taylor v. Resol. Tr. Corp* ...........................................................................15
     56 F.3d 1497 (D.C. Cir. 1995)

**United States Code**

     5 U.S.C. § 552a ...............................................................................2, 17, 18
     *The Privacy Act*

\    22 U.S.C. § 2714a (F.A.S.T. Act, Sect. 32101) .......................................2, 18
     *Revocation or Denial of Passport In Certain Cases for Unpaid Taxes*

     22 U.S.C. § 2721 ...........................................................................................2, 18
     *Impermissible Basis For Denial of Passports*

     28 U.S.C. § 1291 ...............................................................................................2
     *Final Decisions of District Courts*

     28 U.S.C. § 1292 ...............................................................................................2
     *Interlocutory Decisions*

     42 U.S.C. § 408 ...........................................................................................7, 18
     *Penalties*

     42 U.S.C. § 2000bb ...........................................................................................2, 18
     *Religious Freedom Restoration Act*

     44 U.S.C. § 3512 ...........................................................................................2, 18
     *Public Protection*

**Code of Federal Regulations**

     22 C.F.R. § 51.26 ...............................................................................................9
     *Photographs*

22 C.F.R. § 51.4(g)(1)............................................................................11
    *Validity of Passports*

22 C.F.R. § 51.65(a)..............................................................................11
    *Notification of Denial, Revocation or Cancellation of Passports...*

**Federal Rules of Civil Procedure**

Rule 12(b)(1)...................................................................................1, 8
    *Lack of Subject Matter Jurisdiction*

Rule 56(e)......................................................................................1, 8
    *Summary Judgment, Failing To Properly Support or Address A Fact*


**Foreign Affairs Manual**

8 FAM.....................................................................................10, 11, 12
    *Foreign Affairs Manual*

8 FAM 101.1-1.....................................................................................10
    *Introduction To Passports*

\*   8 FAM 402.1-2................................................................................9, 10
    *Passport Photograph Requirments*

8 FAM 105.1-2....................................................................................10
    *Adjudication Support*

**Other**

International Civil Aviation Organization 9303 ......................................8, 9, 10, 12, 14, 18
    *Machine Readable Travel Documents*

## United States District Court,
## District of Columbia

David Alan Carmichael, *et al*.,                    )
                                                     )
        Plaintiffs                                   )        Case No:  **19-CV-2316-RC**
                                                     )
        v.                                           )        RE:  ECF 140
                                                     )
Michael Richard Pompeo, *et al*.                     )
                                                     )
        Defendants-Respondents                       )


**Plaintiffs' Combined Response To Defendants' Third Motion To Dismiss**

**Jurisdiction Status**

1.   Unless the District Court has finally decided the controversies which would warrant the mootness of the Plaintiffs' complaint, the Defendants' motion cannot be sustained as a motion dismissal for want of subject matter jurisdiction, Rule 12(b)(1).  If the subject matter jurisdiction is no longer inherently in the District Court due the court having expressly or constructively finally decided the controversies, jurisdiction lies in the Circuit Court of the United States, D.C. Cir. Case No. 22-5143 (ECFs 132-135).

2.   If the District Court has not finally decided the disposition of which passport is the lawful passport of Carmichael, the District Court cannot grant the Defendants' motion for dismissal on Rule 12(b)(1).  There is fact and law that is material to the question.  Discovery, declaration, injunction and damages are still pending.  Therefore, summary judgment is not warranted.

3.   There are Defendants whose names need to be added to the complaint for their under-the-color-of-law compounded violations of the First, Fifth and Ninth Amendments, 22 U.S.C. §

1

2721, 42 U.S.C. § 2000bb, 5 U.S.C. § 552a, 22 U.S.C. § 2714a, 44 U.S.C. § 3512, regarding

Michelle Boulton.  Regarding Plaintiffs Lewis and Pakosz, the Defendants added new violations

of 5 U.S.C. § 552a, 44 U.S.C. § 3512, and due process, denying the Plaintiffs' rights, benefits,

and privileges as a means to coerce them into providing private information and documents that

are not required as a matter of law.  Those matters are judiciable.  A complaint amendment,

discovery, and follow-on amendment is required as a matter of justice.

> "If a statute purporting to have been enacted to protect the public health, the public
> morals, or the public safety, has no real or substantial relation to those objects, or is a
> palpable invasion of rights secured by the fundamental law, it is the duty of the courts
> to so adjudge, and thereby give effect to the Constitution." *Scott v. Donald*, 165 U.S.
> 58, 91 (1897)

4.   If the District Court has finally excluded the possibility that any sort of damages can be

claimed by the Plaintiffs, under any theory in law and naming of defendants which might be

raised in an amended complaint, then the only controversy remaining is Carmichael's passport.

