UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID ALAN CARMICHAEL, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.:   19-2316 (RC) |
| | : | |
| v. | : | Re Document Nos.:   140, 143 |
| | : | |
| ANTONY J. BLINKEN, Secretary of State, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

GRANTING DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT

**I.  INTRODUCTION**

Plaintiffs David Alan Carmichael and Lawrence Donald Lewis bring this case against Defendants Antony J. Blinken, in his official capacity as Secretary of State, and the U.S. State Department ("Defendants") regarding Plaintiffs' attempts to obtain passports without providing social security numbers. Plaintiffs assert that identifying with a social security number is prohibited by their Christian faith and requested religious accommodations. After nearly four years of litigation, Plaintiffs have now received valid passports from Defendants without having to provide them their social security numbers. Yet they still refuse to take Defendants' "yes" for an answer. Defendants move to dismiss this case as moot. For the reasons explained below, the Court will grant the motion.

**II.  BACKGROUND**

The Court assumes familiarity with the facts of this long-running dispute. *See Carmichael v. Blinken ("Carmichael II")*, No. 19-cv-2316, 2022 WL 888177, at *1–3 (D.D.C. Mar. 25, 2022); *Carmichael v. Pompeo ("Carmichael I")*, 486 F. Supp. 3d 360, 365–66 (D.D.C.

2020).  This Opinion picks up where *Carmichael II* left off.  In *Carmichael II*, the Court considered Defendants' motion to dismiss Plaintiffs' remaining three causes of action: the Religious Freedom Restoration Act ("RFRA"), the Fifth Amendment, and the Privacy Act. *Carmichael II*, 2022 WL 888177, at *1.  Defendants argued that these claims were moot.  *Id.* at *11.  The Court, however, found that Defendants had not met their burden to show mootness.  *Id.* at *11–12.  With respect to Mr. Lewis, Defendants argued that they had granted Mr. Lewis's request to obtain a passport without providing his social security number.  But Defendants still required Mr. Lewis to submit a photograph taken within six months of the issue date.  *Id.* at *11.  Mr. Lewis, however, maintained that his photograph only needed to be taken within six months of the *application* date, and the photograph that he already submitted satisfied this requirement.  *Id.*  The Court noted that the sources Defendants relied on did not appear to support their position concerning the photograph, and thus "the source of Defendants' insistence on requiring an updated photograph for Lewis—and, therefore, one of the roadblocks to Lewis receiving his passport—[wa]s unclear."  *Id.*

With respect to Mr. Carmichael, Defendants argued that because they had mailed Mr. Carmichael a replacement passport (without asking for his social security number) during the Court-ordered remand period that occurred in between *Carmichael I* and *Carmichael II*, the issue was moot.  *Id.* at *12.  But Mr. Carmichael declined to accept and sign the replacement passport; he argued that Defendants should have voided the cancellation of his original passport rather than issue him a replacement passport.  *Id.*  He appeared to argue that Defendants' "regulations only allow replacement passports for certain reasons that are not applicable to him."  *Id.* Because "Defendants' briefs d[id] not address the propriety of issuing Carmichael a replacement passport rather than voiding the cancellation" of the original passport, the Court could not be

sure that the dispute was moot. *Id.* If, "hypothetically," the replacement passport was the product of "an obviously invalid process," then Mr. Carmichael would still have a live claim. *Id.* Although the Court found that Defendants had not shown that Plaintiffs' claims were moot, it noted that "it appears that Defendants have all intentions of providing Plaintiffs passports without Plaintiffs providing social security numbers and there may be an opportunity to resolve this issue without further litigation." *Id.* Thus, the Court ordered Defendants to "reevaluate their positions on the appropriate ways, consistent with federal law and regulations, to get Plaintiffs their passports" and also ordered the parties to file a joint status report within 60 days of the opinion. *Id.*[1] Now, having taken further actions with respect to Mr. Lewis and Mr. Carmichael, Defendants once again move to dismiss Plaintiffs' claims as moot.

