**United States District Court,**
**District of Columbia**

| | |
|---|---|
| David Alan Carmichael, *et al*., ) | |
| ) | Plaintiffs, *in propria persona* |
| Plaintiffs ) | Case No:  **19-CV-2316-RC** |
| ) | |
| v. ) | RE:  ECF 149, 150 |
| ) | |
| Michael Richard Pompeo, *et al*. ) | |
| ) | |
| Defendants-Respondents ) | |

**Plaintiffs' Combined Objections to the Order and Opinion Memorandum**
**of March 20, 2023, ECFs 149 and 150**

## I.    Introduction

1.    We, David Alan Carmichael and Lawrence Donald Lewis, file these objections to the district court's final order and memorandum opinion of March 20, 2023 (ECFs 149, 150) (hereinafter, "The Order").  None of the previous filings of ours are waived on any point, fact, position or any other thing by the exclusion of them here.  Instead, we intend this to be additive to all those things since they all stand squarely against The Order, and the wanton error, clear error, and abuse of discretion by the court and its final undermining of justice.

## II.    Objections To The Introduction of The Court's Opinion

2.    Objection 1 - We here again protest the court's use of a possessive pronoun "their" when modifying the term Social Security Number or SSN (Hereinafter, "SSN").  Such an allegation of possession is not supported by any fact or allegation presented to the court, and where the court like all relevant facts of the case has not exercised an adversarial process necessary to any finding of fact and conclusion of law.  We reiterate the objection quoting (ECF

47) as one example of our many protests continually ignored by the court:  "We object to the

possessive pronouns used by the court because they infer that the Plaintiffs actually have a social

security number as a matter of law.  If there is or ever that which we know to be such a damnable

number associated with us, it would have been done by fraud and against our will, and is or

would be void *ab initio*.  Therefore, we object to every inference that a SSN is a part of our

identity.  Any use of his, their or any possessive pronoun is a lie of Satan and wrong as a matter

of law so far as it asserts that any of us 'have' a SSN with which to identify."  (ECF 47, ¶5).  The

Defendants' appear to honor all changes of identity which have been established and maintained

over 5 years (Attachment 1, 8 FAM 403.1, Name Change by Customary Usage).  The court

ignores the recognition by the United States seventeen years ago that the proper association for

David Alan Carmichael regarding a SSN by customary usage is "n/a", meaning "not applicable"

as in the evidence provided and filed at (ECF 47, Att. 7).  Lawrence Donald Lewis stands in the

same position.  Pursuant to 26 U.S.C. § 6109, the SSN for the individual is the TIN or Taxpayer

Identification Number to which the exhibited Judgment Payment Voucher referred.  We implore

the judge to consider what he will do when someone claims that they want to be referred to as

"she" contrary to their XY chromosomes given by nature and nature's God.  Likely, the judge

would honor their demand notwithstanding the absurdity as a matter of nature.  Yet, with regard

to a SSN which is not natural and is voluntary as a matter of law, the judge seems possessed of

the sublime influence which demands that identity be associated with a SSN.  Whereby, the

judge alleges by possessive pronoun that a SSN is something of which we must possess

notwithstanding it is something for which we have never volunteered.  The possessive pronoun

demands elimination in every instance by using the term "a" in lieu of a possessive pronoun.

Take note that the government readily accepts someone to be able to declare themselves to have

a new gender identity notwithstanding that it contradicts their chromosomes (Attachment 2, Form DS-5504).  Where is the demand on the passport form that says, 'you must submit a statement, signed, and dated, that includes the phrase, "I declare under penalty of perjury under the laws of the United States of America that the following is true and correct: I have never been issued a XY chromosome in contrast to the social security number records of the Social Security Administration or my birth certificate.'  Ridiculously and sublimely, the desire to adhere a SSN as an element of one's identity is elevated above the laws of nature and natures God in the mind's eye of the court and the Defendants.  Such is the number of the beast.  The insistence upon the Defendants and the judge to refer to us with a possessive pronoun, in The Order, is indicative that discovery may reveal that <u>injunctive relief is necessary</u> to purge the Defendants' records of anything that would lead them to believe that the possessive pronoun is warranted.

3.      Objection 2 – The Court failed to include the tort-liable defendants who were referred to in the complaint as co-conspirators.  Some of them we can now identify by name as being the likely culprits who violated the laws of the land and of the United States whereby they injured us.  Mr. Rolbin declared himself to be the one who unlawfully revoked Carmichael's passport.  He referred to, but did not name, someone who put him up to it – a co-conspirator. The one, or ones, that put him up to it may be others whose names have surfaced throughout the litigation such as Christine McClean, Kristia Watkins, and Paul Peek among others.  There are others yet to be identifiable co-conspirators who came up with the scheme to stall the court, and play games with the Plaintiffs' right to relief by the issuing of passports and voiding of the revocation (the quick-fix) subsequent to the Court's ruling of August 28, 2020 (ECFs 44, 45). The frivolous, Rule-11-violating, stall sham-remand by the Defendants in response to our Rules 16/26 efforts at discovery has shown itself to be having no foundation in law or fact by evidence

that slipped through the Defendants' grasp.  That <u>documentary</u> evidence supports everything that we forecast to the court prior to the Defendants even filing a status report telling about their intention to file the frivolous motion.  Again, we forecast that the remand was a sham, and it proved itself to be so.  We are compelled to reprove those who are in contempt of this high court and its high ministry.  Those who were involved in the sham-remand are liable for their unlawful acts, done in conspiracy, which caused daily injuries, exacting a *writ ne exeat republica* upon us without due process – a false imprisonment.  The Order should have referred to those co-conspirators as parties.  The court did not address the facts and substantive arguments of ours.