If the Court has finally determined that there is no controversy regarding Carmichael's passport,

then the Circuit Court has jurisdiction pursuant to 28 U.S.C. § 1291.

5.   If the District Court believes that it is absolved from adjudicating the merits of the

complaint due to its innovation of remand without finding of fact or law, the Circuit Court has

jurisdiction pursuant to 28 U.S.C. § 1292.

6.   If the District Court can admit there are things that have transpired during the period of

the litigation that warrant the amendment of the complaint for the citing of damages allowed by

law to be paid by those who acted under the color of the law in injury to and violation of the

Plaintiffs and their rights protected by the Constitution, then the Plaintiffs need leave to amend

the complaint.  According to recent rulings by the Supreme Court, appropriate relief is not

limited to those things expressly dictated by statute, contrary to the Plaintiffs understanding at

the time of filing the complaint.   False imprisonment, misprision, libel, abuse of process, and other injuries upon the Plaintiffs are actionable for damages of many sorts.

> "Damages have been defined to be the compensation which the law will award for an injury done, and are said to be exemplary and allowable in excess of the actual loss where a tort is aggravated by evil motive, actual malice, deliberate violence, or oppression. While some courts and text writers have questioned the soundness of this doctrine, it has been accepted in England, in most of the states of this Union, and has received the sanction of this Court." *Scott v. Donald*, 165 U.S. 58 (1897)

### The Defendants' Introduction
### Falsely Represents the Plaintiffs' Positions

7.   Contrary to the assertion of the Defendants, the Plaintiffs have not received the equitable relief they sought this lawsuit.  Worse yet, the law and justice remain fallen in the streets.

8.   The opening paragraphs of the Defendants' motion for dismissal twists the reality of the situations in the litigation as if their conduct was noble.  In fact it is hard to find any part of their conduct that has not been done in bad faith.  <u>It is only for the fact that the law is prevailing over the efforts of the Defendants that anything has been accomplished for the Plaintiffs</u>.

9.   Tortuous statement number 1:  "including moving for voluntary remand to offer Plaintiffs religious accommodation."  Prior to their actually making a motion for leave to move for the remand by way of status report (ECF 52), we pointed out that they already had everything they needed in order to fulfill their duty to issue the passports of Lewis and Pakosz and to void the revocation of Carmichael's (ECF 54 which was in fact filed on December 3rd, prior to being able to see the December 4th filing of the government).  Those facts and law that we pointed out about the Defendants' obligations to issue the passports finally manifested as an unstated admission by the judge on May 25, 2022, one and a half years after those passports should have been issued to Lewis and Pakosz.  There were many particular acts that were not merely unreasonable, but unlawful that compounded the injury upon the Plaintiffs by unnecessarily extending their false

imprisonment.  Those unlawful actions demand adjudication and judgment for damages as complete relief.

10. Secondly; there was no "religious accommodation" for them to figure out.  The Defendants admitted in the beginning of the litigation that they process passports just fine for everyone who is willing to sign the unauthorized (non-OMB approved) affidavit drafted by the government that says the person has never had a SSN issued to them.  There is no least-restrictive means for them to search, not only because they already provide the service to the affidavit signors, they did not first reach a compelling interest for which they would then need to search for an accommodation.  These are professional lawyers and law appliers who are not being 'out-knowledged' by pro se litigants.  Their dilatory remand motion is deliberately applied as a vexatious tactic to wear down the novice opposition, to trick us into voluntarily abandoning our claim.  Their remand motion is not benevolent, nor noble.  It is bad faith.

11. Tortuous statement number 2:  "... sending Lewis his passport at his address on record," The Defendants seem to believe the court as no recollection of their non-noble frivolous delays that even their obliging judge could no longer tolerate.  His terse May 25, 2022 order, without a finding of fact or conclusions of law finally put an end to the frivolous bad-faith delays.  The address of Mr. Lewis being on record is in fact the address on Mr. Lewis's passport renewal application.  The delay over their stated wait for address verification was a false excuse for their delay.  It was merely another cog in their machinery of vexatious litigation games.  It is not noble.  It is bad faith.  It demands discovery, adjudication and damages judgment.

12. Twisted statement number 3:  "... and providing Carmichael with a declaration explaining why the Department is legally unable to "void" his revoked passport he decided he preferred to have instead of the valid replacement passport that the Department had already issued him."

Declarations are not the law, they are not evidence of law, they are not evidence of fact.  They are however things made under oath and the declarant is subject to penalties of perjury when "discovery" exposes that the facts known by the declarant contradict his declaration.