### III. LEGAL STANDARD

Federal courts have subject-matter jurisdiction where a claim "arises under" federal law. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). "Rule 12(b)(1) presents a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (quoting *Agrocomplect, AD v. Republic of Iraq*, 524 F. Supp. 2d 16, 21 (D.D.C. 2007)). Subject-matter jurisdiction cannot be waived, and "[w]hile *pro se* complaints

---

[1] In *Carmichael II*, the Court agreed with Defendants that Plaintiffs failed to plead damages because RFRA and the Fifth Amendment do not waive sovereign immunity for damages and Plaintiffs did not plead any connection between the alleged Privacy Act violations and damages. *Id.* at *12–14. And the Court declined to consider Plaintiffs' due process claim because there was no remaining claim for damages and there was a nontrivial chance that the parties could resolve the equitable relief issue without further litigation. *Id.* at *12.

Plaintiffs subsequently appealed this decision to the D.C. Circuit, which (as relevant here) dismissed their appeal because Mr. Carmichael's equitable claim remained pending in this Court and therefore the order on review was not an appealable final order. *See Carmichael v. Blinken*, No. 22-5143, 2022 WL 3568058, at *1 (D.C. Cir. Aug. 11, 2022).

are held to a less stringent standard than other complaints, even a *pro se* plaintiff [ ] bears the burden of establishing that the Court has subject matter jurisdiction." *Id.* at 33 (citations and internal quotations omitted); *see also Jathoul v. Clinton*, 880 F. Supp. 2d 168, 170 (D.D.C. 2012) ("To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear her claims."). To evaluate "a motion to dismiss under Rule 12(b)(1), [courts] must treat the complaint's factual allegations as true . . . [granting] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Clinton*, 880 F. Supp. 2d at 169 (internal quotations omitted) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). Courts are not required to accept "legal conclusion[s] couched as factual allegations[s]" as true. *Id.* (quoting *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006)).

       To invoke federal jurisdiction, a plaintiff must demonstrate the existence of an actual and concrete dispute. *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018). If, at any point before or during the proceedings, the case becomes moot, then such a case is no longer within the jurisdiction of the federal courts. *Id.* The D.C. Circuit has explained that "[f]ederal courts lack [subject matter] jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)); *see also Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (noting that a court has "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it") (citations omitted)). A case becomes constitutionally moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," *Conservation Force, Inc. v.*

*Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013), or when "intervening events make it impossible to grant the prevailing party effective relief," *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (quoting *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996)). "Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue." *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982); *see also Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011) (finding as moot superseded agency Record of Decision that had "no current force or effect").  "The initial 'heavy burden' of establishing mootness lies with the party asserting a case is moot." *Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (citation omitted).  The party opposing mootness has the burden of showing an exception to the mootness doctrine.  *Id.*

## IV.  ANALYSIS

In this case, Defendants "have in fact provided passports to Plaintiffs" and thus "the requests for equitable relief [are] moot because 'intervening events [have made] it impossible to grant the prevailing party effective relief.'" *Carmichael II*, 2022 WL 888177, at *11 (quoting *Lemon*, 514 F.3d at 1315–16).  With respect to Mr. Lewis, following *Carmichael II*, Defendants determined pursuant to their own regulations that they could accept the photograph that he previously submitted with his application.  *See* 2d Peek Decl. ¶¶ 1–6, ECF No. 140-3. Accordingly, Defendants mailed a copy of Mr. Lewis's passport to him and he received it on June 1, 2022.  Ex. 1 to 2d Peek Decl. at 5, ECF No. 140-3.  Mr. Lewis's case is therefore moot.

The same result holds for Mr. Carmichael.  Defendants have now explained that they adhered to agency procedures by sending Mr. Carmichael a replacement passport rather than voiding the cancellation of his original passport.  1st Peek Decl. ¶¶ 1–15, ECF No. 140-2.  Mr.