4.      Objection 3 – Beside the sublimely inspired incorrect use of the possessive pronoun "their", the Courts' statement is substantially false where by they said, "After nearly four years of litigation, Plaintiffs have now received valid passports from Defendants without having to provide them their social security numbers."  The court has reaffirmed the actual period of inordinate delay and false imprisonment, but it should be more correctly represented as:

A.  **The correct statement with regard to Lewis should have been:** 'After nearly three years of litigation, Plaintiff Lewis finally received a valid passport that should been accomplished immediately upon the Court's finding in favor of Lewis's position in August 28, 2020.  The remaining litigation should have been addressing the liability of the wrongdoers who unlawfully imprisoned Lewis up until that time.  Instead of pursuing the relief demanded in Lewis's complaint, the court has rubberstamped the evasion moves of the Defendants.  Beside the sham-remand, the Court denied Lewis's motions for finding of fact and law, denied his motion to compel the issuance of the passport for reasons of insufficiency of proof (for which the courts' discovery obstruction was responsible).  Shockingly, the court desperately fulfilled Lewis's demand to compel

in May, 2022, without providing any finding of fact or conclusion of law to support its exercise of power.

B. **The correct statement with regard to Carmichael should have been:**

'After nearly four years of litigation, the Defendants have not produced any evidence that shows that the Department was authorized by law to revoke Carmichael's passport; and that his demand to void the revocation annotation is not the proper relief as a matter of law. The Defendants have merely provided statements of their conclusions, under the guise of statements under the penalty of perjury for which they might personally evade penalty when their mere conclusions are proven wrong through adversarial due process. As a matter of law, Carmichael's in-hand passport issued in 2018 has not lawfully been revoked but is only being reported as revoked. The court has been careful to ignore all of the motions and demands of Carmichael notwithstanding that his positions have been supported contrary to the Defendants' positions whenever any documentary evidence slips through the grasp of the Defendants' notwithstanding the court's obstruction to Carmichael's discovery. In the latest scheme, the defendants offered a carrot-on-a-stick quasi-replacement passport, a facade, as a scheme to bait Carmichael into abandoning his filed claim and his reserved rights. The court has used that carrot-on-a-stick to falsely justify its coerced settlement upon Carmichael rather than adjudicate documentary evidence that will vindicate Carmichael. The track record of the Defendants indicates that Carmichael will likely prevail in a regimen of legitimate adversarial due process.'

5.     Objection 4 – The court made a glib statement, that reads like it was written by the Defendants' lawyer or one of their cronies, that mischaracterizes the situation where the court said, ""Yet, they still refuse to take Defendants' "yes" for an answer."" In reality, the glib

statement ought to more accurately have said, '(Plaintiffs) refused to take the Defendants' ""no"–
and we will only provide an alternative that enables our evasion of accountability - for an
answer."   It evidences the court allowing the Defendant to be the arbiter in lieu of the court, in
usurpation of the court's duty.  The Plaintiffs' complaint demanded the issuance of Lewis's
passport in accordance with his application, photograph, fee, and demand for religious
accommodation; and the complaint demanded the voiding the revocation of Carmichael's
passport.  When the Defendants wantonly violated the Constitution, Acts of Congress, the Code
of Federal Regulations, and their Foreign Affairs Manual, to the injury of the Plaintiffs, and
refused to correct their behavior after notice, the Plaintiffs exercised their right to have the
adjudication of facts and law put to the Article III judiciary.  The court's glib conclusions,
without support in fact and law, indicates they are acting merely as an extension of the agency's
employee and attorney cabal rather than as the judiciary.

## III.   Objections To The Order's Background, Mischaracterizing The Facts and Process of the Case Litigation

6.      Objection 5 – The Order repeats their previous mischaracterizations of what was
really happening in the litigation.  They indeed noted that the Defendants' "argued" that they had
granted an accommodation to Mr. Lewis.  In reality, in the sham remand period (which appears
to be only a "period" and not an actual remand), Mr. Lewis received no correspondence from the
agency as would have actually occurred if it was an actual remand and not merely a period of
sham.  The Order says "Defendants still required Mr. Lewis to submit a photograph taken within
six months of the issue date."  That was mere argument as a matter of litigation, and an offering
from the Attorney as a meet-me-halfway settlement offer, where they provided no evidence of
the photograph requirement and no evidence of the agency communicating the demand, and no
evidence in law for the requirement.  The court is repeating a collaborative false narrative.  The

order says, "Mr. Lewis maintained that his photograph only needed to be taken within six months

of the application date, and the photograph that he already submitted satisfied this requirement."