13. Mr. Peek's declaration does not establish that the Department is "legally unable" to void Carmichael's unlawfully revoked passport.  The declaration of Mr. Peek only establishes a summary of his conclusory statements that are twisted to support their litigation posture that is intended to disadvantage the Plaintiffs litigation position.  It is not designed to provide complete relief for the sake of justice.  In fact, the revocation is void as a matter of law, and Mr. Peek exposed the fact that a rescission notice can be sent to whomever it was that they sent the notice of revocation.  His statement that a new number cannot be assigned to the revoked passport was merely obfuscation.  There is no new number to issue.  In fact, Mr. Paul Peek's conclusions are contested by Carmichael and the material facts need to be tested in discovery.

14. Twisted statement number 4:  "Undaunted by these efforts to accommodate their religious beliefs and afford them with the equitable relief that they seek in this case..."  The equitable relief that we seek in this case includes the finding of fact and conclusions of law, as well as pecuniary damages enroute to judgment on the record.  What the Defendants describe as their "efforts" are not to the end to accommodation or equitable relief, but are tricks of litigation strategy to concede as little as possible until they have no choice, dodging where they can the complete relief that we seek and is due to the Plaintiffs.

15. Twisted statement number 5:  "Plaintiffs persist in pressing non-religious objections to the current posture of the case."  The Defendants' term "non-religious objections" should rightly be translated "objections to the government's and court's departure from law."  Equity is something that the *lex non scripta* affords when the written law is not determinable or unable to

provide the justice that is obviously necessary according to reason.  We plaintiffs, and especially

the Defendants, have an obligation to apply the law absolutely unless it renders an injustice.  It is

only if the written law renders an injustice or does not provide relief that equity is applied.  We

Plaintiffs discerned rightly that the *lex scripta* (written law), rightly applied according to the

facts, will rightly do justice for us as it will do for those who follow us.  The conduct of the

Defendants in their denying the passport renewal applications to Pakosz, Lewis, and later

Boulton, was in violation of the written law as well as justice.  We understood that as a matter of

the written law, the Defendants had every thing they needed to obligate them to obey the law and

issue the passport renewals from the time that they received the applications and unlawfully

denied them.  Since the Plaintiffs fulfilled their duties according to the law regarding passport

application, and the Defendants had a duty to issue the passports as a matter of law, we Plaintiffs

have a duty to not tolerate whimsical non-law innovations which the Defendants mischaracterize

as equity.  We are disheartened that the government Defendants and the District Court do not

have the same dogged determination to uphold those principles unless it will manifest a twisted

result to their benefit.

16. When the Defendants offered passport renewals as a carrot on a stick rather than issue

them as was their duty at law, it was after the Plaintiffs had made a formal challenge to the

Defendants' remand motion saying that the motion was in bad faith, etc.  If the Plaintiffs prevail

in that claim, the Defendant Attorney and those who conspired for the Defendant agency are both

subject to sanctions.  The Plaintiffs rightly perceived that if they took the illicit carrot on a stick,

they abandoned their complaint against the vexatious litigation trickery and frivolous delays of

the miscreant Defendants and their Attorney.  Our properly motivated refusal to take the bait is

secondary to the our commitment to the institution of law for which we are religion-bound to

uphold according to I Peter 2:13.  The Plaintiffs ought not to be penalized for not abandoning their rights and duties to contest the frivolous remand.

17. Twisted statement number 6:  "Carmichael, meanwhile, has already received a replacement passport but asks the Department to exceed its authority and practice, rather than accept possession of the replacement passport that the Department has already issued him."  The Department exceeded its authority when it generated paperwork to indicate that Carmichael's passport was revoked.  The revocation is therefore, as a matter of law rather than equity, void. The passport, as a matter of law, is not revoked.

18. Mr. Peek has revealed that rescinding the revocation and providing notice is within the realm of the Department's authority.  ""When the Department mistakenly revokes a passport, **it can retract its notification** so long as it is done immediately (within one day) after the original notification is sent. After this notification has been disseminated for more than a day, the Department of State **cannot ensure** that other U.S. agencies or foreign countries would accept and incorporate into their systems updated information provided by the Department that the revocation tied to a particular passport number was rescinded." (ECF 136-1, Declaration of Paul Peek, ¶14., Emphasis add)  Neither can it guarantee that other U.S. agencies or foreign countries would accept the updated information.""  Mr. Peek's declaration goes on to speculate what hassles might be faced by Carmichael.  Those speculations are less threatening to Carmichael than is his current situation where his legitimate passport retained in his hands will be confiscated under the current illegitimate order of the Defendants.  The speculative hassles have been considered by Carmichael and are his better option in order to reach judgment as a matter of law and to expose the malevolent conduct of those who acted and conspired to injure him in his rights and cover potentially felonious conduct (42 U.S.C. § 408).