5

Peek, the Director of Passport Services' Office of Adjudication at the State Department, stated that "[u]nder its' [sic] own regulations and policies, the [State] Department's only option is to issue Mr. Carmichael a replacement passport." *Id.* ¶ 5. "Pursuant to 22 C.F.R. §§ 51.10 and 51.54(a), the Department 'may issue a replacement passport . . . [t]o correct an error or rectify a mistake of the Department.'" *Id.* ¶ 7. A replacement passport contains an endorsement code that "links the new, replacement passport (issued with a new passport number) with the old passport number so that any visa and/or other information associated with the passport holder carries over to the replacement passport." *Id.* ¶ 8. Mr. Peek stated that "[i]t is the Department's practice to issue replacement passports in this manner." *Id.* ¶ 11. Mr. Peek further explained that "when a passport has been revoked, the Department notifies other U.S. agencies and foreign countries"; thus, "voiding the revocation of a passport years after the fact . . . could lead to an individual being detained or delayed overseas or domestically for travelling on what might be believed is an invalid and/or revoked passport." *Id.* ¶ 14.

Despite the fact that Defendants issued Mr. Carmichael a replacement passport under their standard procedures, he *still* disputes its validity. Mr. Carmichael now avers that the replacement passport is defective because it "does not comply with the ICAO photograph instructions." Pls.' Combined Response to Defs.' 3d Mot. to Dismiss ("Opp'n") at 8, ECF No. 144. But that argument is unavailing because Defendants have already approved the replacement passport without requiring a new photograph; in fact, they sent this replacement passport to Mr. Carmichael nearly two years ago. *Carmichael II*, 2022 WL 888177, at *3. The Court will not entertain Mr. Carmichael's attempts to prolong this moot case further by manufacturing new reasons to reject the relief that Defendants have provided. Because Defendants have taken "[c]orrective action" and provided Mr. Carmichael a valid passport without requiring his social

security number, this case is moot. *Id.* at *9 (quoting *Nat. Res. Def. Council, Inc. v. U. S. Nuclear Regul. Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982)).

The Court is not persuaded by Mr. Carmichael that this case meets an exception to mootness. Mr. Carmichael argues that this case is not moot because he will be "harangued" by other individuals seeking his assistance who purportedly share similar religious beliefs as he and are purportedly denied passports by Defendants. Opp'n at 18. Notably, Mr. Carmichael does not argue that he himself will likely be directly injured by Defendants in the future—nor could he. Defendants represent that there is no reasonable expectation of future injury to Plaintiffs because the State Department can accommodate their sincerely-held religious beliefs, "notated in its records" their accommodation request, and "will reference those notations when adjudicating any future passport applications." Defs.' Mot. to Dismiss at 9, ECF No. 140; Watkins Decl. ¶¶ 5–6, ECF No. 99-3. The mere possibility that Defendants' passport policies may injure *other* individuals who are not parties to this suit at some future date is not only purely speculative but also legally insufficient to save this case from mootness. *See City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994) ("[T]his circuit's case law provides that if a plaintiff's specific claim has been mooted, it may nevertheless seek declaratory relief forbidding an agency from imposing a disputed policy in the future, so long as *the plaintiff* has standing to bring such a forward-looking challenge and the request for declaratory relief is ripe." (emphasis added)); *accord Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009).[2]

---

[2] The Court denies Plaintiffs' motion for leave to amend the complaint, ECF No. 143. This would-be third amended complaint comes too late in the game, nearly four years into this litigation after the original claims had become moot and the case was at its end, and thus would prejudice Defendants. *See Mowrer v. U.S. Dep't of Transportation*, 14 F.4th 723, 732 (D.C. Cir. 2021). In addition, Plaintiffs' motion failed to comply with the Local Rules because they did not

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 140) is granted and Plaintiffs' Motion for Leave to Amend Complaint (ECF No. 143) is denied.  This action is dismissed with prejudice.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 20, 2023                                                                          RUDOLPH CONTRERAS
                                                                                                United States District Judge

---

provide a copy of the proposed amended complaint.  *See* Local Civil Rule 15.1 ("A motion for leave to file an amended pleading shall attach, as an exhibit, a copy of the proposed pleading as amended."); *IMAPizza, LLC v. At Pizza Ltd.*, 965 F.3d 871, 876 (D.C. Cir. 2020) (holding that district court did not abuse discretion in denying leave to amend for failure to follow this rule).