There was more to that background, the revealing of which shows the Attorney and his

Defendant-Agency cloaked-associate-and-conspirator are subject to Rule 11 sanctions.  The truth

is Mr. Lewis maintained that he was due a passport no later than the date that he was unlawfully

denied the passport.  He was one hundred percent (100%) correct, and he continued to tell it to

the Defendants, their attorney, and the court prior to their sham period under the camouflage-

colored-net name of remand, and many times thereafter.  Mr. Lewis did not even have

knowledge of  the Defendants' operating manual and their Foreign Affairs Manual, about which

the Defendants knew and/or should have known matched the demands of Mr. Lewis and his

complaint.  The settlement offer's request for a photograph was unjustified and merely trumped

up in the scheme to bait Mr. Lewis into settling rather than standing upon the merits of his valid

claim.  Mr. Lewis said to the settlement-offering attorney that if they were worried about the ten-

year passport photo eventually looking three years too old, the Code of Federal Regulations

permitted the shortening to the passport expiration date.  Mr. Lewis communicated that he had

no objection to the shorter time because it would give him great satisfaction <u>that the law and</u>

<u>lawful regulations would finally be applied in his passport issuance</u>.  The court in its background

goes on to leave out the story that the only communication Lewis had from the agency during the

ninety-day sham period was a letter on day eighty-nine telling him that his passport was denied a

second time because he did not "volunteer" a new photograph.  Lewis argued that a real remand

rather than a sham would have the agency communicating to him directly in official agency

correspondence rather than through a settlement coordinating through Attorney Hair (a U.S.

Justice Department employee).  In that letter telling Lewis that his application was denied the

second time for "non religious" reasons, a foreign civilian aviation organization's preferences (ICAO 9303), and the domestic United States Foreign Affairs Manual (8 FAM 402.1) was claimed as their pretextual excuse for denying Lewis's passport for "non-religious" reasons.  At least some form of discovery slipped through the grasp obstructionists, and we Plaintiffs could obtain those references by internet search.  Both documents contradicted their claims.  The ICAO document said that the application date is the reference date of the photograph as determined some issuing countries (ECF 144, Att. 2, p. 2) and the Foreign Affairs Manual confirmed that the validity of the photograph was linked to the date of application (8 FAM 402.1-2, ECF 144 Att. 3, p. 2).  Even more glaring is the fact that the 8 FAM 101.1, Introduction to Policy and Procedures, says "ICAO does not have the authority to rule on whether a travel document will be acceptable in the United States" (ECF 144, Att-5).  Yet, the government argued that their hands were tied, not merely influenced, by the ICAO's hint of a preference for the photograph being tied to the issuance date as a pretext to unlawfully chain Lewis within the boarders of the United States.

 7.  (Obj. 5, cont.)  Rather than exposing the second unlawful denial of Lewis's passport, which raises a new cause of action and unlawful detention/imprisonment, a writ ne exeat republica without due process, the court by The Order merely states, ""The Court noted that the sources Defendants relied on did not appear to support their position concerning the photograph, and thus "the source of Defendants' insistence on requiring an updated photograph for Lewis— and, therefore, one of the roadblocks to Lewis receiving his passport—[wa]s unclear." Id""  It was not merely unclear, it was unlawful and demands the granting of Plaintiffs demand for discovery and to amend the complaint to name the co-conspirators who are liable for their under-the-color-of-law deliberate injuries upon the Plaintiffs and their rights.  The Order's background is a false narrative regarding Plaintiff Lewis.

8.    Objection 6 – Where The Order accurately described the legal position taken by Carmichael, our objection comes in the abuse of discretion by the court as it is exposed in the Order's chronicling the path taken by the court.  We will address that in the next paragraph as Objection 7.  Here, we object to the court's false background that excluded the reality that it was a settlement offer made to Carmichael, as described in the previous paragraph.  It was alluded to in a status report to the court, and subsequently in Attorney Hair's conference call attended by Carmichael, Lewis, Pakosz.  The settlement offer-by-status-report requested a new application, a photograph, and waived the application fee and demand for a SSN.  The Plaintiffs in solidarity explained to U.S. Attorney Hair that they demanded the law be followed rather than whimsical evasion of law practiced by the Defendants.  Plaintiffs would not provide a new application, or any other thing under the guise of a settlement or faux remand.  In answer to Mr. Hair's accusing them of refusing to provide a photograph, the Plaintiffs answered that <u>they would be happy to provide a photograph if it was ordered by the court after a finding of fact and conclusions of law regarding the necessity of a new photograph</u>.  Leaving out these facts presents a false narrative.

9.    Objection 7 – The court could not grant the Defendants' second motion for dismissal because there was a question of law and fact that had not been overcome by the Defendant.  The Order said, ""If, "hypothetically," the replacement passport was the product of "an obviously invalid process," then Mr. Carmichael would still have a live claim."  After that statement at the top of page three (p. 3) of The Order, the following statement should have been inserted to make the "II. BACKGROUND" accurate:  'Instead of proceeding in a legitimate adversarial due process after that opinion, and initiating the long-begged-for legitimate discovery, the court speculated on the possibility of settlement in such a way as to moot the Plaintiffs' claim without the complete relief demanded in their complaint.'  That statement would

have put the remainder of that paragraph in the proper context, up until the last sentence that also paints a false narrative by omission that is next addressed.

10.      Objection 8 -  The Order's ignoring of the profound argument by the Plaintiffs whereby damages are clearly warranted in this case was relegated to The Order's footnote 1. Whereby, we object to the court's not adjudicating that issue on the merits and ignoring the precedence and rulemaking of the United States Supreme Court and ignoring the totality of law, facts and arguments presented by the Plaintiffs regarding damages relating to the various causes of action.  The Court's footnoted conclusions are erroneous as a matter of law, clearly erroneous according to fact, and an abuse of discretion and is contrary to the rule in *Uzuegbunam, et al. v. Preczewski*, et Al. 592 U.S. ____ (March 8, 2021) which the court has never refuted as being applicable and controlling in our case.