19. The Defendants, in their motion for dismissal, argue as if their motion is one for summary judgement.  Their approach defeats their motion as one under Rule 12(b)(1).

20. None-the-less, Carmichael contests that the material facts will support the Defendants' contentions that their conduct in processing the revocation and replacement of his passport was in accordance with the law.  Those material facts must be examined through the discovery due process.  One example of the *ultra vires* replacement passport's not being valid lies in the Defendants' reliance upon the ICAO obligations.  The Plaintiff Carmichael intends to prove that the replacement passport does not comply with the ICAO photograph instructions, where the passport in Carmichael's possession does comply (Att. 1, ICAO Photograph Requirements).

21. Mr. Peek and the Defendants' Attorney left out the material fact that the process for a replacement passport requires a new application, a new photograph that is taken within six months of the application date.  It is extrinsic fraud under the circumstances not merely sophistic rhetoric.  Let's remember – they know more facts and law than the Plaintiffs.  They have no excuse for using half-facts to lead the court to a false conclusion, especially for the sake of injustice to the Plaintiffs.

**The Background Falsely Represents the Plaintiffs' Positions**

22. The Defendants describe the case as having a lengthy procedural posture, with the adjective "lengthy" implying that its length is inordinate.  The length of the procedural posture is due to the misconduct of the Defendants and their Attorney during the litigation, and in the Defendants continuing to injure other people who are in line to become plaintiffs.  The Defendants cited the Court's explaining "the source of Defendants' insistence on requiring an updated photograph from Lewis – and therefore, one of the roadblocks to Lewis receiving his passport – is unclear." ("Id at 27" referring to Order) It is unclear to those who have not read the

multiple briefs of the Plaintiffs, beginning December 3, 2020, explaining the Defendants' motivations that were clear to the Plaintiffs them and have been shown prophetical.

23. The Defendants reveal a significant dysfunction in the "procedural posture" where they say, "As to Plaintiff Carmichael, the Court denied the Department's motion because its ""briefs do not address the propriety of issuing Carmichael a replacement passport rather than voiding the cancellation," and "hypothetically, providing Carmichael a passport issued via an obviously invalid process – likely rendering that hypothetical passport ineffective—would not moot this case.""  It appears that the Court is allowing the Defendants to argue the case on the merits while allowing them to sequester the evidence upon which facts to support their case must be based.

24. So far, the Defendants have used piecemeal declarations, that are not allowed to be tested by adversarial process, as the support for their twisted sophistry.  <u>When the Plaintiffs have been able to dig up documentary evidence despite the lack of discovery due process, the Defendants' declarations, agency letters, and sophistries have been proven false.</u>  As an example, the Defendants again twist reality to hide the fact that they have been lying to the Court.  In their dismissal motion they say, "Following recent changes to guidance from the International Civil Aviation Organization (ICAO) Document 9303, the Department determined that it could use the photograph submitted by Lewis because it met the requirements of 22 C.F.R. § 51.26."  In order to dodge the damages claims that are due their bad actors, the Defendants argue that those in their entire Department are complete idiots.  They say that "unbeknownst to the Department" the ICAO changed (ECF 136, Def. Stat. Rep.,p. 2; ECF 140-3, 2nd Decl. Paul Peek, ¶4.).  Mr. Paul Peek then plays a deceptive shell game with his words rather than producing the text of the Foreign Affairs Manual.  Referring to ICAO 9303, Mr. Peek said, "Under the Eighth Edition's new standard, which the Department has adopted by reference at 8 FAM 402.1-2, a photograph

must be submitted within six months of the date of application."  Contrary to Mr. Peek's

assertions, the actual text of the 7th Edition of the ICAO says that it is the particular State that

determines the currency requirement of the photographs, etc.  "The Issuing Date is not part of the

machine readable zone, and also in general not available in the electronic LDS. Therefore this is

not suitable for automated processing. Additionally, depending on the Issuing State, the Issuing

Date might not be the actual date of passport personalization, but the application date, and

therefore not accurate enough to identify only affected documents." (Att. 2, ICAO, 7[th] Ed. 2015,

p. 44).  The United States and its Foreign Affairs Manual is their boss, not the foreign ICAO.  In

fact, 8 FAM 402.1-2 does not adopt the ICAO change.  The ICAO change now matches what the

8 FAM 402.1-2 has required since at least 2018.  The Foreign Affairs Manual has obligated them

for many years, and it affirms that Mr. Lewis's passport application should not have been denied

the first or the second time (Att. 3,  8 FAM 402 Passport Photograph Requirements, 12-08-