11.      Objection 9 – The last sentence of the II. BACKGROUND, by saying "Now, having taken further actions...", alludes to the court's <u>compelling</u> the government to issue Lewis's passport without a judgment on the merits for Lewis after the finding of fact and conclusions of law; and allowing a one-sided, non-adversarial, faux discovery that was biased for the government and against Carmichael.  It is more paint on the palette of the false narrative.

12. All told, the "BACKGROUND" conveyed in The Order is a false narrative.

**IV. Objections To The Legal Standard Citings of Case Law**

13.      Objection 10 – The Order's citing of *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808, is off point.  It is distinguished from ours in that it was about a tort action filed in a state court and improperly removed to a federal court because there was no federal subject matter.  The case supports our having jurisdiction rather than a dismissal on those grounds.

14.      Objection 11 -  The Order's citing of *Curran v. Holder*, 626 F. Supp. 2d 30, 32

(D.D.C. 2009) is also distinguished from ours in that it was an obviously frivolous and nonsensical claim where ours is the opposite.  The case supports our having jurisdiction rather than a dismissal on those grounds.  It's referencing *Agrocomplect, AD v. Republic of Iraq*, 524 F. Supp. 2d 16,(D.D.C. 2007), is inapposite to our case and it is off point except where it supports our claim and position in contrast to The Order.  In *Agrocomplect*, the Plaintiff had volunteered to submit to an administrative remedy which mooted his case for the purposes of later seeking remedy by way of the U.S. Dist. Court under narrow statutory allowances for its jurisdiction in foreign party matters.  In our case, the Court is <u>abusively partnering with the government defendant to coerce us into a non-judicial remedy</u> where the law-breaker gets to be the culprit, judge, law-re-writer, and judge again of his lawless acts, and in-the-absurd is attributing that as grounds for mootness.  Secondly, the issue of foreign state immunity in expressly established by positive law rather than judicial fiat.  *Agrocomplect* does not support The Order's position.

15.     Objection 12 -  The Order mischaracterizes the complaint with regard to its claim for damages.  Read in the totality, damages for injuries to the Plaintiffs as a result of unlawful conduct of the alluded-to initially-unnamable Defendants (co-conspirators) is sufficiently invoked but yet ignored by the court, as was briefed by the Plaintiffs multiple times.  There is no express act of Congress that establishes the doctrine of sovereign immunity and the Constitution does not delegate that as a preserved 'Rex Lex' when the people formed the written compact that delegated powers to the United States branches and reserved rights only to the people and to the several states.  The Congress has provided for that by literally establishing the corporation, artificial person which is named UNITED STATES, Incorporated.  It is the UNITED STATES U.S. Person (artificial) that is named as a defendant and is subject to damages, with particular payment limits set by the Federal Tort Claims Act.  The Privacy Act in its plain language

attributes damages obligations to whomever it is that violated that statute and injured the Plaintiffs. It does not specify nor exclude whatever party it may be that is liable, a natural person or an artificial person. The Privacy Act sets a minimum threshold of penalty due as a nomination for nominal damages so that particular relief is available to give access to judicial remedy, appropriate relief, and incentive to those in power to not violate that law. Otherwise, the Privacy Act would be toothless and useless from its inception. The Order mischaracterizes and misrepresents the Plaintiffs' claims under RFRA, FTCA, the Privacy Act, the Fifth Amendment, due process, the damage done to the Plaintiffs, and the complete relief that is due.

16.    Objection 13 - The Order citing of *Jathoul v. Clinton*, 880 F. Supp. 2d 168, 170 (D.D.C. 2012), is irrelevant. There, a foreigner's visa was lawfully denied, where here our privileged right was denied, in injury to our absolute rights.

17.    Objection 14 - The Order misappropriates the citing of *Sparrow Airlines, Inc. v. United States* Airlines, 216 F.3d 1111, 1113 (D.C. Cir. 2000)) in that we do not fail to fulfill the standard as the Order alludes to by its citing the case in support of its dismissal. The Order neglects to point out where *Sparrow* supports our case in contrast to The ORDER. Mr. Sparrow's pro se complaint did not "... make out a prima facie case..." in contrast to our claims, *Id* @ 1113. There we find language that might have been in our initial complaint, had we legal training. It will certainly be in our amended complaint upon completion of discovery, "Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination", *Id*. Certainly, we shall prove that 22 USC 2714a(f), and the yet-to-be-nameable co-conspirators' arbitrary practices with animus were used as a pretext for discrimination. Whereby the Circuit's ruling in *Sparrow* rules against the

dismissal of the Order:

> ""None of this, however, has to be accomplished in the complaint itself. Under Federal Rule of Civil Procedure 8(a)(2), a claim need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(e)(1) states that "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." And Rule 8(f) instructs that "[a]ll pleadings shall be so construed as to do substantial justice." In *Conley v. Gibson*, the Supreme Court interpreted these rules to mean that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). The Court went on to hold that
>
>> "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. . . . Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Id. at 47-48 (citations omitted)."" *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000) citing *Conley v. Gibson*, 355 U.S. 41 (1957)

18.     (Obj. 14 cont.)  The rule in *Conley* says "liberal opportuntiy for discovery" is warranted in stark contrast to this court's nearly four years of faux litigation as a pretext to obstruction.  Our case is like *Sparrow* in that, "The grounds for the district court's dismissal of Sparrow's complaint are inconsistent with Rule 8 and *Conley*" *Id*.  As well, "Nor are discrimination or other civil rights complaints different in this regard" *Id. 1115*.  The issue of our use of the term co-conspirator has been glaringly ignored by the Court.  It is a non-technical term indicating people who are violating the law and by the nature of their acts cannot be acting in their official capacity.  Granting of our motion for discovery with amendment to follow is due.