2018).  According to 8 FAM 105.1-2 "Adjudication Support", it lists the 8 FAM documents as

the reference by which the adjudicator should act.  (Att-4, 8 FAM 105, Adjudication Support,

04-09-2021).  8 FAM 101.1-1, Introduction to U.S. Passports, paragraph c. says, "ICAO does not

have the authority to rule on whether a particular travel document will be acceptable in the

United States or in other countries." (Att-5, 8 FAM 101.1-1, Introduction to U.S. Passports, 06-

27-2018).  The ability to use the photograph of Mr. Lewis is not a new innovation and the

rewording of the latest foreign ICAO document to appropriately conform to the U.S. standards

has nothing to do with the Defendants' obligation as a matter of United States law to issue the

Lewis and Pakosz passports.  The Defendants' mere sophistry citing references and concluding

their import should be presumed to be misleading until proven otherwise by careful scrutiny.

25. The 8 FAM instructions cited above have been found by the Plaintiffs online.  These are

the sort of documents that should have been filed by the Defendants if they had any interest in justice and resolving the litigation as soon as possible.  We Plaintiffs would not have to be fighting against every lie of the Defendants and their attorney.  If the 8 FAM on the subject was produced at the start, the Defendants would not have been allowed to put off for an extra year and a half, and after the death of Mr. Pakosz, the admission that their passport renewals should be immediately issued.  We might not contest the mere "erroneousness" of Carmichael's revocation if the Defendants would produce the 8 FAM and the record of Carmichael's adjudication to see if indeed it was a mere error and not willful, intentional, hostile, bad faith, cunning, cruel, or otherwise wrongful conduct that warrants damages.  We cannot tolerate the sophistry and false statements such as "unbeknownst to the Department" and 'were merely waiting for more information' of the Defendants' declarants.  Neither should the Court.

26. There again is a critical question of law.  Pursuant to 22 CFR § 51.4(g)(1), "A United States passport is invalid as soon as: The Department approves the revocation notification pursuant to § 51.65(a);"  We do not know as a matter of fact based upon material evidence whether or not "The Department" approved the revocation of Carmichael's passport.  Just because a letter went out does not mean that "The Department" approved it.  The "Department" can only approve things lawfully.  If it was not done lawfully, "The Department" did not approve the revocation notification.  It appears on its face, according to law, and Mr. Rolbins' Declaration and certain material facts about the situation that he either did not know or deliberately excluded as a matter of fraud, etc., that it was not "The Department" that approved the revocation notification.  Those who did the revocation notification under the color of law are subject to damages, at least.  If as a matter of law that it was not "The Department" that approved the revocation notification, Carmichael's passport is not invalid pursuant to 22 CFR § 51.4(g)(1).

27. Another problem we have with the Defendant merely relying on sophistry of Mr. Peek, they quote Mr. Peek in their motion for dismissal while citing 22 CFR § 51.4(a).  Here is their quote:  "The Department, however, "may issue a replacement passport . . . [t]o correct an error or rectify a mistake of the Department[.]" 22 C.F.R. § 51.54(a); First Peek Decl. ¶ 7."  Here is the actual text of the reference that they cite:  "*Signature of bearer.* A passport book is valid only when signed by the bearer in the space designated for signature, or, if the bearer is unable to sign, signed by a person with legal authority to sign on his or her behalf. A passport card is valid without the signature of the bearer."  Currently, the only signed passport book is the one in the possession of Mr. Carmichael.

28. Another frivolous argument of the Defendant is, "As Director Peek explained however, the only option is to issue Carmichael a replacement passport and the Department is unable to deviate from this option due to overriding prudential policy concerns and thus lacks a procedure for voiding a now-revoked passport."  The Defendants have been deviating in law, regulation, FAM policy and procedure (as well as ICAO standards) to the hurt of the Plaintiffs, contrary to law and equity, but are somehow chained by their typical (non-mandatory) procedure that they might exhibit if they had actually behaved themselves.

29.  The Court should not give weight to the Defendants' speculative sophistry.  The Defendants admit that they "cannot control how other U.S. agencies of foreign countries accept ... communications rescinding a notice..."  There is no evidence that such a rescission notice can only be done "immediately."  Their speculation of the conversations that Carmichael will have at a border are not relevant and not welcomed by Carmichael.  A conversation regarding the details of his passport's validity opens the door for a conversation regarding the great commission.

30.  The Court's frivolous remand exacerbated Carmichael's punch in the nose for helping the

least of these.  The Plaintiffs were correct in that the Defendants had a duty to issue the passports

to Lewis and Pakosz, and void the revocation of Carmichael's passport no later than we now

know to be within six days of the order of August 28, 2020, that was not contested by the

Defendants.