19.     Objection - 15  We object to The Order's dismissal that is contrary to their case quote, "Courts are not required to accept "legal conclusion[s] couched as factual allegations[s]" as true. Id. (quoting *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006)). (Order p. 4, end of 1st ¶).  The court relied upon mere legal conclusions of Paul Peek and Kristia

Watkins (among others throughout the case) that were couched as factual allegations, so long as it was the government failing to meet their burden. The court then doubled down on their abandonment of the *Treudeau* rule by denying our demand for adversarial due process.  Even if the government's mere conclusion statements could rise to the level of being allegations, scrutiny by way of discovery is due.

20.    Objection  -  16  The Order's reference to *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, is not applicable as justification for dismissal.  There, the persons were no longer restrained with chains, but they did not have a claim for damages.  In our case, there remains the existence of an actual and concrete dispute, not only for damages but with regard to what is the lawful relief by means of declaratory judgment, and compelling of the proper conduct of the Defendants pursuant to law rather than by ultra vires or less-than-complete relief.

21.    Objection -  17  The Order's reference to *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) cites a case where there is no evidence that the Navy would repeat their wrongdoing.  In contrast, the record of our case shows that the government repeats the unlawful conduct after telling the court that it had corrected its behavior.  The Order's misapplying page 4 of *Larsen* is made worse where they ignore the citing there that says, "Second, as plaintiffs again accurately point out, a case is not moot if a court can provide an effective remedy. See *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13, 113 S.Ct. 447, 121, L.Ed.2d 313 (1992)." *Larsen,* p.4, last ¶.  The effective remedy has been demanded from the case inception and has not changed.  We demanded that the court adjudicate our claims with judicial due process, including discovery, and provide the complete relief demanded.  That relief includes the effective remedy and relief of finding of fact and conclusions of law that warrants compelling the government to void the revocation of Carmichael's passport, and warranted the order to issue Lewis's passport,

and to order damages appropriate to the wrongs committed by co-conspirators.

21.     Objection – 17  The Order's citing of *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, is also erroneous where the facts, status of parties, and relief sought upon which that decision was based are vastly different than ours.

22.     Objection – 18  The Order's citation of *Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12 (1992) to justify its erroneous dismissal...  However, the case cited a precedent by the United States Supreme Court, *Mills v. Green,* that is on par with our case and supports our motion for litigation on the case and controversy, and relief demanded, from the inception of our case:

> "If a defendant, indeed, after notice of the filing of a bill in equity for an injunction to restrain the building of a house, or of a railroad, or of any other structure, persists in completing the building, the court nevertheless is not deprived of the authority, whenever in its opinion justice requires it, to deal <u>with the rights of the parties as they stood at the commencement of the suit, and to compel the defendant to undo what he has wrongfully done since that time</u>, or to <u>answer in damages</u>. *Tucker v. Howard*, 128 Mass. 361, 363, and cases cited; *Attorney General v. Great Northern Railway*, 4 De G. Sm. 75, 94; *Terhune v. Midland Railroad*, 9 Stew. (36 N.J. Eq.) 318, and 11 Stew. (38 N.J. Eq.) 423; *Platteville v. Galena Southern Wisconsin Railway*, 43 Wis. 493.

> But if the intervening event is owing either to the plaintiff's own act or to a power beyond the control of either party, the court will stay its hand."
> Both paragraphs are *Mills v. Green*, 159 U.S. 651, 654 (1895) (Emphasis added)

23.  (Obj. 18, cont.)  In our case, the Defendants tried to bait us Plaintiffs into "the plaintiff's own act" to do something to undermine our rights as it relates to the case and controversy at its inception.  The Defendant does not evade accountability for the punch into our noses simply by a veiled apology for which we can only receive if we abandon our claim.  We have reserved our rights to adjudicate our rights to hold the Defendants accountable for their wrong, to reach **complete** relief to include declaratory judgment, discovery, adversarial due process, mandamus of other court power to compel, injunction, damages and any other relief

determined by the jury of the reasonably minded.