31.  The Court's March 25, 2022, order is an arbitrary and empty oblique admission by the

District Court that the Plaintiffs are correct as a matter of law as applied to the facts.  However,

the Plaintiffs have not yet had the discovery process for which they are due.  The facts have been

made inaccessible.  The court's orders have tracked and elevated nearly every argument of the

Defendants while being silent to the pleadings of the Plaintiffs that should have more than

persuaded the Court.  After the pattern the Court has set, the Defendants were hardly motivated

to do justice to the Plaintiffs and continued to show contempt for the Court after its soft

concession to the Plaintiffs' position (ECFs 124, 125).

32. In their status report of May 24, 2022 (ECF #136), the Defendants continued to play the

Court and the Plaintiffs.  They explained that Mr. Lewis's case is moot because they intended to

some day issue a replacement passport to him, holding the carrot on the stick if he would just

give him something for which they already possessed.  Eight (8) days earlier, Mr. Lewis had sent

a letter to the Defendants explaining that he had no intention of taking a passport as a mutual

concession but that the Defendants fulfill their duty according to the law (ECF 137-3).  Mr.

Lewis address, the same one on his passport renewal application, was on that letter.  Yet, the

Defendants told the Court that one day Mr. Lewis would have a passport (effectively) if he

would just bend his knee.

33.  The Defendants continued, and continue in this latest motion, to play the Court with

false statements saying that they've taken "steps to bring resolution to the outstanding issues

bering on Plaintiffs' claims for equitable relief."  As if it were a noble undertaking, they said "The Department determined that it could issue Lewis a new passport, valid for a full ten years, based on the passport photograph that Lewis had previously submitted with his application." They did not tell the Court that despite their knowing that this passport was owed to Mr. Lewis as a matter of law, prior to the status report, they tried to use their duty of law as if it were a carrot-on-a-stick settlement offer to have Mr. Lewis embrace a fulfillment of his claims for equitable relief.  "Your letter did not state whether Mr. Lewis has any outstanding issues given that the Department has indicated it will accept his photograph with the photograph as originally submitted and is prepared to issue a regular passport that will be valid for 10 years.  Can you confirm whether he accepts this proposal?  It would seem to me that his claims are fully resolved, but please advise if he has a different view as to what needs to be remedied in light of the Court's most recent order."  (Att. 6, May 16, 2022, Def. Email Re: ICAO and Lewis)

34. The Defendants have established the threshold for the "reasonable" time required for a passport to be issued once the Department knows that a passport is due to the applicant.  Though the Court did not find fact or conclude law in its May 25, 2022 order, nor provide the pecuniary damages and other statutory and equitable relief due the Plaintiffs, the Court imposed the duty upon the Defendants to issue the passport to Mr. Lewis.  That took six (6) days for them to issue the passport, sent by express mail, getting it to Mr. Lewis by one week (7 days) from the Court's order of May 25, 2022 (ECF-140-3, 2nd Declaration of Paul Peek).  The delays in fulfilling their duty as a matter of law exceeding six days of issuance or seven days for receipt shall be the basis of time for which Mr. Lewis, Mr. Pakosz, Mrs. Boulton and Mr. Carmichael are due pecuniary damages for false imprisonment, among other things.

35. The case is not whether the Defendants did not exercise their discretion whether it could

accommodate the Plaintiffs, the case goes to the matter of whether the Defendants had an obligation to accommodate the Plaintiffs as a matter of law.

### Cases Cited By the Defendants Support the Plaintiffs' Standing

36. When the Defendants cited *Taylor v. Resol. Tr. Corp.*, they neglected to quote a portion of that citing where it indicates that the Plaintiffs case is not moot – " and former employees <u>can recover damages for past retaliation</u> suffered while employed... .... In *Bois v. Marsh*, 801 F.2d 462 (D.C. Cir. 1986), ... Although <u>we held that her claims for damages were still live and proceeded to analyze them on the merits</u>, 801 F.2d at 468-71..." *Taylor v. Resol. Tr. Corp* 56 F.3d 1497, 1502 (D.C. Cir. 1995) (Emphasis added)

37. The Defendants' statement is false where they say, "Simply put, Plaintiffs brought this case to obtain passports without having to identify with a social security number."  The unlawful denial of the passports is not the complete relief that we sought.  We seek damages to the fullest extent allowed by law based upon the facts and conclusions of law as they apply to each bad actor under the color of law who had hidden behind a 'Bureau of Consular Affairs'  pseudonym.