> "Where, however, a complaint seeks injunctive relief together with declaratory relief and the injunctive relief features have been rendered moot by subsequent events, a court must still proceed to do complete justice by entertaining the plea for declaratory relief. *Bisno v. Sax* (1959) 175 Cal.App.2d 714 [ 346 P.2d 814]. Therefore, the issue presented by appellees' motion to dismiss is whether effective declaratory relief can be granted to appellants should the judgment below be reversed and the action remanded for trial. *Shultz v. O'Rourke* (1931) 118 Cal.App. 207 [ 4 P.2d 797]." *City of Coronado v. Sexton*, 227 Cal.App.2d 444, 38 Cal. Rptr. 827 (Cal. Ct. App. 1964) cited by *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

24.     (Obj 18. cont.)  In *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) cited by The Order, the U.S. Supreme Court – "Held: Compliance with the summons enforcement order did not moot the Church's appeal. Delivery of the tapes to the IRS did not mandate dismissal by making it impossible for the Court of Appeals to grant the Church "any effectual relief." See *Mills v. Green*, 159 U.S. 651, 653.  Just as the court had the power to order the IRS to return and destroy records unlawfully obtained, the court in our case has the power to order the rescission of the voiding of Carmichael's passport, and to provide notice to the entities to the entities whom they erroneously notified of the unlawful revocation.  "For now, we need only hold that this case is not moot because a court has power to order the IRS to return or destroy any copies of the tapes that it may have in its possession."  *Church of Scientology of Cal. v. United States*, 506 U.S. 9 (1992), fn 6, at p. 14.

25.     Objection – 19  The Order inappropriately cited *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013), as justification for its wrongful dismissal.  That case did not have redressability remaining as a live issue where our case does.  They did not claim that particular named or unnamed actors, liable for their malevolent act which caused injury to them.  Our case does.  Also, The Order shows no two-pronged standard for the consideration of the redressability of the Defendants' ongoing injuries to others such as

Plaintiff/Intervenor Boulton where the governments' latest iteration of wrongdoing is reaping the same results.

> In determining whether a case is ripe, we generally evaluate two factors: "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149, 87, S.Ct. 1507, 18 L.Ed.2d 681 (1967). "[W]hen an agency [policy] may never have its effects felt in a concrete way by the challenging parties[,] ... the prospect of entangling ourselves in a challenge to such a [policy] is an element of the fitness determination." Devia v. Nuclear RegulatoryComm'n, 492 F.3d 421, 424 (D.C.Cir.2007). Here, that element is dispositive. *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1207 (D.C. Cir. 2013)

26.     Objection – 20  The Order's citing of *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir.2008) is also off point where it says, "intervening events make it impossible to grant the prevailing party effective relief."  Ours in not a case that was merely what the *Lemon* court calls a "procedural injury" that in fact also warrants Article III standing, *Id.* at 1315.  It is the Defendants claim that ours is a mere procedural injury where they did not consider our demands for religious accommodation.  In our case the conduct of the Defendants was squarely wholesale violation of several positive prohibitive statutes, and resulting in unlawful confinement. It was much more egregious and warrants damages.  In *Lemon*, the action of the government that mooted the redressability was not one as in our case where it was used as a bargaining chip to further injure the Plaintiffs, warranting adjudication for the repeated injuries.

27.     Objection – 21  The Order's citing of *Burlington N. R.R. Co. v. Surface Transp. Bd*., 75 F.3d 685, 688 (D.C. Cir. 1996) supports our position on the judiciability of the legal questions that we've demanded the court to address.  "Without review now, Burlington will be subjected to continued risk of similar agency action in the future.  Particularly since without review Burlington faces the prospect of never securing any judicial remedy, these hardships are adequate to sustain judicial review" *Id.* at 692.  The Plaintiffs now represent the interests of the

public as intervening on their own behalf as two of the people who demand judgment on the

legal questions.  Just like in *Burlington,* the "end run around" the statutory process, "avoiding the

practical force of the statutory limits on its authority."  The sham period was a new injury in the

Defendants' attempts to evade accountability and liability to their abuse of power, *Id.* at 694.

28.     Objection – 22  The Order's citing of *Nat. Res. Def. Council, Inc. v. U.S. Nuclear*

*Regul. Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982) does not support the court's unlawful

dismissal of our case.  It is distinguished from our case in that the Agency adopted formal rules

promulgated in the Federal Register in accordance with the Administrative Procedures Act where

in our case, the Defendants are legislating in a closet, making up their conduct as they go, just to

suit the expediency of their evading judicial review of their unlawful conduct.

29.     Objection – 23  The Order's citing of *Theodore Roosevelt Conservation P'ship v.*

*Salazar,* 661 F.3d 66, 79 (D.C. Cir. 2011), was not appropriate where that case was decided

where there were no disputes of material fact.  In our case, the facts regarding any hint of

lawfulness of the actions of the Defendants are in dispute, and are material.  Every instance of

exposure of documentary evidence has shown the claims of the Plaintiffs to be warranted and the

declarations of the Defendants under the penalty of perjury to be absolutely false.  The yet-to-be

–exposed-to-discovery facts of those Declarations will also shown to be false and material in the

support of our claims.  Also, the court cited actually had a record to review, and found the

actions of the BLM to not violate the law.  In our case, the record continues to be sequestered

and what is known shows the Defendants' conduct to be unlawful.

30.     Objection – 24  The Order's citing of Honeywell Int'l, Inc. v. Nuclear Regul.

Comm'n, 628 F.3d 568, 576 (D.C. Cir. 2010), is another example of citing a case that is off

point.  Yet, contrary to *Honeywell*, the Defendants in our case have recently doubled down on

their arbitrary practices and their is no limit on the timeline for which they're action might expire. They've recently elevated their arbitrary exclusion of waiver for good cause to the DS-11 and DS-82 forms (Attachment 3, Passport Renewal Form DS-82, p. 2).