38. The Defendants wrongly paint a notion that there is a burden upon the Plaintiffs to prove facts or law to overcome a presumption of mootness when the Court is duty bound to apply relief wherever it may be had.  Mootness is a "demanding standard"; it applies "only if 'it is impossible for a court to grant any effectual relief whatever.'" *Mission Prod. Holdings, Inc. v. Tempnology*, LLC, 139 S. Ct. 1652, 1660 (2019) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

### Damages Are Due and Judiciable

39. There is no genuine dispute of material fact that persons acting under the color of law, under the guise of pseudonyms, unlawfully denied passports to Plaintiffs Lewis, Pakosz, and Boulton.  There are more wrongs and injuries to the Plaintiffs in consequence of the willful,

intelligent, etc., acts done in hostility to the religion of the Plaintiffs.  The common law, those rights retained by the Plaintiffs and their posterity, offers pecuniary satisfaction in damages.[1] Those pecuniary damages give just relief for the wrong of the Plaintiffs' rights being withheld and invaded; where receiving a passport three-years-after-the-fact cannot be an adequate remedy; where the sufferer must be given pecuniary satisfaction in damages.  "The instruments whereby this remedy is obtained (which are sometimes considered in the light of the remedy itself) are a diversity of suits and actions... where it is the (Plaintiffs') right of prosecution to judgment which everyone is due."[2]

40. The Plaintiffs, notwithstanding their lack of training in tort law, sufficiently alleged with so many words that there are of the Defendants those who are liable for damages.  Those damages are pecuniary whether or not there is chattel involved.

> "It is a well established principle of the common law that in actions of trespass and all actions on the case for torts, a jury may inflict what are called 'exemplary,' 'punitive,' or 'vindictive' damages upon a defendant, having in view the enormity of his offense, rather than the measure of compensation to the plaintiff. We are aware that the propriety of this doctrine has been questioned by some writers, but, if repeated judicial decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument. By the common as well as by the statute law, men are often punished for aggravated misconduct or lawless acts by means of a civil action, and the damages inflicted by way of penalty or punishment given to the party injured. In many civil actions, such as libel, slander, seduction &c., the wrong done to the plaintiff is incapable of being measured by a money standard, and the damages assessed depend on the circumstances, showing the degree of moral turpitude or atrocity of the defendant's conduct, and may properly be termed 'exemplary' or 'vindictive', rather than 'compensatory.'"  *Scott v. Donald*, 165 U.S. 58 (1897) citing *Day v. Woodworth,* 54 U.S. 363, 13 How. 371

41.  It is the duty of the District Court to ascertain the extent of the violations of law, to examine the evidence of culpability of each actor, to determine which persons are liable for the injuries done, and the amount of damages to be paid whether the nomination be one dollar, a

---

[1] Sir William Blackstone's Commentaries, Book the Third, Private Wrongs, Chapter the Eighth, Of Wrongs and Their Remedies; Respecting the Rights of Persons
[2] *Id,* Quote of Maxim – Justinian "jus prosequendi in judicio quod alicui debetur"

minimum of one thousand dollars adjusted for inflation based upon the Privacy Act, or the statutory maximum of five hundred thousand dollars if the person liable for the tort is the United States.

> Applying what he called Lord Holt's "incontrovertible" reasoning, Justice Story explained that a prevailing plaintiff "is entitled to a verdict for nominal damages" whenever "no other [kind of damages] be proved." Webb v. Portland Mfg. Co., 29 F. Cas. 506, 508–509 (No. 17,322) (No. CC Me. 1838). Because the common law recognized that "every violation imports damage," Justice Story reasoned that "[t]he law tolerates no farther inquiry than whether there has been the violation of a right." Ibid. Justice Story also made clear that this logic applied to both retrospective and prospective relief. *Uzuegbunam v. Preczewski*, 592 U.S. _____ Slip Op. p. 6 (2021)

### It Is Reasonable to Expect Carmichael Will Be Subjected to Involvement Due to Further Unlawful Conduct of the Defendants

42.  The case is not moot because of the Defendants' claim that they have voluntarily taken a second look at the Plaintiffs' passport cases.  They have not given any indication that they are not subjecting others to the same abuse experienced by the Plaintiffs.  Carmichael's involuntary passport assistance continues unabated since people call him for assistance when their passports are being unlawfully denied.  Michelle Boulton quoted the Defendants' statement to the Court about their granting an accommodation (ECF 80) and the Defendants replied to Boulton with a second denial letter.  The man from Nevada, and the man from Idaho are two more stark examples (ECF 127-1, 127-2).  The Defendant here, like the E.P.A. in *West Virginia v. E.P.A.*, 597 US ____ (June 27, 2022), continues to issue the *ultra vires* affidavit form instead of the OMB approved form (ECF 127-3).  The Defendants have so far asserted that applicants not responding exactly as the ultra vires form demands will guarantee a denial of their passport application (ECF 24-1, pp. 9, 18, 20; ECF 30, pp. 3, 4, 11).  The Court has not made a finding of fact and law on those issues and the Defendants are unleashed to deny passports to those who are not getting assistance from Carmichael to obtain a passport  (ECFs 127-1, 127-2).  Until the