## V.  Objections To The Analysis

31.     Objection – 25  The Order's statement is false in its substance and a mischaracterization where the court said, ""In this case, Defendants "have in fact provided passports to Plaintiffs" and thus "the requests for equitable relief [are] moot because 'intervening events [have made] it impossible to grant the prevailing party effective relief.'" "  The complete relief demanded by the Plaintiffs in our complaint was:  Declaratory judgment, a finding of fact and conclusion of law: the court compel the issuance of passport for Lewis according to the law and his application; the court compel the voiding of the revocation of Carmichael's passport; and damage judgment from a one thousand dollar minimum to the five-hundred thousand dollar maximum.  The court has only provided partial relief to Lewis when the court ordered the government to issue his passport, with no finding of fact or conclusion of law, after denying Lewis's motion to compel.  Instead of deciding on the merits for Lewis with prejudice, the court has assumed the role of both senior level Bureau of Consulate Affairs, Passports, and the senior level of the U.S. Attorney's Office, and has given Executive Branch tactical orders necessary in its own mind to moot Lewis's case.  As well as ignoring the facts and law put to it regarding the appropriate judicial obligation to fully adjudicate the case, even if the only damages payment is nominal, the court has made a uninformed ruling on the merits for the Defendants without ever seeing the record or documentary evidence.  There is no evidence before the court to support its determination of what is the unlawful conduct of the Defendants and what the actual law actually says about what is the correct conduct that is the duty of the Defendants with regard to

Carmichael.

32.     Objection – 26  The Order falsely represented by exclusion (extrinsic

falsification) of facts where it said, "Defendants determined pursuant to their own regulations

that they could accept the photograph that (Lewis) previously submitted with his application."

The court left out the fact that it was not done willingly by the Defendant, as an agency action of

its own, but was ordered by the court.  Hence, the court's statement "Mr. Lewis's case is therefore

moot" is false.  The tactic taken by the court cannot fulfill the legitimate basis of mootness.  The

court was obviously aware that the case was not moot when it ordered the passport to be issued.

What the heck is going on here?  The court left out the fact that the demand to issue that passport

was made by Lewis in November 2020, and the Defendant and court in collusion went on to

unreasonably and unlawfully continue his in-house arrest throughout the smoke screen of the

sham remand.  His unlawful imprisonment was extended for a year and a half without due

process.

33.     Objection – 27  The Order points out the court's relying on anything but evidence.

Mr. Paul Peek's declaration is not evidence, just as Mr. Miller's statement to Lewis that he

followed procedures when he was denying Mr. Lewis's passport application a second time for

non-religious reasons (ECF 147, Att. 1).  Just as examination of Mr. Miller's procedures revealed

that he was violating the law, it is better than a 51% chance the Mr. Peeks declaration will be

found false.  The court ignored the case law that says summary judgment cannot be based upon

mere affidavit, just as it has ignored all points and law conveyed by the Plaintiffs.  The court has

not expressed even contentions to those points and case law filed to the court by the Plaintiffs.

34.     Objection – 28  The Order cites an instance where the ""'. . . Department ' may

issue a replacement passport . . . [t]o correct an error or rectify a mistake of the Deartment.""'

Yet, the court without adjudication has not determined whether the "Department" merely made an error or mistake, whether it was the "Department" that did it or someone acting under the color of the Department; and the court saw no evidence of what the actual proper and lawful process and procedure was that would allow for a replacement passport in preemption over the demand of the Plaintiff to void the revocation as his complete relief.

35.     Objection – 29  The Order ridiculously endorses the speculations of Mr. Peek of what Carmichael might face in their voiding the revocation.  Mr. Carmichael conveyed his preference to the full relief he demanded over the inconveniences speculated by Mr. Peek.

36.     Objection – 30  The Order at least admits that there remains a dispute of facts that are material to the question of mootness where it says ". . . (Carmichael) *still* disputes its validity."  Having left out the fact that Carmichael disputed the validity of the replacement passport as a matter of it being accomplished in accordance with the proper law and procedures relating to replacement passports, the court admits that more material facts are in dispute regarding whether the government issued a valid passport as a matter of the ICAO requirements for photographs.  It was certainly a timely photograph, but they took the suitable photograph submitted for the passport that was revoked, and they distorted the photograph for their pseudo replacement.  Rather than acknowledge that it is another example of Carmichael being correct every time the government's behavior is checked against the law, regulations, and in-stone policies and procedures, and the government is so far 100% incorrect, the court justifies the invalid replacement passport as being valid because it was done invalidly two years ago.

37.     Objection – 31  The Order failed to point out that the invalid Carmichael replacement passport was produced simultaneously with the letter denying Mr. Lewis's passport the second time.  Lewis's passport was unlawfully denied for having a too-old photograph while

Carmichael's invalid moot-bait replacement was sent using a photograph that was a year and a half older the that of Mr. Lewis's.  A replacement passport process requires an application.  The application makes a new photograph required to be taken within six months of the application.

38.     Objection – 32  The Order makes the false speculation "nor could he" referring to whether Carmichael will likely be injured by the Defendants in the future.  Since filing their dismissal motion and the Plaintiffs replying, the Defendants have doubled-down on their arbitrary affidavit demand, making it a part of the actual DS-11 and DS-82 passport applications (Attachment 3).  Carmichael and Lewis, and Boulton, among all unable to fulfill the arbitrary and capricious demand of the black-letter passport form.  Carmichael is getting more calls for assistance from those who can't fulfill the arbitrary and capricious affidavit demand.  The court neglected to point out that Michelle Boulton was an example of the Defendants' continuing to deny passports to those who cannot fulfill the arbitrary and capricious narrow affidavit requirement.  We object to the court merely quoting "notated in its records" without the Defendants actually producing those records along with all the other records so far demanded by the Plaintiffs.