District Court does its duty to adjudicate, and to enjoin the Defendants, Carmichael will continue

to be harangued by the Defendants' victims and the courts will be subjected to multiple suits.

> But "voluntary cessation does not moot a case" unless it is "absolutely clear that the allegedly wrongful behavior WEST VIRGINIA v. EPA Opinion of the Court could not reasonably be expected to recur." *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U. S. 701, 719 (2007). Here the Government "nowhere suggests that if this litigation is resolved in its favor it will not" reimpose emissions limits predicated on generation shifting; indeed, it "vigorously defends" the legality of such an approach. Ibid. We do not dismiss a case as moot in such circumstances. See *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U. S. 283, 288–289 (1982). The case thus remains justiciable, and we may turn to the merits. *West Virginia v. E.P.A.*, 597 US ____ (June 27, 2022), Slip Op. pp. 15-16

> Voluntary cessation does not moot a case or controversy unless "subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U. S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Assn., Inc*., 393 U. S. 199

### The May 25, 2022 Order Raises a Matter for Injunctive Relief

43. The Court's order for Carmichael to take possession of his passport, without finding of

fact or law, **raises a matter for injunctive relief**.  Not only was the passport document produced

*ultra vires*, and its purpose is to moot the case so that facts proving multiple violations of law

will be hidden, it does not even conform to the international norm of the ICAO instructions

regarding photographs where the valid but unlawfully voided passport in Carmichael's

possession does conform to the photograph requirements (Att. 1).  A jury will agree.

44. Plaintiff Carmichael has an interest for injunction whereby he is having to intervene on

behalf of those who are being denied their passports in violation of the First, Fifth and Ninth

Amendments, 22 U.S.C. § 2721, 42 U.S.C. § 2000bb, 5 U.S.C. 552a, 22 U.S.C. § 2714a, 42

U.S.C. § 408, 44 U.S.C. § 3512.  It happened more than three times in 2021 with Michelle

Boulton, the Florida Woman (ECF 127-4) and the Idaho Man (ECF 127-1), and once so far in

2022 with the Nevada Man (ECF 127-2).  There is a reasonable expectation that it will occur.

The Defendants have offered no evidence that the practice has stopped systemically.  Plaintiff Carmichael is duty bound by religion to help those who contact him for unpaid administrative help.  "If a man knows the good he ought to do, and does not do it, to him it is sin."  James 4:17.

**Summary**

45. If the court wants to ensure that the malevolent conduct of the government actors, including our friends at the U.S. Attorney's office, are not exposed:  Let it dismiss the complaint without addressing the important facts and law put to the court in the Plaintiffs' filings; let it refuse discovery; and let it ensure that the gross abuse of process, hostility to religion, abuse of power, misprision of felony, misprision of misdemeanor, sedition, libel, and ultimately treasonous conduct of the is forever hidden by those acting under the color of law.  If it intends to fulfill its duty to establish justice:  Let the conduct of the perpetrators be exposed; let the actual law, regulations, and written policies be brought to light and compared with the conduct actors and the perjuring declarants; let the availability of damages be liberally applied; for the sake of justice and to apply the purposes of the law that discourage wrongful conduct by those in power who are put there to be servants.   The Plaintiffs case is not moot.  It has merely been wrongfully dismissed without adjudication.  Should it remain without adjudication, it will be a great misprision.

(s) *David Alan Carmichael*
David Alan Carmichael
1748 Old Buckroe Road
Hampton, Virginia  (23664}
(757) 850-2672 (LL) (757) 320-2220 (c)
david@freedomministries.life




s/Lawrence Donald Lewis
Lawrence Donald Lewis
966 Bourbon Lane
Nordman, Idaho  83848
(208) 443-3852  /  larrynordlewis@povn.net




s/Michelle Boulton
Michelle Boulton
8491 Hospital Dr., # 178
Douglasville, GA 30134-2412
770-315-5724 / LadyTia2@aquawest.net




s/Rick Dale Hollingsworth
Rick Dale Hollingsworth
The First Substitute of William Pakosz
14930 Greenbrier Lane
Homer Glen, IL 60491