39.     Objection – 33  The order erroneously and abusively discounts Carmichael's claimed and actual injury from being "harangued" by others seeking his assistance.  Contrary to the court's statement ". . . Carmichael does not argue that he himself with likely be directly injured by Defendants in the future . . . ", Carmichael's being "haranged" is an injury that might not be valued by the court but it is an injury in fact to Carmichael's life, liberty and pursuit of happiness, wearing on the time, stress and blood pressure of Carmichael.  Until there is injunctive relief to change the arbitary affidavit demanded by the passport form, Carmichael will continue to be harangued.  The Defendants should be compelled to change the statement to say,

'Applicants must file an affidavit explaining if there is good cause for their not providing a SSN in block 5." The current standing obstructive statement on the forms are the cause of Carmichael's being harangued.

40.    Objection – 34  The Order's citing of *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009) also does not support that court's dismissal of our case. It is an ongoing policy and practice of the defendants' to obstruct the issuance of passports to Carmichael, Lewis and those in their families and religious association.

> First, a plaintiffs challenge will not be moot where it seeks declaratory relief as to an ongoing policy. Id. at 1429. In Super Tire Engineering v. McCorkle, 416 U.S. 115, 125, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974)  *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009),

> Second, even though the specific action that the plaintiff challenges has ceased, a claim for declaratory relief will not be moot even if the "plaintiff has made no challenge to [an] ongoing underlying policy, but merely attacks an isolated agency action," so long as "the specific claim fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine." Id. (internal quotation marks and citations omitted  *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009)

41.    Objection  -  34  The Order's frivolous denial of complaint amendment is relegated to a footnote on the last page. It is another example of the court's non-judicial and arbitrary conduct. It decries four years of litigation as an undue delay that is implied to be the fault of the Plaintiffs. We've dutifully complained of the delay prior to its occurrence at each instance of delay proposed by the Defendants. The prejudice is in injury to the Plaintiffs, not the Defendants, where all of the ills cited by the court were the product of the Defendants' and the court's doing. It is biased prejudice against the Plaintiffs.

41.    Objection 35  -  The Order misrepresents the Plaintiffs' motion for amendment. Our motion demanded amendment upon completion of the ordinary amendment process that follows discovery according to the Rules (FRCP, Rules 16 & 26). A complaint amendment prior to

discovery could not have accompanied the motion because it would be a shot in the dark.  The stated intention of the motion was to actually name the co-conspirators whose identities are known only by the Defendants and are excluded from the Plaintiffs' access.  The particulars of the wanton unlawfulness of each co-conspirators acts need scrutiny before the particulars necessary to describe the complete relief that is warranted.  "The culpability of each participant needs to be determined by the jury after the due process of discovery that is necessary to expose the particular of the wrongs of each bad actor" (ECF-143, Alternative Motion for Leave to Amend the Complaint, p. 8, ¶20).  The court grossly abuses discretion where the court has routinely ignored the rules so long as it prejudiced the Plaintiffs.  It frivolously claimed in its footnote that its hands were tied.  Its exclusion of the true context of the motion for amendment upon completion of discovery is deception.  Sanctions are warranted.

42.  Objection – 35  The Order is an unlawful taking of our property right in the due process owed to us by the filings of our claim in the Article III court.  We are due a judgment against the Defendants, and those malevolent actors whose conduct and identities are being hidden from us. We, and the public, are owed the expression of black-letter law by the appropriate finding of fact, conclusions of law, and judgment on the merits in our favor with prejudice.[1]  This is a novel case and one that is extremely important for the reversing of the Defendants civil attack to destroy the Constitution of the United States and the legitimate operations of government pursuant to it.

---

[1] In common law legal structures, blackletter laws are the well-established legal rules that are certain and no longer disputable. Blackletter law is free from doubt and generally well-known. It also means well-established case law and refers to the basic key components of a subject in the law. Essentially, it refers to legal concepts that are ancient, important, and indisputable. https://www.law.cornell.edu/wex/blackletter_law

I, David Alan Carmichael, have conferred with Plaintiff Lawrence Donald Lewis on this foregoing objections to the order and memorandum opinion of March 20, 2023.  With my signature here below, I declare the statements of fact herein are true by my first hand knowledge or and understood by me to be true, with the Heavenly Father, the Son, and the Holy Spirit as my witness.

Ss:   *David Alan Carmichael*
        David Alan Carmichael
        1748 Old Buckroe Road
        Hampton, Virginia  23664

Intentionally Blank

I, Lawrence Donald Lewis, have conferred with Plaintiff David Alan Carmichael on this foregoing objections to the order and memorandum opinion of March 20, 2023.  With my signature here below, I declare the statements of fact herein are true by my first hand knowledge or and understood by me to be true, with the Heavenly Father, the Son, and the Holy Spirit as my witness.

Ss:   *Lawrence Donald Lewis*
        Lawrence Donald Lewis
        966 Bourbon Lane
        Nordman, Idaho  93848